IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC, and J-SQUARED TECHNOLOGIES (OREGON) INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 04-960-SLR |
| MOTOROLA, INC., | ) ) | |
| Defendant. | ) | |

---

Sean J. Bellew, Esquire and David A. Felice, Esquire of Cozen O'Connor, Wilmington, Delaware.  Of Counsel:  Kevin F. Berry, Esquire of Cozen O'Connor, Philadelphia, Pennsylvania.

William W. Bowser, Esquire of Young Conaway Stargatt & Taylor, Wilmington, Delaware.  Of Counsel:  Randy Papetti, Esquire and Richard A. Halloran, Esquire of Lewis and Roca, Phoenix, Arizona.

---

**MEMORANDUM OPINION**

Dated: April 13 , 2005

Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

On August 20, 2004, plaintiffs J-Squared Technologies, Inc.
("JST") and J-Squared Technologies (Oregon), Inc. ("JSO") sued
defendant Motorola, Inc. alleging:  (1) breach of contract; (2)
promissory estoppel; (3) negligent misrepresentation; (4) breach
of duty of good faith and fair dealing; and (5) violation of
Arizona's Consumer Fraud Act.  (D.I. 1)  Plaintiffs seek
compensatory and punitive damages.  On September 23, 2004,
defendant moved to transfer the case to the District of Arizona
or, alternatively, to dismiss pursuant to Fed. R. Civ. P. 9(b)
and 12(b)(6).[1]  (D.I. 10)  Plaintiffs oppose the motion (D.I. 13)
and defendant has filed its reply.  (D.I. 15)

## II.    BACKGROUND

Plaintiffs are commissioned sales agents who sell products
for various computer manufacturers.[2]  JST is a Canadian
corporation maintaining its principal place of business in
Kanata, Ontario.  (D.I. 1)  JSO is an Oregon corporation with its
principal place of business in Portland, Oregon.  (Id.)

Defendant is a Delaware corporation with its headquarters in
Schaumburg, Illinois.  (D.I. 11)  Motorola Computer Group ("MCG")
is a business unit of defendant.  (Id. at A1)  MCG manufactures

---

[1]On February 4, 2005, the court denied defendant's motion to
transfer this action to the District of Arizona.  (D.I. 17)

[2]For the purposes of considering defendant's motion to
dismiss, this court states the facts as alleged by plaintiffs.

computer boards and other products for use in embedded computing applications.  (Id.)

MCG negotiated a Manufacturer's Representative Agreement ("MRA") with JST ("the JST agreement") in October 2002.  (D.I. 13 at 3)  In March 2003, MCG negotiated a MRA with JSO ("the JSO agreement").[3]  During these negotiations, defendant led plaintiffs to believe that it intended to maintain a long-term independent sales network with plaintiffs.  (Id.)  According to plaintiffs, defendant's representatives knew, or should have known, that it had no intention of entering into such a relationship.  (D.I. 13 at 5)

Both the JST and JSO agreements involved the sale of defendant's products in Washington, Oregon, Idaho and Canada. (Id.)  Both agreements had a term of one year, to be renewed upon written agreement of the parties.  (D.I. 13 at 4)  JSO and JST received commission payments under the agreements directly from defendant.  (Id.)

JST anticipated a $100,000 profit from sales of defendant's products for the first year of the JST agreement.  (Id.)  JSO estimated a profit of $200,000 for the first year.  (Id.)  In reliance on defendant's intent to establish a long-term sales network with plaintiffs, JST invested more than $500,000 in

---

[3]By their terms, both agreements are controlled by Arizona law. (D.I. 1, Ex. A at 14)

support of defenant's sales in Canada and JSO invested more than
$300,000 in support of defendant's sales in the United States.
(Id.)

In December 2003, one year after the execution of the JST
agreement, the parties were still "act[ing] in accordance with
the terms and conditions of the JST agreement." (D.I. 13 at 5)
On February 26, 2004, defendant sent notice to JST that the JST
agreement had expired on December 2, 2003, and that defendant's
relationship with JST had terminated on that date. (Id.)

