# EXHIBIT
# No. 7

1719101_1.DOC

**LEWIS AND ROCA LLP — LAWYERS**

Randy Papetti
40 North Central Avenue
Phoenix, Arizona 85004-4429

Direct Dial: (602) 262-5337
Direct Fax: (602) 734-3865
rpapetti@lrlaw.com
Admitted in: Arizona

Our File Number: 23897-00071

December 22, 2005

Sean Bellew, Esq.
Cozen O'Connor
1201 N. Market Street
Chase Manhattan Centre, Suite 1400
Wilmington, DE 19801-1147

   Re: *J-Squared v. Motorola Technologies, Inc. v. Motorola, Inc.*, C.A. No. 04-960-SLR:
     Written Discovery Deficiencies

Dear Sean:

   We are writing to request that your clients promptly supplement their interrogatory answers, as most of the answers were incomplete and non-responsive. In general, they fail to provide adequate detail (as the interrogatories requested) about the representations your clients allege that Motorola made about the duration and profitability of the contracts. As for JSO, its responses also fail to explain adequately why it believes it met the performance requirements under the contract. These are central issues in the case, so we are asking that fuller information be provided.

   In order to be as clear as possible about the deficiencies we perceive, we have gone through the effort to explain what we believe is missing from your clients' responses on a response by response basis, and ask that you supplement your discovery responses sufficiently prior to our taking the depositions of your clients.

**Interrogatory No. 1 for JST and JSO:**

   Motorola asked both JST and JSO to describe, *with specificity*, any and all representations they believed Motorola made about its intent to forge long-lasting relationships with JST and JSO, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons they believe these representations were false when made, as alleged in paragraph 14 of their complaint, and all other facts and documents that support their answers.

   Both JST's and JSO's responses are inadequate as they provide none of the detail requested. They, in general terms, identify two representations. The first, by reference to Jeff Gibson's declaration, is that "Motorola attendees" at a September 2003 meeting in Boston described Motorola's "long term sales strategy in regards to its independent sales representation network." This description fails to identify precisely what Motorola said about its sales strategy



at this meeting that would lead JST and JSO, both of which had executed their contracts with Motorola many months before this meeting, to believe that they could ignore the language in section 7.1 of their contracts setting out the contract term as one year. Further, this description fails to identify who among the Motorola attendees at the September meeting made the particular representations your clients rely upon.

The only other representation identified is that Steve Machernis, Larry Terry, Ed Kaczor, Dennis Robinson and Paul Holt, supposedly on "numerous" occasions told JST and JSO about Motorola's plan to "outsource its manufacturer representatives following a substantial decrease in the Motorola in-house sales force from 55 to 12." This description likewise fails to identify what exactly Motorola said about its plan to outsource its sales force to manufacturing representatives that would lead JST and JSO to believe that they could ignore the language in section 7.1 of their contracts setting out the contract term as one year or when it was said.

Beyond these two, JST and JSO merely explain that Motorola made representations "during negotiations" "over the telephone," "at in-person meetings" and "at Motorola presentations to Plaintiff." These references are insufficient. When were they made and to whom? JST and JSO also fail to explain how either of the two representations were false when made, which Motorola specifically requested they do.

JST and JSO also explained that Marc Watts, Jeanne Kolasa, Larry Terry, and Dennis Robinson represented that the POS commission payments payable to Plaintiff would be sufficient to permit Plaintiff to realize a substantial revenue source at the commencement of the engagement. This description fails to identify what exactly Motorola said about its historical run rate business that would lead JST and JSO to conclude that it would realize a substantial revenue source at the beginning of its contracts. Furthermore, again neither JST nor JSO explain when these representations were made and how they were false when made.

JST vaguely describes them as communicated "through acknowledgement of financial forecasts received by these individuals from Claude Langlois and Jeff Gibson." Is JST suggesting that Motorola sent Claude and Jeff forecasts? If so, please identify the documents that support your allegation. Or is JST suggesting that Motorola provided these forecasts verbally? Motorola requested this level of detail in this interrogatory. Furthermore, JST's and JSO's reference to G.L. Williams and RT Technologies also suffer from an obvious lack of detail.

