# EXHIBIT
# No. 16

**Cates, Emily**

| | |
|---|---|
| **From:** | Bellew, Sean [SBellew@cozen.com] |
| **Sent:** | Saturday, February 11, 2006 8:41 AM |
| **To:** | Papetti, Randy |
| **Cc:** | Talbot, Cory; Cates, Emily; Berry, Kevin F.; Felice, David A. |
| **Subject:** | RE: Written Discovery |

Not a problem.


------------------------------------------------------

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless
expressly stated otherwise, any U.S. federal tax advice contained in this e-mail,
including attachments, is not intended or written to be used, and cannot be used, by any
person for the purpose of avoiding any penalties that may be imposed by the Internal
Revenue Service.
------------------------------------------------------

Notice: This communication, including attachments, may contain information that is
confidential and protected by the attorney/client or other privileges. It constitutes non-
public information intended to be conveyed only to the designated recipient(s). If the
reader or recipient of this communication is not the intended recipient, an employee or
agent of the intended recipient who is responsible for delivering it to the intended
recipient, or you believe that you have received this communication in error, please
notify the sender immediately by return e-mail and promptly delete this e-mail, including
attachments without reading or saving them in any manner. The unauthorized use,
dissemination, distribution, or reproduction of this e-mail, including attachments, is
prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is
not a waiver of any attorney/client or other privilege.
------------------------------------------------------


From: Papetti, Randy [mailto:RPapetti@lrlaw.com]
Sent: Fri 2/10/2006 8:17 PM
To: Bellew, Sean
Cc: Talbot, Cory; Cates, Emily
Subject: Written Discovery


The team here reminded me that we have written discovery with a due date coming up next
week. We have not spent too much time on it the last few weeks in light of the mediation;
any problem with us having responses to you by the 25th of February? Let me know if there
is a problem. Tks.
----
For more information about Lewis and Roca LLP, please go to www.lewisandroca.com.

Phoenix (602) 262-5311
Tucson (520) 622-2090
Las Vegas (702) 949-8200
Albuquerque (505) 764-5400

This message is intended only for the use of the individual or entity to which it is
addressed. If the reader of this message is not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this message is strictly
prohibited. If you have received this communication in error, please notify us immediately
by replying to the sender of this E-Mail by return E-Mail or by telephone.

In accordance with Internal Revenue Service Circular 230, we advise you that if this email
contains any tax advice, such tax advice was not intended or written to be used, and it

1

cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer.

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.; and J-SQUARED TECHNOLOGIES (OREGON), INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 04-CV-960-SLR |
| vs. | ) ) ) | |
| MOTOROLA, INC., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF J-SQUARED TECHNOLOGIES, (OREGON), INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendant Motorola, Inc., hereby answers Plaintiff J-Squared Technologies, (Oregon) Inc.'s ("JSO") First Set of Requests for Production of Documents as follows:

## GENERAL OBJECTIONS

1.      Motorola objects to all requests for production to the extent they are overbroad, vague, ambiguous, unduly burdensome, irrelevant to the subject matter of this litigation, or not reasonably calculated to lead to the discovery of admissible evidence. Motorola has attempted to provide documents based on a reasonable interpretation of the information requested and has specifically stated objections to particular requests. But to the extent Motorola and JSO subsequently differ in their interpretations of what documents were requested, Motorola hereby reserves all rights to object to JSO's interpretation on the grounds stated in this general objection.

2.      Motorola objects to all requests for production to the extent they ask for information that is protected by the work product doctrine and the attorney-client privilege. If any such protected documents are inadvertently produced in response to JSO's requests, the production of such documents shall not constitute a waiver of

1711776.1

Motorola's right to assert the protection of any of the above privileges and shall be immediately returned upon discovery thereof.

