# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, | ) ) ) | |
| and | ) ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC., an Oregon corporation, | ) ) ) ) | C.A. No. 04-960-SLR |
| Plaintiffs, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| MOTOROLA, INC., a Delaware corporation. | ) ) ) | |

## COMPLAINT

Plaintiffs, J-SQUARED TECHNOLOGIES INC. ("JST") and J-SQUARED TECHNOLOGIES (OREGON) INC. ("JSO"), by and through their attorneys, Cozen O'Connor, by way of Complaint against MOTOROLA, INC. ("MOTOROLA"), allege as follows:

## INTRODUCTION

1.     JST and JSO commence this action against MOTOROLA for compensatory and punitive damages, interest and costs of suit, including attorneys' fees, for: (i) breach of contract; (ii) promissory estoppel; (iii) negligent misrepresentation; (iv) breach of the duty of good faith and fair dealing; (v) fraud; (vi) deceptive trade practices; and (vii) violation of Arizona's Consumer Fraud Act, ARIZ. REV. STAT. § 44-1522 *et seq.,* (maintained for any subsequent treatment) because of the illegal and improper conduct of MOTOROLA.

## THE PARTIES

2.      JST is a Canadian corporation domiciled in Ontario, with its principal place of business located at 4015 Carling Avenue, Suite 101, Kanata, Ontario, Canada. JST is an alien corporation.

3.      JSO is an Oregon corporation, domiciled in Oregon with its principal place of business located at 1 Lincoln Center, 10300 S.W. Greenburg Road, Suite 525, Portland, Oregon. JSO is a citizen of Oregon. JST and JSO are affiliated companies.

4.      MOTOROLA is a Delaware corporation with its principal place of business located at 1303 East Algonquin Road, Schaumberg, Illinois. Motorola is a citizen of Delaware and Illinois.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(2), because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy as to each Plaintiff exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over MOTOROLA because it is incorporated in this District and regularly conducts business in this District.

7.      Venue lies in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1391 (a)(1), (a)(3), and (c), because Defendant is incorporated in and transacts business in this District and is subject to personal jurisdiction in this District.

## BACKGROUND FACTS

8.      JST is engaged in the business of, *inter alia*, representing original computer equipment manufacturers as a commissioned agent in the sales of these manufacturer's products throughout Canada. It represents a number of manufacturers throughout Canada.

-2-

9.     JSO is also engaged in the business of, *inter alia*, representing original computer equipment manufacturers as a commissioned agent in the sales of these manufacturer's products. It represents a number of manufacturers throughout the United States.

10.    JST and JSO are affiliated companies with common ownership.  JST and JSO work collaboratively in the sales of computer products in North America.

11.    In 2002, JST and JSO entered into negotiations with Motorola Computer Group ("MCG"), a division of MOTOROLA, to sell MOTOROLA computer products in Canada and in parts of the United States.

12.    Between 2000 and 2002, MCG's North American operations laid off approximately two-thirds of its direct sales employees.  Thereafter, it was left with less than ten (10) outside sales employees to cover all of North America.

13.    Upon information and belief, MOTOROLA made the business decision to utilize an independent sales network to avoid having to make the capital expenditure necessary to organize, install and/or maintain a company-owned sales network.

14.    Beginning sometime prior to May 2002, MOTOROLA, through its sales and management-level employees, began to approach a number of different manufacturer's representatives to fill the gap created by the layoffs.

15.    In order to entice JST and JTO to expend substantial capital to be able to sell MOTOROLA computer products, MOTOROLA, through various representatives, stated that MOTOROLA's long-term intention was to use an independent sales network to sell its products, and specifically represented to JST and JTO that it was seeking to forge long-lasting relationships with JST and JTO.  In reliance upon these representations, JST invested more than $500,000 to support MOTOROLA's sales objectives in Canada and JSO invested more than $300,000 to support MOTOROLA's sales objectives in the United States.  Tellingly, JST's total

-3-

anticipated profit for sales of MOTOROLA products for the first year of the JST Agreement was $100,000 and JSO's anticipated profit for sales of MOTOROLA products for the first year of the JSO Agreement was $200,000 – both far below the initial capital expenditures necessary and as collectively envisioned by the parties to support the sale of MOTOROLA's products under the respective agreements.

16.     MOTOROLA falsely represented that the revenue present in the JST territory was sufficient to drive commission payments of approximately $10,000 per month, at a 5% commission rate. MOTOROLA knew that the revenues for the months immediately prior to the execution of the JST Agreement were less than $1,000 per month.

17.     All prospective manufacturer's representatives had one common concern that they voiced when approached regarding MOTOROLA's manufacturer's representative business model: whether this new business model was a solution that MOTOROLA held for the long-term such that the manufacturer's representatives' up-front expenditures of capital and labor resources and lost opportunity costs would generate a stream of revenue sufficient to recoup costs and otherwise replace various opportunity costs known to both parties (*e.g.*, termination or non-engagement of competing lines).

18.     MOTOROLA represented to its manufacturer's representatives that it had a long-term strategy to maintain the manufacturer's representatives business model. Motorola made these representations through a number of employees, including: Paul Holt, Steve Cunha, Larry Terry, Marc Watts, Al Currano, Jim McGregor, Sue Hamlett, Julie Blair, Frank Rafie and Jay Liston.

19.     Notwithstanding its representations to the contrary, at no time did MOTOROLA hold a belief or intention that its proposed manufacturer's representative business model would, in fact, be a long-term relationship or solution.

WILM1\34438\1153371.000

20.     Indeed, by January of 2003, or by at the latest April 2003, internal MOTOROLA correspondence confirmed that the manufacturer's representatives model was not, in fact, a long-term business model or solution.

21.     The representations made by MOTOROLA were made to induce action on the part of JST and JSO to expend time, energy and funds to develop markets for MOTOROLA's products on MOTOROLA's behalf so that MOTOROLA would not need to expend its own capital in JST's and JSO's markets, as well as other markets maintained by other independent sales representatives.

22.     To implement a plan of market penetration, and relying upon the representations of MOTOROLA regarding the potential market and existing sales of MOTOROLA's computer products and on MOTOROLA's promise of a long-term relationship, JST and JSO expended considerable time, energy and funds to develop an infrastructure and fixed overhead costs to support the effort to penetrate the new markets they were developing as representatives of MOTOROLA.

23.     As part of its obligations under the Agreement, JST and JSO disclosed certain confidential and proprietary information to MOTOROLA in furtherance of the joint undertaking. This confidential information included: (i) customer lists and (ii) JST and JSO's customers' contact information and their purchase history.

24.     MOTOROLA was aware of and approved the expenditure of considerable time, energy and funds to develop an infrastructure and fixed overhead costs to support the effort to penetrate the new markets being developed on its behalf by JST and JSO.

25.     MOTOROLA engaged in a pattern and practice of not reporting certain revenue to its manufacturer representatives if the products were delivered to an area outside the covered

territory in spite of the fact that the orders were negotiated, approved and paid from with the territories.

26.     JST and JSO reasonably relied upon the representations of MOTOROLA.

27.     The negotiations by and among JST, JSO and MOTOROLA regarding the sales representation of MOTOROLA's computer products culminated in written contracts signed by the parties.

