IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.,<br>a Canadian corporation, and | ) | |
| | ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC.,<br>an Oregon corporation, | ) | |
| | ) | C.A. No. 04-960-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MOTOROLA, INC.,<br>a Delaware corporation | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF J-SQUARED TECHNOLOGIES, INC.'S
RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES,
REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION**

Pursuant to Federal Civil Rules 26, 33 and 34, Plaintiff J-Squared Technologies, Inc.

("Plaintiff"), by its undersigned counsel, hereby responds to Defendant Motorola, Inc.'s

("Defendant") First Set of Interrogatories and Requests for Production as follows:

**GENERAL OBJECTIONS**

1.       Plaintiff objects to Defendant's First Set of Interrogatories and Requests for

Production (collectively, the "Discovery Requests") to the extent that the interrogatories

contained therein seek information or documents that are protected by any privilege, including

but not limited to the attorney work-product or attorney-client privileges.   The inadvertent

disclosure of any privileged information or documents shall not constitute a waiver of any

privilege or any other ground for the objection to discovery at any time.

2.       Plaintiff objects to the Discovery Requests to the extent that the requests

contained therein seek materials prepared in anticipation of litigation or for trial, or seek the

discovery of the mental impressions, conclusions, opinions or legal theories of counsel or any

other representative of the Plaintiff concerning this litigation. The inadvertent disclosure of any such information or documents shall not constitute a waiver of any privilege or any other ground for the objection to such discovery at any time.

3.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein are vague, unduly burdensome, overly broad, unlimited as to time, or directed to any information which is not relevant to the subject matter of this litigation, or are not reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein require disclosure of information that is confidential, proprietary, or trade secret information.

5.    Plaintiff reserves the right to supplement its responses to the Discovery Requests up to and including the time of trial should information responsive thereto subsequently be discovered. The responses contained herein are based upon Plaintiff's knowledge, information and belief at the present time.

6.    Plaintiff does not waive any objections as to the admissibility of any answers to Discovery Requests provided herein or the right to object to any other Discovery Requests involving or relating to the subject matter hereof.

7.    Notwithstanding anything herein to the contrary, none of the responses herein constitute a waiver of these General Objections, or are these responses an acknowledgement by the Plaintiff that it is aware of or are currently in possession, custody or control of information or documents responsive to the Discovery Requests.

8.    The General Objections are incorporated in every individual response set forth below, whether referenced specifically or not.

A-273

## RESPONSES TO INTERROGATORIES

1.      Identify and describe with specificity any and all representations you believe Motorola made regarding its intent to "forge long-lasting relationships with JST," as alleged in paragraph 13 of your complaint, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, as alleged in paragraph 14 of your complaint, and all other facts and documents that support your answer.

**RESPONSE:**    Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted therewith.  In addition, Steven Machernis, Larry Terry, Ed Kaczor and Paul Holt made numerous representations to Jeff Gibson and Claude Langlois during the negotiations of the JST agreements and afterwards concerning the requirement that Motorola outsource its manufacturer representatives following a substantial decrease in the Motorola in-house sales force from 55 to 12 sales representatives.  These representations were made over the telephone, at in-person meetings and at Motorola presentations to Plaintiff and other manufacturer representatives. Similar representations were made to Scott Williams and Mark Gernhardt at G.L. Williams Associates, Inc. (through Steve Cunha, Paul Holt and Marc Watts) when Defendant negotiated the contract that was finally executed between those two parties.  Indeed, G.L. Williams dropped a  profitable competing line (SBS Technologies) in favor or Motorola given representations of a long-term relationship.  Comparable representations were also made to RT Technologies through some of the same individuals, through the same medium of communication.

Defendant, through Marc Watts, Jeanne Kolasa and Larry Terry, represented that the POS commission payments payable to Plaintiff, based upon a 5% commission and a historical run rate, would be sufficient to permit Plaintiff to realize a substantial revenue source at the commencement of the engagement.  These representations were made both orally and through acknowledgment of financial forecasts received by these individuals from Claude Langlois and

A-274

Jeff Gibson. Plaintiff has discovered that these representations were known to be false or were made with a reckless indifference to the truth of the matters asserted. Pursuant to Rule 33(d), Plaintiff identified the following document: MOTJ00556.

2.    Identify and describe with specificity any and all representations you believe Motorola made to JST as to the expected profitability of JST as a manufacturer representative for Motorola, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:** See Plaintiff's response to Interrogatory No. 1 above. By way of further response, Plaintiff states that representations were made by Ed Kaczor, Larry Terry and Jeanne Kolasa that POS commissions would be at least $10,000 per month based upon a 5% commission rate. Initially, Plaintiff requested a 10% commission rate, but Defendant declined to accept such a rate, indicating that sales were in the approximate range of $2 million to $3 million per year, sufficient enough to drive a $10,000 per month commission payment based upon an agreed-upon 5% commission rate. As identified through discovery, Defendant knew commission payments at a 5% rate would reach a maximum of only $5,000 per month based on historical run rates. *See* MOTJ00556. In reality, the monthly commissions Plaintiff received following execution of the Agreement were far below even this historical-based calculation given Defendant's neglect (through a 78% reduction in the MCG in-house representatives) of the demand creation component of the embedded technologies division. *See, e.g.,* MOT00757.

3.    Identify and describe with specificity any and all representations you believe Motorola made to JST as to the expected integration of JST into the Motorola business model, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

A–275

**RESPONSE:**  See Plaintiff's responses to Interrogatory Nos. 1 and 2 above.  Pursuant to Rule 33(d), Plaintiff identifies the following documents:  MOTJ 01073-78 and MOT 01873-1901.

4.    Identify and describe with specificity any other representations or material false statements you believe Motorola made to JST on which JST relied to its detriment, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:**  The above-referenced individuals also made representations concerning client referrals to Plaintiff for the non-competing product lines as well as various other benefits derived from Plaintiff's entry into the embedded technologies marketplace.

5.    Identify and describe with specificity each and every way JST relied on Motorola's purported representations of a long-lasting relationship, of expected profitability, of expected integration, and any other representation or false statements you believe Motorola to have made and on which JST relied to its detriment, including but not limited to how JST invested more than $500,000 supporting Motorola's sales objectives in Canada, as alleged in paragraph 13 of your complaint, how JST expended "substantial capital" as alleged in paragraph 53 of the complaint, and all other facts and documents that support your answer.

**RESPONSE:**  Plaintiff incurred substantial expenses (payroll, technology, training, travel, marketing, etc.) through the demand creation and design-in phases of working with original equipment manufacturers ("OEM") and other customers.  Plaintiff incurred costs and additional overhead in monitoring and complying with the demand fulfillment aspect of the relationship.  Further, there were certain opportunity costs (both within and outside of the embedded technologies marketplace) associated with Plaintiff's exclusive relationship with Motorola.  Indeed, Plaintiff reassigned various existing employees to work on Motorola's line when they were previously working on other projects.  *See also* Responses to Interrogatory Nos. 1, 2 and 3 above.

A-276

6.    Describe how JST calculated its anticipated profit of $100,000 for sales of Motorola products for the first year of the parties' Agreement, as alleged in paragraph 13 of the complaint, and all facts and documents that support your answer.

**RESPONSE:**  Plaintiff misstated the definition for the $100,000 identified in paragraph 13 of its Complaint. That figure is more accurately defined as gross commission revenue. Ed Kaczor, Marc Watts, Larry Terry and Jeanne Kolasa made representations as to present and historical run rates that would drive approximately $10,000 in gross commission payments per month under the JST Agreement. These representations were made to Claude Langlois and Jeff Gibson.

