IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARE TECHNOLOGIES (OREGON) INC., an Oregon corporation,<br><br>                   Plaintiffs,<br><br>      v.<br><br>MOTOROLA, INC., a Delaware corporation.<br>                   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 04-CV-960-SLR<br>)<br>) |

# EXHIBIT N TO
# MOTOROLA'S RESPONSE TO PLAINTIFFS'
# MOTION FOR PROTECTIVE ORDER

YOUNG CONAWAY STARGATT & TAYLOR, LLP
/s/ William W. Bowser
_____
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

*Cerda*

EXHIBIT A

MANUFACTURER'S REPRESENTATIVE AGREEMENT

between

MOTOROLA COMPUTER GROUP

and

J-SQUARED TECHNOLOGIES

## TABLE OF CONTENTS

Article I. Definitions..................................................................................................3
Article II. Appointment and Scope..........................................................................3
Article III. Representative's Compensation............................................................5
Article IV. Representative Obligations....................................................................7
Article V. Motorola Obligations...............................................................................9
Article VI Confidentiality and Proprietary Rights.................................................10
Article VII. Term and Termination........................................................................11
Article VIII. Dispute Resolution.............................................................................13
Article IX. General Provisions...............................................................................13

LIST OF EXHIBITS

- EXHIBIT 1: REPRESENTATIVE PRODUCT LIST/COMMISION RATES
- EXHIBIT 2: TERRITORY AND HOUSE ACCOUNT LIST

THIS AGREEMENT is made and effective on the date of the last signature below by and between Motorola Inc., a Delaware corporation, by and through its Computer Group having an office at 2900 South Diablo Way, Tempe Arizona, United States of America ("Motorola"), and J-Squared Technologies, Inc., a Corporation organized under the laws of Canada, and having an office address of 4015 Carling Ave, Suite 101, Kanata, Ontario, Canada ("Representative").

Article I. Definitions

1.1    Agreement. "Agreement" means this document and any exhibit, attachment, schedule, addendum, or modification unless the context otherwise indicates.

1.2    Customer. "Customer(s)" means any purchaser of Products from Motorola for end use in the Territory.

1.3    Products. "Products" means those Motorola products and systems that are specifically identified at Exhibit 1.

1.4    Confidential Information. "Confidential Information" means all information which is disclosed in oral, written, graphic, machine recognizable, and/or sample form, and which is clearly designated, labeled or marked as confidential or its equivalent and includes all know-how, designs, drawings, specifications, catalogs, data sheets, sales and technical bulletins, service manuals, mechanical diagrams, and all other information relating to the design, manufacture, use, and service of the Products, including any other information relating to Motorola's business that may be sent to Representative during performance of this Agreement and that is not generally known in the trade.

1.5    Territory. "Territory" is limited to the area or specified accounts identified in Exhibit 2.

Article II. Appointment and Scope

2.1    Appointment. Subject to the terms, conditions and duration of this Agreement, Motorola appoints Representative as a non-exclusive, independent manufacturer's representative of the Products for end use in the Territory at such prices and upon such terms and conditions as established by Motorola. Representative accepts this appointment and agrees to devote such time and attention to the performance of such duties as may be reasonably necessary. Representative shall not, without Motorola's written authorization, register as Motorola's representative in any country or jurisdiction other than Territory.

2.2    Territory Exclusivity. This appointment is nonexclusive. While it is not currently Motorola's intent, Motorola retains the right to appoint additional sales representatives, agents, distributors or other representative for Products in or for the Territory. Motorola may also at any time sell any Products directly, as identified in Exhibit 1 or by written notice as provided for in paragraph 3.1, or indirectly through any Motorola subsidiary or affiliate without incurring any commission or other payment obligation to Representative of any type or nature. Motorola specifically reserves the House Accounts listed in Exhibit 2 as Motorola direct accounts for which Representative will not be entitled to receive any commission.

3

2.3 Distribution Outside Territory. Representative will limit its Product sales activities to Customers within the Territory and will not market Products outside the Territory.

2.4 Agents and Subrepresentatives. Representative may not appoint any agent, subrepresentative, or other person ("Sub-Agent") to promote Product sales or to otherwise perform any of Representative's obligations without Motorola's prior written approval and compliance with Motorola's policy for obtaining such approval. Motorola's approval of any such Sub-Agent shall be based upon Motorola's review of information provided by Representative. Any such approval shall not be deemed to create any obligation between Motorola and Sub-Agent. Actions of Sub-Agents shall be the sole responsibility of Representative and Representative agrees to indemnify and hold Motorola harmless against any and all acts, whether unintentional or deliberate, on the part of the Sub-Agent. Prior to furnishing any Product to a Sub-Agent, Representative shall obtain a signed agreement from such Sub-Agent consistent with the terms of this Agreement and shall, among other things, require that the Sub-Agent comply with the United States Foreign Corrupt Practices Act and Motorola's Code of Business Conduct. Sub-Agents will in no event be allowed to describe themselves or advertise themselves as Motorola authorized representatives or distributors.

