IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., <br> J-SQUARED TECHNOLOGIES <br> (OREGON) INC., | : <br> : <br> : <br> : | |
| Plaintiffs, | : <br> : | C.A. No. 04-960-SLR |
| v. | : <br> : | |
| MOTOROLA, INC., | : <br> : | |
| Defendant. | : | |
| G.L. WILLIAMS ASSOCIATES, INC.; <br> RT TECHNOLOGY, LLC; and WEST <br> COAST REPS, INC. | : <br> : <br> : <br> : | |
| Plaintiffs, | : <br> : | C.A. No. 06-114-SLR |
| vs. | : <br> : | |
| MOTOROLA, INC., | : <br> : | |
| Defendant. | : | |

**MOTOROLA'S RESPONSE TO PLAINTIFFS' MOTION TO CONSOLIDATE**

William W. Bowser
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:
Randy Papetti
Cory A. Talbot
Emily S. Cates
LEWIS AND ROCA LLP
40 N. Central Avenue
Phoenix, Arizona 85004
(602) 262-5311

Attorneys for Defendant

DATED: May 11, 2006

**I.    Introduction.**

Three weeks after the close of fact discovery in *J-Squared Technologies, Inc., et al. v. Motorola, Inc.*, C.A. No. 04-960-SLR, plaintiffs ask this Court to consolidate that case with another lawsuit against Motorola (*G.L. Williams Associates, Inc., et al. v. Motorola, Inc.*, C.A. No. 06-114-SLR) that has barely begun.  While plaintiff's motion recites the generic benefits of consolidation, *i.e.*, "to avoid unnecessary costs and delays," [*J2* D.I. 117, at 2 ¶ 4], they do not, and cannot, demonstrate that consolidation here would serve these purposes.  To the contrary, plaintiffs' request would result in zero savings, would multiply discovery, and would unduly delay the trial in the *J-Squared* case, which is set to begin in September 2006.

Plaintiffs' Motion should be denied.[1]

**II.    Background.**

    **A.    The J-Squared Case.**

The *J-Squared* plaintiffs—J-Squared Technologies, Inc. ("JST"), and J-Squared Technologies (Oregon), Inc. ("JSO")—filed their lawsuit in August 2004 alleging that Motorola acted improperly by terminating JSO's Manufacturer's Representative Agreement and by not renewing JST's Agreement when it lapsed by its terms.  [*J2* D.I. 1.]  Motorola moved to transfer the lawsuit or, in the alternative, to dismiss several of plaintiffs' claims.  [*J2* D.I. 10.]  The Court denied the motion to transfer and granted the motion to dismiss in part, eliminating plaintiffs' claims for consumer fraud and punitive damages.  [*J2* D.I. 17, 18, & 19.]

Following a pretrial scheduling conference, the Court issued a scheduling Order on June 3, 2005, which set out pretrial deadlines and limitations on

---

[1] As with plaintiffs' Motion, this Response is being filed in both the *J-Squared* and the *GL Williams* cases.  Accordingly, "*J2* D.I." refers to the docket in the *J-Squared* action, while "*GLW* D.I." refers to the docket in the *GL Williams* matter.

discovery. [*J2* D.I. 24.] Since then, the *J-Squared* plaintiffs have propounded 45 interrogatories, 11 requests for admission, and 30 requests for production of documents. The J-Squared plaintiffs also deposed 11 witnesses—for over 60 hours—and have scheduled 1 more deposition (the Court's scheduling Order limited them to 12).[2]

Following the close of fact discovery, Motorola, on May 1, filed a comprehensive Motion for Summary Judgment. [*J2* D.I. 130 & 121.] That motion is currently pending.

The *J-Squared* case is set for trial in September 2006.

### B.   The Parties' Stipulated Protective Order.

In light of the sensitive nature of many of the relevant documents, the Court signed the *J-Squared* parties' stipulated protective order on September 23, 2005. [*J2* D.I. 33.] The parties had previously agreed that the documents exchanged would be kept confidential while this stipulated order was negotiated. A key purpose of this order, however, was undermined when plaintiffs' counsel provided confidential documents to three other former manufacturer representatives, purportedly as part of the "investigation" of plaintiffs' claims. (Ex. A.) Shortly afterward, plaintiffs' counsel filed another lawsuit against Motorola on behalf of these three former representatives with whom it shared confidential Motorola documents.

