IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., <br> J-SQUARED TECHNOLOGIES <br> (OREGON) INC., | : <br> : <br> : <br> : | |
| Plaintiffs, | : <br> : | C.A. No. 04-960-SLR |
| v. | : <br> : | |
| MOTOROLA, INC., | : <br> : | |
| Defendant. | : | |

## MOTOROLA'S RESPONSE TO PLAINTIFFS' MOTION TO AMEND

William W. Bowser
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Randy Papetti
Cory A. Talbot
Emily S. Cates
LEWIS AND ROCA LLP
40 N. Central Avenue
Phoenix, Arizona 85004
(602) 262-5311

Attorneys for Defendant

DATED: May 11, 2006

I.      **Introduction.**

Ignoring the Court's September 2005 cut-off for the amendment of pleadings, plaintiffs waited until the eve of the dispositive motion deadline to file their Motion to Amend their Complaint. They had no proper reason to wait that long—while plaintiffs say that "recently discovered" evidence of fraud by Motorola warrants amendment now, most of this supposedly new-found evidence was known to plaintiffs before they even filed this lawsuit in 2004 and the remaining evidence (1) was still known to plaintiffs months and months ago and (2) does not demonstrate fraud at any rate.

Instead, plaintiffs' undue delay in filing seems entirely strategic: By unnecessarily delaying to this point, plaintiffs plainly hope to add claims that can never be tested under the summary judgment standard. Alternatively, given that plaintiffs have also moved to consolidate this case with a case that was only recently filed, perhaps plaintiffs are seeking to have the September 2006 trial moved. In any event, the motion is inexplicably late and clearly prejudicial.

Furthermore, plaintiffs' proposed amended complaint contains a number of additional claims for breach of contract that were not previously pled and that are not mentioned in plaintiffs' Motion to Amend. These stealth amendments are improper, especially when plaintiffs try to add them after the close of discovery, after expert disclosure, and after Motorola has filed a comprehensive motion for summary judgment.

Plaintiffs' Motion should be denied.

II.     **Background.**

A.      <u>**The Parties' Contractual Relationships**</u>.

In 2002, the Motorola Computer Group ("MCG"), a Motorola business unit, began contracting with independent sales representatives to market MCG products. By mid-2003, MCG had signed Manufacturer's Representative

Agreements with nine sales representatives, including plaintiffs J-Squared Technologies, Inc. ("JST") and J-Squared Technologies (Oregon), Inc. ("JSO"). The J-Squared contracts each were for a one-year term and could be renewed only upon by written agreement.

In early 2004, MCG finished an evaluation of the sales representative program, concluded that the program was a financial failure, and decided to end it. In February 2004, MCG notified JST, whose Agreement had recently expired, that its Agreement would not be renewed. MCG also notified JSO that its contract was being terminated because JSO had not met its contractual performance standards.

**B     The Lawsuit.**

Plaintiffs were unhappy with the way their relationship with MCG ended and filed this lawsuit in August 2004. [D.I. 1.] After dismissing plaintiffs' claims for consumer fraud and punitive damages, [D.I. 18 & 19], the Court issued a scheduling Order, which set pre-trial deadlines and discovery limitations [D.I. 24]. Under that Order, "[a]ll motions to . . . amend the pleadings . . . shall be filed on or before September 2, 2005." [*Id.*]

The fact discovery cut-off was April 3, 2006.[1] [D.I. 73.]

The dispositive motion deadline was May 1, 2006, [D.I. 24], and Motorola filed a motion for summary judgment seeking judgment as a matter of law on all of plaintiffs' claims [D.I. 120 & 121]. That motion is still pending.

Against this backdrop, plaintiffs want to amend their Complaint to include claims for fraud and deceptive trade practices and, without mentioning it, to add additional breach of contract claims.

---

[1] There is one outstanding non-party deposition that could not be completed by the discovery cut-off. That deposition should occur within the next two weeks.

