IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a | ) | |
| Canadian corporation, and J-SQUARE | ) | |
| TECHNOLOGIES (OREGON) INC., an | ) | |
| Oregon corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 04-CV-960-SLR |
| MOTOROLA, INC., a Delaware corporation. | ) | |
| Defendant. | ) | |

# EXHIBIT C TO
# MOTOROLA'S RESPONSE TO PLAINTIFFS' MOTION TO AMEND

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser

William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

 **ORIGINAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES,              :
INC., a Canadian Corp., and          :  No. 04-960-SLR
J-SQUARED TECHNOLOGIES               :
(OREGON) INC., an Oregon             :  JURY TRIAL DEMANDED
Corp.,                               :
                                     :
        Plaintiffs,                  :
                                     :
   vs.                               :
                                     :
MOTOROLA, INC., a Delaware           :
Corp.,                               :
                                     :
        Defendant.                   :

               -   -   -

                 March 16, 2006

               -   -   -

        Video deposition of LARRY B. TERRY,
held at COZEN O'CONNOR, P.C., 1201 North Market
Street, Suite 1400, Wilmington, Delaware
19801, on the above date, commencing at 11:00
a.m., before Gwen D. Davenport, Registered
Professional Reporter, Notary Public.


        LOVE COURT REPORTING, INC.
            1500 Market Street
        12th Floor, East Tower
    Philadelphia, Pennsylvania  19102
            (215) 568-5599

Larry B. Terry

that point as to the duration of the contract?

        MS. CATES:  Object to form.

        THE WITNESS:  No.

BY MR. BELLEW:

    Q    You never made any -- any statements at that

point regarding Motorola's intention with -- in terms

of what the duration of the contract would be?

    A    Not in terms of what the duration of the

contract would be.  In terms of the duration of the --

the expectation of the agreement on the partnership,

so to speak, of the intention of what we wanted to do.

We -- I was very clear with Jeff that we were

interested in a longer term relationship.

    Q    And how did you communicate that to him?

    A    It would have been verbally.  And I would say,

We're in this -- the premise that I would have set

was -- over some length of time our business in Canada

had slipped to what I below -- what I believe to be

below acceptable levels.  We were disappointing our

customers, we really need to shore that up, and what

I'm really interested in is building that business

back up again over the long-term.

    Q    And in terms of your own expectations, how

long do you think it would take to rebuild that

Larry B. Terry

business up in Canada?

A    It had taken pretty much four years to erode. It would take at least -- at least two to three years to shore back up again to reasonable levels.

Q    Did you ever communicate that to Jeff?

A    We had discussions along that.  How long do you think we could -- "How long do you think it would take", Jeff would say, "to build this business back up?"

Q    Okay.

MR. BELLEW:  I think we'll just switch the tape.

THE VIDEOGRAPHER:  We are now going off the record.  This completes Tape No. 1.

(Whereupon, off the record.)

THE VIDEOGRAPHER:  We are now on the record.  This is Videotape No. 2.

MR. BELLEW:  I'm going to just ask the reporter to read back the last question.

(The Court Reporter read back the following question and answer:  Q.  Did you ever communicate that to Jeff?  A.  We had discussions along that.  How long do you think we could -- "How long do you think it would

Larry B. Terry

address that at the end of the contract.

You're aware that there was provisions in these contracts that precluded competition?

A    That's correct.

Q    So, you didn't have to wait to cancel the contract at the end of the year, you could do it immediately if they were competing lines?

A    That's correct.

Q    Your contract with Motorola, you had said if you perform, you'll be renewed.  If not, then perhaps you won't be renewed.

A    That's one of several measurements.  Yes.

Q    Is it -- do you have a level of -- of good faith at Motorola, that if you do your job and perform, that they will renew your contract each year, isn't that your expectation?

A    I -- that is a reasonable expectation for me to have.  Yes.

Q    Okay.  Is that -- would that have been a reasonable expectation for J-Squared to have when it -- J-Squared (Canada) had when it entered into its contract, that if -- if it performed --

A    And if --

Q    -- the contract would be renewed?