IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARE TECHNOLOGIES (OREGON) INC., an Oregon corporation, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 04-CV-960-SLR |
| MOTOROLA, INC., a Delaware corporation. | ) |
| Defendant. | ) |

# EXHIBIT E TO
# MOTOROLA'S RESPONSE TO PLAINTIFFS' MOTION TO AMEND

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARED TECHNOLOGIES (OREGON), INC., an Oregon corporation,, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) C..A. No. ) 04-960-SLR |
| MOTOROLA, INC., a Delaware corporation, | ) ) ) |
| Defendant. | ) ) ) |

DEC 2 0 2005

DEPOSITION OF JEANNE KOLASA

Phoenix, Arizona
December 7, 2005
9:30 A.M.

REPORTED BY:
JUDI SCHNEIDER
Certified Reporter
Certificate No. 50735

PREPARED FOR:
SEAN J. BELLEW
Attorney at Law

COPY

**Esquire Deposition Services**
**(215) 988-9191**

1 what do you think their reaction would've been had they been
2 notified at some point in November of '03 that Motorola's
3 long term strategy no longer involved reps?
4            MR. TALBOT:  Object to form.
5      A.    I don't know.
6      Q.    Okay.  Flashing back to the beginning of your
7 negotiations with C&S and J-Squared Canada.  What was
8 Motorola's contemplation at that time as to how long these
9 rep relationships would last?
10     A.    I don't know.  I know that -- I know that we --
11 that there was a specific corporate driven requirement not
12 to include what we -- what sometimes is known as an
13 evergreen clause.  That we have -- that we had a corporate
14 directive to put a situation in place that upon a year's --
15 upon a year into the contract, a mutual agreement to move
16 forward would be required.
17     Q.    Okay.  We'll get to that.  That's G-9 policy, is
18 it?
19     A.    No, that's not the G-9 policy.
20     Q.    Okay.  What's the G-9 policy?
21     A.    G-9 policy is a due diligence review of
22 anybody -- any third party we partner with to make sure
23 they're financially viable.  That we're not entering into a
24 situation with a company that has legal issues, liability
25 issues, bankruptcy issues, things like that.

1    Q.    So this company policy regarding the
2 non-automatic renewal, non-evergreen provision, where is
3 that set out?
4    A.    It would be a corporate policy.
5    Q.    Is it a written corporate policy?
6    A.    I believe so, but I couldn't tell you where you
7 could go find it. I don't know. That was -- came from our
8 legal team.
9    Q.    Are you familiar with the G-9 policy?
10   A.    Somewhat. I mean I was four years ago or
11 whenever it was that we worked on these.
12   Q.    Was that policy ever provided to anybody outside
13 of Motorola?
14   A.    Yes. It was -- the reason we needed G-9 review
15 and code of ethics and code of conduct were three Motorola
16 documents that were given to every rep we engaged with for
17 them to review and agree to.
18   Q.    Did that have something to do with military
19 contracts?
20   A.    That's part of it. That's part of it.
21   Q.    And what was that, required by your military
22 customers?
23   A.    We don't, as a policy, work directly with the
24 military.
25   Q.    Ms. Kolasa, getting back to your -- our