IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a )
Canadian corporation, and J-SQUARE )
TECHNOLOGIES (OREGON) INC., an )
Oregon corporation, )
       Plaintiffs, )
     v. )   C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation. )
       Defendant. )

# EXHIBIT A TO
# MOTOROLA'S MOTION TO STRIKE

# REDACTED
# ENTIRETY OF DOCUMENT
# CONFIDENTIAL

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:  May 22, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a )
Canadian corporation, and J-SQUARE )
TECHNOLOGIES (OREGON) INC., an )
Oregon corporation, )
                      Plaintiffs, )
                    v. )      C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation. )
                  Defendant. )

# EXHIBIT B TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:     May 22, 2006

*Cresde*

*Exhibit A*

MANUFACTURER'S REPRESENTATIVE AGREEMENT

between

MOTOROLA COMPUTER GROUP

and

J-SQUARED TECHNOLOGIES

1

J2 Rep Agmt 25 nov.doc

Rev. Date 13 December 2001

TABLE OF CONTENTS

Article I. Definitions..................................................................................................3

Article II. Appointment and Scope.........................................................................3

Article III. Representative's Compensation...........................................................5

Article IV. Representative Obligations...................................................................7

Article V. Motorola Obligations..............................................................................9

Article VI Confidentiality and Proprietary Rights................................................10

Article VII. Term and Termination.......................................................................11

Article VIII. Dispute Resolution...........................................................................13

Article IX. General Provisions.............................................................................13

LIST OF EXHIBITS

- EXHIBIT 1: REPRESENTATIVE PRODUCT LIST/COMMISION RATES
- EXHIBIT 2: TERRITORY AND HOUSE ACCOUNT LIST

prior express written consent. All use of such trademarks will inure solely to Motorola's benefit. Representative will not directly or indirectly use any of Motorola's trademarks or part thereof, or any mark or name confusingly similar thereto, as part of its corporate or business name or in any other manner, except that a) Representative may identify itself as an authorized Representative of Motorola in accordance with Motorola's written instructions; and b) upon Motorola's written consent, Representative may use Motorola's trademarks relating to the Products for display purposes in connection with solicitation of orders for Products. In addition, Representative will not register any of Motorola's trademarks or any mark or name closely resembling them.

6.4     Protection of Proprietary Rights. Representative will cooperate with and assist Motorola, at Motorola's expense, in the protection of trademarks, patents, or copyrights owned by or licensed to Motorola and will inform Motorola immediately of any infringements or other improper action with respect to such trademarks, patents, or copyrights that come to the attention of Representative.

## Article VII. Term and Termination

7.1     Term. Unless terminated as provided in Paragraph 7.2 below or by mutual written consent, this Agreement will continue in full force and effect for an initial term expiring one (1) year after the effective date hereof and thereafter may be renewed only upon the written Agreement of both parties.

7.2     Termination. This Agreement may be terminated before expiration of the initial or any renewal term, as provided in Paragraph 7.1 above, by prior written notice to the other party as follows:

A.     By either party, in the event the other party should fail to perform any of its obligations hereunder and should fail to remedy such nonperformance within thirty (30) calendar days after receiving written demand therefore or, if the nature of the default does not reasonably allow it to be remedied in thirty (30) days, the Agreement will be considered terminated if the defaulting party fails to take corrective action within thirty (30) days after receipt of a notice of default and intent to terminate from the nondefaulting party;.

B.     By either party, effective immediately, if the other party should become the subject of any voluntary or involuntary bankruptcy, receivership, or other insolvency proceedings or make an assignment or other arrangement for the benefit of its creditors, or if such other party should be nationalized or have any of its material assets expropriated;

C.     By Motorola, effective immediately, if Representative should attempt to sell, assign, delegate, or transfer any of its rights and obligations under this Agreement without having obtained Motorola's prior written consent thereto, or if there should occur any material change in the management, ownership, control, sales personnel, sales and marketing capability, or financial condition of Representative;

11

D.   By Motorola, effective immediately, if any law or regulation should be adopted or in effect in the Territory that would restrict Motorola's termination rights or otherwise invalidate any provisions hereof;

E.   By Motorola, effective immediately, if Representative should violate the terms of Paragraph 2.7 above or otherwise in accordance with provisions of Paragraphs 4.5, 4.7 and 4.8;

F.   By Motorola, effective immediately, if Representative knowingly makes any false or untrue statements or representations to Motorola herein or in the performance of its obligations hereunder; and

G.   By either party, without cause after the initial 180 days following the effective date of this Agreement, on thirty (30) days prior written notice to the other party.

