IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a | ) | |
| Canadian corporation, and J-SQUARE | ) | |
| TECHNOLOGIES (OREGON) INC., an | ) | |
| Oregon corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 04-CV-960-SLR |
| MOTOROLA, INC., a Delaware corporation. | ) | |
| Defendant. | ) | |

# EXHIBIT F TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:    May 22, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC.,<br>a Canadian corporation, and | ) | |
| | ) | |
| | ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC.,<br>an Oregon corporation, | ) | |
| | ) | |
| | ) | C.A. No. 04-960-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MOTOROLA, INC.,<br>a Delaware corporation | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF J-SQUARED TECHNOLOGIES (OREGON), INC.'S
RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION**

Pursuant to Federal Civil Rules 26, 33 and 34, Plaintiff J-Squared Technologies
(Oregon), Inc. ("Plaintiff"), by its undersigned counsel, hereby responds to Defendant Motorola,
Inc.'s ("Defendant") First Set of Interrogatories and Requests for Production as follows:

**GENERAL OBJECTIONS**

1.      Plaintiff objects to the overall number of interrogatories propounded, including
subparts, as exceeding the 25 permitted under the Federal Rules and the Court's scheduling
order.  In the spirit of cooperation, Plaintiff will respond to all interrogatories set forth in this,
Defendant's First Set of Interrogatories.  Plaintiff does not, however, waive the right to object to
the service of any additional interrogatories.

2.      Plaintiff objects to Defendant's First Set of Interrogatories and Requests for
Production (collectively, the "Discovery Requests") to the extent that the interrogatories
contained therein seek information or documents that are protected by any privilege, including
but not limited to the attorney work-product or attorney-client privileges.  The inadvertent

disclosure of any privileged information or documents shall not constitute a waiver of any privilege or any other ground for the objection to discovery at any time.

3.      Plaintiff objects to the Discovery Requests to the extent that the requests contained therein seek materials prepared in anticipation of litigation or for trial, or seek the discovery of the mental impressions, conclusions, opinions or legal theories of counsel or any other representative of the Plaintiff concerning this litigation. The inadvertent disclosure of any such information or documents shall not constitute a waiver of any privilege or any other ground for the objection to such discovery at any time.

4.      Plaintiff objects to the Discovery Requests to the extent that the requests contained therein are vague, unduly burdensome, overly broad, unlimited as to time, or directed to any information which is not relevant to the subject matter of this litigation, or are not reasonably calculated to lead to the discovery of admissible evidence.

5.      Plaintiff objects to the Discovery Requests to the extent that the requests contained therein require disclosure of information that is confidential, proprietary, or trade secret information.

6.      Plaintiff reserves the right to supplement its responses to the Discovery Requests up to and including the time of trial should information responsive thereto subsequently be discovered. The responses contained herein are based upon Plaintiff's knowledge, information and belief at the present time.

7.      Plaintiff does not waive any objections as to the admissibility of any answers to Discovery Requests provided herein or the right to object to any other Discovery Requests involving or relating to the subject matter hereof.

8.      Notwithstanding anything herein to the contrary, none of the responses herein constitute a waiver of these General Objections, or are these responses an acknowledgement by

WILM1\32267\2 153371.000

Plaintiff that it is aware of or are currently in possession, custody or control of information or documents responsive to the Discovery Requests.

9.     The General Objections are incorporated in every individual response set forth below, whether referenced specifically or not.

3

## RESPONSES TO INTERROGATORIES

1.    Identify and describe with specificity any and all representations you believe
Motorola made regarding its intent to "forge long-lasting relationships with . . . JTO [sic]," as
alleged in paragraph 13 of the complaint, including the names of the Motorola representative or
representatives making the representations, the time and place of the representations, to whom
the representations were made, all reasons you believe these representations were false when
made, as alleged in paragraph 14 of the complaint, and all other facts and documents that support
your answer.

