IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a )
Canadian corporation, and J-SQUARE )
TECHNOLOGIES (OREGON) INC., an )
Oregon corporation, )
       Plaintiffs, )
      v. )  C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation. )
       Defendant. )

# EXHIBIT G TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:  May 22, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and | ) ) ) | |
| J-SQUARED TECHNOLOGIES (OREGON) INC., an Oregon corporation, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 04-960-SLR |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| MOTOROLA, INC., a Delaware corporation | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF J-SQUARED TECHNOLOGIES, INC.'S
RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES,
REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION**

Pursuant to Federal Civil Rules 26, 33 and 34, Plaintiff J-Squared Technologies, Inc. ("Plaintiff"), by its undersigned counsel, hereby responds to Defendant Motorola, Inc.'s ("Defendant") First Set of Interrogatories and Requests for Production as follows:

**GENERAL OBJECTIONS**

1.      Plaintiff objects to Defendant's First Set of Interrogatories and Requests for Production (collectively, the "Discovery Requests") to the extent that the interrogatories contained therein seek information or documents that are protected by any privilege, including but not limited to the attorney work-product or attorney-client privileges.  The inadvertent disclosure of any privileged information or documents shall not constitute a waiver of any privilege or any other ground for the objection to discovery at any time.

2.      Plaintiff objects to the Discovery Requests to the extent that the requests contained therein seek materials prepared in anticipation of litigation or for trial, or seek the discovery of the mental impressions, conclusions, opinions or legal theories of counsel or any

other representative of the Plaintiff concerning this litigation. The inadvertent disclosure of any such information or documents shall not constitute a waiver of any privilege or any other ground for the objection to such discovery at any time.

3.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein are vague, unduly burdensome, overly broad, unlimited as to time, or directed to any information which is not relevant to the subject matter of this litigation, or are not reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to the Discovery Requests to the extent that the requests contained therein require disclosure of information that is confidential, proprietary, or trade secret information.

5.    Plaintiff reserves the right to supplement its responses to the Discovery Requests up to and including the time of trial should information responsive thereto subsequently be discovered. The responses contained herein are based upon Plaintiff's knowledge, information and belief at the present time.

6.    Plaintiff does not waive any objections as to the admissibility of any answers to Discovery Requests provided herein or the right to object to any other Discovery Requests involving or relating to the subject matter hereof.

7.    Notwithstanding anything herein to the contrary, none of the responses herein constitute a waiver of these General Objections, or are these responses an acknowledgement by the Plaintiff that it is aware of or are currently in possession, custody or control of information or documents responsive to the Discovery Requests.

8.    The General Objections are incorporated in every individual response set forth below, whether referenced specifically or not.

## RESPONSES TO INTERROGATORIES

1.      Identify and describe with specificity any and all representations you believe Motorola made regarding its intent to "forge long-lasting relationships with JST," as alleged in paragraph 13 of your complaint, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, as alleged in paragraph 14 of your complaint, and all other facts and documents that support your answer.

**RESPONSE:**    Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted therewith. In addition, Steven Machernis, Larry Terry, Ed Kaczor and Paul Holt made numerous representations to Jeff Gibson and Claude Langlois during the negotiations of the JST agreements and afterwards concerning the requirement that Motorola outsource its manufacturer representatives following a substantial decrease in the Motorola in-house sales force from 55 to 12 sales representatives. These representations were made over the telephone, at in-person meetings and at Motorola presentations to Plaintiff and other manufacturer representatives. Similar representations were made to Scott Williams and Mark Gernhardt at G.L. Williams Associates, Inc. (through Steve Cunha, Paul Holt and Marc Watts) when Defendant negotiated the contract that was finally executed between those two parties. Indeed, G.L. Williams dropped a profitable competing line (SBS Technologies) in favor or Motorola given representations of a long-term relationship. Comparable representations were also made to RT Technologies through some of the same individuals, through the same medium of communication.

