IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a )
Canadian corporation, and J-SQUARE )
TECHNOLOGIES (OREGON) INC., an )
Oregon corporation, )
       Plaintiffs, )
      v. )   C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation. )
       Defendant. )

# EXHIBIT N TO
# MOTOROLA'S MOTION TO STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
_____
William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:  May 22, 2006

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
(Cite as: 1999 WL 222464 (D.Del.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
FALCO, a Delaware partnership, Plaintiff,
v.
ALPHA AFFILIATES, INC., a Delaware
corporation, WILLIAM J. McGRATH and
THOMAS
J. ELLIOTT, Defendants.
**No. CIV.A.97-494 MMS.**

March 24, 1999.

Janet Z. Charlton, Esq., of Young, Conaway,
Stargatt & Taylor, Wilmington, Delaware; attorneys
for plaintiff.

Mark A. Kearney, Esq., of Elliott Reihner
Siedzikowski & Egan, P.C., Blue Bell, Pennsylvania;
Kathleen M. Miller, Esq., of Smith Katzenstein &
Furlow LLP, Wilmington, Delaware; attorneys for
defendant Elliott.

MEMORANDUM OPINION

SCHWARTZ, Senior District J.

*1 This is an action to collect damages under a
terminated commercial lease. One of the putative
guarantors of that lease, Thomas J. Elliott ("Elliott"),
has moved for summary judgment on the grounds
that, as a matter of law, he is not a guarantor of the
lease, or, in the alternative, that the damages ought to
be limited to rent owed before the lease was
terminated. Elliott removed this matter to this Court
pursuant to 28 U.S.C. § 1441. This Court has
diversity jurisdiction pursuant to 28 U.S.C. § 1332.

I. Procedural History and Facts
The relevant facts are undisputed.

A. *The Lease*

Alpha Affiliates ("Alpha"), a now-defunct financial
printing business, leased from Falco approximately
4,100 square feet of space at Airport Industrial Park,
New Castle, Delaware in July 1994 ("the Lease").

[FN1] Alpha took possession some time in July.

Both parties agree the terms of the Lease include the
Rider to the Lease, referenced in the body of the
Lease and attached to the Lease. The relevant terms
of that document deal with security and termination
provisions.

Section 4 of the lease establishes the requirement of
a security deposit and references Paragraph 3 of the
Rider for the amount of that deposit. Paragraph 3 of
the Rider states:
Tenant shall deposit with Landlord upon execution
hereof the sum of eighteen thousand four hundred
forty-five dollars and eighty-six cents ($18,445.86)
as the security deposit provided for in Paragraph 4.
Within forty-five (45) days of the date hereof,
Tenant shall provide for the benefit of landlord as
substitute security, a performance bond in the sum
of $110,675.10 (representing one year's Basic Rent
and estimated additional rent pursuant to
paragraphs 6, 7, 8 and 9) with an insurance or
surety company licensed to do business in the State
of Delaware acceptable to Landlord in the
reasonable exercise of Landlord's discretion and in
a form acceptable to Landlord in the reasonable
exercise of the Landlord's discretion, which
performance bond shall be a substitute for the
$18,445.86 security deposit, which sum shall be
refunded by Landlord to Tenant upon the effective
date of the surety bond. Failure to provide the
performance bond as aforesaid shall constitute an
event of default under Paragraph 21 of this Lease
permitting Landlord to immediately terminate this
Lease by serving a written notice upon Tenant
without affording Tenant an opportunity to remedy
the default. The performance bond and the amount
thereof shall be subject to all of the terms and
conditions of Paragraph 4 of this Lease. As an
additional substitute for this security, Landlord will
accept an irrevocable Letter of Credit in lieu of the
above stated Security Bond or Landlord will accept
the personal guarantees of the principals of Alpha
Affiliates, Inc., Thomas J. Elliott and William J.
McGrath, to this Lease Agreement.

Paragraph 21 defines default and sets out the
Landlord's remedies:
In the event of any default of Tenant in paying any
installment of Basic Rental, additional rent or other
sums payable hereunder, Landlord may elect to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
(Cite as: 1999 WL 222464 (D.Del.))

Page 2

immediately terminate this Lease by serving a written notice upon Tenant.

