IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., and J-SQUARED TECHNOLOGIES (OREGON) INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-960-SLR |
| v. | ) ) | JURY TRIAL DEMANDED |
| MOTOROLA, INC., a Delaware corporation | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c) and District of Delaware Local Rule 30.2, Plaintiffs J-Squared Technologies, Inc. and J-Squared Technologies (Oregon), Inc. (collectively, "Plaintiffs") move for the entry of a protective order precluding certain discovery from third-party GE Fanuc Automation, Inc. ("GE"). In further support of their motion, Plaintiffs state the following:

1.  A protective order should be entered to limit Defendant Motorola, Inc.'s ("Motorola") discovery efforts related to third-party deponent GE because the remaining discovery sought is immaterial to any claim or defense presented in this litigation. Motorola's efforts to obtain documents in addition to those already produced by GE, which documents were produced by agreement, are geared toward harassing and unduly burdening Plaintiffs' business partner and toward forcing the disclosure of trade secret and/or business proprietary information. Accordingly, Plaintiffs' motion should be granted.

2. GE has produced all the discoverable information called for in the subpoena; namely, (i) a redacted version of the agreement between J-Squared Technologies, Inc ("J-Squared Canada") and GE dated May 1, 2004; (ii) five (5) or six (6) e-mails reflecting initial discussions between representatives of Plaintiffs and GE; and, (iii) a spreadsheet reflecting the amount of money GE paid J-Squared Canada for J-Squared Canada's efforts on behalf of GE in Canada.

3. Pursuant to Fed. R. Civ. Pro. 26(c), Plaintiffs were required to confer with Motorola in good faith to see if this motion could be avoided. That is exactly what Plaintiffs did, yet Motorola characterizes Plaintiffs' efforts at attempting to reach a middle ground as somehow interfering with the subpoena.

4. Plaintiffs, through discussions with Motorola and GE, agreed to the production of the documents that GE subsequently produced in an effort to avoid burdening this Court with a motion for protective order. Stated differently, the production detailed above came after good faith discussions among the parties and GE in an attempt to resolve the dispute. Plaintiffs viewed this agreement as resolving, in its entirety, any dispute as to the proper scope of the subpoena. It was only after the production was made (and Motorola failed to obtain any information helpful to its defense) that Motorola then revisited the issue and demanded production of a wider scope, thus necessitating this motion.

A. **Motorola Has All the Properly Discoverable Documents from GE**

5. By agreement, GE withheld from production, (i) a contract between GE and J-Squared Technologies (North Carolina), Inc. (the "North Carolina Agreement"), (ii) financial information related to the North Carolina Agreement (the "North Carolina Financials"), (iii) and the redacted language in the contract between GE and J-Squared Canada (the "Canada Agreement").

6. Federal Rule of Civil Procedure 26 only permits discovery of matters that are relevant to the claims or defenses asserted by the party. *See* Fed. R. Civ. P. 26(b)(1). Even under Rule 26's broad definition of relevancy, Motorola is not entitled to discovery of the North Carolina Agreement, the North Carolina Financials or an unredacted version of the Canada Agreement.

7. Motorola fabricates an argument regarding a possible violation of the non-competition provision in an effort to justify its fishing expedition. This is the first time in the many months of the litigation that Motorola raises the possibility of a violation of the non-competition provision in the parties' agreements. Motorola never pled a violation of the non-competition provision as a defense and it could not assert such a defense in good faith. Nonetheless, as a matter of convenience, Motorola uses this assertion – clearly knowing there to be no factual support for it – to justify the discovery requests here.

8. In pursuit of its scheme to terminate its contracts with all the manufacturer's representatives, Motorola investigated Plaintiffs hoping to find a violation of the non-competition provision. To Motorola's chagrin, its own investigation concluded that Plaintiffs <u>were not violating that provision</u>. (*See* MOT 00774, e-mail exchange among Juile Blair and others dated 1/8/04, attached hereto as Exhibit "A".) Furthermore, the record is replete with testimony that Motorola concluded that Plaintiffs were in compliance with the non-competition provisions of the contracts and the lack of any reference to this provision in the termination letters is telling. (Attached hereto as Exhibits "B" and "C" are copies of the termination letters sent to Plaintiffs.)

