IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., J-SQUARED TECHNOLOGIES (OREGON) INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOTOROLA, INC., <br><br> Defendant. | C.A. No. 04-960-SLR <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR MOTION TO AMEND**

Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs J-Squared Technologies, Inc. ("JST") and J-Squared Technologies (Oregon), Inc. ("JSO") (collectively, "Plaintiffs") submit this reply memorandum in further support of their motion to amend. In support of their Motion, Plaintiffs state the following:

1. Amendment is proper as the proposed fraud and deceptive trade practices claims conform to the evidence uncovered during discovery. Motorola's opposition to the fraud claim is based entirely on tenuous claims of delay and self-proclaimed questions of fact. Accordingly, the fraud claim should be permitted to proceed. Motorola's resistance to the addition of the deceptive trade practices claim is again premised on claims of delay and futility based on the application of Arizona law. As set forth in the opening memorandum, if the Court is inclined to revisit its *sua sponte* analysis applying an Arizona contractual choice of law provision to tort claims, the deceptive trade practices will proceed to an adjudication on the merits. Finally, the supplemental pleadings added to the claim for breach of contract were taken at the express direction of Motorola counsel's assertion that disclosure through discovery responses were insufficient and that amendment of the pleadings was necessary. Unhappy that it received

exactly what it asked for, Motorola now complains that these supplemental allegations are "stealth" amendments.

### A. Motorola's Factual Challenges to the Fraud Claim Should be Reserved for Trial

2. Plaintiffs' fraud allegations present genuine issues of material fact as to Motorola's conduct in negotiating, performing and terminating the manufacturer's representative agreements ("MRAs"). Motorola claims that Plaintiffs delayed in presenting its fraud claim and attempts to explain away the allegations with conflicting deposition testimony and presumptions. As identified in the opening memorandum and described briefly below, this merits defense to a motion to amend is misplaced and should not preclude the adjudication of a legitimate claim on its merits.

3. As a general matter, Motorola claims Plaintiffs were dilatory in presenting their fraud claim. Specifically, Motorola alleges that Plaintiffs should have been aware of the fraudulent nature of the representations <u>at the time the statements were made</u> and, therefore, the motion to amend is flawed due to the delay. Not only does this draconian approach misstate the law for pleading fraud, it presupposes an element of Plaintiffs' subjective understanding and acknowledgment of the false statements.

4. Under applicable law, the accused is the only party that is required to know the falsity of the representations undertaken. A plaintiff need only rely, to its detriment, on the misstatements. (Op. Mem. at ¶ 12). Here, soon after Plaintiffs obtained record evidence that substantiated their belief that Motorola's statements and dealings were fraudulent, they disclosed this belief through discovery responses and moved with dispatch to formally amend its pleadings.

5. Motorola's factual challenges to the fraud claim fare no better. Motorola feebly contends that its Business Development Manager Larry Terry did not have authority to negotiate

on behalf of the company. (Ans. Mem. at p. 5). Despite this allegation, the record evidence (through Plaintiffs' averments and as confirmed by Mr. Terry himself) demonstrates that Mr. Terry unequivocally represented that Motorola's manufacturer's representative business model would last three to four years. (Op. Mem. at ¶ 14). Challenges to actual or apparent authority should properly be addressed later in litigation and not decided on a motion to amend under Rule 15.

6. Similarly, Motorola contends that the repeated and unvarying citation to Motorola's G9 Policy as a basis for precluding the automatic renewal of the MRAs (Op. Mem. at Exhibit 5) does not serve as a basis for a fraud claim because the Motorola employee was simply mistaken as to her identification of the policy. (Ans. Mem. at 6). Motorola asserts this explanation without ever identifying the correct policy, in its papers or its discovery. Instead, Motorola asks the Court to believe a different and unsupported set of facts from the same witness who once made absolute – and admittedly false – statements to an employee of Plaintiffs concerning the G9 prohibition against automatic renewals. These questions of fact and credibility are properly addressed by the jury.

7. Motorola contends that its admitted short-changing of commissions payable in the past cannot serve as a basis for a fraud claim in the present. This too is not true. Motorola admits it short-changed Plaintiffs on the Raytheon deal. However, Motorola makes no mention of the fact that its reluctance to produce complete point of sale figures for Plaintiffs' territories forced Plaintiffs to subpoena records from Motorola's suppliers Arrow and Avnet and to conduct independent investigations as to Motorola's practice of underpaying its manufacturer's representatives. Plaintiffs first received documents responsive to these efforts toward the end of the first quarter of this year. All the documents obtained in response to these subpoenas were produced to Motorola shortly after receipt.