Also on February 26, 2004, defendant notified JSO of the
cancellation of the JSO agreement for JSO's failure to meet
performance standards under the agreement. (Id. at 6)
Plaintiffs argue that this notice was part of defendant's plan to
eliminate the costs of having to pay commissions to plaintiffs
while, at the same time, taking advantage of the good will that
plaintiffs had established during the first year of the
agreements. (Id. at 6-7)

III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6),
the court must accept as true all material allegations of the
complaint and it must construe the complaint in favor of the
plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage
Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint
should be dismissed only if, after accepting as true all of the

facts alleged in the complaint, and drawing all reasonable
inferences in the plaintiff's favor, no relief could be granted
under any set of facts consistent with the allegations of the
complaint." Id. Claims may be dismissed pursuant to a Rule
12(b)(6) motion only if the plaintiff cannot demonstrate any set
of facts that would entitle him to relief. See Conley v. Gibson,
355 U.S. 41, 45-46 (1957). The moving party has the burden of
persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d
1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

Defendant contends that: (1) plaintiffs cannot bring a
consumer fraud claim because, under Arizona law, they are not
consumers;[4] (2) the contracts at issue preclude plaintiffs'
promissory estoppel and negligent misrepresentation claims; and
(3) under the contracts at issue, plaintiffs cannot recover
punitive damages.

### A.    The Arizona Consumer Fraud Act

Plaintiffs argue that defendant violated Arizona's Consumer
Fraud Act ("the Act") because, during the negotiations, it misled
plaintiffs by stating that it was interested in a long-term
relationship. The Act prohibits the use of "deception, deceptive

_____

[4]Defendant also argues that plaintiffs' consumer fraud
claims do not comply with Federal Rule of Civil Procedure 9(b).
In light of this court's ruling on plaintiffs' fraud claims,
defendant's arguments are moot.

act or practice, fraud, false pretense, false promise,

misrepresentation, or concealment, suppression or omission of any

material fact with intent that others rely upon such concealment,

suppression or omission, in connection with the sale[5] or

advertisement of any merchandise[6] . . . ." Ariz. Rev. Stat. §

44-1522(A) (2004).  The Act is intended to "protect unwary buyers

from unscrupulous sellers." Sutter Home Winery, Inc. v. Vintage

Selections, Ltd., 971 F.2d 401, 407 (9th Cir. 1992).  Contract

disputes centered around alleged fraud can fall within the

purview of the Act.  See Flower World of Am. v. Wenzel, 594 P.2d

1015, 1017-18 (Ariz. Ct. App. 1979).

    The JST and JSO agreements are not covered by the Act.

Plaintiffs did not purchase any merchandise under the agreements.

Plaintiffs were hired as "manufacturer representatives" for

defendant's products.  (D.I. 1, Ex. A at 3)  Agreeing to market

such products does not amount to the purchase of merchandise, and

does not qualify plaintiffs as buyers under the Act.  See Sutter

Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407

(9th Cir. 1992).  Therefore, defendant's motion to dismiss

plaintiffs' claims under the Act is granted.

_____

    [5]"Sale" is defined as "any sale, offer for sale, or attempt
to sell any merchandise . . . ." Ariz. Rev. Stat. § 44-1521 (7)
(2004).

    [6]"Merchandise" includes "any objects, wares, goods,
commodities, intangibles, real estate, or services." Ariz. Rev.
Stat. § 44-1521 (5) (2004).

B.     Promisory Estoppel

Plaintiffs claim that defendant promised them a long term sales relationship, both before and during the contract term, and, in reliance on this promise, the plaintiffs invested hundreds of thousands of dollars into developing a market for defendant's products.  Defendant asserts that the JST and JSO agreements preclude these claims.

From the record the court cannot determine the facts and circumstances surrounding the alleged promises on which plaintiff relied.  The court does conclude, however, that plaintiffs established a promissory estoppel claim under Arizona law, which requires a plaintiff to show a defendant made a promise, which the defendant should reasonably foresee would cause the plaintiff to rely, upon which the plaintiff actually relied to its detriment.[7]  See Contempo Constr. Co. v. Mountain States Tel. and Tel. Co., 736 P.2d 13, 16 (Ariz. Ct. App. 1987).  Plaintiffs' complaint alleges each element of this claim:  (1) they assert

_____

[7]Although the parties rely on Arizona case law in support of their arguments, the court recognizes that there may be choice of law issues with respect to plaintiffs' promissory estoppel and negligent misrepresentation claims.  A federal court sitting in diversity jurisdiction must apply the choice of law rules from its forum state.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 796 (1941).  Delaware has adopted Restatement (Second) of Conflict of Laws.  See Travelers Indem. Co. v. Lake, 594 A.2d 38, 41, 47 (Del. 1991).  The court determines that it should apply Arizona law in order to protect the expectations of the parties, who elected to have Arizona law govern their contract, and to ensure uniform adjudication of plaintiffs' claims.  See Restatement (Second) of Conflict of Laws § 188 comment b.

defendant promised them a long term sales relationship; (2)
defendant should have known that they would invest more money
into the relationship based on their understanding of future
profit; (3) plaintiffs lost money because they overinvested in
the relationship based on defendant's promises.  The court does
not agree with defendant that, under Arizona law, a written
contract can preclude **any and all** claims of promissory estoppel.[8]
Therefore, defendant's motion to dismiss plaintiffs' promissory
estoppel claims is denied.