Motorola is entitled to know, and specifically asked for pursuant to this interrogatory, the basis for JST and JSO's claim that Motorola made representations and promises to formulate a long-lasting relationship that negate the terms of their contracts and any false representations about JST and JSO's expected revenue realization. Accordingly, please supplement this response.

1697687.1

**LEWIS AND ROCA**
—LLP—
LAWYERS

**Interrogatory No. 2 for JST:**

Motorola asked JST to describe, *with specificity,* any and all representations it believed Motorola made about JST's expected profitability, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons it believes these representations were false when made, and all other facts and documents that support its answer.

JST explained that Ed Kaczor, Larry Terry and Jeanne Kolasa represented that the POS commission would be at least $10,000 per month based upon a 5% commission rate. Again, Plaintiffs' responses lack the detail requested. JST does not identify a single document demonstrating that Ed, Larry, or Jeanne represented that commissions would be $10,000 per month. Accordingly, JST must be implying that Motorola's employees made these representations verbally. In either event, this response is insufficient, as it fails to explain how these representations were made, when, to whom and how these representations were false when made, details that Motorola specifically requested in this interrogatory. Accordingly, please supplement this response.

**Interrogatory No. 2 for JSO:**

Motorola also asked JSO to describe, *with specificity,* any and all representations it believed Motorola made about JSO's expected profitability, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons it believes these representations were false when made, and all other facts and documents that support its answer.

JSO explained that Dennis Robinson, Marc Watts, and Jeanne Kolasa represented that the POS commission would be $10,000 or $15,000 per month based upon a 5% commission rate. Plaintiffs' responses lack the detail requested. JSO also explains that Paul Holt informed Plaintiff that sales demand would be sufficient to cover the costs of hiring a new employee and that as a result, JSO hired Steve Blomme. JSO does not identify a single document demonstrating that Dennis, Marc, or Jeanne represented that commissions would be $10,000 or $15,000 per month or that Paul Holt represented that sales would cover the cost of hiring a new employee. Accordingly, JSO must be implying that Motorola's employees made these representations verbally. In either event, this response is insufficient, as it fails to explain how these representations were made, when, to whom and how these representations were false when made, details that Motorola specifically requested in this interrogatory. Accordingly, please supplement this response.

1697687.1

LEWIS AND ROCA
—LLP—
LAWYERS

Sean Bellew, Esq.
December 21, 2005
Page 4

**Interrogatory No. 3 for JST and JSO:**

Motorola also asked JST and JSO to describe, *with specificity,* any and all representations it believed Motorola made about integration into the Motorola business model, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons they believe these representations were false when made, and all other facts and documents that support their answers.

Both JST and JSO simply reference their responses to Interrogatory numbers one and two. This is insufficient, as those responses lacked the information Motorola requested. Please supplement this response by providing specific facts to support these allegations.

**Interrogatory No. 4 for JST and JSO:**

Motorola also asked JST and JSO to describe, *with specificity,* any and all other representations it believed Motorola made, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons they believe these representations were false when made, and all other facts and documents that support their answers.

Both JST and JSO explain that individuals identified in Plaintiffs' other interrogatory responses made representations concerning client referrals for non-competing product lines as well as other benefits related to Plaintiffs' entry into the embedded technology marketplace. Again, Plaintiffs' responses lack the detail requested. First, the individuals identified in Plaintiffs' other responses include: Marc Watts, Steve Machernis, Larry Terry, Ed Kaczor, Dennis Robinson, Paul Holt, and Jeanne Kolasa. Which one of these individuals made these representations, when did he or she make these representations, and to whom did he or she make these representations? Furthermore, what exactly are the representations Motorola is alleged to have made in this regard and how were they false when made? Motorola clearly asked for these details in this interrogatory. Accordingly, please supplement this response.

**Interrogatory No. 5 for JST and JSO:**

Motorola also asked JST and JSO to describe, *with specificity,* each and every way JST and JSO relied on Motorola's purported representations of a long-lasting relationship, of expected profitability, of expected integration, and any other representations Plaintiffs' believed Motorola made, including how JST invested more than $500,000, how JSO invested $300,000, how each expended "substantial capital," and all facts and documents that support their answers.