3.    Each of the foregoing objections is hereby incorporated in each and every one of the following responses to JSO's Request for Production, whether or not it is specifically identified.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    Motorola objects to JSO's definition of "documents" in Definition number 4 as overbroad, unduly burdensome, and to the extent that it asks for information that is protected by the work product doctrine and the attorney-client privilege.

2.    Motorola objects to the "time period" noted in JSO's Instruction number 5 as overbroad, unduly burdensome, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Produce any and all MRAs for other manufacturer representatives.

**RESPONSE:  Motorola objects to this request as overbroad, vague, ambiguous, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request appears to be directed at entities that are not parties to this litigation.  Subject to and without waiving these objections, Motorola refers JSO to documents identified as MOTJ 02779-02917.**

2.    Produce any and all drafts of MRAs for other manufacturer representatives.

**RESPONSE:  Motorola objects to this request as overbroad, vague, ambiguous, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this request appears to be directed at entities that are not parties to this litigation.  Subject to**

1711776.1

and without waiving these objections, Motorola refers JSO to documents identified as MOTJ 02732-02771.

3.    Produce any and all drafts of termination/non-renewal letters intended for all other manufacturer representatives.

**RESPONSE:  Motorola objects to this request as overbroad, irrelevant to the subject matter of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and to the extent it asks for information that is protected by the work product doctrine.  Furthermore, this request appears to be directed at entities that are not parties to this litigation.**

4.    Produce the commissions payable to all other manufacturer representatives from the inception of the MRA model to its termination on or about February 2004.

**RESPONSE:  Motorola objects to this request as overbroad, vague, ambiguous, unduly burdensome, irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request appears to be directed at entities that are not parties to this litigation.**

5.    Produce any and all information evidencing how, when, where and if a Motorola business development manager would register a design win.

**RESPONSE:  Motorola objects to this request as overbroad, vague, ambiguous, and unduly burdensome.  Subject to and without waiving these objections, Motorola refers JSO to documents identified as MOTJ 02772-02778.**

6.    Produce Motorola's Optix [sic] file information for JSO and JSO [sic].

**RESPONSE:  Motorola refers plaintiffs to documents identified as MOTJ 02918 - 02980 and response request for production No. 5 above.**

7.    Produce Motorola's Optix [sic] file information for all other manufacturer representatives.

**lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Motorola has already produced responsive documents.  In addition, Motorola refers JSO to MOTJ 02699-02705, a spreadsheet Motorola recently prepared to respond to JSO's Interrogatory No. 12.**

14.    Produce sales documentation for all direct sales made by you from February 2004 through the present to customers that were a component of the commission, payments made under the JST Agreement prior to its termination.

**RESPONSE:  Motorola objects to this request as unduly burdensome, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Motorola has already responsive documents.  In addition, Motorola refers JST to MOTJ 02706-02709, a spreadsheet Motorola recently prepared to respond to JSO's Interrogatory No. 21.**

15.    Produce all settlement agreements of any type resolving disputes arising between Motorola and any of it [sic] manufacturer representatives following the termination and/or nonrenewal of the MRAs.

**RESPONSE:  Motorola objects to this request as irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.**

16.    Produce copies of all other initiating pleadings (e.g., Complaint) in any civil action brought against Motorola for its termination and/or non-renewal of the MRAs.

**RESPONSE:  Motorola objects to this request as irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Motorola refers plaintiffs to documents identified as MOTJ 02710-02731.**

1711776.1

17.     Produce all documents you relied on to admit or deny Plaintiffs' First Set of Requests for Admission.

**RESPONSE:  Any documents relied on in Motorola's responses to Plaintiffs' First Set of Request for Admissions have already been produced.**

DATED:  February 24, 2006.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
William W. Bowser (No. 2239)

and

LEWIS AND ROCA LLP


Randy Papetti
Richard A. Halloran
Cory A. Talbot
40 N. Central Avenue
Phoenix, Arizona  85004
(602) 262-5311