28.     Because of the inequities in bargaining power, MOTOROLA dictated the material terms of the agreements that it entered into with JST and JSO. MOTOROLA and/or its attorneys drafted the material terms of the contracts and presented them on a take-it-or-leave-it basis to JST and JSO. Many of the provisions were represented as required under MOTOROLA's internal policies, but, in fact, were not.

29.     MOTOROLA knew or in the exercise of reasonable care should have known that JST and JSO were reposing their trust, confidence and pecuniary interests in MOTOROLA in agreeing to enter into these contracts by, among other things, expending substantial sums of capital to enable JST and JSO to sell MOTOROLA products.

**The JST Agreement**

30.     On or about December 5, 2002, JST entered into a *Manufacturer's Representative Agreement* (the "JST Agreement") with MOTOROLA through its MCG division. (A true and correct copy of the JST Agreement is attached hereto and marked Exhibit "A".) The parties agreed that the JST Agreement shall be governed by Arizona law.

31.     Pursuant to Section 7.1 of the JST Agreement, the duration of the JST Agreement was for a period of one year, to be renewed upon the written agreement of both JST and MOTOROLA.

32.    In December 2003, the one-year anniversary date of the JST Agreement passed and the parties continued to act in accordance with the terms and conditions of the JST Agreement. By conduct and by word, the parties waived the requirement that any extension of the JST Agreement be in writing. Moreover, the parties continued to interact and continued to discuss potential sales. Furthermore, MOTOROLA provided customer and product support to JST in efforts to sell MOTOROLA products. In all word and deed, the parties continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been renewed.

33.    The JST Agreement contained provisions for its termination by either party upon written notice in accordance with the terms and conditions in Section 7.2. MOTOROLA failed to act or provide any such notice in accordance with the terms and conditions of Section 7.2 of the JST Agreement.

34.    By letter dated February 26, 2004 directed to JST (the "JST Letter," attached hereto as Exhibit "B"), MOTOROLA purported to acknowledge that the JST Agreement had terminated by its terms on December 4, 2003. At no time during the period from December 4, 2003 through February 26, 2004 did MOTOROLA notify JST that it believed that the JST Agreement had expired or that it deemed the JST-MOTOROLA relationship ended. To the contrary, MOTOROLA's words and conduct indicated that the parties had agreed to renew the JST Agreement.

35.    MOTOROLA failed to properly compensate JST for, at a minimum, its trailing commissions and may have excluded other accounts that were properly compensable.

36.    MOTOROLA'S JST Letter was defective and void, and failed to terminate the JST Agreement.

## The JSO Agreement

37.     On or about May 15, 2003, JSO entered into a separate but materially identical *Manufacturer's Representative Agreement* (the "JSO Agreement") with MOTOROLA through MOTOROLA's MCG division. (A true and correct copy of the JSO Agreement is attached hereto and marked Exhibit "C".) The parties agreed that the JSO Agreement shall be governed by Arizona law.

38.     Pursuant to Section 7.1 of the JSO Agreement, the duration of the JSO Agreement was for a period of one year, to be renewed upon the written agreement of JSO and MOTOROLA.

39.     By letter dated February 26, 2004 directed to JST (the "JSO Letter," attached hereto as Exhibit "D"), MOTOROLA purported to give notice of cancellation to JSO for failure to meet performance standards under the JSO Agreement and demanding that JSO cure any deficiencies in connection with its performance under the JSO Agreement.

40.     MOTOROLA failed to properly compensate JSO for, at a minimum, its trailing commissions and may have excluded other accounts that were properly compensable.

## Motorola's Notice To Terminate The Agreements

41.     After JST and JSO had performed according to their respective obligations under their respective agreements with MOTOROLA, MOTOROLA suddenly, and without any prior notice, purported to terminate the JST Agreement and the JSO Agreement.

42.     The notices sent by MOTOROLA to JST and JSO were part of an overall business plan by MOTOROLA to terminate all of its sales representatives and to bring in-house its sales functions. This was all in an effort to eliminate the costs associated with paying commissions to outside sales agents, while at the same time taking advantage of the developed markets and goodwill that had been created by the independent manufacturer's representatives through their investment of capital and resources.

43.    Accordingly, MOTOROLA's invalid attempt to assert a non-renewal of the JST Agreement and invalid attempt to communicate a termination of the JSO Agreement were merely a pretext to further MOTOROLA's plan to convert to its own possession and use the good will created by JST and JSO in reliance upon MOTOROLA's representations and promises.

44.    In fact, on February 26, 2004, MOTOROLA gave written notice to 100% of its manufacturer's representatives that it intended to terminate the agency agreements. MOTOROLA devised different schemes and rationales to justify its decisions to terminate the agreements and to refuse to make any further payments to the manufacturer's representatives.

45.    MOTOROLA's February 26, 2004 letters were intentionally deceptive and sent by MOTOROLA in a bad faith attempt to fabricate grounds to terminate the JST Agreement and the JSO Agreement.  Further, MOTOROLA sought to conceal its true corporate policy and motives – which existed prior to the execution of the JST Agreement and the JSO Agreement – to wit:  misappropriating the goodwill that JST and JTO created for MOTOROLA's products after JST and JSO expended substantial capital in creating this goodwill.

46.    MOTOROLA's wrongful conduct as described hereinabove has caused JST and JSO damages.

## COUNT I
### (Breach of Contract)
### JST v. MOTOROLA

47.    JST incorporates by reference paragraphs 1 – 46 as if set forth fully herein.

48.    As more fully set forth above, in or about December 4, 2002, JST and MOTOROLA entered into a valid and enforceable contract pursuant to which JST agreed to sell MOTOROLA's products.  JST did, in fact, sell MOTOROLA's products in accordance with the terms and conditions of the JST Agreement.

WILM1\34438\1153371.000

49.    In December 2003, the one year anniversary date of the contract passed and the parties continued to act in accordance with the terms and conditions of the JST Agreement. By conduct and by word, the parties waived the requirement that any extension of the JST Agreement be in writing. During and after December 2003, the parties continued to interact, continued to discuss potential sales, and MOTOROLA provided customer and product support to JST in its effortts to sell MOTOROLA products. In all word and deed, the parties continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been extended. At no time during the period December 4, 2003 through February 26, 2004 did MOTOROLA notify JST that it believed that the JST Agreement had expired or that it deemed the JST-MOTOROLA relationship ended.

50.    By letter dated February 26, 2004, MOTOROLA purported to acknowledge that the JST Agreement had terminated by its terms on December 4, 2003. (See Exhibit "B".)

51.    JST and MOTOROLA, by their conduct and actions, renewed the JST Agreement and waived the requirement that the JST Agreement renewal be in writing.

52.    MOTOROLA's notice of termination was defective and void and its failure to honor its obligations under the JST Agreement is a breach of the terms and conditions of the Agreement.

53.    Motorola breached the Agreements with Plaintiffs by, *inter alia*:

(i)    failing to disclose that a moratorium was placed on the execution of all further manufacturer's representative agreements;

(ii)    misappropriating JSO's confidential information to its detriment;

(iii)    failing to pay all commissions properly payable under the Agreements;

(iv)    failing to identify the basis for terminations for cause and otherwise frustrating the manufacturer's representative contractual right to cure; and

-10-

(v)    undertaking conduct that constitutes a willful, wanton and malicious breach of contract through the manufacture of a non-renewal terminations of the JST Agreement as the Agreement continued to be effective through both word and deed for over two months.