7.    Explain what you mean in paragraph 13 of the complaint and how it relates to JST when you refer to expenditures as "collectively envisioned by the parties to support the sale of Motorola's products under the respective agreements" and identify all facts and documents that support your answer.

**RESPONSE:**  By the very framework of the uncommitted, committed and design win phases, Plaintiff was required to expend substantial amounts of capital in personnel, training, marketing and travel expenses, amongst other costs. During the September 2003 meeting in Boston, Massachusetts, Jeff Gibson informed Motorola (through Kevin Parslow and Steven Machernis) that JST was behind the curve when it came to revenue and profit realization, or even breaking even with their ongoing investment commitments. Pursuant to Rule 33(d), Plaintiff identifies the following documents:  MOTJ 01142, MOTJ 01774, MOTJ 01785, MOTJ 01681 and J2 1675-81.

8.    Describe in detail the "considerable time, energy, and funds" JST expended to support Motorola's sales objectives, as alleged in paragraph 16 of the complaint, in what ways Motorola approved these expenditures, as alleged in paragraph 17 of the complaint, and all facts and documents that support your answer.

6

A-277

**RESPONSE:** See Plaintiff's response to Interrogatory No. 5 above.

9.    Identify (as defined in Instruction D) the individuals at JST who negotiated the Agreement with Motorola and describe the length of time it took for the parties to finalize their Agreement, the number of drafts that were circulated to JST before the parties finalized their Agreement, the number of drafts that were circulated to JST before the parties finalized their agreement, each and every basis for the allegation in paragraph 20 of the complaint that Motorola "drafted the material terms of the contracts and presented them on a take it or leave it basis to JST," and all facts and documents that support your answer.

**RESPONSE:**    Plaintiff objects to this interrogatory to the extent this information is equally accessible to Motorola. Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted therewith.    Further, Plaintiff states that Claude Langlois and Mike Nykoluk represented JST during the contract negotiations.    While there was only one contract that was proposed, there were communications between the parties concerning certain provisions contained in Defendant's self-proclaimed standard contract.    These communications were necessitated by Defendant's representation before, during and after the negotiations surrounding the execution of the contract.

10.    Describe each and every basis for the allegation in paragraph 21 of the complaint that Motorola knew JST was "expending substantial sums of capital" to sell Motorola products and all facts and documents that support your answer.

**RESPONSE:**    See Plaintiff's response to Interrogatory No. 7 above.    Defendant knew, through various progress emails, telephone calls and teleconferences that JST was making a substantial investment in the Motorola product line pursuant to the requirements of the agreement and the parties' understanding of the manufacturer representatives' role in the new marketing strategy.    By the very framework of the uncommitted, committed and design win

A-278

phases, Plaintiff was required to expend substantial amounts of capital in personnel, training, marketing and travel expenses, amongst other costs.

11.    Describe each and every basis for the allegation in paragraph 24 of the complaint that after the JST Agreement expired, the parties waived the requirement of a writing in order to renew the contract's term, including but not limited to what "conduct," "words," and "deeds" support JST's allegation that the parties "continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been renewed" and all facts and documents that support your answer.

**RESPONSE:**  Following the purported expiration of the JST Agreement in December 2003, Motorola continued to transact business with JST and their combined customer base as if the Agreement had been renewed (indeed, by conduct later affirmed by an addendum to the JSO Agreement, Motorola and JSO conducted business in the JSO territory before a fully-executed agreement was in place).  Through JST's post-December 2003 interaction with Ed Kaczor, Steve Machernis and others at Motorola, both parties operated as if the Agreement was renewed.  This complied with JST understanding of the manufacturer representative relationship and prior representations made by Defendants before, during and after the negotiations leading to the execution of the JST Agreement.  All routine and customary interactions between the parties proceeded as if Motorola was honoring it representations as to a long-term relationship.  Accordingly, Motorola had waived requirement that a renewal be in writing or acquiesced to parties' failure to enter into a formal written agreement to renewal the Agreement.

Alternatively, Motorola's continuing conduct, post-December 2003, as to the following activities constituted sufficient written acknowledgement that the Agreement was renewed: (i) written commission payments and reconciliations sent to JST; (ii) written correspondence with JST concerning uncommitted, committed and design win opportunities occurring after December 4, 2003; and (iii) written confirmation concerning upcoming marketing events at tradeshows and/or conventions.

A–279

12.    Describe each and every basis for the allegation in paragraph 27 of the complaint that Motorola's letter dated February 26, 2004 to JST was defective or void, how it failed to terminate the parties' relationship, and all facts and documents that support your answer.

**RESPONSE:**  The termination letter was defective and/or void given the fact that the Agreement had not expired "by its terms."  Given the fact that the Agreement had not "expired by its terms" the termination letter did not purport to relay any other basis for termination, valid or not. *See also* Plaintiff's response to Interrogatory No. 11 above.


13.    Describe with specificity how JST met its obligations under the parties' Agreement, as alleged in paragraph 32 of the complaint, and all facts and documents that support your answer.

**RESPONSE:**  Plaintiff objects to this interrogatory to the extent Plaintiff's performance under the JST Agreement is not a fact at issue in this litigation.  By way of further response, Plaintiff states that it complied with all terms and conditions under the Agreement.  JST's compliant performance under the Agreement confirmed by Ed Kaczor shortly before Motorola's unlawful termination.


14.    Explain what you mean in paragraph 3 of your disclosure statement and how it relates to JST when you write that "Plaintiffs have incurred in excess of $750,000 to design-in Motorola products with Plaintiffs' customers in reliance on Defendant's representations of fact" and identify all facts and documents that support your answer.

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 5 above.  At a minimum, Plaintiff is due the additional commission payments under the Agreement, given proper expiration of the Agreement following its one-year anniversary and a *bona fide* decision not to renew by either party. Alternatively, Plaintiff forecasted a substantial return on investment after the first two years under the Agreement. Had Defendant complied with the representations made both before, during and after the negotiations leading to the execution of the Agreement, Plaintiff

A-280

would have realized a return on investment depicted in J2 1675. Plaintiff's expectations are also partially substantiated by Motorola's own "uplift" calculations of commissions owing under the Agreement, given the historical run rates for sales.

Plaintiff may, in accordance with the requirements of the scheduling order, designate a trial expert to provide additional testimony on this subject. Accordingly, Plaintiff reserves its right to amend or supplement this response.

15.    Explain in detail JST's computation of damages, including but not limited to its method of calculation, how JST together with JSO has incurred in excess of $750,000 in damages as set forth in JST's disclosure statement, and all facts and documents that support this computation.

**RESPONSE:**  See Plaintiff's response to Interrogatory Nos. 5, 6 and 14 above and JSO's responses to Defendant's First Set of Interrogatories.

16.    If you deny request for admission no. 1, explain why.

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 11 above.

A-281

## RESPONSES TO REQUESTS FOR PRODUCTION

1.    Please produce any and all documents that support your responses to Motorola's interrogatories or that you consulted or referred to in responding to these interrogatories.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

2.    Please produce any and all documents relating to any representations you believe Motorola made to JST regarding the anticipated duration of Motorola's relationship with JST.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

3.    Please produce any and all documents relating to any representations you believe Motorola made to JST regarding the expected profitability of JST as a manufacturer representative for Motorola.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

4.    Please produce any and all documents relating to any representations you believe Motorola made to JST regarding the expected profitability of JST into the Motorola business model.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

5.    Please produce any and all documents relating to any other representations or false statements you believe Motorola made to JST on which JST relied to its detriment.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

A-282

6.    Please produce any and all documents supporting your contention that JST relied on representations Motorola made about a long-lasting relationship, expected profitability, expected integration, and any other representations or false statements you believe Motorola made to JST on which JST relied to its detriment.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.