2.5 Independent Contractor Status. Representative is an independent contractor who will not be considered a Motorola employee, agent or legal representative for any purpose; neither Representative nor any of its directors, officers, employees or agents will be, or will be considered, a Motorola agent or employee. Representative is not granted and will not exercise any right or authority to assume or create any obligation or responsibility on behalf of, or in the name of, Motorola. Specifically, Representative does not have authority, on Motorola's behalf, to: a) contract or make commitments; b) change prices or terms and conditions of sales; c) make warranties, oral or written, express or implied concerning Products; or d) take any action which would result in Motorola's liability for state, federal, or local taxes or any expenses of any kind.

2.6 Operations and Expenses. Representative's detailed operations under this Agreement are subject to the sole control and management of Representative. Representative is responsible for all its own expenses and employees and for providing, at its own expense, such office space, facilities, and training as may be required to carry out its obligations under this Agreement. Representative will incur no expense chargeable to Motorola, except as specifically authorized in advance in writing by Motorola. Any such chargeable expense shall be documented in accordance and consistent with applicable Motorola policies.

2.7 Noncompetition. Representative will not sell, offer for sale, or act as sales agent for the solicitation of orders for any products that are competitive with any of the Products as defined by Motorola; nor will Representative engage in any activity that may result in a relationship with current or future customers that creates a conflict of interest as defined by Motorola.

obligations hereunder, delays in transportation, and inability to obtain necessary labor, supplies, or manufacturing facilities.

9.4 Severability. Subject to the provisions of Paragraph 7.2D above, the illegality or unenforceability of any provision of this Agreement will not affect the validity and enforceability of any legal and enforceable provisions hereof.

9.5 Nonassignment. This Agreement will be binding on and inure to the benefit of the successors and assigns of the business interests of Motorola and may be assigned by Motorola only to the acquirer of substantially all of Motorola's assets in conjunction with such an acquisition. Representative will not sell, assign, delegate, or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Motorola.

9.6 Language. The English language version of this Agreement will govern and control any translations of the Agreement into any other language.

9.7 Applicable Law. This Agreement will be construed, enforced, and performed in accordance with the internal laws of Arizona, U.S.A. without reference to principles of conflicts of laws and specifically excluding the UN Convention of the Sale of Goods with respect to any purchases hereunder. Use of Arizona law shall apply exclusively to this Agreement.

9.8 Non-Solicitation. During the term of this Agreement and for a period of eighteen (18) months following the expiration or termination of this Agreement, neither party or its successors and assigns will encourage or solicit any employee to leave the employ of the other without written approval; the foregoing does not prohibit mass media advertising not specifically directed towards any particular employee of the other party.

99 Waiver. Motorola's failure to require Representative's performance of the provisions herein will not operate as a waiver of Motorola's right to request strict performance of the same or like provisions, or any other provisions hereof, at a later time.

910 Headings. Headings are for convenience of reference only and are not a part of this Agreement, nor will they in any way affect interpretation hereof.

IN WITNESS WHEREOF, Motorola and Representative have caused this Agreement to be executed by their duly authorized employees.

| Representative: | Motorola Inc., Motorola Computer Group |
|---|---|
| J-Squared Technologies, Inc. | |
| (Authorized Signature) | (Authorized Signature) |
| By: Jeff Gibson | Dennis McCarthy |
| (Typed Name) | (Typed Name) |
| CEO | General Manager (Acting) |
| (Title) | (Title) |
| November 28, 2002 | Dec 5th 2002 |
| (Date) | (Date) |

| ADDRESS FOR FORMAL NOTICE: | ADDRESS FOR FORMAL NOTICE: |
|---|---|
| J-Squared Technologies, Inc. | Motorola Computer Group |
| 4015 Carling Ave, Suite 101 | 2900S. Diablo Way, DW103 |
| Kanata, Ontario | Tempe, AZ 85282 USA |
| K2K 2A3, Canada | |
| Fax No.(613) 592-7051 | Fax No. (602) 438-6246 |
| ATTENTION: Jeff Gibson | ATTENTION: Group Contracts |