### C.   The GL Williams Case.

In February 2006, the *GL Williams* plaintiffs—GL Williams Associates, Inc. ("GLW"), RE Technology, Inc. ("RTT"), and West Coast Reps, Inc. ("WCR")—filed a separate lawsuit against Motorola, alleging that Motorola acted

---

[2] Due to scheduling issues, the last non-party deposition could not be completed before the fact discovery cut-off. The parties are working to schedule this deposition as soon as possible.

improperly by terminating RTT's[3] and GLW's Manufacturer's Representative Agreements and by not renewing WCR's Agreement when it lapsed by its terms. [*GLW* D.I. 1.]  Motorola has since moved to dismiss several of plaintiffs' claims. [*GLW* D.I. 5.]  The *GL Williams* plaintiffs have not yet responded to that Motion, and Motorola has not yet filed its Answer.

There has been no discovery in that case and none is scheduled.

### III. Consolidation Is Inappropriate.

Plaintiffs contend that there are common issues of law and fact and that "[t]he maintenance of two separate actions will waste time, energy, and money." [*J2* D.I. 117, at 1-2 ¶ 1 & 3 ¶ 7.]  However, "'[t]he mere existence of common issues, a prerequisite to consolidation, does not require consolidation.'  In determining whether to consolidate, the court balances the savings of time and effort gained through consolidation against the inconvenience, delay, or expense that it might cause."  *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142-43 (D. Del. 1999) (quoting *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991)).  Here, consolidation would necessarily lead to delay; would not reduce or eliminate any future discovery; and would only confuse jurors by combining significantly different claims by unrelated parties. This is especially true because the "common issues" in these cases are easily outweighed by the significant differences between the individual plaintiffs' claims. Thus, plaintiffs' Motion should be denied.

#### A. **Consolidation Would Cause Delay**.

Rule 42 was designed to allow cases to "be dispatched with expedition and economy while providing justice to the parties."  9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2381, at 427 (1995); *see also* 8 James W. Moore, *Moore's Federal Practice* § 42.10[4][b], at 42-18 (3d ed. 2006)

---

[3] As set out in Motorola's Opening Brief in Support of Its Motion to Dismiss, RTT had no Agreement with Motorola. [*GLW* D.I. 6, at 3 & n.2.]

("Avoiding delay and expediting the trial process are two factors frequently cited by courts in ordering consolidation."). Here, consolidation would have exactly the opposite effect, delaying indefinitely the *J-Squared* trial case that is now set to begin in only four months.

The *J-Squared* and *GL Williams* cases are procedural polar opposites. On the one hand, discovery is closed in the *J-Squared* case, and Motorola's plenary Motion for Summary Judgment, [*J2* D.I. 120], is pending. On the other hand, the *GL Williams* plaintiffs have not even responded to Motorola's motion to dismiss, [*GLW* D.I. 5], Motorola has not filed its Answer in that case, there is no scheduling order, and no discovery has occurred at all.

As a result, consolidation would necessarily—and needlessly—delay the *J-Squared* trial by months and months while the *GL Williams* parties finished briefing Motorola's Motion to Dismiss and then scheduled and took discovery. For this very reason, "[c]ases at different stages of trial preparedness . . . generally are not good candidates for consolidation if one case is ready for trial and one is not." Moore, *supra* § 42.10[6][e], at 42-23. And the significant delay that would result from consolidation of the two cases is "a significant factor weighing against consolidation." *Id*. § 42.10[5][b], at 42-20; *see also Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 WL 2002208, at *2 (D. Del. 2004) (denying request for consolidation made three months before trial in part because, "[a]t this point in time, and in light of the court's already tight schedule, the trial date could not be rescheduled without undue delay").[4]

This District addressed a similar request in *La Chemise Lacoste v. Jean Patou, Inc.*, 60 F.R.D. 164 (D. Del. 1973). There, plaintiff sued defendant alleging violation of trademark rights. Three years later, the same plaintiff filed a separate lawsuit against the same defendant alleging a separate trademark

---

[4] Pursuant to Local Rule 7.1.3, a copy of the *Syngenta* case is attached as Exhibit B.

violation. After determining that the two cases were not "sufficiently connected to order consolidation," the Court stated as follows:

> [M]ore importantly, the cases should not be consolidated as a matter of sound judicial administration. [The first case] has been pending [for just over three years] and is close to trial. The new action has only been recently instituted; undoubtedly much discovery will be needed to ready it for trial. The disposition of the earlier case should not be delayed by the later filed litigation.