### III. Amendment at This Point is Inappropriate.

The Court's scheduling Order set a deadline for plaintiffs to file their Motion to Amend. Plaintiffs disregarded that deadline and do not even mention it in their Motion. Their Motion should be denied.

#### A. Clarifying the Standard.

The Court ordered, "<u>All motions to</u> join other parties, <u>amend the pleadings</u>, and certify a class <u>shall be filed on or before September 2, 2005</u>." [D.I. 24 (emphasis added).]

Since plaintiffs waited over seven months <u>after</u> this deadline to file their Motion, they can only amend their Complaint if they bypass the Court's scheduling order. However, a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *see also Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (stating that "scheduling orders are at the heart of trial management"). Rather, it is designed to be an "unalterable road map" from start to finish in any particular case. *Olgyay v. Society for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C. 1996) (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia*, at 35 (Aug. 1993)).

Accordingly, given their delay, plaintiffs are held to a more stringent standard in seeking to amend their pleadings now:

> Under Rule 16(b), once a scheduling order has been entered and the deadline to amend the pleadings has passed, a party seeking to amend must first show "good cause" for the amendment. *See* Fed. R. Civ. P. 16(b); *Trustmark* [*Ins. Co. v. General & Cologne Life Re of America*], 424 F.3d [542, 553 (7th Cir. 2005)]. Then, if "good cause" has been shown, the party must also demonstrate that the amendment complies with the requirements of Rule 15(a). *Tschantz v. McCann,* 160 F.R.D. 568, 571 (N.D. Ind. 1995), *citing Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Rule 15(a) allows the Court to permit amendments freely in the interests of justice, but a Court may exercise its discretion to deny an

> amendment of the party seeking the amendment has unduly delayed, or if the non-moving party will be unduly prejudiced.

*Connell v. KLN Steel Prods. Co.*, 2006 WL 1120514, *4 (N.D. Ill. April 25, 2006).[2]

To make such "a showing of good cause," FED. R. CIV. P. 16(b), a party must demonstrate that a deadline in the scheduling order—here the deadline to amend pleadings—"cannot reasonably be met despite the diligence of the party needing the extension," 6A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 1522.1, at 231 (2d ed. 1990).

Plaintiffs' motion failed to even acknowledge the scheduling order, let alone demonstrate any effort to comply with it.  More important, the allegations are simply not based on any newly discovered evidence.  Accordingly, plaintiffs' Motion fails to meet the requirements of both Rule 16(b) and Rule 15(a).

### B.    **Plaintiffs Proposed Fraud Claim is Improper.**

Plaintiffs assert that "five recently discovered pieces of evidence" justify the untimely addition of a fraud claim.  [D.I. 118, at 4 ¶ 12.]  Not so.

#### 1.    **Plaintiffs' rationale is misguided and misleading.**

An examination of each of the five purported bases for plaintiffs' amendment reveals that plaintiffs' motion is improper:

1.    Plaintiffs say that they just learned that "Larry Terry, one of Motorola's negotiators[3] for the JST Agreement, testified that he told Plaintiffs that Motorola intended the relationship to be [a] 'long-term relationship.'"  [D.I. 118, at 5 ¶ 14.]  Putting aside that plaintiffs mischaracterize Mr. Terry's testimony,

---

[2] Pursuant to Local Rule 7.1.3, a copy of the *Connell* case is attached as Ex. A.  The District of Delaware has followed this same two-tier analysis in examing an untimely motion to amend.  *See Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d (D. Del. 2003).

[3] According to JST's president, Michael Nykoluk, Terry was not a negotiator for the JST Agreement. (Ex. B, at 88.)

this allegation from plaintiffs is nothing new; plaintiffs made these same allegations in their initial Complaint:

> MOTOROLA, through various representatives, stated that MOTOROLA's long-term intention was to use an independent sales network to sell its products, and specifically represented to JST and JTO that it was seeking to forge long-lasting relationships with JST and JTO.