7.3    Rights of Parties on Termination. Upon termination or expiration of this Agreement:

A.   Representative will cease all sales and other activities on behalf of Motorola, return to Motorola and immediately cease all use of Confidential Information, turn over to Motorola Representative's current Customer mailing list and take such action as is necessary to terminate Representative's registration as Motorola's sales Representative with any government authority.

B.   All indebtedness of Representative to Motorola will become immediately due and payable without further notice or demand, which is hereby expressly waived. Both parties will be entitled to seek reimbursement for reasonable attorneys' fees that it may incur in collecting or enforcing payment of any such obligations under this Agreement.

C.   Representative will: a) remove from its property and immediately discontinue all use, directly or indirectly, of trademarks, designs, and markings owned or controlled, now or hereafter, by Motorola, or of any word, title, expression, trademark, design, or marking that, in the opinion of Motorola, is confusingly similar thereto; and b) further certify in writing that Representative has completely terminated its use of any and all such trademarks, designs, or markings, or any other word, title, or similar expression that appeared in or on any devices or other materials used in conjunction with Representative's business.

D.   Except in cases of termination by Motorola as described in Paragraphs 7.2 A. through F, Representative will be eligible for a commission, at the rates identified in Exhibit 1, on

   1)   All direct open orders and new direct orders accepted and shipped withing a period of 180 days as of the date of termination or expiration; and

   2)   All net distribution POS orders and new distribution POS orders accepted and shipped within a period of 180 days as of the date of termination or expiration.

E.   The obligations of Representative under Paragraphs 4.9, 4.10, 4.11 and Article VI will survive the termination or nonrenewal of this Agreement for any reason.

7.4    Sole Remedy. Motorola's payment obligations in this Article VII shall be Representative's sole remedy for the termination or nonrenewal of this Agreement and will be in lieu of all other claims that Representative may have against Motorola as a result thereof. Representative hereby waives its right to any termination compensation and damages it may have a right to under local law. Motorola will not be liable to Representative by reason of termination or nonrenewal of this Agreement for compensation, reimbursement, or damages for:

    A.  Loss of prospective compensation;

    B.  Goodwill or loss thereof; or

    C.  Expenditures, investments, leases, or any type of commitment made in connection with the business of such party or in reliance on the existence of this Agreement.

## Article VIII. Dispute Resolution

8.1    MOTOROLA and Representative agree to attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in the spirit of mutual friendship and cooperation. If such attempts fail, then the dispute may first be submitted to a mutually acceptable neutral advisor for initial fact finding in preparation for mediation or other form of alternate dispute resolution. The Court shall finally determine any dispute that cannot be so resolved between the parties in good faith under Arizona law.

## Article IX. General Provisions

9.1    Entire Agreement. This Agreement represents the entire agreement between the parties and supersedes all prior discussions, agreements, and understandings of every kind. No modification of this Agreement will be effective unless in writing and signed by both parties. Any and all side letters or supplementary agreements not specifically added to this agreement by amendment or addendum shall be of no effect whatsoever.

9.2    Notices. All notices under this Agreement will be in English and will be in writing and given by certified mail, overnight courier, or telefax (acknowledged by answerback) addressed to the parties at the addresses immediately below their respective signatures hereto, or to such other address of which either party may advise the other in writing. Notices will be deemed given when sent.