**RESPONSE:**    Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in

Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted

therewith.  In addition, Steven Machernis, Larry Terry, Dennis Robinson and Paul Holt made

numerous representations to Steve Blomme and Claude Langlois during the negotiations of the

JSO and JST agreements and afterwards concerning the requirement that Motorola outsource its

manufacturer representatives following a substantial decrease in the Motorola in-house sales

force from 55 to 12 sales representatives.  These representations were made over the telephone,

at in-person meetings and at Motorola presentations to Plaintiff and other manufacturer

representatives.  Similar representations were made to Scott Williams and Mark Gernhardt at

G.L. Williams Associates, Inc. (through Steve Cunha, Paul Holt and Marc Watts) when

Defendant negotiated the contract that was finally executed between those two parties.  Indeed,

G.L. Williams dropped a  profitable competing line (SBS Technologies) in favor or Motorola

given representations of a long-term relationship.  Comparable representations were also made to

RT Technologies through some of the same individuals, through the same medium of

communication.

Defendant, principally through Marc Watts, Jeanne Kolasa and Dennis Robinson,

represented that the POS commission payments payable to Plaintiff, based upon a 5%

commission and a historical run rate, would be sufficient to permit Plaintiff to realize a

substantial revenue source at the commencement of the engagement.

4

WILM1\322672 153371.000

2.      Identify and describe with specificity any and all representations you believe Motorola made to JSO as to the expected profitability of JSO as a manufacturer representative for Motorola, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other fact sand documents that support your answer.

**RESPONSE:** See Plaintiff's response to Interrogatory No. 1 above. By way of further

response, Plaintiff states that representations were made by Dennis Robinson, Marc Watts and

Jeanne Kolasa that POS commissions would be approximately $10,000 to $15,000 per month

based upon a 5% commission rate. Further, Paul Holt informed Plaintiff that the sales demand

expected to be generated from the long-term relationship would be sufficient to cover the costs

of hiring a new employee. Based on these representations, Plaintiff hired Steve Blomme as an

employee. This was despite the fact that Motorola's Kevin Parslow wanted to keep monthly

commission payments to each single manufacturer representative at or below $10,000. *See*

MOTJ00522.

3.      Identify and describe with specificity any and all  representations you believe Motorola made to JSO as to the expected integration of JSO into the Motorola business model, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:** See Plaintiff's responses to Interrogatory Nos. 1 and 2 above. Pursuant to

Rule 33(d), Plaintiff identifies the following documents:  MOTJ 01073-78 and MOT 01873-

1901.

4.      Identify and describe with specificity any other representations or material false statements you believe Motorola made to JSO on which JSO relied to its detriment, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe

5

these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:** The above-referenced individuals also made representations concerning client referrals to Plaintiff for the non-competing product lines as well as various other benefits derived from Plaintiff's entry into the embedded technologies marketplace.

5.    Identify and describe with specificity each and every way JSO relied on Motorola's purported representations of a long-lasting relationship, of expected profitability, of expected integration, and any other representation or false statements you believe Motorola to have made and on which JSO relied to its detriment, including but not limited to how JSO invested more than $300,000 supporting Motorola's sales objectives in the United States, as alleged in paragraph 13 of the complaint, how JSO expended "substantial capital" as alleged in paragraph 80 of the complaint, and all other facts and documents that support your answer.

**RESPONSE:** Plaintiff incurred substantial expenses (payroll, technology, training, travel, marketing, etc.) through the demand creation and design-in phases of working with original equipment manufacturers ("OEM") and other customers. Plaintiff incurred costs and additional overhead in monitoring and complying with the demand fulfillment aspect of the relationship. Plaintiff hired Steve Blomme and reassigned current employees to work on Motorola projects. Further, there were certain opportunity costs (both within and outside of the embedded technologies marketplace) associated with Plaintiff's exclusive relationship with Motorola. Indeed, Plaintiff reassigned various existing employees to work on Motorola's line when they were previously working on other projects. *See also* Responses to Interrogatory Nos. 1, 2 and 3 above.

6.    Describe how JSO calculated its anticipated profit of $200,000 for sales of Motorola products for the first year of the parties' Agreement, as alleged in paragraph 13 of the complaint, and all facts and documents that support your answer.