Defendant, through Marc Watts, Jeanne Kolasa and Larry Terry, represented that the POS commission payments payable to Plaintiff, based upon a 5% commission and a historical run rate, would be sufficient to permit Plaintiff to realize a substantial revenue source at the commencement of the engagement. These representations were made both orally and through acknowledgment of financial forecasts received by these individuals from Claude Langlois and

3

Jeff Gibson. Plaintiff has discovered that these representations were known to be false or were made with a reckless indifference to the truth of the matters asserted. Pursuant to Rule 33(d), Plaintiff identified the following document: MOTJ00556.


2.      Identify and describe with specificity any and all representations you believe Motorola made to JST as to the expected profitability of JST as a manufacturer representative for Motorola, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:** See Plaintiff's response to Interrogatory No. 1 above. By way of further response, Plaintiff states that representations were made by Ed Kaczor, Larry Terry and Jeanne Kolasa that POS commissions would be at least $10,000 per month based upon a 5% commission rate. Initially, Plaintiff requested a 10% commission rate, but Defendant declined to accept such a rate, indicating that sales were in the approximate range of $2 million to $3 million per year, sufficient enough to drive a $10,000 per month commission payment based upon an agreed-upon 5% commission rate. As identified through discovery, Defendant knew commission payments at a 5% rate would reach a maximum of only $5,000 per month based on historical run rates. *See* MOTJ00556. In reality, the monthly commissions Plaintiff received following execution of the Agreement were far below even this historical-based calculation given Defendant's neglect (through a 78% reduction in the MCG in-house representatives) of the demand creation component of the embedded technologies division. *See, e.g.,* MOT00757.


3.      Identify and describe with specificity any and all representations you believe Motorola made to JST as to the expected integration of JST into the Motorola business model, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

4

**RESPONSE:**  See Plaintiff's responses to Interrogatory Nos. 1 and 2 above.  Pursuant to Rule 33(d), Plaintiff identifies the following documents:  MOTJ 01073-78 and MOT 01873-1901.

4.    Identify and describe with specificity any other representations or material false statements you believe Motorola made to JST on which JST relied to its detriment, including the names of the Motorola representative or representatives making the representations, the time and place of the representations, to whom the representations were made, all reasons you believe these representations were false when made, and all other facts and documents that support your answer.

**RESPONSE:**  The above-referenced individuals also made representations concerning client referrals to Plaintiff for the non-competing product lines as well as various other benefits derived from Plaintiff's entry into the embedded technologies marketplace.

5.    Identify and describe with specificity each and every way JST relied on Motorola's purported representations of a long-lasting relationship, of expected profitability, of expected integration, and any other representation or false statements you believe Motorola to have made and on which JST relied to its detriment, including but not limited to how JST invested more than $500,000 supporting Motorola's sales objectives in Canada, as alleged in paragraph 13 of your complaint, how JST expended "substantial capital" as alleged in paragraph 53 of the complaint, and all other facts and documents that support your answer.

**RESPONSE:**  Plaintiff incurred substantial expenses (payroll, technology, training, travel, marketing, etc.) through the demand creation and design-in phases of working with original equipment manufacturers ("OEM") and other customers.  Plaintiff incurred costs and additional overhead in monitoring and complying with the demand fulfillment aspect of the relationship.  Further, there were certain opportunity costs (both within and outside of the embedded technologies marketplace) associated with Plaintiff's exclusive relationship with Motorola.  Indeed, Plaintiff reassigned various existing employees to work on Motorola's line when they were previously working on other projects.  *See also* Responses to Interrogatory Nos. 1, 2 and 3 above.

6.    Describe how JST calculated its anticipated profit of $100,000 for sales of Motorola products for the first year of the parties' Agreement, as alleged in paragraph 13 of the complaint, and all facts and documents that support your answer.

**RESPONSE:**  Plaintiff misstated the definition for the $100,000 identified in paragraph 13 of its Complaint.  That figure is more accurately defined as gross commission revenue.  Ed Kaczor, Marc Watts, Larry Terry and Jeanne Kolasa made representations as to present and historical run rates that would drive approximately $10,000 in gross commission payments per month under the JST Agreement.  These representations were made to Claude Langlois and Jeff Gibson.