*2 In the event of any other event of default of Tenant hereinafter mentioned in this Paragraph 21, then Landlord may elect to terminate this Lease by serving a written notice upon Tenant of Landlord's election to terminate this Lease upon a specified date, not less than thirty (30) days after the day of serving of such notice. If said event of default shall not be corrected within said thirty (30) day period, this Lease shall then expire on the date specified, as if that date had originally fixed as the expiration of the term hereinafter granted; provided, however, that this Lease shall not terminate or expire if Tenant undertakes diligently to remedy a default within such thirty (30) day period.

Each of the following events shall be deemed an event of default by Tenant within the meaning of this Paragraph 21;

(a) the failure to pay any installment of Basic Rental or additional rent when due and payable;

(b) the failure to perform any of the other covenants or conditions of this Lease on the part of Tenant to be performed ....

....

In the event that this Lease is terminated in the manner provided for in this Paragraph 21 ... Landlord ... may at any time after written notice to Tenant and the times set forth in the Paragraph 21, re-enter and resume possession of said Premises, or any part thereof, and remove all persons and property therefrom ....

Paragraph 22 provides for "Additional Remedies of Landlord":

In the event that this Lease is terminated in the manner set forth in Paragraph 21 hereof ... Landlord may for its own account, relet the whole or any portion of said Premises for any period equal to or greater or less than the remainder of the original term of this Lease for any sum which it may deem reasonable, to any tenants which it may deem suitable and satisfactory .... In the event of such termination of this Lease ... Landlord shall be entitled to recover of Tenant, and Tenant hereby agrees to pay to Landlord as damages, the following:

(i) An amount equal to the amount of the rent reserved under this Lease, less the rent, if any, collected by Landlord on reletting the Premises, which shall be due and payable by Tenant to Landlord on the several days on which the rent herein reserved would have become payable under this lease.

Finally, Paragraph 30 provides that failure to insist on strict performance is not a waiver of rights, remedies or subsequent breach. It further provides that the Lease "may not be changed, modified or discharged orally."

B. *The Putative Modification and Guarantee*

The parties agree Alpha did not pay the security deposit described in Paragraph 4 of the Lease and Paragraph 3 of the Rider. Plaintiff's Resp. Mem., Docket Item ("D.I.") 33, Exh. C at 89, 95; Elliott's Repl. Mem., D.I. 34, Exh. A at 43. On August 3, 1994, Falco informed Alpha by certified mail that Alpha was in default of the Lease for nonpayment of the security deposit and that Falco was terminating the Lease immediately. D.I. 32, Exh. D.

*3 The next day, the parties met to discuss the termination. D.I. 33, Exh. C at 87; D.I. 34, Exh. A. at 45. At that meeting, McGrath and Elliott signed a new signature page of the lease which, in addition to their signatures on behalf of Alpha, contained a second line for each of them to sign:

s/ Thomas J. Elliott 8/4/94
Guarantor (Date)
Thomas J. Elliott -Individually
S.S.# 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

D.I. 32, Exh. E. McGrath and Elliott, along with Falco partner Lloyd F. Schmeusser, also signed an "Amendment to Rider" dated August 4, 1994. D.I. 32, Exh. E; D.I. 33, Exh. B. That amendment states:

Par 3 of said Rider is amended as follows:

On even date herewith William J. McGrath ("McGrath") and Thomas J. Elliott ("Elliott") signed individual guarantees for the above referenced lease.

On or before September 15, 1994, McGrath and Elliott have the option to provide to Falco the performance bond, or irrevocable letter of credit referenced in Par. 3 of the Rider, as substitute Security for these personal guarantees.

In the event said performance bond or irrevocable letter of credit is not provided, the personal guarantees shall remain in effect.

On August 5, Falco informed Alpha, "Per our discussions and agreements on August 4, 1994 regarding the above referenced Lease Agreement, my August 3, 1994 letter terminating your Lease is effectively withdrawn." D.I. 32, Exh. F.

C. *The Default*

Alpha defaulted on the Lease in early 1995 for

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
**(Cite as: 1999 WL 222464 (D.Del.))**

Page 3

failure to pay rent in January and February 1995. D.I. 32, Exh. H. Falco informed Alpha that if it did not cure the deficiency within 30 days, it would terminate the lease on March 20, 1995. *Id.* In April 1995, Falco brought an action in Delaware Superior Court, New Castle County, for rent in the amount of $20,105.98, the rent due as of March 20, 1995, "together with rent and other amounts that have accrued since March 20, 1995." D.I. 32, Exh. I. Falco obtained a default judgment against Alpha in that action. D.I. 1, ¶ 8.