9. GE and J-Squared Canada executed the Canada Agreement on May 1, 2004, <u>after</u> Motorola's improper termination of Motorola's manufacturer's representative agreement with J-Squared Canada. Now having this information, Motorola must recognize that the provisions of

the Canada Agreement are of no moment. Motorola also now has the amount of money J-Squared Canada made under the Canada Agreement. To the extent Motorola has a mitigation of damages argument, which Plaintiffs contest, Motorola has the data to proffer that defense. In fact, Motorola's expert report specifically addresses the argument of mitigation of damages based upon Plaintiffs' relationship with GE.

10. The North Carolina Agreement and the North Carolina Financials have no bearing on this case. As a fundamental matter, Motorola fails to assert any valid argument as to how the North Carolina Agreement – even assuming *arguendo* an effective date prior to the termination of the contracts at issue in this litigation – would serve to violate the non-competition provision of a contract with an entirely different corporate entity. Moreover, J-Squared North Carolina performed its work in the Southeastern part of the United States, whereas the agreements between Plaintiffs and Motorola covered the territories of the Pacific Northwest and Canada. Thus, there is a major disconnect in the contention that discovery of J-Squared North Carolina is proper because the North Carolina Agreement and the North Carolina Financials have absolutely no bearing on arguments as to non-competition and mitigation.

11. Again, because there is no possible bearing on Motorola's defenses as asserted in this action, the Court should enter a protective order relieving GE of any obligation to further respond to the subpoena. *See Hercules Powder Co. v. Roman Haas Co.*, 3 F.R.D. 302, 304 (D. Del. 1943).

**B. Motorola's Subpoena is Unduly Burdensome and Seeks Non-Discoverable Documents**

12. In light of the disconnect between the discovery sought and the issues highlighted by Motorola to justify the discovery (non- competition and mitigation), the only purpose behind the subpoena is to harass or otherwise burden Plaintiffs' business partner. Accordingly, the discovery should be limited to that which GE has already produced.

WILMINGTON\34858\1153371.000

13. In the same vein, the discovery is so broadly fashioned that it almost certainly will require the production of certain confidential and proprietary business information and protectable trade secrets. This information would include customer contact information, purchase history and other business proprietary information. Because GE produced information relevant to Motorola's non-competition and mitigation issues and information sufficient for Motorola to assert its arguments in these areas, the Court should grant the protective order.

WHEREFORE, Plaintiffs respectfully request that a protective order be granted and that Motorola only be permitted discovery of that information to which the parties have previously agreed, specifically as it relates to Plaintiffs and pre-dates February 26, 2004.

Dated: May 22, 2006

*David A. Felice*

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
*Attorneys for Plaintiffs*

Of counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

**EXHIBIT A**

Case 1:04-cv-00960-SLR     Document 139     Filed 05/22/2006     Page 6 of 13

## Brooke Myers - RE: critical - need your input

**From:** Crawford Kim-SCN105 <Kim.Crawford@motorola.com>
**To:** Blair Julie-C17394 <J.Blair@motorola.com>, Parslow Kevin-BLUW72 <Kevin.Parslow@motorola.com>
**Date:** 1/8/2004 8:35 AM
**Subject:** RE: critical - need your input

Update... feedback on J2 NW is that also have nothing competitive on their linecard.

Kim

-----Original Message-----
From: Blair Julie-C17394
Sent: Wednesday, January 07, 2004 10:13 PM
To: Crawford Kim-SCN105
Subject: RE: critical - need your input

thanks, Kim!

-----Original Message-----
From: Crawford Kim-SCN105
Sent: Wednesday, January 07, 2004 5:32 PM
To: Blair Julie-C17394; Machernis Steven-QVCL80
Cc: Guibor Nina-Q10503; Parslow Kevin-BLUW72; Bensted David-G19500
Subject: RE: critical - need your input

No blatant competition on the line cards with MCG on the line cards of ▓▓▓▓▓▓
still checking on ▓▓▓▓

Thx., Kim    [J2 NW]

-----Original Message-----
From: Blair Julie-C17394
Sent: Wednesday, January 07, 2004 5:56 PM
To: Crawford Kim-SCN105; Machernis Steven-QVCL80
Cc: Guibor Nina-Q10503; Parslow Kevin-BLUW72; Bensted David-G19500
Subject: critical - need your input
Importance: High