8.   Motorola's attempted explanation of the April 2003 moratorium is troubling to say the least. In April 2003, Motorola's Director of Worldwide Sales, Kevin Parslow, required that a "complete review of the situation" be undertaken before any new MRAs were to be executed. (Op. Mem. at Exhibit 6). In response to repeated requests for evidence of this "complete review" Motorola responded by indicating that Plaintiffs were incorrect in their "presumption" that when Motorola's Director of Worldwide Sales requires that a "complete review of the situation" be undertaken, that anyone would actually do so. Indeed, this very issue and the dearth of production related thereto is the subject of Plaintiffs' pending motion to compel. (D.I. 76 at Exhibit F; D.I. 98 at ¶ 14). In response to that motion, Motorola claimed that there was nothing more to produce. Now, Motorola claims that Mr. Parslow completed his "due diligence" and it thereafter "continued to sign up additional sales representatives." (Ans. Mem. at p. 7). Not only is this argument inconsistent with prior positions taken before this Court, it highlights Motorola's discovery gamesmanship in this action. Motorola now contends Mr. Parslow obtained his "complete review" of the manufacturer's representative business model, but it refuses to produce the documents to evidence it. Similarly, Motorola contends (despite Plaintiffs' allegations to the contrary) that JSO failed meet performance requirements under the Agreement, but it refuses to produce its master sheet of performance.

**B.   Plaintiffs' Deceptive Trade Practices Claims**

9.   Plaintiffs' deceptive trade practices claim is cognizable under Delaware, Massachusetts, Oregon or Canada law. Motorola claims that the Agreements' Arizona choice of law provision and the Court's *sua sponte* analysis[1] of the choice of law issue is controlling. (Ans. Mem. at p. 10).

---

[1] Anticipating that a choice of law issue surrounding Plaintiffs' tort claims might arise, the Court, *sua sponte*, determined that it would apply the parties' contractual choice of law of Arizona law to the negligent misrepresentation claim to ensure uniform adjudication of Plaintiffs' claims. *J-Squared Tech. Inc. v. Motorola, Inc.*, 364 F. Supp. 2d 449, 452 n.7 (D. Del. 2005).

4

WILMINGTON\34861\1153371.000

10.     Arizona law is not applicable to Plaintiffs' tort claims as the parties' contractual choice of law provision only applies to contact-based claims. As a general proposition, "courts have recognized that a contract's choice of law provision does not necessarily govern fraud, misrepresentation and other tort claims related to the [underlying] contract." *Brown v. SAP America, Inc.*, 1999 WL 803888, at *5 (Robinson, J.) (D. Del. Sept. 13, 1999) (citing *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (explaining that, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision"); *Union Oil Co. of Cal. v. John Brown E & C*, 1994 WL 535108, at *2-3 (N.D. Ill. Sept. 30, 1994) (applying Illinois law to tort claims in spite of contract's California choice of law provision); *Furniture Consultants, Inc. v. Datatel Minicomputer Co.*, 1986 WL 7792, at *2 (S.D.N.Y. July 10, 1986) (applying New York law to negligence and fraud claims arising out of contract governed by Maryland law, where the alleged negligence and fraud occurred in New York); *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F. Supp. 1495, 1503 (E.D.N.Y. 1984) (noting that, despite a contract's choice of law provision, "a tort claim arising out of the contract may be governed by the law of a different forum"), *rev'd in part on other grounds*, 786 F.2d 72 (2d Cir. 1986)).

11.     In *Naghiu v. Inter-Continental Hotels Group, Inc.*, this Court adopted the Delaware Supreme Court's process of applying different choice of law rules with respect to claims sounding in contract and those sounding tort – known as dépeçage. *Naghiu*, 165 F.R.D. 413, 421-22 & n.4 (D. Del. 1996) (citing *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del. 1991)). Accordingly, the Court must engage in a traditional choice of law analysis to determine the controlling state law that will apply to Plaintiffs' deceptive trade practices claim. (*See* Op. Mem. at ¶¶ 21-26).

12.   Given the application of Delaware, Massachusetts, Oregon or Canada law, Plaintiffs must be permitted to pursue their claims for deceptive trade practices.

C.   **Motorola Requested that Plaintiffs Supplement their Contract Claim**

13.   Just as with the factual bases for the fraud claim, Plaintiffs addressed the factual predicate for its breach of contract claim through discovery responses and depositions. Indeed, Motorola's counsel recognizes that it indeed requested that Plaintiffs amend their pleadings to better conform to their allegations. (Ans. Mem. at p. 16). Now that Plaintiffs have done just that, Motorola claims that these amendments are not supported by the record. Given Motorola's conduct in this action and the companion action: *G.L. Williams Associates, Inc. v. Motorola, Inc.*, C.A. No. 06-114-SLR (the "GLW Action"), this challenge can be easily disregarded.