    D.    **Negligent Misrepresentation**

    Plaintiffs claim that defendant misrepresented its intent
and, as such, defendant is liable for negligent
misrepresentation.  Arizona recognizes a cause of action, arising

_____

    [8]Defendant does not cite any Arizona case law holding that a
written contract precludes a claim of promissory estoppel.
Johnson International, Inc. v. City of Phoenix, 967 P.2d 607
(Ariz. Ct. App. 1998), relied on by defendant, holds that a
promise is an element of a promissory estoppel claim and that the
memorandum of understanding by its plain terms was, by itself,
not a promise, as the "clear language of the agreement precludes
such an interpretation."  This court does not interpret the
conclusory statement made in Johnson International, Inc. that
promissory estoppel is "a replacement for a contract when parties
are unable to reach a mutual agreement" to mean that a written
contract will always preclude a promissory estoppel claim.  967
P.2d at 615.  The cases cited by the Johnson International court,
to support this statement, do not hold that a claim for
promissory estoppel is precluded by a written agreement.
    In addition, Walker v. KFC Corp., 728 F.2d 1215, 1220 (9th
Cir. 1984), cited by defendant in support of its argument,
applies California contract law to a claim of promissory
estoppel; therefore, it is hardly instructive on Arizona contract
law.  Id. at 1219.

under tort law, for negligent misrepresentation. <u>See,</u>
<u>e.g.</u>, <u>McAlister v. Citibank</u>, 829 P.2d 1253, 1261 (Ariz. Ct. App.
1992) (citing Restatement (Second) of Torts § 552 (1977)).
Restatement (Second) of Torts § 552, as adopted by the Arizona
Supreme Court, defines negligent misrepresentation as follows:

> "(1) One who, in the course of his business, profession
> or employment, or in any other transaction in which he
> has a pecuniary interest, supplies false information
> for the guidance of others in their business
> transactions, is subject to liability for pecuniary
> loss caused to them by their justifiable reliance upon
> the information, if he fails to exercise reasonable
> care or competence in obtaining or communicating the
> information
> (2) . . . the liability stated in Subsection (1) is
> limited to loss suffered (a) by the person or one of a
> limited group of persons for whose benefit and guidance
> he intends to supply the information or knows that the
> recipient intends to supply it; and (b) through
> reliance upon it in a transaction that he intends the
> information to influence or knows that the recipient so
> intends or in a substantially similar transaction."

<u>St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co.</u>, 742
P.2d 808, 814 (Ariz. 1987) (quoting Restatement (Second) of Torts
§ 552)). One must be a foreseeable user of the information in
connection with a commercial transaction before liability can be
found. <u>Id.</u>

Plaintiffs' complaint sufficiently pleads a claim for
negligent misrepresentation.[9] Plaintiffs allege that defendant

--------------------------------

[9]In <u>McAlister v. Citibank</u>, 829 P.2d 1253 (Ariz. Ct. App.
1992), the court held that "[n]egligent misrepresentation
requires a misrepresentation or omission of a **fact**." <u>Id.</u> at
1261. This court's statement that plaintiffs have pled negligent
misrepresentation is not a finding that they have pled

made statements to them in connection with their sales
relationship.  The complaint states that defendant should have
known that it had no intention of maintaining a long term
relationship.  Plaintiffs contend that defendant should have
known that plaintiffs were relying on these misrepresentations
because they were investing so much money in developing
defendant's market share.  Plaintiffs assert that they relied on
this information when deciding to invest more than they expected
to make in the first year.