JST and JSO simply describe their respective investments as having occurred by virtue of "substantial expenses," such as payroll, technology, training, travel, market, and creating demand



with customers. This and the other examples JST and JSO give, including 1) "additional overhead" from monitoring and complying with the demand creation portion of their relationship, 2) "certain opportunity costs" as a result of their exclusive relationship with Motorola, and 3) "reassigning various existing employees" to Motorola's line are generic and lack any of the facts requested. Even JSO's reference to hiring Steve Blomme lacks any of the detail requested by the interrogatory. For example, how much of JSO's investment was attributed to hiring Steve Blomme – how much was his salary. This is the sort of fact that would help explain JSO's investment allegations.

In this interrogatory, Motorola asked for JST and JSO to describe "each and every way" it relied on Motorola's representations such that JST invested more than $500,000, JSO invested more than $300,000, and each expended "substantial capital." Accordingly, please supplement this response by providing the detail requested.

**Interrogatory No. 6 for JST and JSO:**

Motorola asked JST to describe how it calculated its anticipated profit of $100,000 and asked JSO to describe how it calculated its anticipated profit of $200,000 for sales of Motorola products, and all facts and documents that support their answers.

Both clarified that their anticipated profit was not based on sales of Motorola products as alleged in paragraph 13 of the complaint, but rather, on gross commission revenue. These gross commission revenue figures, both go on to explain, were represented to Jeff Gibson, Steve Blomme, and Claude Langlois. Because Plaintiffs' answer depends on whether representations were made, this suffers from the same problems as Plaintiffs' responses to Motorola's Interrogatory numbers one, two, three and four – they lack the detail requested by the interrogatory. Accordingly, please supplement this response.

**Interrogatory No. 7 for JST and JSO:**

Motorola asked JST and JSO to explain what they mean in paragraph 13 of their complaint when they refer to expenditures as "collectively envisioned by the parties to support the sale of Motorola's products," and to identify all facts and documents that support their answers.

JST's and JSO's responses vaguely refer to the necessity of expending capital for personnel, training, marketing, and travel expenses, among other costs, but do not provide any further detail about these expenses. Furthermore, the reference to a comment made by Jeff Gibson at a meeting in Boston about how JST was behind the curve when it came to revenue and profit realization is non-responsive, as it does not explain what JST and JSO mean in paragraph 13 of their complaint, which is what they were asked about in this interrogatory. Please supplement this response accordingly.

LEWIS
AND
ROCA
——LLP——
LAWYERS

Sean Bellew, Esq.
December 21, 2005
Page 6

**Interrogatory No. 8 for JST and JSO:**

Motorola asked JST and JSO to describe, *in detail,* the "considerable amount of time, energy, and funds" JST and JSO expended to support Motorola's sales objectives, how Motorola approved those expenditures, and all facts and documents that support their answers.

Both JST and JSO simply refer to their responses to Interrogatory number five. As previously discussed, JST's and JSO's responses to Interrogatory number five are inadequate, as they do not provide the detail requested. Plaintiffs' response to Interrogatory number eight therefore suffers from the same problem. Accordingly, please supplement this response.

**Interrogatory No. 9 for JST and JSO:**

Motorola asked JST and JSO to identify the individuals who negotiated the respective agreements with Motorola, the length of time it took, the number of drafts, each and every basis for Plaintiffs' allegation in paragraph 20 of their complaint that Motorola "drafted the material terms of the contracts and presented them on a take it or leave it basis," and all facts and documents that support your answer.

JST's and JSO's responses fail to respond to the question of how Motorola's contracts with JST and JSO can be characterized as "take it or leave it." Please supplement this response by providing an explanation.

**Interrogatory No. 11 for JST:**

Motorola asked JST to describe each and every basis for its allegation that after expiration of the Agreement, the parties waived the requirements of a writing, including what "conduct," "words," and "deeds" support JST's allegation that the parties "continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been renewed" and all facts and documents that support its answer.

Part of JST's response is based on JST's statement that representations were made "before, during, and after the negotiations leading to the execution of the JST Agreement." As previously stated, JST has failed to provide any of the details that Motorola requested regarding Plaintiffs' allegations of representations, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons it believes these representations were false when made, and all other facts and documents that support its answer. Please supplement this response.