Attorneys for Defendant

1711776.1

# CERTIFICATE OF SERVICE

I, Cory A. Talbot, do hereby certify that on February 24, 2006, true and correct copies of Defendant's Response to Planitiff J-Squared Technologies, (Oregon) Inc.'s First Set of Requests for Production were caused to be served upon counsel of record at the following addresses as indicated:

Via U.S. Mail:

David A. Felice
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801

Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

_____
Cory A. Talbot

1711776.1

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.; and )
J-SQUARED TECHNOLOGIES )
(OREGON), INC., )
                       )      C.A. No. 04-CV-960-SLR
              Plaintiffs, )
                       )
   vs.                   )
                       )
MOTOROLA, INC.,        )
                       )
             Defendant. )
                       )

## DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR ADMISSION

Defendant Motorola, Inc., hereby answers Plaintiffs' First Request for Admissions as follows:

## GENERAL OBJECTIONS

1.      Motorola objects to all requests for admission to the extent they are overbroad, vague, ambiguous, unduly burdensome, irrelevant to the subject matter of this litigation, or not reasonably calculated to lead to the discovery of admissible evidence. Motorola has attempted to answer each request based on a reasonable interpretation of the information requested and has specifically stated objections in response to particular requests. But to the extent Motorola and Plaintiffs subsequently differ in their interpretations of what the requests requested, Motorola hereby reserves all rights to object to Plaintiffs' interpretation on the grounds stated in this general objection.

2.      Motorola objects to all requests for admissions to the extent they ask for information that is protected by the work product doctrine and the attorney-client privilege.  If any privileged information is inadvertently produced in response to Plaintiffs' requests, there shall be no waiver of Motorola's right to assert these privileges.

3.      Each of the foregoing objections is hereby incorporated in each and every one of the following responses to Plaintiffs' First Request for Admissions, whether or not it is specifically identified.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Motorola objects to Plaintiffs' definition of "documents" in Definition number 4 as overbroad, unduly burdensome, and to the extent that it asks for information that is protected by the work product doctrine and the attorney-client privilege.

2.      Motorola objects to the "time period" noted in Plaintiffs' Instruction number 5 as overbroad, unduly burdensome, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSES TO REQUESTS FOR ADMISSION

1.      Admit that Motorola decided to place on hold the execution of all new Manufacturer Representative Agreements as of April 2004.

**Response:  Motorola objects to this request as misleading, vague and ambiguous.  By April 2004, Motorola had notified the manufacturer representatives that their Agreements would either be terminated for non-performance or not renewed after expiration.  Accordingly, Motorola denies that it placed the execution of new Agreements on hold as of April 2004.**

2.      Admit that Motorola did not provide the manufacturer representatives an opportunity to cure following the February 26, 2004 terminations for cause.

**Response:** Motorola objects to this request as overbroad, vague and ambiguous. Subject to and without waiving these objections, Motorola denies this request. While Motorola terminated several manufacturer representatives, including JSO, for failure to meet their performance requirements, Motorola denies that it failed to provide these manufacturer representatives with an opportunity to cure. In fact, Motorola's termination letter to JSO, among others, specifically stated that it would terminate its Agreement "absent JSO's full compliance with, and satisfaction of the performance standards." Motorola also stated that "[s]hould JSO fully cure its noncompliance with, and otherwise satisfy, the performance standards" it did not intend to renew its Agreement with JSO beyond the one-year term. Communicating its intent not to renew beyond the one-year term, however, is quite different from failing to provide the representatives with an opportunity to cure.

3.      Admit that Motorola did not provide JSO an opportunity to cure following the February 26, 2004 termination.

**Response:** Deny. See Motorola'sresponse to Request for Admission No. 2. above.

4.      Admit that the February 26, 2004 termination of the JSO Agreement was a purported termination for cause pursuant to paragraph 4.4 of that Agreement.

**Response:** Deny. As Motorola's termination letter expressly states, it terminated JSO for cause pursuant to section 7.2A.