54.    As a proximate result of MOTOROLA'S breach of its contractual obligations, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against Motorola in an amount in excess of $75,000 in compensatory damages, interest and costs of suit, including attorneys' fees, and grant such further relief as it deems to be just and proper.

## COUNT II
### (Promissory Estoppel)
### JST v. MOTOROLA

55.    JST incorporates by reference paragraphs 1 – 54 by reference as if set forth more fully herein.

56.    As more fully detailed above, MOTOROLA made numerous representations and promises concerning its intent to sell its products through a system of manufacturer's representatives and that it expected those relationships to persist for a long period of time.

57.    MOTOROLA knew or reasonably should have known that its representations and promises to formulate long-lasting relationships with independent manufacturer's representatives to sell its products would induce those independent manufacturer's representatives to expend time, energy and funds to build an infrastructure and fixed costs to perform their obligations under the contracts.

58.    As more fully detailed above, JST was induced by MOTOROLA's representations and promises of its intent to sell its products through independent manufacturer's representatives and expended time, energy and funds to build an infrastructure and fixed costs to perform its obligations under the JST Agreement.

-11-

59.    MOTOROLA directly benefited from JST's reliance on MOTOROLA's promises. Injustice can only be avoided by the enforcement of Motorola's promises to JST.

60.    As a proximate result of JST's justifiable detrimental reliance on MOTOROLA's promises, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs of suit, including attorneys' fees, and grant such further relief as it deems to be just and proper.

## COUNT III
### (Negligent Misrepresentation)
### JST v. MOTOROLA

61.    JST incorporates by reference paragraphs 1 – 60 as if set forth fully herein.

62.    In negotiating with JST for the rights to sell MOTOROLA's products, MOTOROLA negligently and without the use of reasonable care communicated materially false statements to JST.  As more fully detailed above, the misrepresentations of MOTOROLA include, but are not limited to its false representations regarding its intention to use an independent sales network for the foreseeable future.

63.    JST reasonably relied on the accuracy of the materially false statements of MOTOROLA in conducting its business and as a result of that reliance expended substantial capital to position itself to sell MOTOROLA's products.

64.    As a proximate result of the negligent misrepresentations of MOTOROLA, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs, including attorneys' fees, and grant such further relief as it deems to be just and proper.

-12-

## COUNT IV
### (Breach of Duty of Good Faith and Fair Dealing)
### JST v. MOTOROLA

65.    JST incorporates by reference paragraphs 1 – 64 as if set forth fully herein.

66.    Under applicable law, MOTOROLA owed duties of good faith and fair dealing to JST. These duties arise out of the contract entered into between these parties and/or the special relationship existing between the parties.

67.    MOTOROLA breached its duties of good faith and fair dealing by fabricating facts surrounding the termination of JST's contract and misrepresenting its intent to use independent companies to sell its products in order to entice JST to expend capital to create goodwill for MOTOROLA's products.

68.    MOTOROLA's bad-faith actions were beyond the risks assumed by JST when it entered into the contract.

69.    As a proximate result of MOTOROLA's bad-faith actions, JST sustained damages.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs, including attorneys' fees. JST further requests this Court to enter punitive damages and grant such further relief as it deems to be just and proper (maintained for any subsequent treatment).

## COUNT V
### (Violation of Arizona's Consumer Fraud Act)
### JST v. MOTOROLA (maintained for any subsequent treatment)

70.    JST incorporates by reference paragraphs 1 – 69 as if fully set forth herein.

71.    Arizona law prohibits the use or employment of any deceptive act, fraud, false promise, misrepresentation or omission of any material fact with the intent that others rely on

-13-

such concealment, suppression or omission in connection with the sale or advertisement of any merchandise. Such practices are in violation of ARIZ. REV. STAT. § 44-1522 *et seq.*

72.     MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated with JST for JST's right to sell MOTOROLA products.

73.     MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated the JST Agreement and the rights and obligations thereto.

74.     MOTOROLA intended that JST would rely on these representations and omissions as a basis for executing the JST Agreement and JST's subsequent sale of MOTOROLA's products.

75.     As a direct and proximate result of MOTOROLA's deceptive trade practices, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory and punitive damages, interest and costs, including attorneys' fees, and grant such other relief as it deems just and proper in accordance with ARIZ. REV. STAT. § 44-1522 *et seq.*

**COUNT VI**
**(Breach of Contract)**
**JSO v. MOTOROLA**

76.     JSO incorporates by reference paragraphs 1 – 75 as if set forth fully herein.

77.     As more fully set forth above, on or about May 13, 2003, JSO and MOTOROLA entered into a valid and enforceable contract pursuant to which JSO agreed to sell MOTOROLA's products. JSO did, in fact, sell MOTOROLA's products in accordance with the terms and condition of the JSO Agreement.

WILM1\34438\1153371.000

78.    By letter dated February 26, 2004, MOTOROLA purported to give notice that JSO was in breach of the JSO Agreement for failure to meet performance requirements and purported to give thirty (30) days' notice of cure.

79.    MOTOROLA's notice was defective and false, and MOTOROLA had no real or good faith basis to support its allegations that JSO failed to meet performance requirements. Rather, the notice was sent as a pretext to implement MOTOROLA's plan to usurp the goodwill created by JSO and to breach its obligations to JSO under the terms and conditions of the JSO Agreement.

80.    MOTOROLA's notice of termination was defective and void and its failure to honor its obligations under the JSO Agreement is a breach of the terms and conditions of the JSO Agreement.

81.    Motorola breached the Agreements with Plaintiffs by, *inter alia*:

(i)    failing to disclose that a moratorium was placed on the execution of all further manufacturer's representative agreements;

(ii)    misappropriating JSO's confidential information to its detriment;

(v)    failing to pay all commissions properly payable under the Agreements;

(vi)    failing to identify the basis for terminations for cause and otherwise frustrating the manufacturer's representative contractual right to cure; and

(v)    undertaking conduct that constitutes a willful, wanton and malicious breach of contract through the manufacture of for-cause terminations of the JSO Agreement when there was not basis for such termination.

82.    As a proximate result of MOTOROLA's breach of its contractual obligations, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and

-15-

against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs of suit, including attorneys' fees, and grant such further relief as it deems to be just and proper.

## COUNT VII
### (Promissory Estoppel)
### JSO v. MOTOROLA

83.    JSO incorporates by reference paragraphs 1 – 82 by reference as if set forth more fully herein.

84.    As more fully detailed above, MOTOROLA made numerous representations and promises concerning its intent to sell its products through a system of manufacturer's representatives and that it expected those relationships to persist for a long period of time.

85.    MOTOROLA knew or reasonably should have known that its representations and promises to formulate long-lasting relationships with independent manufacturer's representatives to sell its products would induce those independent manufacturer's representatives to expend time, energy and funds to build an infrastructure and fixed costs to perform their obligations under the contracts.