7.    Please produce any and all documents supporting JST's contention that it anticipated a profit of $100,000 for sales of Motorola products for the first year of the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.


8.    Please produce any and all documents supporting JST's contention that it expended "considerable time, energy, and funds" to support Motorola's sales objectives.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.


9.    Please produce all documents relating to the negotiation and drafting of JST's Agreement with Motorola, including but not limited to all correspondence between Motorola and JST, all correspondence between employees at JST involved in negotiation and drafting the parties' Agreement, all notes created by employees at JST regarding the negotiation and drafting of the parties' Agreement, and all drafts of the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.


10.    Please produce any and all documents that support the allegation in paragraph 21 of the complaint that Motorola knew JST was expending substantial sums of capital to sell Motorola products.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

A-283

11.    Please produce any and all documents that support JST's contention that Motorola waived the requirement of a writing in order to renew the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

12.    Please produce any and all documents that support the allegation in paragraph 32 of the complaint that JST met all of its obligations under the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

13.    Please produce any and all communications from August 1, 2002 to the present between JST and Motorola and any document that refers or relates to such communications.

**RESPONSE:**  Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff will not undertake such a search other than as contemplated through its responses to the balance of Defendant's requests.

14.    Please produce any and all documents that support JST's claim for damages and its computation of damages.

**RESPONSE:**    Plaintiff will provide any additional information concerning the computation of damages as required by the expert disclosure deadlines identified in the Court's scheduling order.

15.    Please produce any and all documents sent to or received from any person you expect to call as an expert witness in this case that refer or relate to that person's testimony and/or opinion including but not limited to communications, checks, invoices, or statements, reports, data, analysis, notes, tangible things, and memoranda.

A-284

**RESPONSE:**  Plaintiff will provide any additional information concerning the

computation of damages as required by the expert disclosure deadlines identified in the Court's

scheduling order.


AS TO OBJECTIONS:


Dated: December 6, 2005

_David A. Felice_
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
    *Attorneys for Plaintiffs*


Of counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013


14

A-285

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.,<br>a Canadian corporation, and | ) | |
| | ) | |
| | ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC.,<br>an Oregon corporation, | ) | |
| | ) | |
| | ) | C.A. No. 04-960-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MOTOROLA, INC.,<br>a Delaware corporation | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>NOTICE OF SERVICE</u>

PLEASE TAKE NOTICE that on December 6, 2005 true and correct copies of *Plaintiff*

*J-Squared Technologies, Inc.'s Responses to Defendant's First Set of Interrogatories and*

*Requests for Production* were served upon the following parties:

William W. Bowser                          Randy Papetti
Young Conaway Stargatt & Taylor            Lewis and Roca LLP
The Brandywine Building                    40 N. Central Avenue
1000 West Street, 17th Floor               Phoenix, AZ  85004
Wilmington, DE  19801


Dated: December 6, 2005

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on December 6, 2005, I electronically filed the

foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to

the following counsel of record:


William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Randy Papetti
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ  85004


David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: dfelice@cozen.com

A-287

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.,<br>a Canadian corporation, and | ) | |
| | ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC.,<br>an Oregon corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 04-960-SLR |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MOTOROLA, INC.,<br>a Delaware corporation | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF J-SQUARED TECHNOLOGIES (OREGON), INC.'S
RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION**

Pursuant to Federal Civil Rules 26, 33 and 34, Plaintiff J-Squared Technologies (Oregon), Inc. ("Plaintiff"), by its undersigned counsel, hereby responds to Defendant Motorola, Inc.'s ("Defendant") First Set of Interrogatories and Requests for Production as follows:

**GENERAL OBJECTIONS**

1.     Plaintiff objects to the overall number of interrogatories propounded, including subparts, as exceeding the 25 permitted under the Federal Rules and the Court's scheduling order.  In the spirit of cooperation, Plaintiff will respond to all interrogatories set forth in this, Defendant's First Set of Interrogatories.  Plaintiff does not, however, waive the right to object to the service of any additional interrogatories.

2.     Plaintiff objects to Defendant's First Set of Interrogatories and Requests for Production (collectively, the "Discovery Requests") to the extent that the interrogatories contained therein seek information or documents that are protected by any privilege, including but not limited to the attorney work-product or attorney-client privileges.  The inadvertent

disclosure of any privileged information or documents shall not constitute a waiver of any privilege or any other ground for the objection to discovery at any time.

3.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein seek materials prepared in anticipation of litigation or for trial, or seek the discovery of the mental impressions, conclusions, opinions or legal theories of counsel or any other representative of the Plaintiff concerning this litigation. The inadvertent disclosure of any such information or documents shall not constitute a waiver of any privilege or any other ground for the objection to such discovery at any time.

4.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein are vague, unduly burdensome, overly broad, unlimited as to time, or directed to any information which is not relevant to the subject matter of this litigation, or are not reasonably calculated to lead to the discovery of admissible evidence.

5.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein require disclosure of information that is confidential, proprietary, or trade secret information.

6.    Plaintiff reserves the right to supplement its responses to the Discovery Requests up to and including the time of trial should information responsive thereto subsequently be discovered. The responses contained herein are based upon Plaintiff's knowledge, information and belief at the present time.

7.    Plaintiff does not waive any objections as to the admissibility of any answers to Discovery Requests provided herein or the right to object to any other Discovery Requests involving or relating to the subject matter hereof.

8.    Notwithstanding anything herein to the contrary, none of the responses herein constitute a waiver of these General Objections, or are these responses an acknowledgement by

WILM1\32267\2 153371.000                                                                      A-289

Plaintiff that it is aware of or are currently in possession, custody or control of information or documents responsive to the Discovery Requests.

      9.     The General Objections are incorporated in every individual response set forth below, whether referenced specifically or not.

A-290

## RESPONSES TO INTERROGATORIES

1.    Identify and describe with specificity any and all representations you believe Motorola made regarding its intent to "forge long-lasting relationships with . . . JTO [sic]," as alleged in paragraph 13 of the complaint, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, as alleged in paragraph 14 of the complaint, and all other facts and documents that support your answer.

**RESPONSE:**    Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted therewith.  In addition, Steven Machernis, Larry Terry, Dennis Robinson and Paul Holt made numerous representations to Steve Blomme and Claude Langlois during the negotiations of the JSO and JST agreements and afterwards concerning the requirement that Motorola outsource its manufacturer representatives following a substantial decrease in the Motorola in-house sales force from 55 to 12 sales representatives.  These representations were made over the telephone, at in-person meetings and at Motorola presentations to Plaintiff and other manufacturer representatives.  Similar representations were made to Scott Williams and Mark Gernhardt at G.L. Williams Associates, Inc. (through Steve Cunha, Paul Holt and Marc Watts) when Defendant negotiated the contract that was finally executed between those two parties.  Indeed, G.L. Williams dropped a  profitable competing line (SBS Technologies) in favor or Motorola given representations of a long-term relationship.  Comparable representations were also made to RT Technologies through some of the same individuals, through the same medium of communication.

Defendant, principally through Marc Watts, Jeanne Kolasa and Dennis Robinson, represented that the POS commission payments payable to Plaintiff, based upon a 5% commission and a historical run rate, would be sufficient to permit Plaintiff to realize a substantial revenue source at the commencement of the engagement.

A-291

2.    Identify and describe with specificity any and all representations you believe Motorola made to JSO as to the expected profitability of JSO as a manufacturer representative for Motorola, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other fact sand documents that support your answer.