*Id.* at 176; *see also Dentsply v. Int'l, Inc. v. Kerr Mfg Co.*, 734 F. Supp. 656, 659 (D. Del. 1990) (quoting *La Chemise Lacoste*).

The *J-Squared* trial is quickly approaching and a settlement conference is set for June 22. Indeed, discovery is already closed and expert reports have been exchanged. Given the significant procedural differences in the two cases, this Motion, together with Plaintiffs' Motion to Amend, [*J2* D.I. 118], seem to be designed largely, and improperly, to delay resolution of the *J-Squared* case and, in any event, should be denied.

### B.    Plaintiffs' Request Could Only Add to the Costs of Discovery.

Plaintiffs make only one argument in support of their assertion that "[t]he maintenance of two actions will waste time, energy and money." [*J2* D.I. 117, at 3 ¶ 7]. Specifically, plaintiffs argue that "discovery in both actions will be essentially the same." [*Id.* at 3 ¶ 8]. Unless plaintiffs have a time machine, this argument is meritless.

Consolidation at this point could not possibly reduce the amount of discovery because fact discovery has already closed in the *J-Squared* case. Meanwhile, <u>no</u> discovery has occurred in the newly-filed *GL Williams* case, and that means that both Motorola and the *GL Williams* plaintiffs still need to take full discovery on the claims asserted.[5] This is true whether or not the cases are

---

[5] Taken to its extreme, plaintiffs' argument would lead to the opposite conclusion. If discovery "will be essentially the same" in the two cases, then there is no need for discovery in the *GL Williams* action at all, because "the same" discovery has already

consolidated. Thus, while plaintiffs point to superficial similarities between the cases, they did not—and cannot—demonstrate that fact discovery would be better facilitated by consolidation. To the contrary, the likely impact that consolidation would have on discovery going forward would be to, in effect, resurrect and continue fact discovery in the *J-Squared* case—discovery that is not needed and would not otherwise be allowed under the existing scheduling Order.

In sum, there is zero evidence to support plaintiffs' conclusory statement that it would be more efficient to consolidate these cases.

### C. Consolidation Would Be Unfairly Prejudicial.

Because "the savings to the judicial system are slight"—actually nonexistent here—"the risk of prejudice to [Motorola] must be viewed with even greater scrutiny." 33 *Federal Procedure: Lawyers Edition* § 77:46, at 78 (2004). Even if plaintiffs could show that consolidation would be more efficient—they cannot—"the benefits of efficiency can never be purchased at the cost of fairness." Moore, *supra* § 42.10[4][a], at 42-17 (quoting *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993)). Consolidation here would be unfairly prejudicial to Motorola because the *J-Squared* and *GL Williams* claims differ significantly and the disputes arising from plaintiffs' "similar contracts" are unique:

1. JST's Agreement expired in December 2003. JST argues that, because Motorola did not promptly notify JST of this expiration, its Agreement was renewed by Motorola's conduct. This issue is completely unique to JST.

2. JSO argues that Motorola improperly terminated its Agreement for non-performance because it was meeting its contractual performance requirements. JSO's performance, however, turns on sales in its

---

been completed in the *J-Squared* case. We doubt that plaintiffs would agree with that. In any event, Motorola still gets to conduct full discovery in the *GL Williams* case.

territory, which have nothing to do with any other sales representative.

3. Based on the contractual definition of its sales territory and e-mail correspondence with a former Motorola employee (who is not a witness at all in the *J-Squared* case), WCR argues that it was underpaid commissions during the life of its Agreement with Motorola and that it was entitled to commissions for sales made by other entities in its territory. Again, these issues do not relate to any other sales representative.

4. GLW argues that it was improperly terminated for cause because it had "substantially performed all obligations under the Agreement." [*GLW* D.I. 1 ¶ 59.] Again, those obligations were negotiated and set out in GLW's Agreement. Further GLW's performance is based on sales in its territory, which are unaffected by any other sales representative. And no other plaintiff has asserted substantial performance of its Agreement as a basis for recovery.

5. Unlike the other sales representatives, RTT was never a party to an Agreement with Motorola. [*GLW* D.I. 6, at 3 & n.2.] And any assignment to RTT from RT Technology (a division of DSPCon, Inc.) was improper under the terms of the RT Technologies Agreement. Further, there are no allegations that RT Technology was even meeting its contractual performance standards, governed by the negotiated performance standards in its Agreement. Again, these issues have nothing to do with any other sales representative.