[D.I. 1 ¶ 13.]

Further, Terry's deposition testimony relates to his pre-contractual conversations with plaintiffs' owner and CEO, Jeff Gibson, in 2002—two years <u>before</u> plaintiffs filed this lawsuit and going on four years prior to now. (Ex. C; Ex. D, at 132-33.) Thus, this is hardly new evidence and does not justify plaintiffs' undue delay in seeking to amend their Complaint.

     2.    Plaintiffs next assert that, during negotiations, they "asked that the language in Motorola's form agreement be changed to conform to the representations concerning duration"; that Motorola "unequivocally stated that Motorola's internal G9 policy prohibited automatic renewal of these type (sic) of agreements"; and that discovery has since "revealed that the G9 policy does not prohibit automatic renewal of the agreements." [D.I. 118, at 5 ¶ 15.]

Plaintiffs go too far in crying fraud over the mis-identification of the corporate policy basis for MCG's decision. The fact is that Motorola told JST that it would not allow the automatic renewal due to an internal corporate policy, yet JST was willing to enter into the Agreement anyway. (Ex. E, at 77-78.) It makes no difference that Motorola cited the wrong corporate policy in doing so.

Furthermore, and perhaps more important for present purposes, plaintiffs received Motorola's G9 policy over <u>five</u> <u>months</u> <u>before</u> filing their Motion to Amend. (Ex. F.) Thus, this does not justify plaintiffs' undue delay.

     3.    Plaintiffs' next piece of newly discovered evidence is that "Motorola concedes that it did not pay certain commissions owed to Plaintiffs until

confronted with the discrepancies." [D.I. 118, at 5 ¶ 16.] Yet this refers to a dispute about commissions related to a particular sale that was addressed <u>and resolved</u> over four months <u>before</u> plaintiffs even filed this lawsuit.[4] (Ex. I.) Accordingly, this too is not new evidence and does not justify plaintiffs' undue delay in seeking to amend their Complaint now.

      4.     Plaintiffs next say that, unbeknownst to them, "Motorola negotiated and executed the JSO Agreement even after Kevin Parslow (Director of Worldwide Sales for MCG) communicated that all manufacturer's representative agreements were to be placed on hold" and that "Motorola never communicated this material fact to JSO during any part of the negotiations." [D.I. 118, at 6 ¶ 17.]

     Plaintiffs here appear to be referring to an April 2003 e-mail conveying Parslow's request that MCG hold off on signing any more sales representative agreements. (Ex. J.) There is nothing fraudulent here at all—Parslow explained that he was new in his position and wanted to do his "due diligence" to understand the rationale behind the sales representative program before signing on any additional representatives. (Ex. K, at 136-37.) After he reviewed the program, MCG continued to sign up additional sales representatives. Thus, there was nothing to tell JSO (indeed, by that point, JSO had already signed the Agreement and was working to sell MCG products) and surely this fact would not give rise to a good faith fraud claim.

     Further, this e-mail was produced on July 7, 2005, two months <u>before</u> the Court's deadline to amend pleadings and ten months before plaintiffs filed their Motion to Amend. (Exs. J & L.) Thus, this evidence does not justify plaintiffs' undue delay in seeking to amend their pleadings.

---

[4] Plaintiffs' officers concede that they are aware of no other outstanding commissions for their work during the life of the Agreements. (Ex. B, at 136-38; Ex. D, at 152; Ex. G, at 91; Ex. H, at 200-01.)