9.3    Force Majeure. Neither party will be in default hereunder by reason of any failure or delay in the performance of any obligation under this Agreement where such failure or delay arises out of any cause beyond the reasonable control and without the fault or negligence of such party. Such causes will include, without limitation, storms, floods, other acts of nature, fires, explosions, riots, war or civil disturbance, strikes or other labor unrest, embargoes and other governmental actions or regulations that would prohibit either party from ordering or furnishing Products or from performing any other aspects of the

13

obligations hereunder, delays in transportation, and inability to obtain necessary labor, supplies, or manufacturing facilities.

9.4    Severability. Subject to the provisions of Paragraph 7.2D above, the illegality or unenforceability of any provision of this Agreement will not affect the validity and enforceability of any legal and enforceable provisions hereof.

9.5    Nonassignment. This Agreement will be binding on and inure to the benefit of the successors and assigns of the business interests of Motorola and may be assigned by Motorola only to the acquirer of substantially all of Motorola's assets in conjunction with such an acquisition. Representative will not sell, assign, delegate, or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Motorola.

9.6    Language. The English language version of this Agreement will govern and control any translations of the Agreement into any other language.

9.7    Applicable Law. This Agreement will be construed, enforced, and performed in accordance with the internal laws of Arizona, U.S.A. without reference to principles of conflicts of laws and specifically excluding the UN Convention of the Sale of Goods with respect to any purchases hereunder. Use of Arizona law shall apply exclusively to this Agreement.

9.8 Non-Solicitation. During the term of this Agreement and for a period of eighteen (18) months following the expiration or termination of this Agreement, neither party or its successors and assigns will encourage or solicit any employee to leave the employ of the other without written approval; the foregoing does not prohibit mass media advertising not specifically directed towards any particular employee of the other party.

9.9    Waiver. Motorola's failure to require Representative's performance of the provisions herein will not operate as a waiver of Motorola's right to request strict performance of the same or like provisions, or any other provisions hereof, at a later time.

9.10    Headings. Headings are for convenience of reference only and are not a part of this Agreement, nor will they in any way affect interpretation hereof.

IN WITNESS WHEREOF, Motorola and Representative have caused this Agreement to be executed by their duly authorized employees.

Representative:
J-Squared Technologies, Inc.

_____
(Authorized Signature)
By: Jeff Gibson
(Typed Name)
CEO
(Title)
November 28, 2002.
(Date)

Motorola Inc., Motorola Computer Group

_____
(Authorized Signature)
Dennis Mc Carthy
(Typed Name)
General Manager (Acting)
(Title)
Dec 5th 2002.
(Date)

ADDRESS FOR FORMAL NOTICE:

J-Squared Technologies, Inc._____

4015 Carling Ave, Suite 101_____

Kanata, Ontario _____

K2K 2A3, Canada _____

_____

Fax No.(613) 592-7051_____

ATTENTION:  Jeff Gibson_____

ADDRESS FOR FORMAL NOTICE:

Motorola Computer Group

2900S. Diablo Way, DW103.

Tempe, AZ  85282  USA

Fax No. (602) 438-6246

ATTENTION: Group Contracts

15



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a )
Canadian corporation, and J-SQUARE )
TECHNOLOGIES (OREGON) INC., an )
Oregon corporation, )
                    Plaintiffs, )
                  v. )     C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation. )
                 Defendant. )

# EXHIBIT C TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
_____
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:     May 22, 2006

*oregon*

Exhibit C

MANUFACTURER'S REPRESENTATIVE AGREEMENT

between

MOTOROLA COMPUTER GROUP

and

J-SQUARED TECHNOLOGIES ( OREGON ) INC.