**RESPONSE:** Plaintiff misstated the definition for the $200,000 identified in paragraph 13 of its Complaint. That figure is more accurately defined as gross commission revenue.

6

Dennis Robinson, Marc Watts and Jeanne Kolasa made representations as to present and

historical run rates that would drive approximately $10,000 to $15,000 in gross commission

payments per month under the JSO Agreement.    These representations were made to Steve

Blomme and Jeff Gibson.


7.    Explain what you mean in paragraph 13 and how it relates to JSO when you refer
to expenditures as "collectively envisioned by the parties to support the sale of Motorola's
products under the respective agreements" and identify all facts and documents that support your
answer.

**RESPONSE:**    Defendant was aware of Plaintiff's hiring of Steve Blomme as the project

coordinator for the JSO Agreement and the substantial salary requirements that were undertaken.

In addition, Plaintiff reassigned other employees to the Motorola project.


8.    Describe in detail the "considerable time, energy, and funds" JSO expended to
support Motorola's sales objectives, as alleged in paragraph 16 of the complaint, in what ways
Motorola approved these expenditures, as alleged in paragraph 17 of the complaint, and all facts
and documents that support your answer.

**RESPONSE:**    See Plaintiff's response to Interrogatory No. 5 above.


9.    Identify (as defined in Instruction D) the individuals at JSO who negotiated the
Agreement with Motorola and describe the length of time it took for the parties to finalize their
Agreement, the number of drafts that were circulated to JSO before the parties finalized their
Agreement, each and every basis for the allegation in paragraph 20 of the complaint that
Motorola "drafted the material terms of the contracts and presented them on a take it or leave it
basis to . . . JSO," and all facts and documents that support your answer.

**RESPONSE:**    Plaintiff objects to this interrogatory to the extent this information is

equally accessible to Motorola.    Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in

Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted

therewith.    Further, Plaintiff states that Steve Blomme and Jeff Gibson represented JSO during

the contract negotiations.    Plaintiff believes there were approximately one to two different drafts

of the agreement proposed before the final version was approved. Through these different drafts, Motorola attempted to incorporate unconscionable forfeiture provisions relating to government contracts. Further, Motorola required Plaintiff to agree to performance standards that were not included in the prior JST Agreement. Approximately one to two months transpired from the initiation of negotiations until Plaintiff executed the Agreement. Following Plaintiff's execution of the agreement, an additional period of time elapse before Motorola signed the agreement. Thereafter, an addendum was entered.

10. Describe each and every basis for the allegation in paragraph 21 of the complaint hat Motorola knew JSO was "expending substantial sums of capital" to sell Motorola products and all facts and documents that support your answer.

**RESPONSE**: See Plaintiff's response to Interrogatory No. 7 above. Defendant knew, through various progress emails, telephone calls and teleconferences that JSO was making a substantial investment in the Motorola product line pursuant to the requirements of the agreement and the parties' understanding of the manufacturer representatives' role in the new marketing strategy. By the very framework of the uncommitted, committed and design win phases, Plaintiff was required to expend substantial amounts of capital in personnel, training, marketing and travel expenses, amongst other costs.

11. Describe with specificity how JSO met its obligations under the Agreement with Motorola, as alleged in paragraph 32 of the complaint, and all facts and documents that support your answer.

**RESPONSE**: See Plaintiff's responses to Defendant's Requests for Admission and Plaintiff's responses to Interrogatory Nos. 19 through 21 below. By way of further response, Plaintiff states that it complied with all conditions and requirements identified under the

8

agreement and that Motorola's termination for performance was unfounded and constituted a breach of contract and/or breach of the covenant of good faith and fair dealing.

12.    Identify and describe with specificity the total number of uncommitted accounts/programs (as that term is used in Exhibit 4 to the Agreement) that JSO brought to Motorola beginning May 15, 2003 and all facts and documents that support your answer, including but not limited to the name of the potential customer or customers, the program or project that the customer was developing, the Motorola product that the customer was potentially interested in purchasing, the quarter in which the uncommitted account/program was acquired, the efforts that JSO made to secure each uncommitted account/program, and all other facts and documents that support your answer.