7.    Explain what you mean in paragraph 13 of the complaint and how it relates to JST when you refer to expenditures as "collectively envisioned by the parties to support the sale of Motorola's products under the respective agreements" and identify all facts and documents that support your answer.

**RESPONSE:**  By the very framework of the uncommitted, committed and design win phases, Plaintiff was required to expend substantial amounts of capital in personnel, training, marketing and travel expenses, amongst other costs.  During the September 2003 meeting in Boston, Massachusetts, Jeff Gibson informed Motorola (through Kevin Parslow and Steven Machernis) that JST was behind the curve when it came to revenue and profit realization, or even breaking even with their ongoing investment commitments.  Pursuant to Rule 33(d), Plaintiff identifies the following documents:  MOTJ 01142, MOTJ 01774, MOTJ 01785, MOTJ 01681 and J2 1675-81.

8.    Describe in detail the "considerable time, energy, and funds" JST expended to support Motorola's sales objectives, as alleged in paragraph 16 of the complaint, in what ways Motorola approved these expenditures, as alleged in paragraph 17 of the complaint, and all facts and documents that support your answer.

**RESPONSE:** See Plaintiff's response to Interrogatory No. 5 above.

9.    Identify (as defined in Instruction D) the individuals at JST who negotiated the Agreement with Motorola and describe the length of time it took for the parties to finalize their Agreement, the number of drafts that were circulated to JST before the parties finalized their Agreement, the number of drafts that were circulated to JST before the parties finalized their agreement, each and every basis for the allegation in paragraph 20 of the complaint that Motorola "drafted the material terms of the contracts and presented them on a take it or leave it basis to JST," and all facts and documents that support your answer.

**RESPONSE:**   Plaintiff objects to this interrogatory to the extent this information is equally accessible to Motorola. Pursuant to Rule 33(d), Plaintiff identifies its Answering Brief in Opposition to Defendant's Motion to Dismiss and the Declaration of Jeffrey Gibson submitted therewith. Further, Plaintiff states that Claude Langlois and Mike Nykoluk represented JST during the contract negotiations. While there was only one contract that was proposed, there were communications between the parties concerning certain provisions contained in Defendant's self-proclaimed standard contract. These communications were necessitated by Defendant's representation before, during and after the negotiations surrounding the execution of the contract.

10.    Describe each and every basis for the allegation in paragraph 21 of the complaint that Motorola knew JST was "expending substantial sums of capital" to sell Motorola products and all facts and documents that support your answer.

**RESPONSE:**   See Plaintiff's response to Interrogatory No. 7 above. Defendant knew, through various progress emails, telephone calls and teleconferences that JST was making a substantial investment in the Motorola product line pursuant to the requirements of the agreement and the parties' understanding of the manufacturer representatives' role in the new marketing strategy. By the very framework of the uncommitted, committed and design win

phases, Plaintiff was required to expend substantial amounts of capital in personnel, training, marketing and travel expenses, amongst other costs.

11.    Describe each and every basis for the allegation in paragraph 24 of the complaint that after the JST Agreement expired, the parties waived the requirement of a writing in order to renew the contract's term, including but not limited to what "conduct," "words," and "deeds" support JST's allegation that the parties "continued to operate in accordance with the terms and conditions of the JST Agreement as though it had been renewed" and all facts and documents that support your answer.

**RESPONSE:**  Following the purported expiration of the JST Agreement in December 2003, Motorola continued to transact business with JST and their combined customer base as if the Agreement had been renewed (indeed, by conduct later affirmed by an addendum to the JSO Agreement, Motorola and JSO conducted business in the JSO territory before a fully-executed agreement was in place).  Through JST's post-December 2003 interaction with Ed Kaczor, Steve Machernis and others at Motorola, both parties operated as if the Agreement was renewed.  This complied with JST understanding of the manufacturer representative relationship and prior representations made by Defendants before, during and after the negotiations leading to the execution of the JST Agreement.  All routine and customary interactions between the parties proceeded as if Motorola was honoring it representations as to a long-term relationship.  Accordingly, Motorola had waived requirement that a renewal be in writing or acquiesced to parties' failure to enter into a formal written agreement to renewal the Agreement.