D. *The Present Action: Procedural Posture*

Falco brought the present action in Delaware Superior Court, New Castle County in July 1997, and Elliott timely removed the action to this Court. On December 10, 1997, the Court denied Elliott's motion to transfer or dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D.I. 9. [FN2] Among other things, that opinion decided the following:

  1. Given an appropriate set of facts, Elliott's signature *could,* as a matter of law, be adequate to show his intent to guarantee the full amount owing to Falco under the lease, D.I. 9 at 12-13;
  2. To the extent the damages claimed were those not due as of the entry of the purported default judgment, *res judicata* does not preclude Falco's current claim, D.I. 9 at 17.

Presently before the Court is Elliott's motion for summary judgment.

II. Standard of Review

Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir.1997).

**\*4** The Supreme Court has clarified that the moving party must "bear the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After such a

demonstration has been made, however, the nonmoving party must go beyond the pleadings and, based on the same types of evidence, must demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party cannot rest on his allegations without "any significant probative evidence tending to support the complaint." *Anderson,* 477 U.S. at 249 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253 (1968)); *see also Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989).

III. Discussion

Elliott raises two different grounds which he asserts entitle him to summary judgment: (1) he is not liable as a guarantor because the purported guarantee lacked separate consideration; (2) assuming issues of fact remain regarding Elliott's liability as a guarantor, damages should be limited to $20,105.98, the amount owed by Alpha when Falco terminated the Lease. The Court will review each issue in turn. [FN3]

A. *Was the Guaranty Invalid for Want of Consideration?*

Elliott argues that the guarantee signed on August 4 was without separate consideration, and therefore, he is not bound as a guarantor as a matter of law. [FN4] Summary judgment will be denied on this ground.

Elliott asserts his signature as a guarantor required separate consideration from that which supported the original Lease and none was received. In particular, he argues withdrawal of the termination or continuation of the lease was not consideration for the guarantee because Falco already owed Alpha a duty to fulfill its obligations under the lease. *Seidel v. Lee,* 954 F.Supp. 810, 817 (D.Del.1996) (citing Restatement (Second) Contracts § § 73, 80(2)); *see also* Restatement (Second) of Contracts § 73 ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; ....").

Contract interpretation is a matter of law to be determined by the Court. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.,* 616 A.2d 1192, 1195 (Del.Supr.1992) ("The proper construction of any contract ... is purely a question of law."). This Court has recently explained that:

  It is for the Court to determine whether a contract term is ambiguous or unambiguous, as this determination is itself a question of law. An ambiguous term is defined as a term susceptible to two reasonable alternative interpretations. If a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
**(Cite as: 1999 WL 222464 (D.Del.))**

Page 4

contract term is ambiguous, its intended meaning is determined as a question of fact.

**\*5** *Falkenberg Capital Corp. v. Dakota Cellular, Inc.,* 925 F.Supp. 231, 236 (D.Del.1996) (citations omitted), *rev'd on other grounds,* No. 96-7361 (3d Cir. Aug. 11, 1997); *accord Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 362 (3d Cir.1987); *Ram Constr. Co. v. American States Ins. Co.,* 749 F.2d 1049, 1052 (3d Cir.1984); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980); *Alexandria Coca-Cola Bottling Co. v. Coca-Cola Co.,* 637 F.Supp. 1220, 1225 (D.Del.1984). Further, when the term at issue is unambiguous, the court is barred by the parol evidence rule from looking beyond that unambiguous contract language for evidence of the parties' intent. *E.g. Alexandria Coca-Cola Bottling,* 637 F.Supp. at 1226; *Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del.Supr.1991). [FN5] Indeed, "[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del.Supr.1997).

*1. Was Separate Consideration Necessary?*

Falco urges no new consideration was necessary for the guarantee because it was one option for the performance of the substitute security obligations contained in the original terms of the Lease, which was indisputably supported by consideration. The Court agrees.