Steve & Kim, David, Kevin and I just met to further our strategy on the MRs. By 10am tempe time, tomorrow, Thursday, please validate your MRs' compliance with section 2.7 of the contract as follows:

"Noncompetition. Representative will not sell, offer for sale, or act as sales agent for the solicitation of orders for any products that are competitive with any of the Products as defined by Motorola; nor will Representative engage in any activity that may result in a relationship with current or future customers that creates a conflict of interest as defined by Motorola"

If they were carrying competitive products on their line card or doing anything else that conflicts with this clause, it would be grounds for immediate termination with no financial liability. Kevin felt you could do this very quickly.

EXHIBIT 24

MOT 00774

Then by 2pm tempe time, please provide a list of customers and/or programs that each of your MR's HAS had interaction with. To Steve's good point, for each identify whether they brought this in as new business (without the help of MCG or the distributor) or whether they have been supporting a design we brought in or a current run rate program.

We are all in agreement that no BDM should be brought into these discussions until this preliminary detail is analyzed. When we are close to taking action, you may be able to ping them for more accurate details.

Kevin would like to be able to take decisive action on this by Monday, Jan 12. Your help is critical. Please call me asap if you are unclear on what we are looking for. Thanks. jb

MOT 00775

**EXHIBIT B**



February 26, 2004

VIA OVERNIGHT DELIVERY

J-Squared Technologies, Inc.
4015 Carling Avenue, Suite 101
Kanata, Ontario
K2K 2A3, Canada

Attn: Mr. Jeff Gibson

Dear Mr. Gibson:

Motorola Computer Group ("Motorola") entered into a Manufacturer Representative Agreement (the "Agreement") with J-Squared Technologies, Inc. (Canada) ("JSC") effective December 5, 2002. That Agreement, by its terms, expired December 4, 2003.

Under the Agreement, JSC is entitled to certain compensation rights for a period of 180 days following expiration. (*See* Agreement ¶ 7.3(D)). Motorola has been honoring, and will continue to honor, those rights since December 4, 2003. The 180-day period expires on June 1, 2004.

Motorola wishes JSC the best of luck in the future. Should JSC have any questions about this letter, please call Steve Machernis.

Sincerely,

*Dan Huth*

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

MOTJ 00166

Motorola, Inc., Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733



**EXHIBIT C**

go



February 26, 2004

VIA OVERNIGHT DELIVERY

J-Squared Technologies, Inc.
4015 Carling Avenue, Suite 101
Kanata, Ontario
K2K 2A3, Canada

Attn: Mr. Jeff Gibson

Dear Mr. Gibson:

Motorola Computer Group ("Motorola") entered into a Manufacturer Representative Agreement (the "Agreement") with J-Squared Technologies (Oregon) Inc. ("JSO") effective May 15, 2003. The Agreement expires May 14, 2004. It is Motorola's intent to terminate that Agreement.

As part of that Agreement, JSO agreed to maintain minimum performance standards. JSO has failed to meet the minimum performance standards required by the Agreement. Accordingly, Motorola is giving notice in accordance with Paragraph 7.2A of that Agreement that the Agreement will terminate effective 30 days from the date of this letter, absent JSO's full compliance with, and satisfaction of, the performance standards.

Should JSO fully cure its noncompliance with, and otherwise satisfy, the performance standards, nothing in this letter is intended to indicate an intent by Motorola to continue the contractual relationship beyond May 14, 2004, and, in fact, Motorola does not desire to do so.

Motorola wishes JSO the best of luck in the future. Should JSO have any questions about this letter, please call Kim Crawford.

Sincerely,

*[signature]*

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

MOTJ 00167

EXHIBIT 28

*Motorola, Inc.*, Motorola Computer Group
2900 South Diablo Way, Tempe, AZ  85282 U.S.A.  Tel: +1 602 438 6733

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on May 22, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| William W. Bowser | Randy Papetti |
| Young Conaway Stargatt & Taylor | Cory Talbot |
| The Brandywine Building | Emily Cates |
| 1000 West Street, 17th Floor | Lewis and Roca LLP |
| Wilmington, DE 19801 | 40 N. Central Avenue |
| | Phoenix, AZ 85004 |

David A. Felice (#4090)