14.   First, Motorola was fully aware of the additional facts Plaintiffs sought to advance in support of the pending breach of contract claim. Indeed, Motorola's counsel raised issue with the fact that these allegations were allegedly not properly plead in the complaint. Now that Plaintiffs have undertaken to conform their pleadings to the facts disclosed in discovery, Motorola cries foul.

15.   Motorola's factual challenges to the amendment is, at best, summarily addressed by reference to its action in the GLW Action. In the GLW Action, Motorola did not seek dismissal of any portion of the GLW breach of contract claim. That claim is based on substantially the same conduct at issue in Plaintiffs' amended pleadings in this action. If the factual allegations presented in this amendment were susceptible to dismissal for futility, it would be safe to assume Motorola would have asserted the same arguments through a motion to dismiss in the GLW Action. The fact is Motorola did not present such a motion because such a request would be frivolous. The Court should not condone such practice here merely because the allegations are presented through a motion to amend under Rule 15.

6

### D. Plaintiffs Satisfy the Good Cause Requirement

16. Plaintiffs satisfy the good cause requirement to amend their pleadings outside the time set aside for amendment as this motion was delayed only by Motorola's dilatory conduct in responding to discovery efforts and all parties' good faith efforts to resolve their disputes through a private mediation in February 2006.

17. On July 7, 2005 (approximately one month after the case scheduling order was set in place), Plaintiffs served their first set of interrogatories and requests for production. (D.I. 28). Almost 70 days later[2], on September 14, 2005, Motorola finally delivered their responses to this initial set of discovery requests. (D.I. 30). Accordingly, it was not until <u>after the motion to amend deadline</u> (September 2, 2005) that Motorola first started to meaningfully engage in the discovery process.

18. Compounding Motorola's dilatory written discovery efforts was the monumental task of scheduling Motorola employees for depositions. Two examples depict this struggle.[3] On September 19, 2005, Plaintiffs wrote to Motorola in an effort to schedule three depositions, including that of Steve Machernis (a Motorola Business Development Manager for JST, RT Technologies, G.L. Williams and others). Following cancellations, scheduling conflicts and other difficulties, Mr. Machernis was deposed on January 5, 2006 – approximately four months after inquiry was first made for his availability. Similarly, Wendy Vittori's (Motorola's General Manager) deposition was scheduled and properly noticed for April 13, 2006 in Arizona. Only after counsel traveled to Arizona did Motorola inform Plaintiffs that Ms. Vittori was not

---

[2] While Plaintiffs did voluntarily grant Motorola's numerous requests for extensions, Motorola should not be permitted to take advantage of these professional courtesies as a basis for denying a claim for substantive relief.

[3] See also Plaintiffs' Motion to Compel. (D.I. 76); supra ¶ 8.

available as she had another meeting elsewhere. It was only with great restraint that Plaintiffs agreed to amicably work to reschedule Ms. Vittori's deposition for earlier this month.

19. Additionally, beginning in late 2005, the parties agreed to voluntarily mediate this action before a private mediator. The two day mediation concluded, unsuccessfully, on February 14, 2006. During this time, the parties placed on hold most substantive discovery and trial preparation in an effort to advance a meaningful mediation process. Shortly thereafter, Plaintiffs filed their motion to compel (D.I. 76), this motion to amend, a motion to consolidate this action with the GLW Action (D.I. 117) and the complaint in the GLW Action itself.

20. Accordingly, Plaintiffs worked diligently to bring the parties' disputes before this Court in a timely fashion.

WHEREFORE, for these reasons and those set forth in their opening memorandum, Plaintiffs respectfully request that their motion to amend be granted.

Dated: May 22, 2006

/s/ David A. Felice
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
*Attorneys for Plaintiffs*

Of Counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on May 22, 2006, I electronically filed a notation of the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

> William W. Bowser
> Young Conaway Stargatt & Taylor
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
>
> Cory Talbot
> Lewis and Roca LLP
> 40 N. Central Avenue
> Phoenix, AZ 85004

> David A. Felice (#4090)
> Cozen O'Connor
> 1201 North Market Street, Suite 1400
> Wilmington, DE 19801
> Telephone: (302) 295-2000
> Facsimile: (302) 295-2013
> Email: dfelice@cozen.com