Defendant argues that plaintiffs cannot bring a tort claim
for economic loss.  Arizona recognizes the "economic loss"
doctrine with respect to contracts for the sale of goods.  See
e.g., Apollo Group, Inc. v. Avnet, Inc., 58 F.3d 477, 480 (9th
Cir. 1995) (applying the economic loss doctrine to contracts
covered by the UCC); Carstens v. City of Phoenix, 75 P.3d 1081,
1083-84 (Ariz. Ct. App. 2004) (applying economic loss doctrine to
a contract for real property).  Under this doctrine, a plaintiff
cannot bring a tort claim for economic damages when the parties
had an enforceable contract.   Appollo Group, Inc., 58 F.3d at
479.  The rationale is that contract remedies are adequate to
compensate a plaintiff for its economic loss.  Id.  The agreement

---

misrepresentation of a fact; the court withholds judgment on this
element until further development of the record.

at issue in this case, however, is one for services; thus, the UCC does not apply.

Furthermore, plaintiffs' claims for negligent misrepresentation are not in conflict with the parties' contract. The contract states that it has a term of one year and can be renewed in writing upon agreement of the parties. Plaintiffs do not argue that defendant represented to them that the contract would last more than a year, but that defendant would agree to renew the contract when the year was up. Therefore, plaintiffs' claim would not be covered by the contract and they could not bring it in a contract action.[10]

**E.    Punitive Damages**

Plaintiffs claim punitive damages for defendant's alleged breach of the implied covenant of good faith and fair dealing ("implied covenant").[11] Defendant argues that § 3.8 of the JST and JSO agreements prevents plaintiffs from obtaining punitive damages.[12] Pursuant to Arizona law, a plaintiff claiming breach

---

[10]For this same reason, the court rejects defendant's arguments regarding the parol evidence rule. See Spudnuts, Inc. v. Lane, 641 P.2d 912, 914-15 (Ariz. Ct. App. 1982) (stating that "statements which are squarely against the terms of the written agreement are inadmissible under the parol evidence rule).

[11]Plaintiffs also claim punitive damages for defendant's alleged violation of the Act, however, in light of the court's holding that the Act does not apply to plaintiffs, this claim is moot.

[12]Section 3.8 states:
Limitation on Liability.  IN NO EVENT, WHETHER FOR

10

of an implied covenant is limited to an action brought under the contract at issue.  See Sutter Home Winery, Inc., 971 F.2d at 408.  However, if a special relationship exists between the contracting parties, then a plaintiff may bring a tort action. See Rawlings v. Apodaca, 726 P.2d 565 (Ariz. 1986).  There are two situations which give rise to a special relationship:  (1) "'the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from defendant;'" or (2) "restricting recovery to contract damages would 'provide[] more of an incentive for breach of contract than for its performance.'"  Sutter Home Winery, Inc., 971 F.2d at 408 (quoting Rawlings, 726 P.2d at 575, 576).

     Neither situation is present in this case.  It is undisputed that the parties, both of which are corporate entities, entered into the contract seeking profits.  "There is also no reason to believe that restricting a distributor's recovery [for breach of an implied covenant] to contract damages would encourage suppliers to routinely breach distributor agreements."  Sutter

---

          BREACH OF CONTRACT, WARRANTY, MOTOROLA'S NEGLIGENCE,
          STRICT LIABILITY IN TORT OR OTHERWISE WILL MOTOROLA BE
          LIABLE FOR INCIDENTAL, SPECIAL, PUNITIVE OR
          CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO,
          FRUSTRATION OF ECONOMIC OR BUSINESS EXPECTATIONS, LOSS
          OF PROFITS, LOSS OF DATA, COST OF CAPITAL, COST OF
          SUBSTITUTION OF PRODUCTS, FACILITIES OR SERVICES,
          DOWNTIME, COSTS, OR ANY SIMILAR CLAIM OF A SPECIAL,
          INCIDENTAL, CONSEQUENTIAL OR PUNITIVE NATURE WHATSOEVER
          TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.
     (D.I. 1, Ex. A at 7)

11

Home Winery, Inc., 971 F.2d at 408.  Therefore, plaintiffs'
claims for punitive damages resulting from defendant's alleged
breach of the implied covenant are dismissed, as § 3.8 precludes
claims for punitive damages under the JST and JSO agreements.

## V.    CONCLUSION

For the reasons stated, defendant's motion to dismiss (D.I.
10) is denied in part and granted in part.  It is granted as to
plaintiffs' claims under the Arizona Consumer Fraud Act[13] and
claims for punitive damages.  It is denied as to plaintiffs'
claims of equitable estoppel and negligent misrepresentation.
An order consistent with this memorandum opinion shall issue.

---

[13]Defendant challenged plaintiffs' complaints of fraud under
Fed. R. Civ. Proc. 9(b); however, this argument is moot in light
of the court's holdings.