1697687.1



**Interrogatory No. 11 for JSO:**

Motorola asked JSO to describe, *with specificity*, how JSO met its obligations under the Agreement, as alleged in paragraph 32 of the complaint, and all facts and documents that support its answer.

JSO referred to its responses to interrogatory numbers 19, 20, and 21. As will be discussed below, JSO's responses to those interrogatories are incomplete. JSO went on, without providing any factual basis, to respond with the conclusory and argumentative statement that it "complied with all conditions and requirements identified under the agreement and that Motorola's termination for performance constituted a breach of contract and/or breach of the covenant of good faith and fair dealing." We are aware that this is JSO's position, what we asked for in this interrogatory is JSO's factual support for this argument. Accordingly, please supplement this response with facts about how JSO fully performed.

**Interrogatory Nos. 12, 13, and 14 for JSO:**

Motorola asked JSO to identify, *with specificity*, the total number of uncommitted accounts, committed accounts, and design wins that it brought to Motorola beginning May 15, 2003, including the name of the potential customer or customers, the program or project under development by the customer, the Motorola product that the customer was potentially interested in purchasing for uncommitted accounts and the product that the customer had purchased for committed and design win accounts, the quarter in which the account was acquired, all efforts made to secure each uncommitted account/program, and for Interrogatory number 14, to include whether the customer wanted a system or board product, the customer's annual revenue forecast, how the customer evidenced its intent to purchase Motorola products, and the total dollar amount purchased by the customer at the date of termination.

For each category, JSO simply identified the names of some customers. However, it did not, provide the detail requested, including 1) the program or project under development by the customer, 2) the Motorola product that the customer was potentially interested in purchasing for uncommitted accounts, 3) the product that the customer had purchased for committed and design win accounts, 4) the quarter in which the account was acquired, and 5) all efforts made to secure each account. For design win accounts, JSO also failed to provide: 1) the customer's annual revenue forecast, 2) the total dollar amount purchased, 3) whether the customer was a military/aerospace or non-military/aerospace customer, and 4) whether the customer evidenced the intent to purchase the requisite quantity of Motorola products.

JSO also explains that in the weeks following its termination it brought in an additional eight uncommitted accounts and three committed accounts, but does not even identify these accounts by customer name, let alone provide the other detail requested. JSO also makes the argument in its response that Motorola's basis for termination was "willful, wanton, fraudulent,



and intended to deprive JSO of its rights under the Agreement." We are aware that this is JSO's position, however, this interrogatory is intended to find out what facts support that argument.

Whether JSO brought in the requisite number of uncommitted accounts, committed accounts, and design wins relates to whether JSO met its performance requirements and turns on an understanding of the project under development, the Motorola product being purchased, whether the customer was military or not, and many other details specifically requested in these interrogatories. JSO did not provide these details. Accordingly, please supplement these responses.

**Interrogatory No. 13 for JST:**

Motorola asked JST to described, *with specificity,* how JST met its obligations under the Agreement, and all facts and documents that support its answer.

JST objects to this interrogatory, claiming that JST's performance under the agreement is not a fact at issue in this litigation and goes on to respond with the conclusory statement that it "complied with all terms and conditions under the Agreement." Motorola feels differently and thus specifically asked JST to describe how it complied with all the conditions and requirements under the agreement. Please supplement this response by providing the facts that support your statement that JST complied with the agreement.

JST also states that Ed Kaczor confirmed JST's performance compliance prior to JST's termination. This statement is not supported by any facts. First, JST does not identify a single document. Accordingly, JST must be implying that Ed confirmed JST's compliance verbally. If so, when did Mr. Kaczor do so and to whom? Please supplement this response with facts about how JST fully performed.

**Interrogatory No. 14 for JST and Interrogatory No. 17 for JSO:**

Motorola asked JST and JSO to explain what they meant in their disclosure statements when they stated "Plaintiffs have incurred in excess of $750,000 to design-in Motorola products with Plaintiffs' customers in reliance on Defendant's representations of fact," and identify all facts and documents that support your answer.