5.      Admit that no disclosures were made to any manufacturer representatives concerning Motorola's decision to place all new Manufacturer Representative Agreements on hold as of April 2004.

**Response:** Motorola objects to this request as misleading, overbroad, vague and ambiguous. By April 2004, Motorola had notified the manufacturer

representatives that their Agreements would either be terminated for non-performance or not renewed after expiration.  Accordingly, Motorola denies that it placed the execution of new Agreements on hold as of April 2004.

To the extent that Plaintiffs intended to ask about April 2003, Motorola denies that it placed execution of the manufacturer representative program on hold as of April 2003.  As deposition testimony and documents demonstrate, Mr. Parslow, who became the Director of Worldwide Sales in approximately January 2003, undertook a due diligence review in April 2003.  This review was of MCG's contract approval process for <u>all</u> contracts, not just manufacturer representative contracts. (*See* Parslow Depo. beginning at 150:8).  After a full review was undertaken, Motorola signed Agreements with seven manufacturer representatives, including JSO.  Motorola did not not inform the manufacturer representatives of this due diligence review of the contract approval process, nor was it under any obligation to do so.

6.      Admit that the G9 Policy does not expressly prohibit multi-year third party sales representative agreements.

**Response:  Admit.**

7.      Admit that Larry Terry made representations to potential manufacturer representative(s) concerning the expected duration of the manufacturer representative business plan.

**Response:  Deny.  Mr. Terry had no involvement with any representative other than JST.  To the extent that this request seeks information about JST, Motorola denies that Larry Terry made representations to JST concerning the expected duration of the manufacturer representative business plan.  For an explanation, see Larry Terry's declaration.**

8.    Admit that Motorola's profit margins were higher in the years following its termination/non-renewal of the manufacturer representatives in February 2004 than it was prior to this time.

**Response:  Motorola objects to this request as vague, ambiguous, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.  It is unclear what Plaintiffs' mean by "profit margins."  Furthermore, whether the overall profits for Motorola, a multi-billion dollar company, were higher or lower in the years following its termination/non-renewal of the manufacturer representatives is irrelevant to this case.**

9.    Admit that Motorola's profit margins were lower in the years following its termination/non-renewal of the manufacturer representatives in February 2004 than it was prior to this time.

**Response:  See Motorola's response to Request for Admission No. 8.**

1711773.1

DATED:  February 24, 2006.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
William W. Bowser (No. 2239)

and

LEWIS AND ROCA LLP

_____
Randy Papetti
Richard A. Halloran
Cory A. Talbot
40 N. Central Avenue
Phoenix, Arizona  85004
(602) 262-5311

Attorneys for Defendant

6

1711773.1

## CERTIFICATE OF SERVICE

I, Cory A. Talbot, do hereby certify that on February 24, 2006, true and correct copies of Defendant's Response to Planitiffs' Request for Admissions were caused to be served upon counsel of record at the following addresses as indicated:

Via U.S. Mail:

David A. Felice
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801

Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

_____
Cory A. Talbot

1711773.1

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC.; and ) <br> J-SQUARED TECHNOLOGIES )<br> (OREGON), INC., )<br> )<br> Plaintiffs, )<br> )<br> vs. )<br> )<br> MOTOROLA, INC., )<br> )<br> Defendant. )<br> ) | C.A. No. 04-CV-960-SLR |

## DEFENDANT'S RESPONSE TO PLAINTIFF J-SQUARED TECHNOLOGIES (OREGON), INC.'S SECOND SET OF INTERROGATORIES (NOS.3-19 [sic])

Defendant Motorola, Inc., hereby answers Plaintiff J-Squared Technologies (Oregon), Inc.'s ("JSO") Second Set of Interrogatories as follows:

## GENERAL OBJECTIONS

1.      Motorola objects to all interrogatories to the extent they are overbroad, vague, ambiguous, unduly burdensome, irrelevant to the subject matter of this litigation, or not reasonably calculated to lead to the discovery of admissible evidence. Motorola has attempted to answer each interrogatory based on a reasonable interpretation of the information requested and has specifically stated objections in response to particular interrogatories. But to the extent Motorola and JSO subsequently differ in their interpretations of what the interrogatories requested, Motorola hereby reserves all rights to object to JSO's interpretation on the grounds stated in this general objection.