86.    A more fully detailed above, JSO was induced by MOTOROLA's representations and promises of its intent to sell its products through independent manufacturer's representatives and expended time, energy and funds to build an infrastructure and fixed costs to perform their obligations under the JSO Agreement.

87.    MOTOROLA directly benefited from JSO's reliance on MOTOROLA's promises. Injustice can only be avoided by the enforcement of Motorola's promises to JSO.

88.    As a proximate result of JSO's justifiable detrimental reliance on MOTOROLA'S promises, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and

against MOTOROLA in an amount in excess of $75,000 in compensatory damage, interest and costs of suit, including attorney's fees, and grant such further relief as it deems to be just and proper.

## COUNT VIII
### (Negligent Misrepresentation)
### JSO v. MOTOROLA

89.    JSO incorporates by reference paragraphs 1 – 88 by reference as if set forth fully herein.

90.    In negotiating with JSO for the rights to sell MOTOROLA's products, MOTOROLA negligently and without the use of reasonable care communicated materially false statements to JSO.  As more fully detailed above, the misrepresentations of MOTOROLA include, but are not limited to its failure to reveal its representations that MOTOROLA intended to use an independent sales network for the foreseeable future.

91.    JSO reasonably relied on the accuracy of the materially false statements of MOTOROLA in conducting its business and as a result of that reliance expended substantial capital to position itself to sell MOTOROLA's products.

92.    As a proximate result of the negligent misrepresentations of MOTOROLA, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs, including attorneys' fees, and grant such further relief as it deems to be just and proper.

## COUNT IX
### (Breach of Duty of Good Faith and Fair Dealing)
### JSO v. MOTOROLA

93.    JSO incorporates by reference paragraphs 1 – 92 as if set forth fully herein.

-17-

94.     Under applicable law, MOTOROLA owed duties of good faith and fair dealing to JSO. These duties arise out of the contract entered into between these parties and/or the special relationship existing between the parties.

95.     MOTOROLA breached its duties of good faith and fair dealing by fabricating facts surrounding the termination of the JSO Agreement, and misrepresenting its present intent to use independent companies to sell its products in order to entice JSO to expend capital to create goodwill for MOTOROLA's products.

96.     MOTOROLA's bad-faith actions were beyond the risks assumed by JSO when it entered into the contract.

97.     As a proximate result of MOTOROLA's bad-faith actions, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, plus interest and costs, including attorneys' fees. JSO further requests this Court to enter punitive damages and grant such further relief as it deems to be just and proper (maintained for any subsequent treatment).

### COUNT X
**(Violation of Arizona's Consumer Fraud Act)**
**JSO v. MOTOROLA (maintained for any subsequent treatment)**

98.     JST incorporates by reference paragraphs 1 – 97 as if fully set forth herein.

99.     MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated with JSO for JSO's right to sell MOTOROLA products.

100.     MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated the JSO Agreement and the rights and obligations thereto.

-18-

101.    MOTOROLA intended that JSO would rely on these representations and omissions as a basis for executing the JSO Agreement and JSO's subsequent sale of MOTOROLA's products.

102.    As a direct and proximate result of MOTOROLA's deceptive trade practices, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory and punitive damages, interest and costs, including attorneys' fees, and grant such other relief as it deems just and proper in accordance with ARIZ. REV. STAT. § 44-1522 *et seq.*

## COUNT XI
### (Fraud)
### PLAINTIFFS v. MOTOROLA

103.    Plaintiffs incorporate by reference paragraphs 1 – 102 as if fully set forth herein.

104.    As described above, MOTOROLA (through its various employees, including, Terry, Cunha, Holt, McGregor, Machernis, Currano and others) made false representations of fact to as its present intention to maintain manufacturer's representatives as a long-term business model to sell its products.

105.    MOTOROLA knew these representations to be false when they were made or permitted the representations to be made with reckless indifference to the truth.

106.    MOTOROLA's fraudulent representations were willful, wanton and/or malicious.

107.    MOTOROLA proffered these representations with the intent Plaintiffs would execute the agreements and maintain demand fulfillment, develop demand creation and service MOTOROLA's current customer base until such time as the business cycle would permit MOTOROLA to revert back to its direct sales force.

-19-

108.    Plaintiffs executed the agreements, expended time and resources and even lost various other opportunities based upon MOTOROLA's representations.

109.    By reason of MOTOROLA's fraudulent conduct in this matter, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against MOTOROLA in an amount in excess of $75,000 in compensatory, statutory and/or punitive damages, interest and costs, including attorneys' fees.

### COUNT XII
### (Deceptive Trade Practices)
### PLAINTIFFS v. MOTOROLA

110.    Plaintiffs incorporate by reference paragraphs 1 – 109 as if fully set forth herein.

111.    Under all potentially applicable law (including Canada, Oregon, Massachusetts and Delaware), MOTOROLA had a statutory duty to refrain from engaging in deceptive trade practices with its manufacturer's representatives.

112.    Through the conduct described above, MOTOROLA engaged in a pattern and practice of deceit.

113.    By reason of MOTOROLA's unlawful conduct in this matter, Plaintiffs have been damaged in an amount to be determined at trial, including all statutory damages.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against MOTOROLA in an amount in excess of $75,000 in compensatory, statutory and/or punitive damages, interest and costs, including attorneys' fees.

-20-

Dated: April ___, 2006

COZEN O'CONNOR

BY: _David A Felice_____
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2000

OF COUNSEL:
Kevin F. Berry
*of the Pennsylvania*
*and New Jersey Bars*
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.,<br>a Canadian corporation, | )<br>)<br>) | |
| and | )<br>) | |
| J-SQUARED TECHNOLOGIES (OREGON)<br>INC.,<br>an Oregon corporation, | )<br>)<br>)<br>) | C.A. No. ___04-960-SLR___ |
| Plaintiffs, | )<br>)<br>) | **JURY TRIAL DEMANDED** |
| v. | )<br>) | |
| MOTOROLA, INC.,<br>a Delaware corporation. | )<br>)<br>) | |

## COMPLAINT

Plaintiffs, J-SQUARED TECHNOLOGIES INC. ("JST") and J-SQUARED
TECHNOLOGIES (OREGON) INC. ("JSO"), by and through their attorneys, Cozen O'Connor,
by way of Complaint against MOTOROLA, INC. ("MOTOROLA"), allege as follows:

## INTRODUCTION

1.    JST and JSO commence this action against MOTOROLA for compensatory and
punitive damages, interest and costs of suit, including attorneys' fees, for: (i) breach of contract;
(ii) promissory estoppel; (iii) negligent misrepresentation; (iv) breach of the duty of good faith
and fair dealing; (v) fraud; (vi) deceptive trade practices; and (vvii) violation of Arizona's
Consumer Fraud Act, ARIZ. REV. STAT. § 44-1522 *et seq.*, (maintained for any subsequent
treatment) because of the illegal and improper conduct of MOTOROLA.

## THE PARTIES

2.      JST is a Canadian corporation domiciled in Ontario, with its principal place of business located at 4015 Carling Avenue, Suite 101, Kanata, Ontario, Canada. JST is an alien corporation.

3.      JSO is an Oregon corporation, domiciled in Oregon with its principal place of business located at 1 Lincoln Center, 10300 S.W. Greenburg Road, Suite 525, Portland, Oregon. JSO is a citizen of Oregon. JST and JSO are affiliated companies.