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 1 above.  By way of further response, Plaintiff states that representations were made by Dennis Robinson, Marc Watts and Jeanne Kolasa that POS commissions would be approximately $10,000 to $15,000 per month based upon a 5% commission rate.  Further, Paul Holt informed Plaintiff that the sales demand expected to be generated from the long-term relationship would be sufficient to cover the costs of hiring a new employee.  Based on these representations, Plaintiff hired Steve Blomme as an employee.  This was despite the fact that Motorola's Kevin Parslow wanted to keep monthly commission payments to each single manufacturer representative at or below $10,000.  *See* MOTJ00522.

3.    Identify and describe with specificity any and all  representations you believe Motorola made to JSO as to the expected integration of JSO into the Motorola business model, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:**  See Plaintiff's responses to Interrogatory Nos. 1 and 2 above.  Pursuant to Rule 33(d), Plaintiff identifies the following documents:  MOTJ 01073-78 and MOT 01873-1901.

4.    Identify and describe with specificity any other representations or material false statements you believe Motorola made to JSO on which JSO relied to its detriment, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe

these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:**  The above-referenced individuals also made representations concerning client referrals to Plaintiff for the non-competing product lines as well as various other benefits derived from Plaintiff's entry into the embedded technologies marketplace.

5.    Identify and describe with specificity each and every way JSO relied on Motorola's purported representations of a long-lasting relationship, of expected profitability, of expected integration, and any other representation or false statements you believe Motorola to have made and on which JSO relied to its detriment, including but not limited to how JSO invested more than $300,000 supporting Motorola's sales objectives in the United States, as alleged in paragraph 13 of the complaint, how JSO expended "substantial capital" as alleged in paragraph 80 of the complaint, and all other facts and documents that support your answer.

**RESPONSE:**  Plaintiff incurred substantial expenses (payroll, technology, training, travel, marketing, etc.) through the demand creation and design-in phases of working with original equipment manufacturers ("OEM") and other customers.  Plaintiff incurred costs and additional overhead in monitoring and complying with the demand fulfillment aspect of the relationship.  Plaintiff hired Steve Blomme and reassigned current employees to work on Motorola projects.  Further, there were certain opportunity costs (both within and outside of the embedded technologies marketplace) associated with Plaintiff's exclusive relationship with Motorola.  Indeed, Plaintiff reassigned various existing employees to work on Motorola's line when they were previously working on other projects.  *See also* Responses to Interrogatory Nos. 1, 2 and 3 above.

6.    Describe how JSO calculated its anticipated profit of $200,000 for sales of Motorola products for the first year of the parties' Agreement, as alleged in paragraph 13 of the complaint, and all facts and documents that support your answer.

**RESPONSE:**  Plaintiff misstated the definition for the $200,000 identified in paragraph 13 of its Complaint.  That figure is more accurately defined as gross commission revenue.

Dennis Robinson, Marc Watts and Jeanne Kolasa made representations as to present and historical run rates that would drive approximately $10,000 to $15,000 in gross commission payments per month under the JSO Agreement. These representations were made to Steve Blomme and Jeff Gibson.

7.    Explain what you mean in paragraph 13 and how it relates to JSO when you refer to expenditures as "collectively envisioned by the parties to support the sale of Motorola's products under the respective agreements" and identify all facts and documents that support your answer.

**RESPONSE:**  Defendant was aware of Plaintiff's hiring of Steve Blomme as the project coordinator for the JSO Agreement and the substantial salary requirements that were undertaken. In addition, Plaintiff reassigned other employees to the Motorola project.

8.    Describe in detail the "considerable time, energy, and funds" JSO expended to support Motorola's sales objectives, as alleged in paragraph 16 of the complaint, in what ways Motorola approved these expenditures, as alleged in paragraph 17 of the complaint, and all facts and documents that support your answer.

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 5 above.

9.    Identify (as defined in Instruction D) the individuals at JSO who negotiated the Agreement with Motorola and describe the length of time it took for the parties to finalize their Agreement, the number of drafts that were circulated to JSO before the parties finalized their Agreement, each and every basis for the allegation in paragraph 20 of the complaint that Motorola "drafted the material terms of the contracts and presented them on a take it or leave it basis to . . . JSO," and all facts and documents that support your answer.

**RESPONSE:**  Plaintiff objects to this interrogatory to the extent this information is equally accessible to Motorola. Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted therewith. Further, Plaintiff states that Steve Blomme and Jeff Gibson represented JSO during the contract negotiations. Plaintiff believes there were approximately one to two different drafts

7

of the agreement proposed before the final version was approved.  Through these different drafts,

Motorola attempted to incorporate unconscionable forfeiture provisions relating to government

contracts.  Further, Motorola required Plaintiff to agree to performance standards that were not

included in the prior JST Agreement.  Approximately one to two months transpired from the

initiation of negotiations until Plaintiff executed the Agreement.  Following Plaintiff's execution

of the agreement, an additional period of time elapse before Motorola signed the agreement.

Thereafter, an addendum was entered.


        10.    Describe each and every basis for the allegation in paragraph 21 of the complaint
hat Motorola knew JSO was "expending substantial sums of capital" to sell Motorola products
and all facts and documents that support your answer.

        **RESPONSE:**  See Plaintiff's response to Interrogatory No. 7 above.  Defendant knew,

through various progress emails, telephone calls and teleconferences that JSO was making a

substantial investment in the Motorola product line pursuant to the requirements of the

agreement and the parties' understanding of the manufacturer representatives' role in the new

marketing strategy.  By the very framework of the uncommitted, committed and design win

phases, Plaintiff was required to expend substantial amounts of capital in personnel, training,

marketing and travel expenses, amongst other costs.


        11.    Describe with specificity how JSO met its obligations under the Agreement with
Motorola, as alleged in paragraph 32 of the complaint, and all facts and documents that support
your answer.

        **RESPONSE:**  See Plaintiff's responses to Defendant's Requests for Admission and

Plaintiff's responses to Interrogatory Nos. 19 through 21 below.  By way of further response,

Plaintiff states that it complied with all conditions and requirements identified under the

A-295

agreement and that Motorola's termination for performance was unfounded and constituted a breach of contract and/or breach of the covenant of good faith and fair dealing.

12.    Identify and describe with specificity the total number of uncommitted accounts/programs (as that term is used in Exhibit 4 to the Agreement) that JSO brought to Motorola beginning May 15, 2003 and all facts and documents that support your answer, including but not limited to the name of the potential customer or customers, the program or project that the customer was developing, the Motorola product that the customer was potentially interested in purchasing, the quarter in which the uncommitted account/program was acquired, the efforts that JSO made to secure each uncommitted account/program, and all other facts and documents that support your answer.

**RESPONSE:**  Plaintiff objects to this interrogatory to the extent this information is equally accessible to Defendant.  Notwithstanding this objection, as of the termination of Agreement, Plaintiff brought a total of nineteen (19) uncommitted accounts/programs to Motorola.  These included: (i) Broadstorm; (ii) Credence; (iii) VideoTele, MATRIX; (iv) Kentrox-CSUDSU; (v) NUWC-Range Controller; (vi) FEI-cPCI Controller; (vii) FEI-DSP Element; (viii) Zetec-Mini Measure Tool; (ix) COE Manufacturing, (x) Tektronix; (xi) ZEROX-PPC Marvel Controller; (xii) Arrista-68k Controller; (xiii) Boeing FCS; (xiv) Boeing AWACS-Data 1; (xv) Boeing AWACS-Data 2; (xvi) Boeing F22-Simulator; (xvii) Boeing F22-Instrumentation; (xviii) NCube-Intel Tester; and (xix) Lattice Semi-Conductor.  In the days and weeks following termination, Plaintiff's work brought an additional eight (8) uncommitted accounts/programs to Motorola.  The total number of uncommitted accounts was twenty-seven (27).