The risk of juror confusion is greatest "when the parties' situations are exceedingly diverse, or are subtly, but significantly, different." Moore, *supra* §

42.10[5][a], at 42-19. The latter is precisely the case here, and consolidation is inappropriate.

Indeed, one of the significant risks of consolidation is that a jury will learn of multiple claims against a defendant and will not properly separate them. *Id*. § 42.10[5][d][ii], at 42-21. While plaintiffs invite this muddying of the issues, it is improper and unwarranted in these cases.

### D.     The "Common" Issues Do Not Warrant Consolidation.

Because of the costs and delay inherent in consolidation of these cases, (*see* §§ III(A-B), *supra*), and the significant differences between the individual parties' claims (*see* § III(C), *supra*), plaintiffs dramatically overstate that "there are common questions of law and fact for all parties." [*J2* D.I. 117, at 1 ¶ 1.] To be sure, there are common issues: Plaintiffs are all former Motorola sales representatives; plaintiffs' contracts with Motorola have all ended (although in different ways); and plaintiffs are all represented by the same counsel. But consolidation would not assist in resolving any of the six "common" issues that plaintiffs reference:

1.     The "five disputes arising from substantially similar contracts," [*J2* D.I. 117, at 1 ¶ 1], differ significantly from plaintiff to plaintiff as stated in Section III(C), *supra*, and the contracts themselves differ in material ways.

2.     While "the contracts were negotiated by the same division of Motorola," [*J2* D.I. 117, at 1 ¶ 1], that division has about 1,500 employees, the contracts were each negotiated between different personnel from Motorola and the prospective sales representatives at different times between Summer 2002 and Summer 2003. [*GLW* D.I. 1 ¶¶ 21, 22, 36, 38, 41, 49, 51, & 52; *J2* D.I. 1 ¶¶ 11, 22, & 37.] And both Motorola and the *GL Williams* plaintiffs need discovery regarding the negotiations of the *GL Williams* plaintiffs' Agreements regardless of consolidation.

3.     The legal significance of the assertion that "Motorola made the same representations to all its manufacturer's representatives concerning the proposed representative business model," [*J2* D.I. 117, at 1-2 ¶ 1], is already squarely before the Court in Motorola's pending Motion for Summary Judgment in the *J-Squared* case.  Moreover, this is not a common issue at all:  Plaintiffs allege separate oral representations made by different Motorola employees to different personnel within plaintiffs' organizations.  And these representations were made at different times regarding different contracts.

4.     The assertion that "Motorola terminated all its manufacturer's representatives on February 26, 2004 (on the alleged basis of either inadequate performance or non-renewal)," [*J2* D.I. 117, at 2 ¶ 1], is simply incorrect— Motorola provided notice to the non-performing sales representatives that their Agreements would be terminated in 30 days unless they cured their deficiencies and notice to other sales representatives, which were performing, that their Agreements would not be renewed upon expiration.  The letter to JST simply clarified that JST's contract had already expired.

5.     The legal question of "whether Motorola's false representations and deliberate omissions provide plaintiffs with extra-contractual remedies," [*J2* D.I. 117, at 2 ¶ 1], is already before the Court in Motorola's pending Motion for Summary Judgment in the *J-Squared* case.

6.     Finally, plaintiffs are simply wrong when they say that they "have substantially identical claims against Motorola with damages that are easily discernable," [*J2* D.I. 117, at 2 ¶ 1], because, as detailed in Section III(C), their claims are distinct.  Thus, their damages would be, too.

In sum, none of these "common" issues lead to the result that consolidation would more efficiently resolve the *J-Squared* and *GL Williams* cases.

**IV.     Conclusion.**

In light of the foregoing, the Court should deny plaintiffs' Motion to Consolidate. While resolution of Motorola's pending motion for summary judgment in the *J-Squared* case may impact the course of the *GL Williams* case, consolidation at this point is inappropriate and prejudicial to Motorola.

                                       YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                       /s/ William W. Bowser
                                       William W. Bowser (Bar I.D. 2239)
                                       The Brandywine Building, 17th Floor
                                       1000 West Street
                                       Wilmington, Delaware 19801
                                       Telephone: (302) 571-6601; Facsimile: (302) 576-3282
                                       wbowser@ycst.com
                                       OF COUNSEL:
                                       Randy Papetti, Cory A. Talbot, Emily S. Cates
                                       Lewis and Roca LLP
                                       40 N. Central Avenue
                                       Phoenix, Arizona 85004
                                       Telephone: (602) 262-5311
                                       Attorneys for Defendant

DATED:     May 11, 2006