5.	Finally, plaintiffs say that Motorola overstated its sales figures prior to signing the JST Agreement. [D.I. 118 ¶ 18.] Not so. In fact, at the outset of the parties' discussions, MCG gave J-Squared personnel historic sales numbers for the preceding 21 months in what would become JST's territory. Plaintiffs do not claim these were inflated—rather, they admit that, if anything, these figures excluded certain sales and thus would have <u>understated</u> MCG's historic sales numbers. (Ex. H, at 173-75.) Further, because the documents reflecting sales in JST's territory were provided in 2002, long before plaintiffs even entered into their Agreements, this evidence does not justify plaintiffs in waiting until now to try to amend their Complaint. (Exs. M & N.)

And while plaintiffs now opportunistically say that, unbeknownst to them, "the actual monthly revenue for the months immediately preceding the execution of the JST Agreement" was extremely low, (1) MCG never represented otherwise; (2) plaintiffs understood that sales in the embedded space fluctuate wildly from "[y]ear to year and quarter to quarter," (Ex. H, at 71-72); (3) plaintiffs never asked for additional sales numbers; and (4) plaintiffs already believed at the time that MCG sales were "going down the tubes" (Ex. H, at 35). Plus, to reiterate, plaintiffs had this information even before filing suit.

### 2.	**Plaintiffs' delay is inexcusable.**

The foregoing makes plain that plaintiffs' stated reasons for waiting too long to file their Motion are disingenuous. Plaintiffs knew about the "recently discovered" evidence months and, in most cases, before they even filed this lawsuit. Thus, they cannot show the requisite "good cause" to amend the Complaint so long after the deadline to do so has passed. *See* FED. R. CIV. P. 16(b).

Indeed, plaintiffs were anything but diligent in seeking to amend their Complaint, even touting the fact that they informed Motorola in February—two

months before filing their Motion—that they may seek to amend their pleadings. [D.I. 118 ¶ 7.] Yet plaintiffs still chose to delay until after fact discovery concluded and up to the deadline for the parties to file dispositive motions before they actually did so. That is improper: "a motion to amend should be made <u>as soon as the necessity for altering the pleading becomes apparent</u>. <u>A party who delays in seeking an amendment is acting contrary to the spirit of the rule</u> and runs the risk of the court denying permission because of the passage of time." 6 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 1488, at 659 (2d ed. 1990) (emphasis added).

That is doubly true given that plaintiffs' delay seems designed to allow them to add claims <u>after</u> the dispositive motion deadline. *Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) ("Moreover, permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [the non-moving party] had already filed a motion for summary judgment.").

Accordingly, plaintiffs should not be allowed to amend their Complaint to include a fraud claim.

### C. The Proposed Deceptive Trade Practices Claim is Futile.

Plaintiffs next assert that they should be allowed to add a deceptive trade practices claim. But plaintiffs <u>already</u> asserted a deceptive trade practices claim under Arizona law and lost at the motion to dismiss stage. They should not be allowed to shop around for better law now. Nor can they—the parties already agreed that Arizona law governs this action. That being the case, plaintiffs essentially concede in their Motion that their proposed amendment is futile. Finally, unlike the proposed fraud claim, plaintiffs do not even try to justify their delay in asserting this claim. Thus, the proposed amendment should not be allowed.

### 1. **Plaintiffs already lost this claim on the merits.**

In their initial Complaint, plaintiffs both asserted that MCG had violated Arizona's Consumer Fraud Act. [D.I. 1 ¶¶ 60-65 & 87-91.] Cases and commentators recognize that Arizona polices deceptive trade practices through its consumer fraud statutes. *See, e.g.*, *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 332 (N.D. Ill. 2002) (referring to the consumer fraud statutes as the Arizona Deceptive Trade Practices Act); William A. Lovett, *State Deceptive Trade Practice Legislation*, 46 TUL. L. REV. 724 (1972) (reviewing state deceptive trade practice legislation, including Arizona's Consumer Fraud Act).

MCG moved to dismiss these consumer fraud claims because plaintiffs did not fall within the statute's scope. [D.I. 10.] The Court agreed, and the claims were eliminated. [D.I. 18 & 19.] Thus, because the Court has already ruled on the merits of plaintiffs' deceptive trade practices claim, they should not be allowed a second bite at the apple.