TABLE OF CONTENTS

Article I. Definitions .................................................................................................3

Article II. Appointment and Scope ..........................................................................3

Article III. Representative's Compensation ...............................................................3

Article IV. Representative Obligations ......................................................................3

Article V. Motorola Obligations ...............................................................................3

Article VI Confidentiality and Proprietary Rights....................................................3

Article VII. Term and Termination............................................................................3

Article VIII. Dispute Resolution...............................................................................3

Article IX. General Provisions ..................................................................................3

LIST OF EXHIBITS

- EXHIBIT 1: REPRESENTATIVE PRODUCT LIST/COMMISION RATES

- EXHIBIT 2: TERRITORY AND HOUSE ACCOUNT LIST

- EXHIBIT 3: FOREIGN CORRUPT PRACTICES ACT CERTIFICATION

- EXHIBIT 4: PERFORMANCE STANDARDS

## Article VII. Term and Termination

7.1     Term. Unless terminated as provided in Paragraph 7.2 below or by mutual written consent, this Agreement will continue in full force and effect for an initial term expiring one (1) year after the effective date hereof and thereafter may be renewed only upon the written Agreement of both parties.

7.2     Termination. This Agreement may be terminated before expiration of the initial or any renewal term, as provided in Paragraph 7.1 above, by prior written notice to the other party as follows:

A.     By either party, in the event the other party should fail to perform any of its obligations hereunder and should fail to remedy such nonperformance within thirty (30) calendar days after receiving written demand therefore or, if the nature of the default does not reasonably allow it to be remedied in thirty (30) days, the Agreement will be considered terminated if the defaulting party fails to take corrective action within thirty (30) days after receipt of a notice of default and intent to terminate from the nondefaulting party;

B.     By either party, effective immediately, if the other party should become the subject of any voluntary or involuntary bankruptcy, receivership, or other insolvency proceedings or make an assignment or other arrangement for the benefit of its creditors, or if such other party should be nationalized or have any of its material assets expropriated;

C.     By Motorola, effective immediately, if Representative should attempt to sell, assign, delegate, or transfer any of its rights and obligations under this Agreement without having obtained Motorola's prior written consent thereto, or if there should occur any material change in the management, ownership, control, sales personnel, sales and marketing capability, or financial condition of Representative;

D.     By Motorola, effective immediately, if any law or regulation should be adopted or in effect in the Territory that would restrict Motorola's termination rights or otherwise invalidate any provisions hereof;

E.     By Motorola, effective immediately, if Representative should violate the terms of Paragraph 2.7 above or otherwise in accordance with provisions of Paragraphs 4.5, 4.7 and 4.8;

F.     By Motorola, effective immediately, if Representative knowingly makes any false or untrue statements or representations to Motorola herein or in the performance of its obligations hereunder; and

G.     By either party, without cause after the initial 180 days following the effective date of this Agreement, on thirty (30) days prior written notice to the other party.

7.3     Rights of Parties on Termination. Upon termination or expiration of this Agreement:

A.     Representative will cease all sales and other activities on behalf of Motorola, return to Motorola and immediately cease all use of Confidential Information, turn over to Motorola Representative's current Customer mailing list and take such action as is necessary to terminate Representative's registration as Motorola's sales Representative with any government authority.

B.     All indebtedness of Representative to Motorola will become immediately due and payable without further notice or demand, which is hereby expressly waived. Both parties will be entitled



to seek reimbursement for reasonable attorneys' fees that it may incur in collecting or enforcing payment of any such obligations under this Agreement.

C.    Representative will: a) remove from its property and immediately discontinue all use, directly or indirectly, of trademarks, designs, and markings owned or controlled, now or hereafter, by Motorola, or of any word, title, expression, trademark, design, or marking that, in the opinion of Motorola, is confusingly similar thereto; and b) further certify in writing that Representative has completely terminated its use of any and all such trademarks, designs, or markings, or any other word, title, or similar expression that appeared in or on any devices or other materials used in conjunction with Representative's business.

D.    Representative shall not be eligible for any commissions in the case of termination by Motorola as described in Paragraphs 7.2 A through F. Representative will be only be eligible for further commissions in the case of termination by Motorola pursuant to Paragraph 7.2 G and only on:

    1)    All direct open orders and new direct orders accepted and shipped within a period of 180 days as of the date of termination or expiration; and

    2)    All net distribution POS orders and new distribution POS orders accepted and shipped within a period of 180 days as of the date of termination or expiration.

E.    The obligations of Representative under Paragraphs 4.9, 4.10, 4.11 and Article VI will survive the termination or nonrenewal of this Agreement for any reason.