**RESPONSE:**    Plaintiff objects to this interrogatory to the extent this information is equally accessible to Defendant.    Notwithstanding this objection, as of the termination of Agreement, Plaintiff brought a total of nineteen (19) uncommitted accounts/programs to Motorola.    These included: (i) Broadstorm; (ii) Credence; (iii) VideoTele, MATRIX; (iv) Kentrox-CSUDSU; (v) NUWC-Range Controller; (vi) FEI-cPCI Controller; (vii) FEI-DSP Element; (viii) Zetec-Mini Measure Tool; (ix) COE Manufacturing, (x) Tektronix; (xi) ZEROX-PPC Marvel Controller; (xii) Arrista-68k Controller; (xiii) Boeing FCS; (xiv) Boeing AWACS-Data 1; (xv) Boeing AWACS-Data 2; (xvi) Boeing F22-Simulator; (xvii) Boeing F22-Instrumentation; (xviii) NCube-Intel Tester; and (xix) Lattice Semi-Conductor. In the days and weeks following termination, Plaintiff's work brought an additional eight (8) uncommitted accounts/programs to Motorola.    The total number of uncommitted accounts was twenty-seven (27).

Motorola did not have a basis at the time of termination (even if valid) to terminate based on failure to achieve the specified threshold of uncommitted accounts/programs. *See* MOTJ01617-22; MCG015712-16; MCG015588-93. Motorola's purported basis for termination on this ground was willful, wanton, fraudulent and intended to deprive JSO of its rights under the Agreement.

9

WILM1\322672 153371.000

13.    Identify and describe with specificity the total number of committed accounts/programs (as that term is used in Exhibit 4 to the Agreement) that JSO brought o Motorola beginning May 15, 2003 and all facts and documents that support your answer, including but not limited to the name of the customer or customers, the program or project that the customer was developing, the Motorola product that the customer purchased, the quarter in which the committed account/program was acquired, the efforts that JSO made to secure each committed account/program, and all other facts and documents that support your answer.

**RESPONSE:**    Plaintiff objects to this interrogatory to the extent this information is equally accessible to Defendant.    Notwithstanding this objection, as of the termination of Agreement, Plaintiff brought a total of five (5) committed accounts/programs to Motorola. These included: (i) Boeing FCS; (ii) Boeing F22 Simulator; (iii) Boeing F22 Instrumentation; (iv) Boeing AWACS-Data 1; (v) Boeing AWACS-Data 2.    In the days and weeks following termination, Plaintiff brought an additional three (3) committed accounts/programs to Motorola. The total number of committed accounts was eight (8).

Motorola did not have a basis at the time of termination (even if valid) to terminate based on failure to achieve the specified threshold of committed accounts/programs. *See* MOTJ01617-22; MCG015712-16; MCG015588-93.    Motorola's purported basis for termination on this ground was willful, wanton, fraudulent and intended to deprive JSO of its rights under the Agreement.

14.    Identify and describe with specificity the total number of design wins (as that term is used in Exhibit 4 to the Agreement) that JSO brought to Motorola beginning May 15, 2003 and all facts and documents that support your answer, including but not limited to the name of the customer or customers, whether the customer was a military/aerospace entity, a description of the product that the customer was building, a description of the Motorola product that the customer purchased for inclusion in its product, whether the customer wanted a Motorola board product or system product, the customer's annual revenue forecast, how the customer evidence its intent to purchase Motorola products, the total dollar amount purchased by the customer at the date of termination of the Agreement, the quarter in which the design win was acquired, the efforts JSO made to secure each design win, and all other facts and documents that support your answer.

10

**RESPONSE:**  Plaintiff objects to this interrogatory to the extent this information is equally accessible to Defendant.   Notwithstanding this objection, as of the termination of Agreement, Plaintiff brought a total of four (4) design wins to Motorola.   The design wins included: (i) Boeing AWACS-Data 1; (ii) Boeing AWACS-Data 2; (iii) Boeing F22-Simulator; and (iv) 888 LocalDial.