Alternatively, Motorola's continuing conduct, post-December 2003, as to the following activities constituted sufficient written acknowledgement that the Agreement was renewed: (i) written commission payments and reconciliations sent to JST; (ii) written correspondence with JST concerning uncommitted, committed and design win opportunities occurring after December 4, 2003; and (iii) written confirmation concerning upcoming marketing events at tradeshows and/or conventions.

12.    Describe each and every basis for the allegation in paragraph 27 of the complaint that Motorola's letter dated February 26, 2004 to JST was defective or void, how it failed to terminate the parties' relationship, and all facts and documents that support your answer.

**RESPONSE:**  The termination letter was defective and/or void given the fact that the Agreement had not expired "by its terms."  Given the fact that the Agreement had not "expired by its terms" the termination letter did not purport to relay any other basis for termination, valid or not. *See also* Plaintiff's response to Interrogatory No. 11 above.

13.    Describe with specificity how JST met its obligations under the parties' Agreement, as alleged in paragraph 32 of the complaint, and all facts and documents that support your answer.

**RESPONSE:**  Plaintiff objects to this interrogatory to the extent Plaintiff's performance under the JST Agreement is not a fact at issue in this litigation.  By way of further response, Plaintiff states that it complied with all terms and conditions under the Agreement.  JST's compliant performance under the Agreement confirmed by Ed Kaczor shortly before Motorola's unlawful termination.

14.    Explain what you mean in paragraph 3 of your disclosure statement and how it relates to JST when you write that "Plaintiffs have incurred in excess of $750,000 to design-in Motorola products with Plaintiffs' customers in reliance on Defendant's representations of fact" and identify all facts and documents that support your answer.

**RESPONSE:**  See Plaintiff's response to Interrogatory No. 5 above.  At a minimum, Plaintiff is due the additional commission payments under the Agreement, given proper expiration of the Agreement following its one-year anniversary and a *bona fide* decision not to renew by either party.  Alternatively, Plaintiff forecasted a substantial return on investment after the first two years under the Agreement.  Had Defendant complied with the representations made both before, during and after the negotiations leading to the execution of the Agreement, Plaintiff

9

would have realized a return on investment depicted in J2 1675. Plaintiff's expectations are also partially substantiated by Motorola's own "uplift" calculations of commissions owing under the Agreement, given the historical run rates for sales.

Plaintiff may, in accordance with the requirements of the scheduling order, designate a trial expert to provide additional testimony on this subject. Accordingly, Plaintiff reserves its right to amend or supplement this response.

15.    Explain in detail JST's computation of damages, including but not limited to its method of calculation, how JST together with JSO has incurred in excess of $750,000 in damages as set forth in JST's disclosure statement, and all facts and documents that support this computation.

**RESPONSE:** See Plaintiff's response to Interrogatory Nos. 5, 6 and 14 above and JSO's responses to Defendant's First Set of Interrogatories.

16.    If you deny request for admission no. 1, explain why.

**RESPONSE:** See Plaintiff's response to Interrogatory No. 11 above.

## RESPONSES TO REQUESTS FOR PRODUCTION

1.    Please produce any and all documents that support your responses to Motorola's interrogatories or that you consulted or referred to in responding to these interrogatories.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced,

should any exist.


2.    Please produce any and all documents relating to any representations you believe Motorola made to JST regarding the anticipated duration of Motorola's relationship with JST.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced,

should any exist.


3.    Please produce any and all documents relating to any representations you believe Motorola made to JST regarding the expected profitability of JST as a manufacturer representative for Motorola.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced,

should any exist.