Paragraph 3 of the Rider to the Lease requires posting a performance bond for $110,675.10 within forty-five days of execution as substitute security for the security deposit. [FN6] As an alternative to the performance bond, Alpha could provide an irrevocable Letter of Credit or "*the personal guarantees of the principals of Alpha Affiliates, Inc., Thomas J. Elliott and William J. McGrath, to this lease agreement.*" Rider to Lease, Par. 3 (emphasis added). Thus, one of Alpha's obligations under the Lease was to provide substitute security in one of three forms. Personal guarantees by McGrath and Elliott was one of those options. Some time within the first forty-five days after execution, Alpha was bound by the Lease to provide substitute security in one of those forms.

When Elliott signed the signature line as a guarantor, he provided that substitute security which was a bargained-for term of the Lease. It follows he received as consideration the comfort that Alpha

Affiliates, in which he had invested heavily, had satisfied its obligations under the Lease and that the Lease would not be terminated for failure to provide substitute security when it came due.

*2. Did the Lease Unambiguously Grant Falco the Right to Terminate for Failure to Pay the Security Deposit?*

Even if the guarantee did require consideration separate from that already bargained for in the original lease, the withdrawal of the termination was that consideration. Elliott argues failure to post the security bond could not result in immediate termination without opportunity to cure and no other grounds for termination existed. Elliott concludes the August 3 termination of the Lease was therefore "phony and improper."

**\*6** If, under the Lease, Falco had a right to terminate immediately for non-payment of the security deposit, then Elliott received as consideration for his guarantee the continued occupation by Alpha of the leased premises. If Falco did not have a right to terminate, or the parties did not honestly dispute whether Falco had such a right, then Falco was already obligated to perform under the Lease and such performance could not, as a matter of law, serve as consideration. *Seidel v. Lee,* 954 F.Supp. 810, 817 (D.Del.1996) (citing Restatement (Second) Contracts § § 73, 80(2)) ("It is a well-settled principle that an enforceable contract cannot be based upon a duty which one is already legally obligated to perform.").

In his opening brief and again at oral argument, Elliott asserted the termination clause is "ambiguous" as a matter of law, and urges the court to construe the clause against Falco, as the drafters. The Court disagrees. A contract term is "ambiguous" if, from the point of view of a "reasonable person in the position of either party .... the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings." *Eagle Indus., Inc. v. DeVilbiss Heath Care, Inc.,* 702 A.2d 1228, 1332 (Del.Supr.1997). The Delaware Supreme Court has instructed:

A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. Ambiguity does not exist where the court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
(Cite as: 1999 WL 222464 (D.Del.))

which, from the nature of language in general, its meaning depends. Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty. The true test is not what the parties to the contract intended to mean, but what a reasonable person in the position of the parties would have thought it meant. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1196 (Del.Supr.1992)* (internal citations and quotation marks omitted).

Elliott argues either that the termination clause unambiguously required a thirty-day notice and opportunity to cure in the case of a failure to pay a security deposit, or that the clause was ambiguous. At oral argument, counsel for Elliot explained his reading of the Lease. His argument that Falco was required to give Alpha a thirty-day cure period prior to termination for failure to pay the security deposit rests on a strained reading of the text; the termination provisions are not fairly susceptible of such interpretation.

The parties agree Paragraph 21 governs termination of the Lease. The provisions are quoted at length above [FN7] and need not be quoted in their entirety here. The first paragraph of Paragraph 21 states that in the case of "any default of Tenant in paying any installment of Basic Rental, additional rent or other sums payable hereunder," Falco can elect to terminate immediately. The second paragraph provides that "[i]n the event of any other event of default of Tenant hereinafter mentioned in this Paragraph 21," Falco may elect to terminate only with a 30-day notice and cure period. Finally, the third paragraph states:

*7 Each of the following events shall be deemed an event of default by Tenant within the meaning of this Paragraph 21;
(a) the failure to pay any installment of Basic Rental or additional rent when due and payable;
(b) the failure to perform any of the other covenants or conditions of this Lease on the part of Tenant to be performed.