JST and JSO first refer to their responses to Interrogatory number five. As previously discussed, these responses are inadequate as they do not provide the detail requested. Furthermore, JST and JSO completely fail to explain *how* they incurred in excess of $750,000 to design-in Motorola products. Rather, both point to J2d 1675, but this document does not provide the requested information. JST and JSO also state that "had defendant complied with the representations made both before, during, and after negotiations," it would have realized a return on investment as depicted in J2 1675. This statement also misses the point of the interrogatory,



which is to find out *how* JST and JSO actually incurred in excess of $750,000 to design-in Motorola products. Moreover, JST and JSO have not provided any of the requested detail about Motorola's alleged representations, and therefore, JST's and JSO's reference to representations as a way to justify its investment is non-responsive. Please supplement this interrogatory with the detail requested – the facts that support how JST and JSO incurred in excess of $750,000 to design-in Motorola products and the facts about Motorola's alleged representations.

**Interrogatory No. 15 for JST and Interrogatory No. 18 for JSO:**

Motorola asked JST and JSO to explain, *in detail,* its computation of damages, including but not limited to its method of calculation and how they have incurred in excess of $750,000 as set forth in their respective disclosure statements, and all facts and documents that support this computation.

JST and JSO simply reference their responses to interrogatory numbers 5, 6, and 14 for JST and 5, 6, and 17 for JSO, which as previously indicated, do not provide the information requested. Furthermore, those responses do not even speak to computation of damages or method of calculation. Motorola specifically asked for this information in this interrogatory. Accordingly, please supplement this response.

**Interrogatory No. 15 for JSO:**

Motorola asked JSO to identify the JSO sales representatives that sold products for Motorola and fully explain their responsibilities, whether they also sold products for other companies, and what percentage of their time was spent on Motorola products.

While JSO did identify several sales representatives, including the percentage of time they devoted to Motorola sales, JSO merely explained that they "worked to solicit customers, design product solutions and service demand fulfillment responsibilities," among others. This response is lacking the detail requested. Motorola asked JSO to "fully explain" its sales representatives' responsibilities. Accordingly, how did its representatives work to solicit customers, design product solutions and service demand fulfillment responsibilities – what did they do? JSO also failed to explain whether these representatives also sold products for other companies. Please supplement this response by providing the detail requested.

**Interrogatory No. 16 for JSO:**

Motorola asked JSO to identify all JSO employees with duties or responsibilities in connection with meeting JSO's obligations under the Agreement and to include a description of

1697687.1



each employee's job duties while the Agreement was in effect. It also asked for JSO to indicate date of termination if an employee no longer works for JSO.

JSO simply references its response to Interrogatory number 15, which as previously indicated, did not to provide the requested detail. JSO also identified Jeff Gibson and Claude Langlois. However, JSO failed to include a description of each employee's job duties. JSO indicated in its response to Interrogatory number 15 that Mr. Mitchell had resigned from JSO, but failed to indicate, in response to this interrogatory, when Mr. Mitchell resigned his position. Please supplement this response by providing a description of each employee's job duties while the Agreement was in effect and the date that Mr. Mitchell resigned from JSO.

**Interrogatory Nos. 19, 20, and 21 for JSO:**

Motorola sent three Requests for Admission at the same time it sent its Interrogatories. These requests asked JSO to admit or deny that it was required to secure eleven uncommitted accounts (Admission No. 1), three committed accounts (Admission No. 2), and one design win (Admission No. 3) by the end of the third quarter, but that JSO failed to do so. Interrogatory number 19 asked JSO to explain why if it denied Admission number 1 concerning uncommitted accounts. Interrogatory number 20 asked JSO to explain why if it denied Admission number 2 concerning committed accounts. Interrogatory number 21 asked JSO to explain why if it denied Admission number 3 concerning design wins.

JSO denied each Request for Admission by simply referring to its responses to Interrogatory numbers 12, 13, and 14. As previously indicated, these responses do not include the detail requested. Accordingly, please supplement this response.

\* \* \*

Sean, please respond to these discovery concerns as soon as possible, and any event, at least one week prior to the depositions of Claude Langlois, Jeff Gibson, Steve Blomme, and Mike Nykoluk. Thank you.

Best regards,

*Randy Papetti*

RP/ESC
cc:   David Felice
      Cory Talbot

1697687.1



Sean Bellew, Esq.
December 21, 2005
Page 11

Emily Cates ✓
Sherry Ann Patrick ✓

1697687.1