2.      Motorola objects to all interrogatories to the extent they ask for information that is protected by the work product doctrine and the attorney-client privilege. If any

1711775.1

privileged information is inadvertently produced in response to Plaintiff's interrogatories, there shall be no waiver of Motorola's right to assert these privileges.

3.    Each of the foregoing objections is hereby incorporated in each and every one of the following responses to JSO's Second Set of Interrogatories, whether or not it is specifically identified.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    Motorola objects to JSO's definition of "documents" in Definition number 4 as overbroad, unduly burdensome, and to the extent that it asks for information that is protected by the work product doctrine and the attorney-client privilege.

2.    Motorola objects to the "time period" noted in JSO's Instruction number 5 as overbroad, unduly burdensome, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

### RESPONSES TO INTERROGATORIES

3.    Identify all uncommitted accounts you believe JSO possessed as of February 26, 2004.

**ANSWER:  By February 26, 2004, the end of the third quarter based on a May 15, 2003 start date, JSO should have obtained eleven uncommitted accounts, but failed to do so.  While review of their accounts in February of 2004 revealed at most, a total of nine uncommitted accounts, two short of the required eleven, Motorola can currently only identify two uncommitted accounts:  1) VideoTele, MATRIX and 2) Boeing AWACS.  To the extent that this reponse clarifies Motorola's response to JSO's Interrogatory No. 2, Motorola hereby amends its response to Interrogatory No. 2.**

4.    Identify all committed accounts you believe JSO possessed as of February 26, 2004.

1711775.1

**ANSWER:  By February 26, 2004, the end of the third quarter based on a May 15, 2003 start date, JSO should have obtained three committed accounts, but failed to do so, obtaining only one:  Boeing AWACS.  Motorola's earlier response to JSO's Interrogatory No. 2 with respect to the number of committed accounts is hereby amended.**

5.      Identify all design wins you believe JSO possessed as of February 26, 2004.

**ANSWER:  By February 26, 2004, the end of the third quarter based on a May 15, 2003 start date, JSO should have obtained one design win, but failed to do so.**

6.      Identify and describe the deficiencies you perceived existed with JSO's uncommitted, committed and design-win requirements as of February 26, 2004.

**ANSWER: See responses to JSO Interrogatory Nos. 3-5 above.**

7.      Identify and describe all efforts undertaken by you to appraise [sic] JSO of your perceived deficiencies in JSO's uncommitted, committed and design-win requirements up through and including March 28, 2004.

**ANSWER:  Motorola objects to this interrogatory as misleading, vague, and ambiguous.  Subject to and without waiving these objections, JSO's performance standards are clearly set forth in Exhibit 4 of the parties' Agreement.  Furthermore, on February 26, 2004, Motorola expressly stated that JSO failed to meet its performance standards in its notice of termination letter.  Furthermore, JSO was in daily contact with Motorola regarding the accounts they were working on.**

8.      Identify and describe all efforts undertaken by you to appraise [sic] JSO of your perceived deficiencies of any type, manner and/or performance up through and including March 28, 2004.

**ANSWER:  See response to JSO Interrogatory No. 7.**

9.      Identify and describe all efforts undertaken by you to allow JST to cure any and all deficiencies you perceived in its performance.

**ANSWER:  Motorola objects to this Interrogatory because it seeks information about JST and JST has exceeded the permissible number of interrogatories.  Federal Rule of Civil Procedure 33 and the Court's Scheduling Order limit each party to 25 interrogatories.  JST has already served 25 interrogatories.  Moreover, Motorola objects to this interrogatory as misleading, vague and ambiguous.**

10.    Identify and describe (including date) any communications or notices delivered to the manufacturer representatives concerning Motorola's decision on or about April 2003 to put all MRAs on hold.