4.      MOTOROLA is a Delaware corporation with its principal place of business located at 1303 East Algonquin Road, Schaumberg, Illinois. Motorola is a citizen of Delaware and Illinois.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(2), because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy as to each Plaintiff exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over MOTOROLA because it is incorporated in this District and regularly conducts business in this District.

7.      Venue lies in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1391 (a)(1), (a)(3), and (c), because Defendant is incorporated in and transacts business in this District and is subject to personal jurisdiction in this District.

## BACKGROUND FACTS

8.      JST is engaged in the business of, *inter alia*, representing original computer equipment manufacturers as a commissioned agent in the sales of these manufacturer's products throughout Canada. It represents a number of manufacturers throughout Canada.

9.     JSO is also engaged in the business of, *inter alia*, representing original computer equipment manufacturers as a commissioned agent in the sales of these manufacturer's products. It represents a number of manufacturers throughout the United States.

10.     JST and JSO are affiliated companies with common ownership.  JST and JSO work collaboratively in the sales of computer products in North America.

11.     In 2002, JST and JSO entered into negotiations with Motorola Computer Group ("MCG"), a division of MOTOROLA, to sell MOTOROLA computer products in Canada and in parts of the United States.

12.     Between 2000 and 2002, MCG's North American operations laid off approximately two-thirds of its direct sales employees.  Thereafter, it was left with less than ten (10) outside sales employees to cover all of North America.

13.     12.—Upon information and belief, MOTOROLA made the business decision to utilize an independent sales network to avoid having to make the capital expenditure necessary to organize, install and/or maintain a company-owned sales network.

14.     Beginning sometime prior to May 2002, MOTOROLA, through its sales and management-level employees, began to approach a number of different manufacturer's representatives to fill the gap created by the layoffs.

15.     13.—In order to entice JST and JTO to expend substantial capital to be able to sell MOTOROLA computer products, MOTOROLA, through various representatives, stated that MOTOROLA's long-term intention was to use an independent sales network to sell its products, and specifically represented to JST and JTO that it was seeking to forge long-lasting relationships with JST and JTO.  In reliance upon these representations, JST invested more than $500,000 to support MOTOROLA's sales objectives in Canada and JSO invested more than $300,000 to support MOTOROLA's sales objectives in the United States.  Tellingly, JST's total

anticipated profit for sales of MOTOROLA products for the first year of the JST Agreement was $100,000 and JSO's anticipated profit for sales of MOTOROLA products for the first year of the JSO Agreement was $200,000 – both far below the initial capital expenditures necessary and as collectively envisioned by the parties to support the sale of MOTOROLA's products under the respective agreements.

14.    At the time that MOTOROLA represented its intention to use independent sellers for its products on a long-term basis, upon information and belief, it knew or in the exercise of reasonable diligence should have known that those representations were false and to be without a factual basis and that it, in fact, did not have the present intention of honoring those representations.

16.    MOTOROLA falsely represented that the revenue present in the JST territory was sufficient to drive commission payments of approximately $10,000 per month, at a 5% commission rate. MOTOROLA knew that the revenues for the months immediately prior to the execution of the JST Agreement were less than $1,000 per month.

17.    All prospective manufacturer's representatives had one common concern that they voiced when approached regarding MOTOROLA's manufacturer's representative business model: whether this new business model was a solution that MOTOROLA held for the long-term such that the manufacturer's representatives' up-front expenditures of capital and labor resources and lost opportunity costs would generate a stream of revenue sufficient to recoup costs and otherwise replace various opportunity costs known to both parties (e.g., termination or non-engagement of competing lines).

18.    MOTOROLA represented to its manufacturer's representatives that it had a long-term strategy to maintain the manufacturer's representatives business model. Motorola made these representations through a number of employees, including: Paul Holt, Steve Cunha, Larry

- 4-

Terry, Marc Watts, Al Currano, Jim McGregor, Sue Hamlett, Julie Blair, Frank Rafie and Jay Liston.

19. Notwithstanding its representations to the contrary, at no time did MOTOROLA hold a belief or intention that its proposed manufacturer's representative business model would, in fact, be a long-term relationship or solution.

20. Indeed, by January of 2003, or by at the latest April 2003, internal MOTOROLA correspondence confirmed that the manufacturer's representatives model was not, in fact, a long-term business model or solution.

21. 15. The representations made by MOTOROLA were made to induce action on the part of JST and JSO to expend time, energy and funds to develop markets for MOTOROLA's products on MOTOROLA's behalf so that MOTOROLA would not need to expend its own capital in JST's and JSO's markets, as well as other markets maintained by other independent sales representatives.

22. 16. To implement a plan of market penetration, and relying upon the representations of MOTOROLA regarding the potential market and existing sales of MOTOROLA's computer products and on MOTOROLA's promise of a long-term relationship, JST and JSO expended considerable time, energy and funds to develop an infrastructure and fixed overhead costs to support the effort to penetrate the new markets they were developing as representatives of MOTOROLA.

23. As part of its obligations under the Agreement, JST and JSO disclosed certain confidential and proprietary information to MOTOROLA in furtherance of the joint undertaking. This confidential information included: (i) customer lists and (ii) JST and JSO's customers' contact information and their purchase history.

24.    17. MOTOROLA was aware of and approved the expenditure of considerable time, energy and funds to develop an infrastructure and fixed overhead costs to support the effort to penetrate the new markets being developed on its behalf by JST and JSO.

25.    MOTOROLA engaged in a pattern and practice of not reporting certain revenue to its manufacturer representatives if the products were delivered to an area outside the covered territory in spite of the fact that the orders were negotiated, approved and paid from with the territories.

26.    18. JST and JSO reasonably relied upon the representations of MOTOROLA.

27.    19. The negotiations by and among JST, JSO and MOTOROLA regarding the sales representation of MOTOROLA's computer products culminated in written contracts signed by the parties.

28.    20. Because of the inequities in bargaining power, MOTOROLA dictated the material terms of the agreements that it entered into with JST and JSO. MOTOROLA and/or its attorneys drafted the material terms of the contracts and presented them on a take-it-or-leave-it basis to JST and JSO. Many of the provisions were represented as required under MOTOROLA's internal policies, but, in fact, were not.

29.    21. MOTOROLA knew or in the exercise of reasonable care should have known that JST and JSO were reposing their trust, confidence and pecuniary interests in MOTOROLA in agreeing to enter into these contracts by, among other things, expending substantial sums of capital to enable JST and JSO to sell MOTOROLA products.

**The JST Agreement**

30.    22. On or about December 5, 2002, JST entered into a *Manufacturer's Representative Agreement* (the "JST Agreement") with MOTOROLA through its MCG division.

- 6 -

(A true and correct copy of the JST Agreement is attached hereto and marked Exhibit "A".) The parties agreed that the JST Agreement shall be governed by Arizona law.

31.    23. Pursuant to Section 7.1 of the JST Agreement, the duration of the JST Agreement was for a period of one year, to be renewed upon the written agreement of both JST and MOTOROLA.