Motorola did not have a basis at the time of termination (even if valid) to terminate based on failure to achieve the specified threshold of uncommitted accounts/programs.  *See* MOTJ01617-22; MCG015712-16; MCG015588-93.  Motorola's purported basis for termination on this ground was willful, wanton, fraudulent and intended to deprive JSO of its rights under the Agreement.

A-296

13.    Identify and describe with specificity the total number of committed accounts/programs (as that term is used in Exhibit 4 to the Agreement) that JSO brought o Motorola beginning May 15, 2003 and all facts and documents that support your answer, including but not limited to the name of the customer or customers, the program or project that the customer was developing, the Motorola product that the customer purchased, the quarter in which the committed account/program was acquired, the efforts that JSO made to secure each committed account/program, and all other facts and documents that support your answer.

**RESPONSE:**   Plaintiff objects to this interrogatory to the extent this information is equally accessible to Defendant.    Notwithstanding this objection, as of the termination of Agreement, Plaintiff brought a total of five (5) committed accounts/programs to Motorola. These included: (i) Boeing FCS; (ii) Boeing F22 Simulator; (iii) Boeing F22 Instrumentation; (iv) Boeing AWACS-Data 1; (v) Boeing AWACS-Data 2.   In the days and weeks following termination, Plaintiff brought an additional three (3) committed accounts/programs to Motorola. The total number of committed accounts was eight (8).

Motorola did not have a basis at the time of termination (even if valid) to terminate based on failure to achieve the specified threshold of committed accounts/programs.  *See* MOTJ01617-22; MCG015712-16; MCG015588-93.   Motorola's purported basis for termination on this ground was willful, wanton, fraudulent and intended to deprive JSO of its rights under the Agreement.

14.    Identify and describe with specificity the total number of design wins (as that term is used in Exhibit 4 to the Agreement) that JSO brought to Motorola beginning May 15, 2003 and all facts and documents that support your answer, including but not limited to the name of the customer or customers, whether the customer was a military/aerospace entity, a description of the product that the customer was building, a description of the Motorola product that the customer purchased for inclusion in its product, whether the customer wanted a Motorola board product or system product, the customer's annual revenue forecast, how the customer evidence its intent to purchase Motorola products, the total dollar amount purchased by the customer at the date of termination of the Agreement, the quarter in which the design win was acquired, the efforts JSO made to secure each design win, and all other facts and documents that support your answer.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent this information is equally accessible to Defendant. Notwithstanding this objection, as of the termination of Agreement, Plaintiff brought a total of four (4) design wins to Motorola. The design wins included: (i) Boeing AWACS-Data 1; (ii) Boeing AWACS-Data 2; (iii) Boeing F22-Simulator; and (iv) 888 LocalDial.

Motorola did not have a basis at the time of termination (even if valid) to terminate based on failure to achieve the specified threshold of design wins. *See* MOTJ01617-22; MCG015712-16; MCG015588-93. Motorola's purported basis for termination on this ground was willful, wanton, fraudulent and intended to deprive JSO of its rights under the Agreement.

15.    Identify (as defined in Instruction D) the JSO sales representative or representatives that sold products for Motorola and fully explain the sales representatives' responsibilities with regard to Motorola, whether the sales representative also sold products for other companies, and what percentage of the sales representative's time was spent selling Motorola products.

**RESPONSE:** Steve Blomme (80%), John Mitchell (70%), David Roth (20%) and Ken Sullivan (20%) worked to solicit customers, design product solutions and service demand fulfillment responsibilities under the Agreement, amongst other responsibilities. The approximate percentage of each individual's professional time spent on Motorola product lines is noted parenthetically. Messrs. Blomme, Roth and Sullivan are current employees of JSO and may be contacted through counsel. Mr. Mitchell resigned his position with JSO to continue his career elsewhere. Counsel will facilitate any communications with Mr. Mitchell that are necessary.

16.    Identify (as defined in Instruction D) all JSO employees that had a duty or responsibility in connection with meeting JSO's obligations under the Agreement and describe each such employee's job title and job duties during the time the Agreement was in effect. If the employee no longer works for JSO, indicate date of termination.

WILM1\322672 153371.000

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 15 above.  By way of further response, Plaintiff identifies Jeff Gibson and Claude Langlois.

17.     Explain what you mean in paragraph 3 of your disclosure statement and how it relates to JSO when you write that "Plaintiffs have incurred in excess of $750,000 to design-in Motorola products with Plaintiffs' customers in reliance on Defendant's representations of fact" and identify all facts and documents that support your answer.

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 5 above.  At a minimum, Plaintiff is due the additional commission payments under the Agreement, given proper expiration of the Agreement following its one-year anniversary and a *bona fide* decision not to renew by either party.  Alternatively, Plaintiff forecasted a substantial return on investment after the first two years under the Agreement.  Had Defendant complied with the representations made both before, during and after the negotiations leading to the execution of the Agreement, Plaintiff would have realized a return on investment similar (at approximately the same rate) to that depicted in J2 1675.  Plaintiff's expectations are also partially substantiated by Motorola's own "uplift" calculations of commissions owing under the Agreement, given the historical run rates for sales.

Plaintiff may, in accordance with the requirements of the scheduling order, designate a trial expert to provide additional testimony on this subject.  Accordingly, Plaintiff reserves its right to amend or supplement this response.

18.     Explain in detail JSO's computation of damages, including but not limited to its method of calculation, how JSO together with JST has incurred in excess of $750,000 in damages as set forth in JSO's disclosure statement, and all facts and documents that support this computation.

**RESPONSE:**  See Plaintiff's response to Interrogatory Nos. 5, 6 and 17 above and JST's responses to Defendant's First Set of Interrogatories.

WILM1\32267\2 153371.000

19.    If you deny request for admission no. 1, explain why.

**RESPONSE:**    As described in the response to Interrogatory No. 12 above, Plaintiff obtained a total of nineteen (19) uncommitted counts/programs as of the date of termination and twenty-seven (27) given a consideration of the days and weeks that followed.


20.    If you deny request for admission no. 1, explain why.

**RESPONSE:**    As described in Plaintiff's response to Interrogatory No. 13 above, Plaintiff secured five (5) committed accounts/programs as of the date of termination or eight (8) given a consideration of the days and weeks that followed.


21.    If you deny request for admission no. 3, explain why.

**RESPONSE:**    As described in Plaintiff's response to Interrogatory No. 14 above, Plaintiff secured four (4) design wins as of the date of termination.

WILM1\322672 153371.000

## REQUESTS FOR PRODUCTION

1.      Please produce any and all documents that support your responses to Motorola's interrogatories or that you consulted or referred to in responding to these interrogatories.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

2.      Please produce any and all documents relating to any representations you believe Motorola made to JSO regarding the anticipated duration of Motorola's relationship with JSO.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

3.      Please produce any and all documents relating to any representations you believe Motorola made to JSO regarding the expected profitability of JSO as a manufacturer representative for Motorola.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

4.      Please produce any and all documents relating to any representations you believe Motorola made to JSO regarding the expected integration of JSO into the Motorola business model.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

5.      Please produce any and all documents relating to any other representations or false statements you believe Motorola made to JSO on which JSO on which JSO relied to its detriment.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

6.      Please produce any and all documents supporting your contention that JSO relied on representations Motorola made about a long-lasting relationship, expected profitability,

expected integration, and any other representations or false statements you believe Motorola made to JSO on which JSO relied to its detriment.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

7.    Please produce any and all documents supporting JSO's contention that it anticipated a profit of $200,000 for sales of Motorola products for the first year of the parties' Agreement.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