### 2. **Arizona law governs.**

Rather than address why they should be allowed to re-plead the same claim under other jurisdictions' laws, plaintiffs fail to mention their consumer fraud claim at all and instead say that there actually is no such thing as a deceptive trade practices claim under Arizona law: "Arizona has not adopted any version of the Uniform Deceptive Trade Practices Act" and, accordingly, "Plaintiffs concede that this statutory claim for relief maybe (sic) futile" if Arizona law governs.[5] [D.I. 118, ¶ 20 n.4.] Because Arizona law does govern, plaintiffs' proposed amendment is futile.

---

[5] This is a big problem for plaintiffs' counsel because, in the copycat case they filed on behalf of several other former MCG sales representatives, *GL Williams Associates, Inc., et al. v. Motorola, Inc.*, C.A. No. 06-114-SLR, they assert this same deceptive trade practices claim <u>under Arizona law</u>. But if, as they say in this case, there is no such statutory duty in Arizona, then plaintiffs' counsel had no basis under Federal Rule of Civil Procedure 11 to make that claim in the *GL Williams* case.

Each of plaintiffs' Agreements contains an Arizona choice-of-law provision, (Exs. O & P ¶ 9.7), which plaintiffs do not mention, and which the Court has already determined should be enforced:

> A federal court sitting in diversity jurisdiction must apply the choice of law rules from its forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Delaware has adopted Restatement (Second) of Conflict of Laws. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del. 1991). The court determines that it should apply Arizona law in order to protect the expectations of the parties, who elected to have Arizona law govern their contract, and to ensure uniform adjudication of plaintiffs' claims. *See* Restatement (Second) of Conflict of Laws § 188 comment b.

[D.I. 18, at 6 n.7 (emphasis added).]  Moreover, plaintiffs themselves relied on Arizona law primarily in their motion, but not, having lost, appear to want to claim that laws from somewhere else should control.

Plaintiffs offer no valid reason for the Court to reconsider this ruling. Indeed, plaintiffs' reliance on section 145 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW, which sets out the general principles for determining choice-of-law issues for tort claims, is totally misplaced:  Where a tort claim turns on "[t]he effect of misrepresentation, duress, undue influence and mistake upon a contract" the choice of law issue "is determined by the law selected by application of the rules of §§ 187-188."  RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 201.

Here, plaintiffs' proposed deceptive trade practices claim is based on just such allegations.  Plaintiffs' proposed claim is based on allegedly deceptive conduct by Motorola "in negotiating and undertaking performance of the Agreements." [D.I. 118 ¶ 20.]  Thus, because the purported misconduct involves misrepresentations regarding the agreements themselves, the choice-of-law analysis "is determined by the law selected by application of the rules of §§ 187-188." RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 201.

These are precisely the rules the Court applied in determining that Arizona law governed this case in the first place. And plaintiffs do not assert that the Court's analysis under these rules was incorrect. Nor could they. Because the parties already agreed that Arizona law governs this dispute, "[a]pplication of the chosen law will be refused only (1) to protect a fundamental policy of the state which . . . would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue." *Id.* § 187 cmt g. Plaintiffs identify no fundamental policy of any jurisdiction that would trump the application of Arizona law. And, given the fact that MCG is based in Arizona, virtually all of its alleged conduct in this case has a significant Arizona nexus. Given that nexus, Arizona law—which the parties chose—should govern. *Id.* ("The more closely this state is related to the contract and to the parties, the more likely it is that the choice-of-law provision will be given effect."). Accordingly, by their own admission, plaintiffs' proposed amendment is futile.