7.4    **Sole Remedy.** Motorola's payment obligations in this Article VII shall be Representative's sole remedy for the termination or nonrenewal of this Agreement and will be in lieu of all other claims that Representative may have against Motorola as a result thereof. Representative hereby waives its right to any termination compensation and damages it may have a right to under local law. Motorola will not be liable to Representative by reason of termination or nonrenewal of this Agreement for compensation, reimbursement, or damages for:

A.    Loss of prospective compensation;

B.    Goodwill or loss thereof; or

C.    Expenditures, investments, leases, or any type of commitment made in connection with the business of such party or in reliance on the existence of this Agreement.

## Article VIII. Dispute Resolution

8.1    MOTOROLA and Representative agree to attempt to settle any claim or controversy arising out of this Agreement through consultation and negotiation in the spirit of mutual friendship and cooperation. If such attempts fail, then the dispute may first be submitted to a mutually acceptable neutral advisor for initial fact finding in preparation for mediation or other form of alternate dispute resolution. The Court shall finally determine any dispute that cannot be so resolved between the parties in good faith under Arizona law.

9.10   Headings. Headings are for convenience of reference only and are not a part of this Agreement, nor will they in any way affect interpretation hereof.

IN WITNESS WHEREOF, Motorola and Representative have caused this Agreement to be executed by their duly authorized employees.

Representative:                                   Motorola Inc., Motorola Computer Group
J Squared Technologies ( Oregon ) Inc.

_____                  _____
(Authorized Signature)                            (Authorized Signature)

Jeff Gibson                                       Kevin Preslow
_____                  _____
(Typed Name)                                      (Typed Name)

President                                         Director, World-Wide Sales
_____                  _____
(Title)                                           (Title)

March 31, 2003.                                   15th May 2003
_____                  _____
(Date)                                            (Date)

ADDRESS FOR FORMAL NOTICE:                        ADDRESS FOR FORMAL NOTICE:

J-Squared Technologies, Inc. _____         Motorola Computer Group

4015 Carling Ave, Suite 101 _____          2900 S. Diablo Way, DW103

Kanata, Ontario _____                      Tempe, AZ 85282 USA

K2K 2A3, Canada _____

Fax No. (613) 592-7051 _____               Fax No. (602) 437-6246

ATTENTION: Jeff Gibson _____               ATTENTION: Group Contracts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a | ) | |
| Canadian corporation, and J-SQUARE | ) | |
| TECHNOLOGIES (OREGON) INC., an | ) | |
| Oregon corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 04-CV-960-SLR |
| MOTOROLA, INC., a Delaware corporation. | ) | |
| Defendant. | ) | |

# EXHIBIT D TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser

William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:    May 22, 2006

In the short term, let me know about deposing Mr. Pocalyko and the extension request. Thanks.

---

**From:** Bellew, Sean [mailto:SBellew@cozen.com]
**Sent:** Monday, April 10, 2006 3:31 PM
**To:** Papetti, Randy; Bowser, William; Talbot, Cory; Cates, Emily; Patrick, SherryAnn
**Cc:** Berry, Kevin F.; Felice, David A.
**Subject:** RE: Expert Issues

Randy:

We write in response to your letter dated April 5, 2006.

#### Request for Additional Time/Expert Depositions

To first address your request for additional time to disclose your expert's report, we have no problem providing you with additional time. Let's agree on April 24, 2006. This will give you an additional 12 days to disclose your report and will give us sufficient time in advance of the deadline for motions for summary judgment to address any issues raised in the report.

As for the deposition of Mr. Pocalyko, produce your expert's report and we can work collaboratively to schedule the depositions of the experts. We will be in contact with Mr. Pocalyko to see when after April 24th he is available. Please do the same for your expert.