Motorola did not have a basis at the time of termination (even if valid) to terminate based on failure to achieve the specified threshold of design wins.  *See* MOTJ01617-22; MCG015712-16; MCG015588-93.  Motorola's purported basis for termination on this ground was willful, wanton, fraudulent and intended to deprive JSO of its rights under the Agreement.

15.     Identify (as defined in Instruction D) the JSO sales representative or representatives that sold products for Motorola and fully explain the sales representatives' responsibilities with regard to Motorola, whether the sales representative also sold products for other companies, and what percentage of the sales representative's time was spent selling Motorola products.

**RESPONSE:**  Steve Blomme (80%), John Mitchell (70%), David Roth (20%) and Ken Sullivan (20%) worked to solicit customers, design product solutions and service demand fulfillment responsibilities under the Agreement, amongst other responsibilities.     The approximate percentage of each individual's professional time spent on Motorola product lines is noted parenthetically.   Messrs. Blomme, Roth and Sullivan are current employees of JSO and may be contacted through counsel.   Mr. Mitchell resigned his position with JSO to continue his career elsewhere.    Counsel will facilitate any communications with Mr. Mitchell that are necessary.

16.     Identify (as defined in Instruction D) all JSO employees that had a duty or responsibility in connection with meeting JSO's obligations under the Agreement and describe each such employee's job title and job duties during the time the Agreement was in effect.  If the employee no longer works for JSO, indicate date of termination.

11

**RESPONSE:** See Plaintiff's response to Interrogatory No. 15 above. By way of further response, Plaintiff identifies Jeff Gibson and Claude Langlois.

17.    Explain what you mean in paragraph 3 of your disclosure statement and how it relates to JSO when you write that "Plaintiffs have incurred in excess of $750,000 to design-in Motorola products with Plaintiffs' customers in reliance on Defendant's representations of fact" and identify all facts and documents that support your answer.

**RESPONSE:** See Plaintiff's response to Interrogatory No. 5 above. At a minimum, Plaintiff is due the additional commission payments under the Agreement, given proper expiration of the Agreement following its one-year anniversary and a *bona fide* decision not to renew by either party. Alternatively, Plaintiff forecasted a substantial return on investment after the first two years under the Agreement. Had Defendant complied with the representations made both before, during and after the negotiations leading to the execution of the Agreement, Plaintiff would have realized a return on investment similar (at approximately the same rate) to that depicted in J2 1675. Plaintiff's expectations are also partially substantiated by Motorola's own "uplift" calculations of commissions owing under the Agreement, given the historical run rates for sales.

Plaintiff may, in accordance with the requirements of the scheduling order, designate a trial expert to provide additional testimony on this subject. Accordingly, Plaintiff reserves its right to amend or supplement this response.

18.    Explain in detail JSO's computation of damages, including but not limited to its method of calculation, how JSO together with JST has incurred in excess of $750,000 in damages as set forth in JSO's disclosure statement, and all facts and documents that support this computation.

**RESPONSE:** See Plaintiff's response to Interrogatory Nos. 5, 6 and 17 above and JST's responses to Defendant's First Set of Interrogatories.

19.    If you deny request for admission no. 1, explain why.

**RESPONSE:**    As described in the response to Interrogatory No. 12 above, Plaintiff obtained a total of nineteen (19) uncommitted counts/programs as of the date of termination and twenty-seven (27) given a consideration of the days and weeks that followed.

20.    If you deny request for admission no. 1, explain why.

**RESPONSE:**    As described in Plaintiff's response to Interrogatory No. 13 above, Plaintiff secured five (5) committed accounts/programs as of the date of termination or eight (8) given a consideration of the days and weeks that followed.

21.    If you deny request for admission no. 3, explain why.

**RESPONSE:**    As described in Plaintiff's response to Interrogatory No. 14 above, Plaintiff secured four (4) design wins as of the date of termination.