4.    Please produce any and all documents relating to any representations you believe Motorola made to JST regarding the expected profitability of JST into the Motorola business model.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced,

should any exist.


5.    Please produce any and all documents relating to any other representations or false statements you believe Motorola made to JST on which JST relied to its detriment.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced,

should any exist.

11

6.      Please produce any and all documents supporting your contention that JST relied on representations Motorola made about a long-lasting relationship, expected profitability, expected integration, and any other representations or false statements you believe Motorola made to JST on which JST relied to its detriment.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

7.      Please produce any and all documents supporting JST's contention that it anticipated a profit of $100,000 for sales of Motorola products for the first year of the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

8.      Please produce any and all documents supporting JST's contention that it expended "considerable time, energy, and funds" to support Motorola's sales objectives.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

9.      Please produce all documents relating to the negotiation and drafting of JST's Agreement with Motorola, including but not limited to all correspondence between Motorola and JST, all correspondence between employees at JST involved in negotiation and drafting the parties' Agreement, all notes created by employees at JST regarding the negotiation and drafting of the parties' Agreement, and all drafts of the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

10.      Please produce any and all documents that support the allegation in paragraph 21 of the complaint that Motorola knew JST was expending substantial sums of capital to sell Motorola products.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

11.    Please produce any and all documents that support JST's contention that Motorola waived the requirement of a writing in order to renew the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

12.    Please produce any and all documents that support the allegation in paragraph 32 of the complaint that JST met all of its obligations under the parties' Agreement.

**RESPONSE:**  All responsive, non-privileged documents have been or will be produced, should any exist.

13.    Please produce any and all communications from August 1, 2002 to the present between JST and Motorola and any document that refers or relates to such communications.

**RESPONSE:**  Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff will not undertake such a search other than as contemplated through its responses to the balance of Defendant's requests.

14.    Please produce any and all documents that support JST's claim for damages and its computation of damages.

**RESPONSE:**    Plaintiff will provide any additional information concerning the computation of damages as required by the expert disclosure deadlines identified in the Court's scheduling order.

15.    Please produce any and all documents sent to or received from any person you expect to call as an expert witness in this case that refer or relate to that person's testimony and/or opinion including but not limited to communications, checks, invoices, or statements, reports, data, analysis, notes, tangible things, and memoranda.

**RESPONSE**:  Plaintiff will provide any additional information concerning the

computation of damages as required by the expert disclosure deadlines identified in the Court's

scheduling order.



AS TO OBJECTIONS:


Dated: December 6, 2005

~~David A. Felice~~
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

Of counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.,          )
a Canadian corporation, and            )
                                       )
J-SQUARED TECHNOLOGIES (OREGON) INC.,  )
an Oregon corporation,                 )
                                       )
                                       )    C.A. No. 04-960-SLR
          Plaintiffs,                  )
                                       )
     v.                                )    JURY TRIAL DEMANDED
                                       )
MOTOROLA, INC.,                        )
a Delaware corporation                 )
                                       )
          Defendant.                   )

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that on December 6, 2005 true and correct copies of *Plaintiff*

*J-Squared Technologies, Inc.'s Responses to Defendant's First Set of Interrogatories and*

*Requests for Production* were served upon the following parties:

William W. Bowser                    Randy Papetti
Young Conaway Stargatt & Taylor      Lewis and Roca LLP
The Brandywine Building              40 N. Central Avenue
1000 West Street, 17th Floor         Phoenix, AZ  85004
Wilmington, DE  19801


Dated: December 6, 2005              _David A. Felice_
                                     Sean J. Bellew (#4072)
                                     David A. Felice (#4090)
                                     Cozen O'Connor
                                     1201 North Market Street, Suite 1400
                                     Wilmington, DE  19801
                                     Telephone:  (302) 295-2000
                                     Facsimile:  (302) 295-2013
                                     *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on December 6, 2005, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Randy Papetti
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ 85004

David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
E-mail: dfelice@cozen.com