Elliott suggests this section, when read in combination with Paragraph 3 of the Rider, clearly makes failure to pay the security deposit a default requiring a thirty-day notice and cure period. He argues the word "hereinafter" in the second paragraph refers the reader to the third paragraph listing of defaults and places all the events of default enumerated in that paragraph in the category of

"notice and cure" defaults. [FN8] In particular, because security deposit (or even "other sums payable") was not explicitly mentioned, it must be one of the "other covenants and conditions." As one of the "covenants and conditions," it is one of the events of default to which the second paragraph refers. In addition, Elliott argues because Paragraph 3 of the Rider explicitly states failure to timely post the performance bond entitles Falco to terminate immediately, the absence of a similar explicit statement regarding security deposits indicates failure to pay the security deposit falls into the default category. [FN9]

Elliot's argument rests on a strained reading that no "reasonable person in the position of the parties would have thought [the Lease] meant." *Rhone-Poulenc, 616 A.2d at 1196.* A careful reading of the contract language makes clear that it is reasonably susceptible only to one interpretation, and this Court "will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty." *Id.* The sheer difficulty of describing Elliot's position coherently indicates the torture necessary to make such a reading.

Indeed, a careful reading, from the perspective of a reasonable person, shows the Lease unambiguously allows for immediate termination in the event of a failure to pay sums due under the Lease--including the security deposit. Paragraph 21 of the Lease clearly and unambiguously describes the rules surrounding default and termination. That Section established two types of defaults: those which allow for immediate termination and those which allow for a notice and cure period. The first paragraph states: "In the event of any default of Tenant in paying any installment of Basic Rental, additional rent or other sums payable hereunder, Landlord may elect to immediately terminate this Lease by serving a written notice upon tenant." Thus, in the case of monetary defaults, the Lease allows immediate termination. The second paragraph establishes a notice and cure period "in the event of any other default of Tenant." Finally, the third paragraph states:

Each of the following events shall be deemed an event of default by Tenant within the meaning of this Paragraph 21;
*8 (a) the failure to pay any installment of Basic Rental or additional rent when due and payable;
(b) the failure to perform any of the other covenants or condition of this Lease on the part of Tenant to be performed; ....

The only reasonable interpretation of the contract is

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
(Cite as: 1999 WL 222464 (D.Del.))

that the first and second paragraphs divided events of default into two categories. Those that involve monetary payments fall into the first category. The third paragraph defines events of default. However, that paragraph does not re-categorize "events of default". Thus, the contract unambiguously establishes that any default involving failure to pay "sums payable" under the Lease falls into the category of defaults allowing immediate termination. Elliott's argument is not helped by the fact that Paragraph 3 of the Rider further stresses the possibility of immediate termination if Alpha failed to post the performance bond.

Elliott agrees the security deposit was not paid. Because termination at that juncture would have been proper, Falco had no existing legal duty to fulfill its obligations under the contract and its withdrawal of termination constituted consideration for the guarantee. Therefore, even if separate consideration were necessary, summary judgment for Elliott would not be appropriate.

*3. Even if the Termination Language is Ambiguous, Was There an Honest Dispute as to Falco's Obligation to Continue under the Lease?*

It is an elementary proposition of contract law that when a legal obligation is the subject of "honest dispute", performance of that obligation can serve as consideration. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 769 F.Supp. 671, 738 (D.Del.1990) (temporary amendment to contract supported by consideration where duties under underlying contract were disputed); *Hensel v. U .S. Electronics Corp.,* 262 A.2d 648, 650 (Del.Supr.1970); Restatement (Second) of Contracts § § 73, 74(1) (1979); 1 *Corbin on Contracts* § 7.17, at 420-21 (Rev. ed. 1995) ("[W]here a claim is disputed in good faith, payment, promise of payment, or other performance is generally held to be consideration ...."); 3 *Williston on Contracts* § 7:45, at 703 ("Courts generally hold ... that forbearance or a promise to forbear suit upon a doubtful claim or is sufficient consideration whether suit has or has not previously begun."). Indeed, when a contract term is the subject of an honest dispute, avoiding the consequences of the dispute--such as litigation or the risk of damages--may serve as consideration for a contract.

Therefore, even if the termination provisions of the Lease relating to payment of the security deposit were deemed ambiguous, [FN10] Falco's performance of its duties under the Lease would

serve as consideration if those duties were the subject of an honest dispute between the parties. Because issues of material fact remain as to whether an "honest dispute" existed between the parties, summary judgment would be inappropriate, even if the Court found the contract were ambiguous.