**ANSWER:  Motorola objects to this interrogatory as misleading, overbroad, vague, and ambiguous.  Subject to and without waiving these objections, see Motorola's responses to Request for Admission No. 5.**

11.    Identify with specificity that portion of Motorola's G9 Policy (produced at Bates MOTJ01666-72) that prohibited the MRAs from being multi-year agreements.

**ANSWER:  See Motorola's response to Request for Admission No. 6.**

12.    From February 2004 through the present, identify and describe the revenues generated (by month) from customers that were a component of the commission payments made under the JSO Agreement prior to its termination.

**ANSWER:  Motorola objects to this interrogatory as overbroad, vague, ambiguous, and unduly burdensome.  Subject to and without waiving these objections, see MOTJ 02699-02705.  This spreadsheet summarizes customer data, including shipment date, distributor name if applicable, end customer name and code, end city and country, distributor invoice or order number, quantity shipped, and revenue or broken price (list price minus discounts as described in paragraph 3.1 of the Agreement).  These are the customers for which JSO would have earned commission payments under its Agreement prior to its termination.**

1711775.1

13.     Identify the numbers of direct sales representatives employed by MECCG (by month or quarter) from January 2002 through the present.

**ANSWER:  The annual average for direct sales representatives in the United States and Canada, including global accounts was 12 for 2002, 14 for 2003, and 18 for 2005.  The average number for the first half of 2004 was 14 and the average number during the second half of 2004, after MCG acquired Force, was 20.  Currently, MCG has 16 direct sales representatives.**

14.     Identify the individual(s) responsible for making the ultimate decision not to renew/terminate the MRAs.

**ANSWER:  With input from others, Mr. Kevin Parslow was responsible for making the ultimate decision not to renew/terminate the manufacturer representatives.  Mr. Parslow's decision was formally executed by Mr. Dana Huth, who replaced Mr. Parslow as Director of Worldwide Sales in early 2004 and who sent the termination/non-renewal letters on February 26, 2004.  (*See* Parslow Depo. beginning at 29:19).**

15.     Identify the exact date the individual(s) identified in Interrogatory No. 14 made the decision not to renew/terminate the MRAs.

**ANSWER:  As Mr. Parslow testified at his deposition, he made the decision in early 2004 and within a few weeks of February 26, 2004. (*See* Parslow Depo. beginning at 32:1).**

16.     Identify all communications or documents that discuss Motorola's consideration of continuing the manufacturer representative business model from April 2004 to present.

**ANSWER:  Motorola objects to this request as misleading, overbroad, vague, ambiguous, and unduly burdensome.  By April 2004, Motorola had notified the manufacturer representatives that their Agreements would either be terminated for**

non-performance or not renewed after expiration. Accordingly, Motorola did not intend to continue the manufacturer representative business model after April 2004.

17.    Identify all other litigation or threats of litigation resulting from your termination and/or non-renewal of the MRAs.

**ANSWER:** Motorola objects to this request as overbroad, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, as Plaintiffs' counsel is already aware, Motorola has entered into confidential settlement agreements with C&S Technical Sales, L.L.C., Engineering Solutions – West, and Electronic Manufacturers' Agent. Moreover, as Plaintiffs' counsel is also already aware, having been retained as counsel for them, G.L. Williams, RT Technology, Inc., and West Coast Reps, Inc., have also threatened litigation.

18.    Identify all manufacturer representatives that disputed the termination and/or nonrenewal of its or their MRA(s).

**ANSWER:** Motorola objects to this request as overbroad, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, see Motorola's response to Interrogatory No. 17.

18. [sic] Describe the resolution of any and all disputes identified in response to interrogatory No. 18 and any benefit(s) whatsoever given to the manufacturer representative for resolving the dispute.