32.    24. In December 2003, the one-year anniversary date of the JST Agreement passed and the parties continued to act in accordance with the terms and conditions of the JST Agreement. By conduct and by word, the parties waived the requirement that any extension of the JST Agreement be in writing. Moreover, the parties continued to interact and continued to discuss potential sales. Furthermore, MOTOROLA provided customer and product support to JST in efforts to sell MOTOROLA products. In all word and deed, the parties continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been renewed.

33.    25. The JST Agreement contained provisions for its termination by either party upon written notice in accordance with the terms and conditions in Section 7.2. MOTOROLA failed to act or provide any such notice in accordance with the terms and conditions of Section 7.2 of the JST Agreement.

34.    26. By letter dated February 26, 2004 directed to JST (the "JST Letter," attached hereto as Exhibit "B"), MOTOROLA purported to acknowledge that the JST Agreement had terminated by its terms on December 4, 2003. At no time during the period from December 4, 2003 through February 26, 2004 did MOTOROLA notify JST that it believed that the JST Agreement had expired or that it deemed the JST-MOTOROLA relationship ended. To the contrary, MOTOROLA's words and conduct indicated that the parties had agreed to renew the JST Agreement.

35.    ~~MOTOROLA failed to properly compensate JST for, at a minimum, its trailing commissions and may have excluded other accounts that were properly compensable.~~

36.    ~~27.~~MOTOROLA'S JST Letter was defective and void, and failed to terminate the JST Agreement.

**The JSO Agreement**

37.    ~~28.~~ On or about May 15, 2003, JSO entered into a separate but materially identical *Manufacturer's Representative Agreement* (the "JSO Agreement") with MOTOROLA through MOTOROLA's MCG division.  (A true and correct copy of the JSO Agreement is attached hereto and marked Exhibit "C".)  The parties agreed that the JSO Agreement shall be governed by Arizona law.

38.    ~~29.~~Pursuant to Section 7.1 of the JSO Agreement, the duration of the JSO Agreement was for a period of one year, to be renewed upon the written agreement of JSO and MOTOROLA.

~~30.    Pursuant to Section 7.2(A) of the JSO Agreement, either party could terminate the JSO Agreement for cause if the other party failed to perform its obligations under the JSO Agreement and thereafter failed to cure such non-performance within thirty (30) days of receipt of a notice to cure.~~

39.    ~~31.~~By letter dated February 26, 2004 directed to JST (the "JSO Letter," attached hereto as Exhibit "D"), MOTOROLA purported to give notice of cancellation to JSO for failure to meet performance standards under the JSO Agreement and demanding that JSO cure any deficiencies in connection with its performance under the JSO Agreement.

40.    ~~MOTOROLA failed to properly compensate JSO for, at a minimum, its trailing commissions and may have excluded other accounts that were properly compensable.~~

- 8 -

**Motorola's Notice To Terminate The Agreements**

41. 32. After JST and JSO had performed according to their respective obligations under their respective agreements with MOTOROLA, MOTOROLA suddenly, and without any prior notice, purported to terminate the JST Agreement and the JSO Agreement.

42. 33. The notices sent by MOTOROLA to JST and JSO were part of an overall business plan by MOTOROLA to terminate all of its sales representatives and to bring in-house its sales functions. This was all in an effort to eliminate the costs associated with paying commissions to outside sales agents, while at the same time taking advantage of the developed markets and goodwill that had been created by the independent manufacturer's representatives through their investment of capital and resources.

43. 34. Accordingly, MOTOROLA's invalid attempt to assert a non-renewal of the JST Agreement and invalid attempt to communicate a termination of the JSO Agreement were merely a pretext to further MOTOROLA's plan to convert to its own possession and use the good will created by JST and JSO in reliance upon MOTOROLA's representations and promises.

44. 35. In fact, on February 26, 2004, MOTOROLA gave written notice to 100% of its manufacturer's representatives that it intended to terminate the agency agreements. MOTOROLA devised different schemes and rationales to justify its decisions to terminate the agreements and to refuse to make any further payments to the manufacturer's representatives.

45. 36. MOTOROLA's February 26, 2004 letters were intentionally deceptive and sent by MOTOROLA in a bad faith attempt to fabricate grounds to terminate the JST Agreement and the JSO Agreement. Further, MOTOROLA sought to conceal its true corporate policy and motives – which existed prior to the execution of the JST Agreement and the JSO Agreement – to wit: misappropriating the goodwill that JST and JTO created for MOTOROLA's products after JST and JSO expended substantial capital in creating this goodwill.

46. 37. MOTOROLA's wrongful conduct as described hereinabove has caused JST and JSO damages.

## COUNT I
### (Breach of Contract)
### JST v. MOTOROLA

47. 38. JST incorporates by reference paragraphs 1 – 37 46 as if set forth fully herein.

48. 39. As more fully set forth above, in or about December 4, 2002, JST and MOTOROLA entered into a valid and enforceable contract pursuant to which JST agreed to sell MOTOROLA's products. JST did, in fact, sell MOTOROLA's products in accordance with the terms and conditions of the JST Agreement.

49. 40. In December 2003, the one year anniversary date of the contract passed and the parties continued to act in accordance with the terms and conditions of the JST Agreement. By conduct and by word, the parties waived the requirement that any extension of the JST Agreement be in writing. During and after December 2003, the parties continued to interact, continued to discuss potential sales, and MOTOROLA provided customer and product support to JST in its effortts to sell MOTOROLA products. In all word and deed, the parties continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been extended. At no time during the period December 4, 2003 through February 26, 2004 did MOTOROLA notify JST that it believed that the JST Agreement had expired or that it deemed the JST-MOTOROLA relationship ended.

50. 41. By letter dated February 26, 2004, MOTOROLA purported to acknowledge that the JST Agreement had terminated by its terms on December 4, 2003. (See Exhibit "B".)

51. 42. JST and MOTOROLA, by their conduct and actions, renewed the JST Agreement and waived the requirement that the JST Agreement renewal be in writing.

52.    43. MOTOROLA's notice of termination was defective and void and its failure to honor its obligations under the JST Agreement is a breach of the terms and conditions of the Agreement.

53.    Motorola breached the Agreements with Plaintiffs by, *inter alia*:

(i)    failing to disclose that a moratorium was placed on the execution of all further manufacturer's representative agreements;

(ii)    misappropriating JSO's confidential information to its detriment;

(iii)    failing to pay all commissions properly payable under the Agreements;

(iv)    failing to identify the basis for terminations for cause and otherwise frustrating the manufacturer's representative contractual right to cure; and

(v)    undertaking conduct that constitutes a willful, wanton and malicious breach of contract through the manufacture of a non-renewal terminations of the JST Agreement as the Agreement continued to be effective through both word and deed for over two months.

54.    44. As a proximate result of MOTOROLA'S breach of its contractual obligations, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against Motorola in an amount in excess of $75,000 in compensatory damages, interest and costs of suit, including attorneys' fees, and grant such further relief as it deems to be just and proper.

**COUNT II**
**(Promissory Estoppel)**
**JST v. MOTOROLA**

55.    45. JST incorporates by reference paragraphs 1 – 44 54 by reference as if set forth more fully herein.

-11-

56.    46. As more fully detailed above, MOTOROLA made numerous representations and promises concerning its intent to sell its products through a system of manufacturer's representatives and that it expected those relationships to persist for a long period of time.