8.    Please produce any and all documents supporting JSO's contention that it expended "considerable time, energy, and funds" to support Motorola's sales objectives.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

9.    Please produce all documents relating to the negotiation and drafting of JSO's Agreement with Motorola, including but not limited to all correspondence between Motorola and JSO, all correspondence between employees at JSO involved in negotiating and drafting the Agreement, all notes created by employees at JSO regarding the negotiation and drafting of the Agreement, and all drafts of the parties' Agreement.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

10.    Please produce any and all documents that support the allegation in paragraph 21 of the complaint that Motorola knew JSO was expending substantial sums of capital to sell Motorola products.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

11.    Please produce any and all documents that support the allegation in paragraph 32 of the complaint that JSO met all of its obligations under the parties' Agreement.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

12.    Please produce any and all documents regarding uncommitted accounts/programs, committed accounts/programs, and design wins (as those terms are used in Exhibit 4 to the Agreement) that JSO brought to Motorola from May 15, 2003 to the present.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

13.    Please produce all monthly account update reports and other documents regarding JSO's efforts to secure business for Motorola.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

14.    Please produce any and all communications from March 1, 2003 to the present between JSO and Motorola and any document that refers or relates to such communications.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff will not undertake such a search other than as contemplated through its responses to the balance of Defendant's requests.

15.    Please produce any and all documents that support JSO's claim for damages and its computation of damages.

**RESPONSE:**    Plaintiff will provide any additional information concerning the computation of damages as required by the expert disclosure deadlines identified in the Court's scheduling order.

16.    Please produce any and all documents sent to or received from any person you expect to call as an expert witness in this case that refer or relate to that person's testimony and/or opinion including but not limited to communications, checks, invoices, or statements, reports, data, analysis, notes, tangible things, and memoranda.

**RESPONSE:**   Plaintiff will provide any additional information concerning the computation of damages as required by the expert disclosure deadlines identified in the Court's scheduling order.

AS TO OBJECTIONS:

Dated: December 6, 2005

David A. Felice

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

Of counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.,<br>a Canadian corporation, and | ) | |
| | ) | |
| | ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC.,<br>an Oregon corporation, | ) | |
| | ) | |
| | ) | C.A. No. 04-960-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MOTOROLA, INC.,<br>a Delaware corporation | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that on December 6, 2005 true and correct copies of *Plaintiff*

*J-Squared Technologies, (Oregon) Inc.'s Responses to Defendant's First Set of Interrogatories*

*and Requests for Production* were served upon the following parties:

William W. Bowser               Randy Papetti
Young Conaway Stargatt & Taylor     Lewis and Roca LLP
The Brandywine Building          40 N. Central Avenue
1000 West Street, 17th Floor      Phoenix, AZ  85004
Wilmington, DE  19801

Dated: December 6, 2005

David A. Felice
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on December 6, 2005, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Randy Papetti
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ  85004

David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: dfelice@cozen.com

A-306

WILM1\32267\2 153371.000

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2005 WL 2406034 (D.Minn.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
Eric MITCHELL, on behalf of himself and other
others similarly situated, Plaintiff,
v.
FRANKLIN BANK, S.S.B., Defendant.
**No. Civ. 05-1320 PAMRLE.**

Sept. 29, 2005.

Gregory P. Sautter, Zimmerman Reed, Mpls, MN,
Hart Lawrence Robinovitch, Zimmerman Reed,
Scottsdale, AZ, for Plaintiff.
Amy K. Amundson, James L. Forman, Rider
Bennett LLP, Mpls, MN, Brian P. Perryman, David
M. Souders, Mitchel H. Kider, Weiner Brodsky
Sidman Kider PC, Washington, DC, Daniel J.
McGarry, Whyte Hirschboeck Dudek, Madison,
WI, for Defendant.

MEMORANDUM AND ORDER

MAGNUSON, J.
*1 This matter is before the Court on Defendant's
Motion to Dismiss. For the following reasons, the
Motion is granted in part and denied in part.

BACKGROUND

Defendant Franklin Bank, S.S.B., is a mortgage
lender incorporated in Texas that conducts business
in over fifty branches in twenty states. Defendant
employs local branch managers to manage and
operate local branches. Branch managers and
Defendant are governed by the "Branch Manager
Offer of Employment and Compensation
Memorandum" ("Memorandum").

Plaintiff Erik Mitchell signed the Memorandum
when he began his employment with Defendant in

Edina, Minnesota, in April 2003. Plaintiff alleges
that he made advance payments of branch office
operating expenses out of his personal accounts,
and submitted such expenses for reimbursement as
permitted by the Memorandum. However, Plaintiff
alleges that Defendant refused his reimbursement
requests.

Plaintiff seeks to recover the operating expenses
that he has allegedly advanced, and further purports
to represent a class of similarly situated persons
nationwide who worked as Branch Managers for
Defendant. The Amended Complaint states four
causes of action: Count I, breach of contract; Count
II, intentional and negligent misrepresentation;
Count III, money had and received; and Count IV,
unjust enrichment. Defendant brings this Motion on
all of Plaintiff's claims.

DISCUSSION

A. Standard of Review

For the purposes of the Motion to Dismiss, the
Court takes all facts alleged in the Complaint as
true. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th
Cir.1990). The Court must construe the allegations
in the Complaint and reasonable inferences arising
from the Complaint favorably to Plaintiff. *Morton
v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A
motion to dismiss will be granted only if "it appears
beyond doubt that the Plaintiff can prove no set of
facts which would entitle him to relief." *Id.; see also
Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957).

B. Count I: Breach of Contract

Defendant contends that this claim must be
dismissed because it fails to itemize Plaintiff's
alleged damages or explain how Defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-307

Slip Copy                                                                                     Page 2

Slip Copy, 2005 WL 2406034 (D.Minn.)
**(Cite as: Slip Copy)**

breached the contract. The Amended Complaint seeks recovery of branch operating expenses advanced by Plaintiff that Defendant was obligated to pay both under the terms of the Memorandum and the requirements of federal law. In particular, Plaintiff alleges that "[t]hese expenses include, but are not limited to, all operating expenses, all lease or sublease payments or expenses, all office supply expenses, all marketing and promotional expenses, and all other costs, expenses, and charges attributable to, generated by or otherwise properly allocable to the Branch Office." (Am.Compl.¶ 13) (internal quotations omitted). Although the Amended Complaint does not identify a specific loss amount, it does allege that Plaintiff seeks damages in an amount to be determined at trial. Moreover, the Amended Complaint sufficiently identifies Defendant's alleged failures under the terms of the Memorandum. Plaintiff has sufficiently stated a claim for breach of contract, and Defendant's Motion on Count I is denied.

### C. Count II: Intentional Negligent and Misrepresentation

#### 1. *Intentional Misrepresentation*

**\*2** Defendant contends that the Amended Complaint may not contain both a claim for breach of contract and a claim for intentional misrepresentation because the damages that Plaintiff seeks are identical. Plaintiff alleges that Defendant fraudulently induced him to enter the Memorandum. He contends that Defendant falsely represented that it would comply with the terms of the Memorandum, but that it had no present intention to do so. (Am.Compl.¶ 60.) Indeed, these allegations state a claim for fraudulent inducement. *See Bakke v. Keller,* 220 Minn. 383, 19 N.W.2d 803, 809 (Minn.1945); *see also Vandeputte v. Soderholm,* 298 Minn. 505, 216 N.W.2d 144, 147 (Minn.1974) (discussing intentional misrepresentation of present intention, which requires plaintiff to prove that promisor had no intention to perform at the time the promise was made).