### 3. **Plaintiffs cannot show good cause for their delay.**

Finally, plaintiffs cite no reason why their deceptive trade practices claim is only being asserted now. Nor could they—as set out above, this same claim was asserted in their initial Complaint under Arizona law and they lost on the merits. And they point to no new facts to justify resurrecting the claim. In sum, plaintiffs cannot demonstrate good cause for waiting over seven months after the Court's deadline to seek to reinstate their deceptive trade practices claim. For the same reasons set out in Section III(B)(2), *supra*, plaintiffs' apparent strategic decision to delay filing their Motion to Amend is improper and the Court should reject the Motion accordingly.

## IV. The Court Should Reject Plaintiffs' Stealth Amendments.

In their initial Complaint, plaintiffs both assert breach of contract claims. JST's breach of contract claim is that MCG continued to work with JST past the expiration of the Agreement and that the Agreement was thereby renewed for another one-year term, which MCG improperly terminated. [D.I. 1 ¶ 44.] As for JSO, while conceding that its Agreement permitted either party to terminate with cause and not even clearly alleging that it was meeting its performance obligation, JSO asserts that it should not have been terminated with cause. [D.I. 1 ¶¶ 30, 33, 69, & 70.]

### A. **Plaintiffs' Improperly Try to Amend Their Breach of Contract Claims with No Justification.**

In their proposed amended Complaint, however, plaintiffs add a host of new breach of contract claims, claiming that Motorola also breached the Agreements by:

- "failing to disclose that a moratorium was placed on the execution of all further manufacturer's representative agreements";

- "misappropriating JSO's confidential information to its detriment";

- "failing to pay all commissions properly payable under the Agreements";

- "failing to identify the basis for terminations for cause and otherwise frustrating the manufacturer's representative contractual right to cure";

- "undertaking conduct that constitutes a willful, wanton and malicious breach of contract through the manufacture of a non-renewal terminations of the JST Agreement as the Agreement continued to be effective through both word and deed for over two months"; and

- "undertaking conduct that constitutes a willful, wanton and malicious breach of contract through the manufacture of for-cause terminations of the JSO Agreement when there was not basis for such termination."

[D.I. 118, Ex. 1 ¶¶ 53 & 81.]

But plaintiffs say nothing about these new breach of contract claims in their Motion.  At minimum, then, these amendments should be rejected because, by their silence, plaintiffs fail to show "good cause" for these late amendments; fail to show why they unduly delayed in trying to assert these claims until now; and fail to show that justice requires the amendment of their pleadings.  *See* FED. R. CIV. P. 15(a) & 16(b).  Plaintiffs failed to meet their burden and it would be unfair to Motorola for plaintiffs to attempt to do so, for the first time, in their reply.

### B. Plaintiffs Cannot Show that These Amendments Are Appropriate Now.

Plaintiffs' lack of effort aside, they could not meet these standards anyway.

1. While plaintiffs now want to assert that Motorola failed to disclose a "moratorium" on further sales representative agreements, as set out in section III(B)(1)(4), *supra*, this "moratorium" was only a brief delay while MCG's new director of worldwide sales, Parslow, did his "due diligence" to understand the rationale behind the sales representative program.  (Ex. K.)  Further, the evidence of this "moratorium" was produced on July 7, 2005, two months <u>before</u> the Court's deadline to amend pleadings, (Exs. J & L), and, accordingly does not justify plaintiffs' undue delay in seeking to amend their pleadings.

2. Similarly, plaintiffs can point to zero "recently discovered" evidence that Motorola misappropriated "JSO's confidential information," largely because there is no such evidence.

3. As to the claims that Motorola "fail[ed] to pay all commissions properly payable under the Agreements," [D.I. 118, Ex. 1 ¶¶ 53 & 81], plaintiffs

cannot show that justice requires these amendments because such claims because they have no basis in reality:

- When asked whether "J-Squared was paid was less than what J-Squared believes it was owed under the Parties' Agreement," plaintiffs' owner and CEO, Jeff Gibson, testified, "No."  (Ex. D, at 152.)