#### 40% Underpayment

Motorola is in the best position to answer the question of whether it underpaid commissions and by how much. We have information that leads us to believe that the commissions were underpaid and, accordingly, we have issued subpoenas to the distributors. The Raytheon issue is something JST brought to Motorola's attention, not vice versa. If your client has the evidence to undermine our suspicions, then your expert can be provided with that information for the expert's rebuttal report. Motorola is on notice of the claim for underpayment, which came to my clients' attention during discovery through our discussions with the other representatives. There is no need to amend the complaint in light of the notice requirement of the pleadings.

#### JSO Trailing Commissions

Motorola is also on notice of the numerous contentions that JSO has with respect to Motorola's failure to pay the trailing commissions, including the fact that the JSO contract provides that a failure to meet performance standards is a "without cause" termination. There are many other facets to the trailing commissions, e.g., your clients bad faith in connection with the cure-period (see Kolasa, Robinson, Crawford). The issues regarding the trailing commissions have been developed throughout the depositions (and, quite frankly, we feel that Motorola's position is indefensible).

#### Total Damages

The total amount of damages to which our clients are entitled is an issue on which the judge can instruct the jury. The expert was not retained to make any conclusion as to whether these are in the alternative or cumulative. We'll be glad to discuss this with you.

#### Documents

We will go back and get clarification from the expert but I suspect that "relied upon" and "considered" are the same thing to him. We don't believe that there is anything else that has not been produced, but will check. We are almost certain that the e-mails referred to had no text -- only the attachments that were made part of the report.

#### GE Fanuc

I would like to learn more about how GE Fanuc limits your client's damages.

I have a call into Mr. Whittenburg and have not heard back from him. I trust you will work out our objections before pushing forward with this. We can agree to produce the documents that you request of GE Fanuc, subject to the limitations of our objections as set out in my previous e-mail.

Page 3 of 4

Sean J. Bellew, Esquire
COZEN O'CONNOR
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2026 (direct)
(302) 295-2013 (fax)

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**From:** Papetti, Randy [mailto:RPapetti@lrlaw.com]
**Sent:** Wednesday, April 05, 2006 8:15 PM
**To:** Bellew, Sean; Bowser, William; Talbot, Cory; Cates, Emily; Patrick, SherryAnn
**Subject:** Expert Issues

Sean: Attached is a letter regarding issues related to your clients' expert report. Some of the issues, I suspect, will not be resolvable except via the Court (though I think we ought to talk about those issues, too), but the other issues go to clarification and documents we need to finish our expert report. I would appreciate your cooperation in getting us that information to avoid further delay.

I'm gone tomorrow and Friday, but back on Monday.

----

For more information about Lewis and Roca LLP, please go to
www.lewisandroca.com.

Phoenix (602) 262-5311
Tucson (520) 622-2090
Las Vegas (702) 949-8200
Reno (775) 770-2600
Albuquerque (505) 764-5400

This message is intended only for the use of the individual
or entity to which it is addressed. If the reader of this message
is not the intended recipient, or the employee or agent responsible
for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of
this message is strictly prohibited. If you have received this
communication in error, please notify us immediately by replying to
the sender of this E-Mail by return E-Mail or by telephone.

In accordance with Internal Revenue Service Circular 230, we advise

5/10/2006

you that if this email contains any tax advice, such tax advice was
not intended or written to be used, and it cannot be used, by any
taxpayer for the purpose of avoiding penalties that may be imposed
on the taxpayer.

For more information about Lewis and Roca LLP, please go to
www.lewisandroca.com.

Phoenix (602) 262-5311
Tucson (520) 622-2090
Las Vegas (702) 949-8200
Reno (775) 770-2600
Albuquerque (505) 764-5400

This message is intended only for the use of the individual
or entity to which it is addressed. If the reader of this message
is not the intended recipient, or the employee or agent responsible
for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of
this message is strictly prohibited. If you have received this
communication in error, please notify us immediately by replying to
the sender of this E-Mail by return E-Mail or by telephone.