WILM1\32267\2 153371.000

## REQUESTS FOR PRODUCTION

1.     Please produce any and all documents that support your responses to Motorola's interrogatories or that you consulted or referred to in responding to these interrogatories.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

2.     Please produce any and all documents relating to any representations you believe Motorola made to JSO regarding the anticipated duration of Motorola's relationship with JSO.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

3.     Please produce any and all documents relating to any representations you believe Motorola made to JSO regarding the expected profitability of JSO as a manufacturer representative for Motorola.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

4.     Please produce any and all documents relating to any representations you believe Motorola made to JSO regarding the expected integration of JSO into the Motorola business model.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

5.     Please produce any and all documents relating to any other representations or false statements you believe Motorola made to JSO on which JSO on which JSO relied to its detriment.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.

6.     Please produce any and all documents supporting your contention that JSO relied on representations Motorola made about a long-lasting relationship, expected profitability,

expected integration, and any other representations or false statements you believe Motorola
made to JSO on which JSO relied to its detriment.

     **RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.


     7.    Please produce any and all documents supporting JSO's contention that it
anticipated a profit of $200,000 for sales of Motorola products for the first year of the parties'
Agreement.

     **RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.


     8.    Please produce any and all documents supporting JSO's contention that it
expended "considerable time, energy, and funds" to support Motorola's sales objectives.

     **RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.


     9.    Please produce all documents relating to the negotiation and drafting of JSO's
Agreement with Motorola, including but not limited to all correspondence between Motorola and
JSO, all correspondence between employees at JSO involved in negotiating and drafting the
Agreement, all notes created by employees at JSO regarding the negotiation and drafting of the
Agreement, and all drafts of the parties' Agreement.

     **RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.


     10.    Please produce any and all documents that support the allegation in paragraph 21
of the complaint that Motorola knew JSO was expending substantial sums of capital to sell
Motorola products.

     **RESPONSE:** All responsive, non-privileged documents have been or will be produced,

should any exist.


     11.    Please produce any and all documents that support the allegation in paragraph 32
of the complaint that JSO met all of its obligations under the parties' Agreement.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

12.    Please produce any and all documents regarding uncommitted accounts/programs, committed accounts/programs, and design wins (as those terms are used in Exhibit 4 to the Agreement) that JSO brought to Motorola from May 15, 2003 to the present.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

13.    Please produce all monthly account update reports and other documents regarding JSO's efforts to secure business for Motorola.

**RESPONSE:** All responsive, non-privileged documents have been or will be produced, should any exist.

14.    Please produce any and all communications from March 1, 2003 to the present between JSO and Motorola and any document that refers or relates to such communications.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff will not undertake such a search other than as contemplated through its responses to the balance of Defendant's requests.

15.    Please produce any and all documents that support JSO's claim for damages and its computation of damages.

**RESPONSE:**    Plaintiff will provide any additional information concerning the computation of damages as required by the expert disclosure deadlines identified in the Court's scheduling order.

16.    Please produce any and all documents sent to or received from any person you expect to call as an expert witness in this case that refer or relate to that person's testimony and/or opinion including but not limited to communications, checks, invoices, or statements, reports, data, analysis, notes, tangible things, and memoranda.

WILM1\322672 153371.000

**RESPONSE:**    Plaintiff will provide any additional information concerning the computation of damages as required by the expert disclosure deadlines identified in the Court's scheduling order.

AS TO OBJECTIONS:

Dated: December 6, 2005

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

Of counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and | ) ) ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC., an Oregon corporation, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 04-960-SLR |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| MOTOROLA, INC., a Delaware corporation | ) ) ) ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that on December 6, 2005 true and correct copies of *Plaintiff*

*J-Squared Technologies, (Oregon) Inc.'s Responses to Defendant's First Set of Interrogatories*

*and Requests for Production* were served upon the following parties:

William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Randy Papetti
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ 85004

Dated: December 6, 2005

David A. Felice
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on December 6, 2005, I electronically filed the

foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to

the following counsel of record:

William W. Bowser                          Randy Papetti
Young Conaway Stargatt & Taylor            Lewis and Roca LLP
The Brandywine Building                    40 N. Central Avenue
1000 West Street, 17th Floor               Phoenix, AZ  85004
Wilmington, DE  19801


David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: dfelice@cozen.com