*9 In *Hensel v. U.S. Electronics Corporation,* 262 A.2d 648 (Del.Supr.1970),* the Delaware Supreme Court outlined the standard for determining whether an action under the contract forborne was the subject of an honest dispute: "[I]n order for the relinquishment of a claim against another to be valid consideration, the claim must be honest, genuine, advanced in good faith, and founded on some reasonable, tenable or plausible ground." *Id. at 650.* In that case, plaintiff had dropped his suit concerning his ownership of some shares in the defendant corporation in exchange for a settlement of other claims. When plaintiff sought to challenge the agreement, the defendant argued that plaintiff had no bona fide claim to ownership of the disputed shares. In *Hensel,* the Court found that the mere fact the parties entered into an agreement which purported to dissolve all disputes between the parties, including the dispute over ownership of the stock, was adequate to show the stock's ownership was the subject of honest dispute. [FN11] *Id.*

In considering a motion for summary judgment, the "Court must view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir.1997). Here, Falco has shown the following: 1) a reasonable person in the position of the parties could read the Lease to allow immediate termination upon failure to pay the security deposit; 2) Alpha failed to pay the security deposit; 3) Falco took steps to immediately terminate the Lease; 4) Alpha believed Falco had no right to terminate; and 4)Falco partner Lloyd F. Schmeusser was willing to discuss the dispute. Taken together these facts could show that the term was the subject of dispute founded on a plausible ground and that Falco honestly believed there was a dispute. It follows, even if separate consideration for the guarantee were necessary and the termination provisions of the lease were ambiguous, Falco has demonstrated the existence of material facts precluding summary judgment.

B. *Must Damages be Limited to $20,105.98?*

In the alternative, Elliott argues, as a matter of law, that damages must be limited to $20,105.98, or the amount of damages Falco admits was due at the time

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
**(Cite as: 1999 WL 222464 (D.Del.))**

Page 7

it terminated the Lease. Otherwise, Elliott asserts, allowing damages for the period after Falco regained possession of the property would constitute an impermissible double-recovery for Falco.

Paragraphs 21 and 22 of the contract provide for the recovery sought by Falco. Paragraph 21 allows Falco to re-enter the premises upon termination. Paragraph 22 allows Falco to re-let the premises and collect damages from Alpha in the amount of the difference between the amount owed by Alpha and any rent collected from reletting the premises during the lease period. In general, "the rights and remedies of landlord and tenant are governed by contract law principles." *W & G Seaford Assocs., L.P. v. Eastern Shore Markets, Inc.,* 714 F.Supp. 1336, 1340 (D.Del.1989) (citing *Brown v. Robyn Realty Co.,* 367 A.2d 183, 189 (Del.Super.1976)). Parties to a contract are governed by any provisions they make for the calculation of damages. *Monument Pottery Co. v. Imperial Coal Corp.,* 21 F.2d 683, 684 (3d Cir.1985) (enforcing stipulated measure of damages provided for by parties in contract); *Utica Mutual Ins. Co. v. DiDonato,* 453 A.2d 559, 566 (N.J.App.Div.1982) ("Where the parties have agreed upon the precise method by which damages shall be computed and assessed, the court is bound by their contract."); *cf. W & G Seaford Assocs.,* 714 F.Supp. at 1347 (Delaware law allows parties to fix liquidated damages and will bind them to such provided they are actually damages rather than a penalty). Thus, unless Delaware law prohibits such a provision such as Paragraph 22, any damages in this case will be determined by the formula set forth in that paragraph of the Lease.

*\*10* The damages provision in the Lease does not run afoul of Delaware law. [FN12] Delaware case law permits a landlord who has re-let the premises after abandonment of a lease to collect "the difference between the rent stipulated in the abandoned lease during the balance of the term and the rent specified in the new one as payable over the corresponding period." *Curran v. Smith Zollinger Co.,* 157 A. 432, 432 (Del. Ch.1931); *accord W & G Seaford Assocs.,* 714 F.Supp. at 1344. [FN13] This is precisely the same type of damages contemplated by Paragraph 22 of the Lease. Thus, Elliott cannot argue persuasively that the damages formula of Paragraph 22 is improper. Of course, at trial, Falco will have to show its actual damages and that it is not attempting to collect double rents. [FN14]

V. Conclusion
The Court will deny Elliott's motion for summary

judgment. The Court has determined, as a matter of law, that no separate consideration was necessary for his signature as a guarantor. [FN15] An abundance of caution has led the Court also to note two alternative grounds upon which the withdrawal of the termination could constitute consideration: first, that the termination language unambiguously allowed Falco to terminate immediately for non-payment of a security deposit; and second, that even if the termination language of the Lease were ambiguous, Falco has shown material facts in dispute as to whether Falco's duty to continue the lease was the subject of an honest dispute. Finally, Elliot's argument seeking to limit his damages to $20,105.98 is untenable. Therefore, the Court will also deny his motion for partial summary judgment as well.