**ANSWER:** Motorola objects to this request as overbroad, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Motorola has entered into confidential settlement agreements with C&S Technical Sales, L.L.C., Engineering Solutions – West, and Electronic Manufacturers' Agent.

1711775.1

19. [sic] If you denied any of the Requests for Admission, identify and describe with specificity your bases for such denial.

**ANSWER: Motorola objects to this interrogatory as it improperly calls for responses to multiple questions regarding its Request for Admission. In so doing, JSO has reached the limit of permissible interrogatories under Federal Rule of Civil Procedure 33 and the Court's Scheduling Order. For a description of why Motorola denied certain Requests, see Motorola's responses to Requests for Admissions Nos. 1-5.**

1711775.1

DATED:  February 24, 2006.


YOUNG CONAWAY STARGATT & TAYLOR, LLP
William W. Bowser (No. 2239)

and

LEWIS AND ROCA LLP


Randy Papetti
Richard A. Halloran
Cory A. Talbot
40 N. Central Avenue
Phoenix, Arizona  85004
(602) 262-5311

Attorneys for Defendant

8

1711775.1

CERTIFICATE OF SERVICE

I, Cory A. Talbot, do hereby certify that on February 27, 2006, true and correct copies of Defendant's Response to Planitiff J-Squared Technologies, (Oregon) Inc.'s Second Set of Interrogatories were caused to be served upon counsel of record at the following addresses as indicated:

Via U.S. Mail:

David A. Felice
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801

Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

_____
Cory A. Talbot

1711775.1

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC.; and J) <br> SQUARED TECHNOLOGIES (OREGON), ) <br> INC., ) <br>    ) <br>    Plaintiffs, ) <br>    ) <br> vs. ) <br>    ) <br> MOTOROLA, INC., ) <br>    ) <br>    Defendant. ) <br>    ) | C.A. No. 04-CV-960-SLR |

## DEFENDANT'S RESPONSE TO PLAINTIFF J-SQUARED TECHNOLOGIES INC.'S SECOND SET OF INTERROGATORIES (NOS.21-25)

Defendant Motorola, Inc., hereby answers Plaintiff J-Squared Technologies, Inc.'s ("JST") Second Set of Interrogatories as follows:

## GENERAL OBJECTIONS

1.     Motorola objects to all interrogatories to the extent they are overbroad, vague, ambiguous, unduly burdensome, irrelevant to the subject matter of this litigation, or not reasonably calculated to lead to the discovery of admissible evidence. Motorola has attempted to answer each interrogatory based on a reasonable interpretation of the information requested and has specifically stated objections in response to particular interrogatories. But to the extent Motorola and JST subsequently differ in their interpretations of what the interrogatories requested, Motorola hereby reserves all rights to object to JST's interpretation on the grounds stated in this general objection.

2.     Motorola objects to all interrogatories to the extent they ask for information that is protected by the work product doctrine and the attorney-client privilege. If any privileged information is inadvertently produced in response to

Plaintiffs' interrogatories, there shall be no waiver of Motorola's right to assert these privileges.

3.    Each of the foregoing objections is hereby incorporated in each and every one of the following responses to JST's Second Set of Interrogatories, whether or not it is specifically identified.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    Motorola objects to JST's definition of "documents" in Definition number 4 as overbroad, unduly burdensome, and to the extent that it asks for information that is protected by the work product doctrine and the attorney-client privilege.

2.    Motorola objects to the "time period" noted in JST's Instruction number 5 as overbroad, unduly burdensome, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSES TO INTERROGATORIES

21.    From February 2004 through the present, identify and describe the revenues generated (by month) from customers that were a component of the commission payments made under the JST Agreement prior to its termination/ expiration.