57.    47. MOTOROLA knew or reasonably should have known that its representations and promises to formulate long-lasting relationships with independent manufacturer's representatives to sell its products would induce those independent manufacturer's representatives to expend time, energy and funds to build an infrastructure and fixed costs to perform their obligations under the contracts.

58.    48. As more fully detailed above, JST was induced by MOTOROLA's representations and promises of its intent to sell its products through independent manufacturer's representatives and expended time, energy and funds to build an infrastructure and fixed costs to perform its obligations under the JST Agreement.

59.    49. MOTOROLA directly benefited from JST's reliance on MOTOROLA's promises. Injustice can only be avoided by the enforcement of Motorola's promises to JST.

60.    50. As a proximate result of JST's justifiable detrimental reliance on MOTOROLA's promises, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs of suit, including attorneys' fees, and grant such further relief as it deems to be just and proper.

### COUNT III
**(Negligent Misrepresentation)**
**JST v. MOTOROLA**

61.    51. JST incorporates by reference paragraphs 1 – 5060 as if set forth fully herein.

-12-

62. 52. In negotiating with JST for the rights to sell MOTOROLA's products, MOTOROLA negligently and without the use of reasonable care communicated materially false statements to JST. As more fully detailed above, the misrepresentations of MOTOROLA include, but are not limited to its false representations regarding its intention to use an independent sales network for the foreseeable future.

63. 53. JST reasonably relied on the accuracy of the materially false statements of MOTOROLA in conducting its business and as a result of that reliance expended substantial capital to position itself to sell MOTOROLA's products.

64. 54. As a proximate result of the negligent misrepresentations of MOTOROLA, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs, including attorneys' fees, and grant such further relief as it deems to be just and proper.

**COUNT IV**
**(Breach of Duty of Good Faith and Fair Dealing)**
**JST v. MOTOROLA**

65. 55. JST incorporates by reference paragraphs 1 – 5464 as if set forth fully herein.

66. 56. Under applicable law, MOTOROLA owed duties of good faith and fair dealing to JST. These duties arise out of the contract entered into between these parties and/or the special relationship existing between the parties.

67. 57. MOTOROLA breached its duties of good faith and fair dealing by fabricating facts surrounding the termination of JST's contract and misrepresenting its intent to use independent companies to sell its products in order to entice JST to expend capital to create goodwill for MOTOROLA's products.

68. 58. MOTOROLA's bad-faith actions were beyond the risks assumed by JST when it entered into the contract.

69. 59. As a proximate result of MOTOROLA's bad-faith actions, JST sustained damages.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs, including attorneys' fees. JST further requests this Court to enter punitive damages and grant such further relief as it deems to be just and proper. (maintained for any subsequent treatment).

### COUNT V
### (Violation of Arizona's Consumer Fraud Act)
### JST v. MOTOROLA (maintained for any subsequent treatment)

70. 60. JST incorporates by reference paragraphs 1 – 5969 as if fully set forth herein.

71. 61. Arizona law prohibits the use or employment of any deceptive act, fraud, false promise, misrepresentation or omission of any material fact with the intent that others rely on such concealment, suppression or omission in connection with the sale or advertisement of any merchandise. Such practices are in violation of ARIZ. REV. STAT. § 44-1522 *et seq.*

72. 62. MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated with JST for JST's right to sell MOTOROLA products.

73. 63. MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated the JST Agreement and the rights and obligations thereto.

74. 64. MOTOROLA intended that JST would rely on these representations and omissions as a basis for executing the JST Agreement and JST's subsequent sale of MOTOROLA's products.

-14-

75. 65. As a direct and proximate result of MOTOROLA's deceptive trade practices, JST sustained damages in an amount in excess of $75,000.

WHEREFORE, JST respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory and punitive damages, interest and costs, including attorneys' fees, and grant such other relief as it deems just and proper in accordance with ARIZ. REV. STAT. § 44-1522 *et seq.*

WILM1\26943\1-099994.00034438\1153371.000

**COUNT VI**
**(Breach of Contract)**
**JSO v. MOTOROLA**

76.    66. JSO incorporates by reference paragraphs 1 – 65<u>75</u> as if set forth fully herein.

77.    67. As more fully set forth above, on or about May 13, 2003, JSO and MOTOROLA entered into a valid and enforceable contract pursuant to which JSO agreed to sell MOTOROLA's products.  JSO did, in fact, sell MOTOROLA's products in accordance with the terms and condition of the JSO Agreement.

78.    68. By letter dated February 26, 2004, MOTOROLA purported to give notice that JSO was in breach of the JSO Agreement for failure to meet performance requirements and purported to give thirty (30) days' notice of cure.

79.    69. MOTOROLA's notice was defective and false, and MOTOROLA had no real or good faith basis to support its allegations that JSO failed to meet performance requirements. Rather, the notice was sent as a pretext to implement MOTOROLA's plan to usurp the goodwill created by JSO and to breach its obligations to JSO under the terms and conditions of the JSO Agreement.

80.    70. MOTOROLA's notice of termination was defective and void and its failure to honor its obligations under the JSO Agreement is a breach of the terms and conditions of the JSO Agreement.

81.    <u>Motorola breached the Agreements with Plaintiffs by, *inter alia*:</u>

        (i)    <u>failing to disclose that a moratorium was placed on the execution of all further manufacturer's representative agreements;</u>

        (ii)    <u>misappropriating JSO's confidential information to its detriment;</u>

        (v)    <u>failing to pay all commissions properly payable under the Agreements;</u>

        (vi)    <u>failing to identify the basis for terminations for cause and otherwise frustrating the manufacturer's representative contractual right to cure; and</u>

-16-

(v)    undertaking conduct that constitutes a willful, wanton and malicious breach of contract through the manufacture of for-cause terminations of the JSO Agreement when there was not basis for such termination.

82.    71. As a proximate result of MOTOROLA's breach of its contractual obligations, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $750,00075,000 in compensatory damages, interest and costs of suit, including attorneys' fees, and grant such further relief as it deems to be just and proper.

## COUNT VII
### (Promissory Estoppel)
### JSO v. MOTOROLA

83.    72. JSO incorporates by reference paragraphs 1 – 7182 by reference as if set forth more fully herein.

84.    73. As more fully detailed above, MOTOROLA made numerous representations and promises concerning its intent to sell its products through a system of manufacturer's representatives and that it expected those relationships to persist for a long period of time.

85.    74. MOTOROLA knew or reasonably should have known that its representations and promises to formulate long-lasting relationships with independent manufacturer's representatives to sell its products would induce those independent manufacturer's representatives to expend time, energy and funds to build an infrastructure and fixed costs to perform their obligations under the contracts.

86.    75. A more fully detailed above, JSO was induced by MOTOROLA's representations and promises of its intent to sell its products through independent manufacturer's

-17-

representatives and expended time, energy and funds to build an infrastructure and fixed costs to perform their obligations under the JSO Agreement.

87.    76. MOTOROLA directly benefited from JSO's reliance on MOTOROLA's promises. Injustice can only be avoided by the enforcement of Motorola's promises to JSO.