Minnesota law permits a party to recover under both a breach of contract and fraud theory in an employment context. *See Hanks v. Hubbard Broad., Inc.,* 493 N.W.2d 302, 308 (Minn.Ct.App.1992). However, "[t]he breach of an employment contract does not give rise to a tort claim where the breach of duty is indistinguishable from the breach of contract." *Id.* (internal quotations omitted). In order to recover under both theories, Plaintiff bears the burden to prove separate damages for fraud and for breach, to avoid double recovery. *Id.; see also Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 379 (Minn.1990) (although parallel actions may be maintained for the same harm, double recovery is not permitted).

The Court finds Defendant's argument premature. Plaintiff has properly pled both a breach of contract and an intentional misrepresentation claim. Although Plaintiff is not entitled to double recovery, Plaintiff is entitled to maintain parallel actions for the same harm. In order for Plaintiff to recover under both causes of action, Plaintiff bears the burden to prove separate damages. However, Plaintiff is not required to prove separate damages at this early stage of the litigation. Moreover, construing the Amended Complaint broadly, Plaintiff alleges that he previously worked for another lending institution in another state, but that he took the job with Defendant based on its fraudulent representations. (*See* Am. Compl. ¶ 28.) Thus, any damages related to these allegations are distinct and separate from the alleged breach of contract damages. For clarification, the Court will permit Plaintiff to amend his intentional misrepresentation claim within twenty days of this Order, to include a claim for these reliance damages and any other damages which may be separate and distinct from the breach of contract damages. Therefore, Defendant's Motion on this point is denied.

#### 2. *Negligent Misrepresentation*

Defendant contends that Plaintiff's negligent misrepresentation claim must be dismissed because the Amended Complaint fails to allege any false representation of past or present fact. Plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-308

Slip Copy                                                                    Page 3

Slip Copy, 2005 WL 2406034 (D.Minn.)
**(Cite as: Slip Copy)**

contends that this claim is presented as an alternative claim to intentional misrepresentation.

*3 Plaintiff's negligent misrepresentation claim fails as a matter of law. Negligent misrepresentation occurs when:
One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Colangelo v. Norwest Mortgage, Inc.,* 598 N.W.2d 14, 19 (Minn.Ct.App.1999) (quoting *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 298 (Minn.1976)). Unlike intentional misrepresentation, negligent misrepresentation does not require proof of fraudulent intent. *Florenzano v. Olson,* 387 N.W.2d 168, 173-74 (Minn.1986). Here, Plaintiff alleges that Defendant made negligent representations about its intent to follow federal law and to pay branch operating expenses. (*See* Am. Compl. ¶¶ 23-30.) These allegations do not allege that Defendant failed to take care in obtaining or communicating information, but rather allege that Defendant made misrepresentations about its intent to perform in the future. Although a cause of action for intentional misrepresentation of present intention may lie, a claim for negligent misrepresentation with the same premise cannot. Indeed, it is not possible to be negligent in failing to ascertain the truth or falsity of one's present intention to act in the future. *See Clearly Canadian Beverage Corp. v. Am. Winery, Inc.,* 257 F.3d 880, 893 (8th Cir.2001) (discussing negligent misrepresentation of present intention under Missouri law); *see also Eckhold v. Am. Bus. Info., Inc.,* 873 F.Supp. 521, 532 (D.Kan.1994) ( " defendants either intended to carry out their promises, or they did not. To recognize a claim for negligent promise ... would be to endow every breach of contract with a potential tort claim for negligent promise."). Thus, Plaintiff's negligent misrepresentation claim must be dismissed.

## D. Counts III and IV: Money Had and Received and Unjust Enrichment

Defendant contends that these claims must be dismissed. Indeed, equitable claims may not be sustained where the parties' rights are governed by a valid contract. *See U.S. Fire Ins. Co. v. Minn. State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn.1981). Plaintiff alleges the existence of a valid express contract. However, Defendant has not yet answered the Amended Complaint and therefore has not admitted or denied any of the allegations, including the existence of a valid contract. Thus, although the validity of the contract does not appear to be in dispute, Plaintiff has attempted to plead alternative theories as a cautionary measure. Plaintiff acknowledges that he has not properly pled these claims as alternative theories and requests the opportunity to formally amend the Amended Complaint to plead these equitable claims as alternative claims. Accordingly, the Court grants Plaintiff's request and orders Plaintiff to file a Second Amended Complaint within twenty days of this Order.

## CONCLUSION

*4 The Court finds that Plaintiff's Complaint sufficiently states a claim for breach of contract and intentional misrepresentation, but Plaintiff's negligent misrepresentation claim fails as a matter of law. Further, the Court grants Plaintiff leave to amend the Amended Complaint within twenty days as stated in this Order. Based on all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:
1. Defendant's Motion to Dismiss (Clerk Doc. No. 3) is DENIED in part and GRANTED in part;
2. Plaintiff's claim for negligent misrepresentation is DISMISSED with prejudice; and
3. Within twenty days, Plaintiff may AMEND Count II, intentional misrepresentation, and Counts III and IV, as stated in this Order.

D.Minn.,2005.
Mitchell v. Franklin Bank, S.S.B.
Slip Copy, 2005 WL 2406034 (D.Minn.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-309

Slip Copy                                                                                                Page 4

Slip Copy, 2005 WL 2406034 (D.Minn.)
**(Cite as: Slip Copy)**


Briefs and Other Related Documents (Back to top)

• 2006 WL 770163 (Trial Motion, Memorandum and Affidavit) Franklin Bank, S.S.B.'s Reply in Support of its Motion to Strike the Class Allegations from the Second Amended Complaint (Feb. 10, 2006)

• 2006 WL 770135 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Motion for Judgment on the Pleadings as to Counts III and IV (Feb. 2, 2006)

• 2006 WL 770162 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike Class Allegations and Certification Requests from Second Amended Complaint (Feb. 2, 2006)

• 2005 WL 3621392 (Trial Pleading) Answer by Defendant Franklin Bank, S.S.B., to the Second Amended Complaint and Counterclaim Against Plaintiff (Nov. 1, 2005)

• 2005 WL 3621388 (Trial Pleading) Second Amended Complaint (Class Action) (Oct. 18, 2005)

• 2005 WL 2604904 (Trial Motion, Memorandum and Affidavit) Franklin Bank, S.S.B.'s, Reply in Support of Its Motion to Dismiss the Amended Complaint or, in the Alternative, for a More Definite Statement as to Count I (Aug. 26, 2005)

• 2005 WL 2604903 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Franklin Bank, S.S.B.'s Motion to Dismiss the Amended Complaint or, in the Alternative, for a More Definite Statement as to Count I (Aug. 18, 2005)

• 2005 WL 2267003 (Trial Motion, Memorandum and Affidavit) Franklin Bank, S.S.B.'s, Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint or, In the Alternative, For a More Definite Statement as to Count I (Jul. 11, 2005)

• 0:05cv01320 (Docket) (Jul. 01, 2005)

END OF DOCUMENT


© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-310

Westlaw.

Not Reported in F.Supp.                                                                 Page 1

Not Reported in F.Supp., 1988 WL 71243 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
TRACTOR & EQUIPMENT CO., an Illinois
corporation, Plaintiff,
v.
KOBELCO AMERICA, INC., a Delaware
corporation, Defendant.
**No. 88 C 2159.**

June 28, 1988.

*MEMORANDUM OPINION AND ORDER*

GEORGE M. MAROVICH, District Judge.

### I. *Introduction*

*1 Presently before the court is defendant Kobelco's
motion to dismiss Count VI of plaintiff's complaint
pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons
stated below, Kobelco's motion to dismiss Count VI
is granted.