- When asked whether "J-Squared (Oregon) was underpaid for any commissions it earned during the time the Agreement was in effect," Steve Blomme (who negotiated the JSO Agreement) testified, "No, I don't think so."  (Ex. G, at 91.)

- When asked whether J-Squared was "shorted commissions" when the Agreement was in effect, Claude Langlois (head of plaintiffs' Embedded Systems Group, which did the work under the Agreements) testified, "No."  (Ex. H, at 200-01.)

- When asked whether there were any discrepancies "between what J-Squared believes it earned and what it was paid" during the Agreement's life, Mike Nykoluk (President of JST) testified, "No."  (Ex. B, at 136-38.)

4. If Motorola "failed to identify the cause" of JSO's termination, plaintiffs would have known that when they first received the notification that JSO's Agreement was being terminated in February 2004.  Thus, there is nothing to justify plaintiffs' delay in asserting such a claim.

5. Finally, there is no evidence that Motorola acted improperly in terminating the Agreements, but in any event, plaintiffs' suggestion that Motorola's conduct is a "willful, wanton and malicious breach of contract" is both hyperbolic and futile.  Indeed, Motorola did not terminate JST's Agreement at all—it expired by its own terms.  There is certainly no "recently discovered" evidence to support such a claim.

### C. Plaintiffs Try to Walk Away from Their Admitted Interpretation of The JSO Agreement.

Finally, during discovery, plaintiffs' counsel questioned Motorola witnesses about MCG's ability to terminate JSO for cause, asserting that section 4.4 of the JSO Agreement prohibited for cause termination based on JSO's failure to meet its performance standards and that, accordingly, JSO could only be terminated without cause. After hearing this theory in several depositions, Motorola's counsel pointed out that JSO had already admitted in its Complaint that it could be terminated for cause if it were not meeting its contractual performance standards. (Ex. Q.) The Complaint says:

> Pursuant to 7.2A <u>either party could terminate the JSO Agreement for cause if the other party failed to perform its obligations under the JSO Agreement</u> and thereafter failed to cure such non-performance within thirty (30) days of receipt of a notice to cure.

[D.I. 1 ¶ 30 (emphasis added).] Given this language, Motorola's counsel indicated that, if plaintiffs were going to argue to the contrary, they needed to seek leave from the Court to amend their Complaint. (Ex. Q) Plaintiffs' counsel, however, simply responded that the liberal pleading standards allowed JSO to make this argument and that there was no need to amend the Complaint. (Ex. R.)

Nevertheless, the proposed amended Complaint seeks to <u>eliminate</u> the admission that MCG could terminate JSO with cause for non-performance. [D.I. 118, Ex. 1 ¶ 30 (redline).] Because it is not mentioned at all in the Motion, however, plaintiffs provide zero justification for this change in position. As with the other stealth amendments to the breach of contract claim, plaintiffs do nothing to show "good cause" for this about-face; fail to show why they unduly delayed in trying to assert it; and fail to show that justice requires the Court to allow them to walk away from their initial admission that MCG could terminate JSO with cause for non-performance. *See* FED. R. CIV. P. 15(a) & 16(b). Again, plaintiffs failed to meet their burden and it would be unfair to Motorola for plaintiffs to attempt to do so, for the first time, in their reply.

In sum, plaintiffs should not be allowed to disregard the rules and amend their Complaint to add new breach of contract claims <u>after</u> the close of discovery and <u>after</u> Motorola has filed a comprehensive motion for summary judgment. That is especially true when they offer no justification for doing so.

**V.     Conclusion.**

This case has been hotly litigated, a substantial motion for summary judgment has been prepared and is pending, and any parts of the case that survive summary judgment are set for trial in September. No injustice would befall plaintiffs if, after having blown off the Court's deadline and made no effort to amend based on evidence that had long ago, they were not allowed to inject their new hyperbolic, unfounded and in some instances duplicative claims into this suit.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:     May 11, 2006