In accordance with Internal Revenue Service Circular 230, we advise
you that if this email contains any tax advice, such tax advice was
not intended or written to be used, and it cannot be used, by any
taxpayer for the purpose of avoiding penalties that may be imposed
on the taxpayer.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a    )
Canadian corporation, and J-SQUARE    )
TECHNOLOGIES (OREGON) INC., an    )
Oregon corporation,    )
                             Plaintiffs,    )
                   v.    )     C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation.    )
                   Defendant.    )

# EXHIBIT E TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:     May 22, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.,            )
a Canadian corporation, and               )
                                          )
J-SQUARED TECHNOLOGIES (OREGON)           )
INC.,                                     )
an Oregon corporation,                    )        C.A. No. 04-960-SLR
                                          )
                    Plaintiffs,           )
                                          )        JURY TRIAL DEMANDED
            v.                            )
                                          )
MOTOROLA, INC.,                           )
a Delaware corporation                    )
                                          )
                    Defendant.            )

## PLAINTIFFS J-SQUARED TECHNOLOGIES, INC. AND J-SQUARED TECHNOLOGIES (OREGON), INC.'S INITIAL DISCLOSURES PURSUANT TO RULE 26

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiffs J-Squared Technologies, Inc. and J-Squared Technologies (Oregon), Inc. ("Plaintiffs") serve Motorola, Inc. ("Defendant") with their initial responses to required discovery.

Discovery in this case is not complete and Plaintiffs' investigation is ongoing. The responses herein are based upon such information and documents as are currently available to Plaintiffs at this time. Further, independent investigation, legal research and analysis by Plaintiffs or their counsel may supply additional facts or documents and/or add meaning to known facts or documents. The responses hereinafter set forth are given without prejudice to Plaintiffs' right to introduce evidence of any subsequently discovered or compiled facts or interpretation thereof, or to supplement, modify or otherwise change these responses.

Plaintiffs reserve the right to object on any ground at any time to such other or supplemental document requests as Defendant may at any time propound involving or relating to the subject matter of these responses.

WILM1\30860\1 153371.000

1.    Rule 26(a)(1)(A) – Plaintiffs identify the following individuals as likely to have information with respect to Plaintiffs' claims, defenses and/or damages:

| Plaintiffs | Defendant |
|---|---|
| Jeff Gibson | Paul Holt |
| Michael Nykoluk | Dana Huth |
| Claude Langlois | Wendy Vittory |
| Steve Blomme | Ed Kaczor |
|  | Susan Hamlett |
| Third Parties | Julie Blair |
| Dennis Gagne | Jeanne Kolasa |
| Gene L Williams (G.L. Williams Associates, Inc.) | Dennis Robinson |
|  | Nina Guibor |
| David S. Butler (EMA Sales) | Kevin Parslow |
| Suntron Systems (f/k/a Trilogic) | Steve Machernis |
| Dave Paul | Larry Terry |
|  | David Hinkle |
|  | Ken Crooper |
|  | Kim Crawford |

In addition to the foregoing persons, Plaintiffs incorporate by reference all other persons identified in the pleadings, motions and documents produced to date.


2.    Rule 26(a)(1)(B) – all documents, data compilations and tangible things in Plaintiffs' possession, custody or control relevant to this action that are not equally assessable to Defendant are attached herewith or will be provided within 5 business days.


3.    Rule 26(a)(1)(C) – Plaintiffs' projected revenues from sales of Motorola products. Plaintiffs have incurred in excess of $750,000 to design-in Motorola products with Plaintiffs' customers in reliance on Defendant's representations of fact. Plaintiffs also seek pre- and post judgment interest at the legal rate as well as an award of reasonable attorney fees in accordance with the parties' indemnification agreement.

2

JUN.29'2005 16:31 3022952013          COZEN OCONNOR          #3932 P.004/005

4.    Rule 26(a)(1)(D) – not applicable.

Dated:  June 29, 2005

David A. Felice
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
   *Attorneys for Plaintiffs*

Of counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

3

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on June 29, 2005, true and correct copies of the

foregoing were caused to be served upon counsel of record at the following address as indicated:

**Via Hand Delivery**
William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**Via Facsimile**
Randy Papetti
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ 85004

David A. Felice (#4090)

WILM1\30926\1 153371.000