FN1. William McGrath ("McGrath"), a defendant in the present action, not a party to the motion, and Elliott, signed the lease on behalf of Alpha Affiliates as its President and Secretary (respectively).

FN2. That opinion is also available at 1997 WL 782011.

FN3. The parties both appear to believe Delaware law governs this dispute; the Court agrees. Because the Court is sitting in diversity, this Court follows the choice of law rules of the state of Delaware. *Carrick v. Zurich-American Ins. Group.,* 14 F.3d 907, 909 (3d Cir.1994); *Hurley v. Columbia Casualty Company,* 976 F.Supp. 268, 271-72 (D.Del.1997). In contract cases, Delaware has adopted the rule stated in Restatement (Second) of Conflicts of Law § 188 (1971), applying the law of the state with the most significant relationship to the transaction. *Travelers Indemnity Co. v. Lake,* 594 A.2d 38, 47 (Del.Super.1991); *Oliver B. Cannon and Son, Inc. v. Dorr-Oliver, Inc.,* 394 A.2d 1160, 1166 (Del.Super.1978); *Hurley,* 976 F.Supp. at 272; *W & G. Seaford Assocs., L .P. v. Eastern Shore Markets, Inc.,* 714 F.Supp. 1336, 1339 n. 5 (D.Del.1989). Here, the place with the most significant relationship is clearly Delaware--the situs of the leased property. *See Oliver B. Cannon,* 394 A.2d at 1166 (applying Delaware law where property that is the subject of contract dispute is located in Delaware); Restatement (Second) of Conflicts of Law § 188 (1971).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
(Cite as: 1999 WL 222464 (D.Del.))

FN4. Elliot also suggests the amount of any guarantee was limited to the amount of the security deposit. However, counsel for Elliott stated at oral argument that his client was not moving for summary judgment on that issue.

FN5. "Substantive rules of contract law, such as the parol evidence rule, are determined by reference to state law." *Alexandria Coca-Cola Bottling,* 637 F.Supp. at 1226 n. 34. As discussed above, Delaware law applies. *Supra,* note 3.

FN6. At oral argument, Elliott argued the performance bond was only required if the security deposit was not paid. But the language of Paragraph 3 of the Rider is clear that within 45 days of execution, Alpha "shall post" the bond. Further, the Lease provided for termination without notice if substitute security was not posted. Thus substitute security was unambiguously mandatory under the Lease.

FN7. *See supra* pages 2-3.

FN8. Indeed, at oral argument counsel for Elliott suggested it was plausible the second and third paragraphs acted to make even failure to pay "Basic Rental or additional rent" subject to the thirty-day notice and cure period. However, he stated the contract was ambiguous on this point and raises an issue of fact.

FN9. Elliott further urges that if it was already covered as a "sum payable hereunder," the performance bond language would be meaningless. However, the termination language of Paragraph 3 to the Rider also establishes failure to provide substitute security as a mandatory activity, thus, even if it were already covered by Paragraph 21, it would not be meaningless. Furthermore, while payment of a security deposit clearly contemplates a monetary payment, the forms of substitute security contemplated were not necessarily "sums payable." Thus, the explicit termination language serves as a clarification.

FN10. Even if Elliott's interpretation were reasonable, it would mean only that the contract was ambiguous since this Court has

pointed to another perfectly reasonable interpretation of the Lease.

FN11. Indeed, the Court was skeptical of a claim brought during litigation that the other party knew the agreement was invalid:
It does not come with particularly good grace for Frenk at this late date to assert that at the time the agreement was executed he signed as a subterfuge in order to get the stock from Hensel, knowing at the time Hensel had no [b]ona fide claim to ownership.
*Hensel,* 262 A.2d at 650. Similarly, the Court cannot but wonder why Elliott signed an agreement he stated was bogus if he knew Falco had no right to terminate.