**ANSWER: Motorola objects to this interrogatory as overbroad, vague, ambiguous, and unduly burdensome. Subject to and without waiving these objections, see MOTJ 02706-02709. This spreadsheet summarizes customer data, including shipment date, distributor name if applicable, end customer name and code, end city and country, distributor invoice or order number, quantity shipped, and revenue or broken price (list price minus discounts as described in Paragraph 3.1 of the Agreement). These are the customers for which JST would have earned commission payments under its Agreement prior to its non-renewal.**

22.    Identify with specificity any and all pre-contract representations you made to JST concerning the commissions payable or historical point of sale data information (past revenue figures).

**ANSWER:  Motorola is not aware of any representations made to JST concerning the commissions payable or historical sale data information (past revenue figures).  Motorola has explained previously that it likely shared "high level" information about the territory's historic revenues with JST and there may have been discussions about the information shared.  (*See* Terry Decl. and Holt Depo. at beginning at 43:13; 104:18; 115:10; 123:12).  In addition, the commission payment percentage was explicitly set forth at Exhibit 1 and in Paragraph 3.1 of the JST Agreement.**

23.    Identify with specificity any and all post-contract representations you made to JST concerning the commissions payable or historical point of sale data information (past revenue figures).

**ANSWER:  Motorola is not aware of any post-contract representations made to JST concerning the commissions :payable or historical sale data information (past revenue figures) other than the commission payment percentage, which was explicitly set forth at Exhibit 1 and in Paragraph 3.1 of the JST Agreement.  In addition, there were discussions with JST about adding Harris as a commissionable account.**

24.    Identify and describe (including date) any communications or notices delivered to JST concerning Motorola's decision to terminate/not renew the MRAs.

**ANSWER:  Motorola objects to this interrogatory as overbroad, vague, and ambiguous.  Subject to and without waiving these objections, to the extent this interrogatory seeks information regarding JST, Motorola sent a notice of non-renewal to JST on February 26, 2004 stating that the parties' Agreement had**

expired by its terms on December 4, 2003 and that Motorola would honor its contractual obligation under paragraph 7.3D of the Agreement by continuing to pay JST commissions for a period of 180 days following expiration. On April 16, 2004, through its legal counsel Mr. Randy Papetti, Motorola sent a letter to David Migicovsky responding to Mr. Migicovsky's March 12, 2004 letter. Mr. Papetti repeated that Motorola did not intend to renew its Agreement with JST and responded to several arguments made by Mr. Migicovsky. On June 21, 2004, Mr. Papetti responded to a letter from Mr. Migicovsky dated June 14, 2004 and attached his April 16th correspondence.

In addition, Steve Machernis spoke with Mr. Jeff Gibson by telephone about the non-renewal on February 27, 2004. There may have been one or more other telephone conversations between JST and Motorola, including a conversation between Claude Langlois and Larry Terry, initiated by Claude Langlois after receiving Motorola's notice of non-renewal.

25.    Identify and describe all efforts undertaken by you prior to February 26, 2004 to appraise [sic] JST that its MRA would not be renewed.

ANSWER: Motorola objects to this interrogatory as misleading, vague, and ambiguous. Subject to and without waiving these objections, the parties' Agreement expired by its own terms and Motorola was under no obligation to notify JST of its intent not to renew. (*See* Agreement ¶ 7.1).

1711771.1

DATED: February 24, 2006.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
William W. Bowser (No. 2239)

and

LEWIS AND ROCA LLP


Randy Papetti
Richard A. Halloran
Cory A. Talbot
40 N. Central Avenue
Phoenix, Arizona 85004
(602) 262-5311

Attorneys for Defendant

5

1711771.1

## CERTIFICATE OF SERVICE

I, Cory A. Talbot, do hereby certify that on February 24, 2006, true and correct copies of Defendant's Response to Planitiff J-Squared Technologies, Inc.'s Second Set of Interrogatories were caused to be served upon counsel of record at the following addresses as indicated:

Via U.S. Mail:

David A. Felice
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801

Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

_____
Cory A. Talbot

1711771.1