88.    77. As a proximate result of JSO's justifiable detrimental reliance on MOTOROLA'S promises, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damage, interest and costs of suit, including attorney's fees, and grant such further relief as it deems to be just and proper.

## COUNT VIII
### (Negligent Misrepresentation)
### JSO v. MOTOROLA

89.    78. JSO incorporates by reference paragraphs 1 – 7788 by reference as if set forth fully herein.

90.    79. In negotiating with JSO for the rights to sell MOTOROLA's products, MOTOROLA negligently and without the use of reasonable care communicated materially false statements to JSO. As more fully detailed above, the misrepresentations of MOTOROLA include, but are not limited to its failure to reveal its representations that MOTOROLA intended to use an independent sales network for the foreseeable future.

91.    80. JSO reasonably relied on the accuracy of the materially false statements of MOTOROLA in conducting its business and as a result of that reliance expended substantial capital to position itself to sell MOTOROLA's products.

92.    81. As a proximate result of the negligent misrepresentations of MOTOROLA, JSO sustained damages in an amount in excess of $75,000.

-18-

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, interest and costs, including attorneys' fees, and grant such further relief as it deems to be just and proper.

## COUNT IX
### (Breach of Duty of Good Faith and Fair Dealing)
### JSO v. MOTOROLA

93.    82. JSO incorporates by reference paragraphs 1 – 81 92 as if set forth fully herein.

94.    83. Under applicable law, MOTOROLA owed duties of good faith and fair dealing to JSO.  These duties arise out of the contract entered into between these parties and/or the special relationship existing between the parties.

95.    84. MOTOROLA breached its duties of good faith and fair dealing by fabricating facts surrounding the termination of the JSO Agreement, and misrepresenting its present intent to use independent companies to sell its products in order to entice JSO to expend capital to create goodwill for MOTOROLA's products.

96.    85. MOTOROLA's bad-faith actions were beyond the risks assumed by JSO when it entered into the contract.

97.    86. As a proximate result of MOTOROLA's bad-faith actions, JSO sustained damages in an amount in excess of $75,000.

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory damages, plus interest and costs, including attorneys' fees.  JSO further requests this Court to enter punitive damages and grant such further relief as it deems to be just and proper. (maintained for any subsequent treatment).

## COUNT X
### (Violation of Arizona's Consumer Fraud Act)
### JSO v. MOTOROLA (maintained for any subsequent treatment)

-19-

98.   87.-JST incorporates by reference paragraphs 1 – 8697 as if fully set forth herein.

99.   88.-MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated with JSO for JSO's right to sell MOTOROLA products.

100.   89.-MOTOROLA employed deception and misrepresented its true objective and purpose when it negotiated the JSO Agreement and the rights and obligations thereto.

101.   90.-MOTOROLA intended that JSO would rely on these representations and omissions as a basis for executing the JSO Agreement and JSO's subsequent sale of MOTOROLA's products.

102.   91.-As a direct and proximate result of MOTOROLA's deceptive trade practices, JSO sustained damages in an amount in excess of $75,000.

WILM1\26943\1-099994.00034438\1153371.000

Case 1:04-cv-00960-SLR    Document 118-2    Filed 04/24/2006    Page 43 of 46

WHEREFORE, JSO respectfully requests that this Court enter judgment in its favor and against MOTOROLA in an amount in excess of $75,000 in compensatory and punitive damages, interest and costs, including attorneys' fees, and grant such other relief as it deems just and proper in accordance with Ariz. Rev. Stat. § 44-1522 *et seq.*

## COUNT XI
### (Fraud)
### PLAINTIFFS v. MOTOROLA

103. Plaintiffs incorporate by reference paragraphs 1 – 102 as if fully set forth herein.

104. As described above, MOTOROLA (through its various employees, including, Terry, Cunha, Holt, McGregor, Machernis, Currano and others) made false representations of fact to as its present intention to maintain manufacturer's representatives as a long-term business model to sell its products.

105. MOTOROLA knew these representations to be false when they were made or permitted the representations to be made with reckless indifference to the truth.

106. MOTOROLA's fraudulent representations were willful, wanton and/or malicious.

107. MOTOROLA proffered these representations with the intent Plaintiffs would execute the agreements and maintain demand fulfillment, develop demand creation and service MOTOROLA's current customer base until such time as the business cycle would permit MOTOROLA to revert back to its direct sales force.

108. Plaintiffs executed the agreements, expended time and resources and even lost various other opportunities based upon MOTOROLA's representations.

109. By reason of MOTOROLA's fraudulent conduct in this matter, Plaintiffs have been damaged in an amount to be determined at trial.

-21-

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against MOTOROLA in an amount in excess of $75,000 in compensatory, statutory and/or punitive damages, interest and costs, including attorneys' fees.

## COUNT XII
### (Deceptive Trade Practices)
### PLAINTIFFS v. MOTOROLA

110.    Plaintiffs incorporate by reference paragraphs 1 – 109 as if fully set forth herein.

111.    Under all potentially applicable law (including Canada, Oregon, Massachusetts and Delaware), MOTOROLA had a statutory duty to refrain from engaging in deceptive trade practices with its manufacturer's representatives.

112.    Through the conduct described above, MOTOROLA engaged in a pattern and practice of deceit.

113.    By reason of MOTOROLA's unlawful conduct in this matter, Plaintiffs have been damaged in an amount to be determined at trial, including all statutory damages.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against MOTOROLA in an amount in excess of $75,000 in compensatory, statutory and/or punitive damages, interest and costs, including attorneys' fees.

Dated:    ~~August 20, 2004~~April ___, 2006

COZEN O'CONNOR

BY:    _____
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2000

OF COUNSEL:
Kevin F. Berry
*of the Pennsylvania*
*and New Jersey Bars*
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

Attorneys for Plaintiffs

~~IN THE UNITED STATES DISTRICT COURT~~
~~FOR THE DISTRICT OF DELAWARE~~

| | | |
|---|---|---|
| ~~J SQUARED TECHNOLOGIES INC.,~~ ~~a Canadian corporation,~~ | ~~:~~ ~~:~~ ~~:~~ | |
| ~~and~~ | ~~:~~ ~~:~~ | |
| ~~J SQUARED TECHNOLOGIES (OREGON) INC.,~~ ~~an Oregon corporation,~~ | ~~:~~ ~~:~~ ~~:~~ | ~~C.A. No.~~ _____ |
| ~~Plaintiffs,~~ ~~v.~~ | ~~:~~ ~~:~~ ~~:~~ | |
| ~~MOTOROLA, INC.,~~ ~~a Delaware corporation,~~ | ~~:~~ ~~:~~ | ~~**JURY TRIAL DEMANDED**~~ |
| ~~Defendant.~~ | ~~:~~ | |

~~**CERTIFICATE OF SERVICE**~~

~~I, Sean J. Bellew, do hereby certify under penalty of perjury that I am not less than 18 years of age and that, on this 20th day of August, 2004, I did cause a true and correct copy of the~~

-23-

foregoing ~~Summons~~ and ~~Complaint~~ to be served upon the following party via hand delivery:

> Motorola, Inc.
> c/o The Corporation Trust Company
> 1209 Orange Street
> Wilmington, DE  19801

Dated:        August 20, 2004        _____

                              Sean J. Bellew (#4072)