### II. *Facts*

Tractor & Equipment Co. ("T & E") is an Illinois
corporation which sells, services and repairs heavy
construction equipment. Kobelco America, Inc. ("
Kobelco") is a manufacturer or subsidiary of a
manufacturer of heavy construction equipment for
sale in the United States.

On May 5, 1986, T & E and Kobelco entered into a
written Distributorship Agreement in which plaintiff
was given the right to distribute Kobelco equipment
for an initial one-year period in the Chicago
metropolitan area. On March 2, 1987, Kobelco
terminated the Distributorship Agreement with the
plaintiff.

The plaintiff thereafter filed a six-count amended
complaint against Kobelco seeking actual and
punitive damages as a result of the termination of
the Distributorship Agreement. Counts I, II, III
allege causes of action for breach of contract;
Count IV alleges Kobelco owes T & E money due
on an open account; Count V alleged a cause of
action under the Illinois Franchise Disclosure Act ;
and Count VI alleges a cause of action under the
doctrine of promissory estoppel.

### III. *Analysis*

Kobelco has moved to dismiss the promissory
estoppel count (Count VI) on two grounds: (1) the
Statute of Frauds bars T & E from invoking the
doctrine of promissory estoppel; and (2) the
alleged promise between T & E and Kobelco to
continue the distributorship on a long-term basis is
too uncertain to support a claim of promissory
estoppel.

In ruling on a motion to dismiss, this court must
accept the allegations of plaintiff's complaint as
true. *Henshon v. King & Spalding,* 467 U.S. 69, 73,
104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A
motion to dismiss should not be granted unless it
appears that plaintiff can prove no set of facts in
support of his claim which would entitle him to
relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78
S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Kobelco first argues that plaintiff's promissory
estoppel claim is barred by the Statute of Frauds.
Specifically, the alleged oral promise that T & E
would be Kobelco's exclusive dealer for a period
longer than one year requires a writing.

Plaintiff claims, however, that the Statute of Frauds
does not apply to this case since any requirement of
a writing is satisfied by the Distributorship
Agreement itself. Plaintiff asserts that the
Distributorship Agreement constitutes a sufficient

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-311

Not Reported in F.Supp.                                        Page 2

Not Reported in F.Supp., 1988 WL 71243 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

written memorialization of Kobelco's alleged oral
promise not to terminate the plaintiff.

However, plaintiff's reliance on the Distributorship
Agreement itself to avoid the Statute of Frauds
defense and to support its promissory estoppel
claim is faulty for several reasons.

First, plaintiff's cause of action would be for breach
of contract, not promissory estoppel. *See Guaranty
Bank v. Lone Star Life Ins. Co.,* 568 S.W.2d 431,
434 (Tex.App.1978) (If the promise is part of a
valid contract, the promisee cannot disregard the
contract and sue for reliance damages under the
doctrine of promissory estoppel.)

**\*2** Second, even if the plaintiff could rely on the
Distributorship Agreement to support its promissory
estoppel claim, the Agreement itself contradicts
plaintiff's    argument.    The    Distributorship
Agreement is clear and unambiguous in that T & E
would serve as a distributor initially for a one-year
period.   The   Agreement   also   clearly   and
unequivocally grants either party the right to
terminate   the   Agreement   within   one   year.
(Distributors Agreement, p. 10) Accordingly, the
Distributorship Agreement *cannot* be interpreted, as
a matter of law, to contain a promise not to
terminate the plaintiff for a period of time in excess
of one year.

Plaintiff further argues that even though the written
Agreement expressly provided that T & E would
serve as Kobelco's distributor for an initial period of
one year, the parties intended to enter into a
long-term relationship whereby each party was
expected to invest substantial resources. In its
memorandum,    plaintiff    relies    on    allegations
contained in paragraph 8 of its complaint to support
its   contention:   both   parties   "understood,
contemplated,   and   agreed   that   a   long-term
relationship was in the best interests of both
Kobelco and T & E." In addition, both parties
understood and agreed "it would be economically
unjustified for T & E to undertake these
commitments for an Agreement which was to last
only one year." (Plaintiff's memo. p. 7; Complaint
¶ 8)

However, what the plaintiff is asking this court to
consider is evidence of an alleged oral agreement
made   prior   to   the   written   Distributorship
Agreement. The parole evidence rule provides:

" 'When the terms of a contract have been
embodied in a writing to which both parties have
assented as the definite and complete statement
thereof, parol evidence of antecedent agreements,
negotiations, and understandings is not admissible
for the purpose of varying or contradicting the
contract so embodies.'

Under Texas law, the parol evidence rule excludes
evidence of prior or contemporaneous negotiations
and representations that are introduced to *vary, add
to,* or *contradict* the terms of a valid written
instrument, which is presumed by the rule to
embody the complete agreement of the parties."
*Cox v. Bell Helicopter Intern.,* 425 F.Supp. 99, 103
(N.D.Texas 1977) (quoting 3 Corbin § 573). Thus,
the parol evidence rule precludes the consideration
by this court of any alleged oral promises made by
Kobelco which are not contained in the Agreement.
*See Wojciechowski v. Amoco Oil Co.,* 483 F.Supp.
109, 115 (E.D.Wis.1980) (stating, "the parol
evidence rule nullifies the salutory effects of the
doctrine of promissory estoppel.")

In addition, Section 12.7 of the Agreement contains
an "integration" clause which precludes this court
from considering Kobelco's alleged oral promises.
Section 12.7 of the Agreement states:

**\*3** This   agreement   supercedes   all   prior
communications and understanding between the
parties concerning, and constitutes the parties' sole
agreement with respect to, the subject matter hereof.

In this case, if the parties had "understood,
contemplated, and agreed" to enter into a long-term
relationship which would go beyond the initial
one-year period, they should have expressly stated
as such in their Distributorship Agreement. Having
failed to do so, plaintiff cannot rely on their alleged
oral agreement to give effect to the Distributorship
Agreement.

In a last-ditch effort to bring itself within one of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 3

Not Reported in F.Supp., 1988 WL 71243 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

exceptions to the Statute of Frauds, plaintiff contends "there was a promise to put the oral agreement between [plaintiff] and Kobelco in writing ..." (Plaintiff's Memo, p. 10) However, plaintiff's allegation appears nowhere on the face of the complaint. As such, plaintiff's argument is without foundation and therefore will not be considered by this court.

Kobelco also argues that the terms of the oral agreement giving rise to plaintiff's promissory estoppel claim are too indefinite to be enforced. Since this court finds that plaintiff fails to state a cause of action for promissory estoppel, it need not address Kobelco's second argument.

### V. Conclusion

For the reasons stated above, Kobelco's motion to dismiss Count VI of the complaint is granted.

FN1. Pursuant to an agreement between counsel for the parties, T & E will withdraw Count V of the complaint.

FN2. This court will apply Texas law to this dispute due to the Texas choice of law provision contained in the Distributorship Agreement. (*See* Distributorship Agreement at ¶ 12.3).
The Texas Statute of Frauds states, in pertinent part:
(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, it
(1) in writing; and
(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
(b) Subsection (a) of this section applies to
...
(6) an agreement which is not to be performed within one year from the date of making the agreement.
*Tex.Bus. & Comm.Code Ann.* § 26.01 (Vernon 1968 and Supp.1987)

FN3. Texas law provides an exception to the rule that promissory estoppel cannot be used to avoid the defense of the Statute of Frauds. *See Benoit v. Polysar Gulf Coast Inc.,* 728 S.W.2d 403 (Tex.App.1987) (Where there is an agreement to reduce the oral agreement in writing).
N.D.Ill.,1988.
Tractor & Equipment Co. v. Kobelco America, Inc.
Not Reported in F.Supp., 1988 WL 71243 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.