FN12. Not only are the cases cited by Elliott non-controlling authority, they are also inapposite. Several involve acceleration clauses where the plaintiff landlord sought possession of the premises and all rentals due under the entire term of the lease before that term had expired, thus opening the possibility that the landlord could collect all the rent due twice for the same time period: *In re Okan's Foods, Inc. (Okan's Foods, Inc. v. Winsor Assocs., L.P.,* 217 B.R. 739, 750 (Bankr.E.D.Pa.1998); *Homart Development Co. v. Sgrenci,* 662 A.2d 1092 (Pa.Super.1995); *Geiger Mutual Agency, Inc. v. Wright,* 233 So.2d 444, 447 (Fla.Dist.Ct.App.1970). Although acceleration is not at issue in this matter, Falco has pointed to at least one case where a Delaware court has apparently enforced an acceleration clause provided the tenant is allowed discovery to ensure the landlord did not collect double rents. *Big Valley v. Wonderland,* C.A. No. 96C-09-121, Order (Del.Super., May 31, 1997) (available at D.I. 33, Exh. E).
The other cases Elliott cites are also inapposite. One case, from 1934, involves bailments, and appears merely to forbid a collection of double-rents. *Valicenti v. Central Motors, Inc.,* 174 A. 799, 802 (Pa.Super.1934). Another involves remedies in the event of abandonment of a lease, *Rohrt v. Kelly Manufacturing Co.,* 349 S.W.2d 95 (Tex.1961), a situation where, as already rehearsed, Delaware law allows for possession and the difference in the original lease amount and any rents collected on

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)
**(Cite as: 1999 WL 222464 (D.Del.))**

release. One opinion is a dismissal of an appeal as frivolous because it raises no issues of fact or law. *Chesnel v. Paradis,* 453 A.2d 1184 (Me.1983). In yet another case, the court did not apply the acceleration clause only because the landlord had not met the conditions for its application. *Prinkle & Williams, Inc. v. Shreveport Jitney Jungle, Inc.,* 140 So. 837, 839 (La.Ct.App.1932).

FN13. Similarly, one of the noncontrolling cases Elliott cites is directly on point: "In the instant case the contract between the parties expressly allows the landlord to claim the balance of the rent due under the lease provided he reasonably mitigates his damage--*i.e.* rents to another tenant during that period for the maximum rental he may obtain. Nothing in Florida public policy, case law, or logic proscribes this contractual remedy." *Colonial Promenade v. Juhas,* 541 So.2d 1313, 1315 (Fla.Dist.Ct.App.1989).

FN14. Elliott claims that Falco has only now stated that its demand includes an allowance for rent collected upon re-lease of the premises. However, attached to its complaint, Falco included its itemization of monies allegedly owing under the Lease which includes credits to Alpha Affiliates account. *See* D.I. 1, Exh. B; D.I. 33, Exh. D.

FN15. Whether Elliott is a guarantor, and if so, of what and for how much, is an issue for trial.

Not Reported in F.Supp.2d, 1999 WL 222464 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97cv00494 (Docket) (Aug. 28, 1997)

END OF DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC., a )
Canadian corporation, and J-SQUARE )
TECHNOLOGIES (OREGON) INC., an )
Oregon corporation, )
        Plaintiffs, )
     v. )   C.A. No. 04-CV-960-SLR
MOTOROLA, INC., a Delaware corporation. )
        Defendant. )

## CERTIFICATE OF SERVICE

    I, William W. Bowser, Esquire, hereby certify that on the 22nd day of May

2006, I electronically filed a true and correct copy of the foregoing **Motorola's Exhibits**

**in Support of Its Motion to Strike -- REDACTED**, with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

       David Allan Felice
       Cozen O'Connor
       Chase Manhattan Centre, 1201 North Market, Suite 1400
       Wilmington, DE 19801

    I further certify that on this 22nd day of May 2006, I mailed by United

States Postal Service a copy of above-mentioned document to the following non-

registered participant:

       Kevin F. Berry
       Cozen O'Connor
       1900 Market Street
       Philadelphia, PA 19103

       YOUNG CONAWAY STARGATT & TAYLOR, LLP

       /s/ William W. Bowser
       _____
       William W. Bowser, Esquire (Bar I.D. 2239)
       1000 West Street
       Wilmington, Delaware 19801
       Telephone: (302) 571-6601
       Facsimile: (302) 576-3282
       Email: wbowser@ycst.com