IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., | : | |
| J-SQUARED TECHNOLOGIES (OREGON) | : | |
| INC., | : | |
| | : | C.A. No. 04-960-SLR |
| Plaintiffs, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| MOTOROLA, INC., | : | |
| | : | **PUBLIC VERSION** |
| Defendant. | : | |

## Exhibits to Plaintiffs' Answering Brief in Opposition to Defendant's Motion for Summary Judgment

Dated:  June 8, 2006

Of Counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on June 8, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Cory Talbot
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ 85004

David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
E-mail: dfelice@cozen.com

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.,    :
J-SQUARED TECHNOLOGIES (OREGON)  :
INC.,    :
    :    C.A. No. 04-960-SLR
    Plaintiffs,    :
    :
    v.    :    JURY TRIAL DEMANDED
    :
MOTOROLA, INC.,    :
    :
    Defendant.    :

## Exhibit Index to Plaintiffs' Answering Brief
## in Opposition to Defendant's Motion for Summary Judgment

| | |
|---|---|
| Blair deposition exhibits | Exhibit A |
| Blomme deposition excerpts | Exhibit B |
| Crawford deposition excerpts | Exhibit C |
| Gibson deposition excerpts | Exhibit D |
| Holt deposition excerpts and exhibits | Exhibit E |
| Nykoluk deposition excerpts | Exhibit F |
| Machernis deposition excerpts and exhibits | Exhibit G |
| Parslow deposition excerpts | Exhibit H |
| Kolasa email dated January 14, 2003 | Exhibit I |
| Terry deposition excerpts | Exhibit J |
| Kolasa deposition excerpts and exhibits | Exhibit K |
| Defendant's Response to Plaintiffs' First Request for Admission | Exhibit L |
| Letter Inquiries | Exhibit M |

| | |
|---|---|
| Termination Letters | Exhibit N |
| Declaration of Joan Stewart | Exhibit O |
| Declaration of Steven Blomme | Exhibit P |
| Vittori deposition excerpts | Exhibit Q |

Exhibit A

REDACTED

Exhibit B

REDACTED

Exhibit C

REDACTED

Exhibit D

REDACTED

Exhibit E

REDACTED

Exhibit F

REDACTED

Exhibit G

REDACTED

Exhibit H

REDACTED

# Exhibit I

From: Kolasa Jeanne-MCG32018
Sent: 1/14/2003 1:54:41 PM (Central Time)
To: MCG-SALES_NAMBDMs
CC: Holt Paul-LPH001
Attachments: Perf stds Exhibit 4.doc, Rep Agmt Final.ZIP
Subject: Performance Standards for Reps

Redacted-Not
Relevant

Hi All:

Per Kevin Parslow's request, performance standards will be included in all
future rep contracts as Exhibit 4 (Kim...we'll need to add this to the ████
contract when we renegotiate it in April and Ed K. - we'll need to add these as
an addendum to the J-Squared contract).

The attached is a baseline set of standards that Ed Helder and I worked on
(thanks Ed!).   I wanted to get this out there for you all to take a look at
and provide your feedback.   Again, the intention is that for each rep signed,
Design Win and Territory growth goals are determined by the BDM and added as
Exhibit 4 to the contract.  I've also attached a copy of the generic rep
contract.

Feedback, suggestions, etc. are welcomed.

Thanks,
Jk

Exhibit J

REDACTED

Exhibit K

REDACTED

Exhibit L

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.; and )
J-SQUARED TECHNOLOGIES )
(OREGON), INC., )
                       )       C.A. No. 04-CV-960-SLR
            Plaintiffs, )
                       )
      vs. )
                       )
MOTOROLA, INC., )
                       )
            Defendant. )
                       )

## DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR ADMISSION

      Defendant Motorola, Inc., hereby answers Plaintiffs' First Request for Admissions as follows:

### GENERAL OBJECTIONS

      1.      Motorola objects to all requests for admission to the extent they are overbroad, vague, ambiguous, unduly burdensome, irrelevant to the subject matter of this litigation, or not reasonably calculated to lead to the discovery of admissible evidence. Motorola has attempted to answer each request based on a reasonable interpretation of the information requested and has specifically stated objections in response to particular requests. But to the extent Motorola and Plaintiffs subsequently differ in their interpretations of what the requests requested, Motorola hereby reserves all rights to object to Plaintiffs' interpretation on the grounds stated in this general objection.

2.      Motorola objects to all requests for admissions to the extent they ask for information that is protected by the work product doctrine and the attorney-client privilege. If any privileged information is inadvertently produced in response to Plaintiffs' requests, there shall be no waiver of Motorola's right to assert these privileges.

3.      Each of the foregoing objections is hereby incorporated in each and every one of the following responses to Plaintiffs' First Request for Admissions, whether or not it is specifically identified.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Motorola objects to Plaintiffs' definition of "documents" in Definition number 4 as overbroad, unduly burdensome, and to the extent that it asks for information that is protected by the work product doctrine and the attorney-client privilege.

2.      Motorola objects to the "time period" noted in Plaintiffs' Instruction number 5 as overbroad, unduly burdensome, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSES TO REQUESTS FOR ADMISSION

1.      Admit that Motorola decided to place on hold the execution of all new Manufacturer Representative Agreements as of April 2004.

**Response: Motorola objects to this request as misleading, vague and ambiguous. By April 2004, Motorola had notified the manufacturer representatives that their Agreements would either be terminated for non-performance or not renewed after expiration. Accordingly, Motorola denies that it placed the execution of new Agreements on hold as of April 2004.**

2.      Admit that Motorola did not provide the manufacturer representatives an opportunity to cure following the February 26, 2004 terminations for cause.

17117731

**Response:** Motorola objects to this request as overbroad, vague and ambiguous. Subject to and without waiving these objections, Motorola denies this request. While Motorola terminated several manufacturer representatives, including JSO, for failure to meet their performance requirements, Motorola denies that it failed to provide these manufacturer representatives with an opportunity to cure. In fact, Motorola's termination letter to JSO, among others, specifically stated that it would terminate its Agreement "absent JSO's full compliance with, and satisfaction of the performance standards." Motorola also stated that "[s]hould JSO fully cure its noncompliance with, and otherwise satisfy, the performance standards" it did not intend to renew its Agreement with JSO beyond the one-year term. Communicating its intent not to renew beyond the one-year term, however, is quite different from failing to provide the representatives with an opportunity to cure.

3.     Admit that Motorola did not provide JSO an opportunity to cure following the February 26, 2004 termination.

**Response:** Deny. See Motorola'sresponse to Request for Admission No. 2. above.

4.     Admit that the February 26, 2004 termination of the JSO Agreement was a purported termination for cause pursuant to paragraph 4.4 of that Agreement.

**Response:** Deny. As Motorola's termination letter expressly states, it terminated JSO for cause pursuant to section 7.2A.

5.     Admit that no disclosures were made to any manufacturer representatives concerning Motorola's decision to place all new Manufacturer Representative Agreements on hold as of April 2004.

**Response:** Motorola objects to this request as misleading, overbroad, vague and ambiguous. By April 2004, Motorola had notified the manufacturer

representatives that their Agreements would either be terminated for non-performance or not renewed after expiration.  Accordingly, Motorola denies that it placed the execution of new Agreements on hold as of April 2004.

To the extent that Plaintiffs intended to ask about April 2003, Motorola denies that it placed execution of the manufacturer representative program on hold as of April 2003.  As deposition testimony and documents demonstrate, Mr. Parslow, who became the Director of Worldwide Sales in approximately January 2003, undertook a due diligence review in April 2003.  This review was of MCG's contract approval process for <u>all</u> contracts, not just manufacturer representative contracts. (*See* Parslow Depo. beginning at 150:8).  After a full review was undertaken, Motorola signed Agreements with seven manufacturer representatives, including JSO.  Motorola did not not inform the manufacturer representatives of this due diligence review of the contract approval process, nor was it under any obligation to do so.

6.     Admit that the G9 Policy does not expressly prohibit multi-year third party sales representative agreements.

<u>Response</u>:  **Admit.**

7.     Admit that Larry Terry made representations to potential manufacturer representative(s) concerning the expected duration of the manufacturer representative business plan.

<u>Response</u>:  **Deny.  Mr. Terry had no involvement with any representative other than JST.  To the extent that this request seeks information about JST, Motorola denies that Larry Terry made representations to JST concerning the expected duration of the manufacturer representative business plan.  For an explanation, see Larry Terry's declaration.**

1711773.1

8.      Admit that Motorola's profit margins were higher in the years following its termination/non-renewal of the manufacturer representatives in February 2004 than it was prior to this time.

**Response:  Motorola objects to this request as vague, ambiguous, irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.  It is unclear what Plaintiffs' mean by "profit margins."  Furthermore, whether the overall profits for Motorola, a multi-billion dollar company, were higher or lower in the years following its termination/non-renewal of the manufacturer representatives is irrelevant to this case.**

9.      Admit that Motorola's profit margins were lower in the years following its termination/non-renewal of the manufacturer representatives in February 2004 than it was prior to this time.

**Response:  See Motorola's response to Request for Admission No. 8.**

1711773.1

DATED:  February 24, 2006.

        YOUNG CONAWAY STARGATT & TAYLOR, LLP
        William W. Bowser (No. 2239)

        and

        LEWIS AND ROCA LLP

        Randy Papetti
        Richard A. Halloran
        Cory A. Talbot
        40 N. Central Avenue
        Phoenix, Arizona  85004
        (602) 262-5311

        Attorneys for Defendant

1711773.1

## CERTIFICATE OF SERVICE

I, Cory A. Talbot, do hereby certify that on February 24, 2006, true and correct copies of Defendant's Response to Planitiffs' Request for Admissions were caused to be served upon counsel of record at the following addresses as indicated:

Via U.S. Mail:

David A. Felice
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801

Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

_____
Cory A. Talbot

7

Exhibit M



**PERLEY-ROBERTSON, HILL & McDOUGALL LLP**

*Lawyers / Patent & Trade-Mark Agents*
*Avocats / Agents de brevets et de marques de commerce*

Reply to/Communiquez avec:
David Migicovsky
(613) 566-2833 dmigicovsky@perlaw.ca

March 12, 2004

**BY COURIER**

**WITHOUT PREJUDICE**

Mr. Dana Huth
Vice-President, Motorola Computer Group Inc.
Worldwide Sales & Market Development
2900 South Diablo Way
Tempe, AZ 85282

Dear Mr. Huth:

Re:    **Agreement between J-Squared Technologies, Inc. (Canada) and Motorola Computer Group**

We are the solicitors for J-Squared Technologies, Inc. (Canada) and as such are in receipt of your letter dated February 26, 2004 to our client.

We note that you have purported to advise our client that the Manufacturer Representative Agreement ("the Agreement") between J-Squared Technologies, Inc. (Canada) ("JSC") and Motorola Computer Group ("Motorola") expired on December 4, 2003.

We note that the parties have since December 4, 2003 continued to carry on business and perform their obligations under the terms of the Agreement. We note that Paragraph 7.3 of the Agreement sets out the rights of the parties on termination. We have reviewed with our client the events that have transpired between the parties since December 4, 2003. In this respect, we note that none of the events set out in Paragraph 7.3 of the Agreement have occurred. In particular, we understand that JSC has continued to carry out sales and other activities on behalf of Motorola. We further note that Motorola has continued to provide confidential information to JSC. In the circumstances therefore it appears that the parties, through their mutual conduct and agreement, have either renewed the existing Agreement or entered into a new contract on terms that are substantially similar to the prior Agreement.

MOTJ 00178

90 rue Sparks Street, Ottawa, Ontario, Canada  K1P 1E2  t: 613-238-2022, 1-800-268-8292  f: 613-238-8775   www.perlaw.ca

International Alliance / Alliance Internationale - Cozen O'Connor
Atlanta – Charlotte – Chicago – Dallas –Denver – Las Vegas – London, U.K. – Los Angeles – New York – Newark
Philadelphia – San Diego – San Francisco – Seattle – Washington, DC – Wichita – Wilmington



**PERLEY-ROBERTSON, HILL & McDOUGALL LLP**

Given the renewal of the existing Agreement or the creation of a new contract between the parties, we do not agree with your assertion that the 180 day period referred to in Paragraph 7.3 D of the Agreement runs from December 4, 2003.

Paragraph 7.2 G of the Agreement, which is now part of the new contract entered into by the parties, provides for termination by 30 days prior written notice after an initial 180 day period. Given the renewal of the Agreement effective December 5, 2003, then the 180 day period for termination of the Agreement expires on June 2, 2004. It follows therefore that Motorola is only entitled to terminate the new agreement subsequent to June 2, 2004 and only upon providing 30 days written notice.

We note as well that Paragraph 7.3 D of the Agreement which has now become part of the new agreement sets out the rights of the parties on termination. This Paragraph indicates that our client is eligible for commissions on all direct orders and new direct orders accepted and shipped within a period of 180 days as of the date of termination or expiration and all net distribution POS orders and new distribution POS orders accepted and shipped within a period of 180 days as of the date of termination of the Agreement.

It follows from the above that Motorola is only entitled to provide our client with 30 days notice of termination on the expiration of the 180 day period on June 2, 2004. Assuming notice is given on that date, then the new agreement will terminate 30 days later, ie. July 2, 2004. Upon the expiration of that period, then Motorola continues to be required to pay commissions for the 180 day period in accordance with Paragraph 7.3 D.

On a related matter, I understand from my client that Motorola is currently in arrears on paying commissions owing for sales in the amount of $977,688(US). The total commission outstanding is $48,883.40(US). Would you please advise when our client can expect payment of the outstanding commission.

In the event that Motorola fails to compensate JSC for the payment set out above as well as for the commissions owing pursuant to the new agreement between the parties, JSC will take the appropriate legal action.

Yours truly,

David Migicovsky
20:gp
c.c. — J. Gibson (by fax & e-mail)

MOTJ 00179



**PERLEY-ROBERTSON, HILL & McDOUGALL LLP**

*Lawyers / Patent & Trade-Mark Agents*
*Avocats / Agents de brevets et de marques de commerce*

Reply to/Communiquez avec:
David Migicovsky
(613) 566-2833 dmigicovsky@perlaw.ca

March 12, 2004

**BY COURIER**

**WITHOUT PREJUDICE**

Mr. Dana Huth
Vice-President, Motorola Computer Group Inc.
Worldwide Sales & Market Development
2900 South Diablo Way
Tempe, AZ  85282

Dear Mr. Huth:

Re:    **Agreement between J-Squared Technologies (Oregon) Inc. and Motorola Computer Group**

We are the solicitors for J-Squared Technologies (Oregon) Inc. and as such are in receipt of your letter dated February 26, 2004.

Your letter purports to advise J-Squared Technologies (Oregon) Inc. that it has failed to meet minimum performance standards required by the agreement ("the Agreement") between J-Squared Technologies (Oregon) Inc. ("JSO") and Motorola Computer Group ("Motorola"). Your letter however has not particularized the specific performance standards that were not met by JSO. The absence of particulars leads us to conclude that your letter is a pretext to terminate the Agreement. Such action is contrary to the duty of good faith and fair dealing.

Your letter of February 26, 2004 indicates that as a result of the failure by JSO to maintain performance standards, Motorola is purporting to give notice that the said Agreement will terminate 30 days from February 26, 2004 under Paragraph 7.2A. I note however that you have failed to reference Paragraphs 4.4, 7.2G and 7.3D of the Agreement which are clearly applicable. For ease of reference, I have set out these paragraphs below:

4.4 -    **Performance Standards.** Representative agrees to maintain minimum performance standards as provided in Exhibit 4, which standards may be amended from time to time by written consent of both parties. If Representative fails to meet such minimum performance standards, <u>Motorola may terminate this Agreement without cause in accordance with Paragraph 7.2G.</u>

90 rue Sparks Street, Ottawa, Ontario, Canada  K1P 1E2  t: 613-238-2022, 1-800-268-8292  f: 613-238-8775  www.perlaw.ca

International Alliance / Alliance Internationale - Cozen O'Connor
Atlanta – Charlotte – Chicago — Dallas —Denver – Las Vegas -- London, U.K. – Los Angeles – New York – Newark
Philadelphia – San Diego – San Francisco – Seattle – Washington, DC – Wichita – Wilmington

MOTJ 00180



2
MARCH 12, 2004

PERLEY-ROBERTSON, HILL & McDOUGALL LLP

7.2  **Termination.** This Agreement may be terminated before expiration of the initial or any renewal term, as provided in Paragraph 7.1 above, by prior written notice to the other party as follows:...

G.  By either party, without cause after the initial 180 days following the effective date of this Agreement, on thirty (30) days prior written notice to the other party.

7.3  **Rights of Parties on Termination.** Upon termination or expiration of this Agreement, ...

D.  Representative shall not be eligible for any commissions in the case of termination by Motorola as described in Paragraphs 7.2 A through F. <u>Representatives will be only be eligible for further commissions in the case of termination by Motorola pursuant to Paragraph 7.2 G and only on:</u>

1)  All direct open orders and new direct orders accepted and shipped within a period of 180 days as of the date of termination or expiration; and

2)  All net distribution POS orders and new distribution POS orders accepted and shipped within a period of 180 days as of the date of termination or expiration.  (emphasis added)

It follows from the above that if JSO has failed to meet minimum performance standards and fails to correct such deficiency, then pursuant to Paragraph 7.2G, the Agreement is terminated on 30 days prior written notice. Our client will therefore treat your letter of February 26, 2004 as the prior written notice contemplated by Paragraphs 4.4 and 7.2G of the Agreement. It follows therefore that JSO continues to be eligible for further commissions owing on all direct open orders and new direct orders accepted and shipped within a period of 180 days as of the date of termination or expiration, and all net distribution POS orders and new distribution POS orders accepted and shipped within a period of 180 days as of the date of termination or expiration.

In the event that Motorola fails to compensate JSO for the commissions set out above, JSO will take the appropriate legal action.

Yours truly,

David Migicovsky
20:gp
c.c. – J. Gibson (by fax & e-mail)

MOTJ 00181

LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

Phoenix Office
40 North Central Avenue
Phoenix, Arizona 85004-4429
Telephone (602) 262-5311
Facsimile (602) 262-5747

Tucson Office
One South Church Avenue
Suite 700
Tucson, Arizona 85701-1620
Telephone (520) 622-2090
Facsimile (520) 622-3088

Las Vegas Office
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
Telephone (702) 949-8200
Facsimile (702) 949-8398

Randy Papetti
Direct Dial: (602) 262-5337
Direct Fax: (602) 734-3865
E-Mail: rpapetti@lrlaw.com
Admitted in Arizona

Our File Number 99999-70020

April 16, 2004

David Migicovsky, Esq.
Perley-Robertson, Hill & McDougall LLP
90 rue Sparks Street
Ottawa, Ontario  K1P 1E2

     Re:    *Your March 12, 2004 Letter*

Dear Mr. Migicovsky:

     I am responding on behalf of Motorola Computer Group ("MCG") to your March 12 letter. As you point out, paragraph 4.4 of the Agreement provides that MCG may terminate the Agreement without cause pursuant to paragraph 7.2(G), based on JSO's failure to meet minimum performance standards. Notably, termination under those provisions does not provide JSO with an opportunity to cure its failure to perform under the Agreement.

     Your letter, however, fails to acknowledge MCG's rights under paragraph 7.2(A) of the Agreement. Under that paragraph, MCG may terminate the Agreement if JSO "should fail to perform any of its obligations" under the Agreement. But to terminate under this paragraph, as opposed to termination under paragraphs 4.4 and 7.2(G), MCG must give JSO a thirty-day period to cure its nonperformance. MCG did so, and JSO failed to cure its failure to perform. Accordingly, MCG properly terminated the Agreement under ¶ 7.2(A).

     In sum, MCG had two options regarding termination: (1) it could terminate under ¶ 7.2(A) unless JSO cured its failure to perform, or (2) it could terminate under ¶ 7.2(G) and not provide JSO with the opportunity to cure its failure to perform in which case JSO would be entitled to the 180-day commission period your letter references. MCG chose the first option.

     Finally, I disagree with your statement that MCG violated its duty of good faith and fair dealing by failing to state the particular performance standards that JSO did not meet. MCG's prior letter expressly referenced the standards in Exhibit 4 to the Agreement. If you believe that JSO has complied with these standards, please provide me with information supporting your conclusion and I, along with MCG, will work through it promptly.

               Sincerely,

               Randy Papetti

                  **MOTJ  00210**

1506605.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

Phoenix Office
40 North Central Avenue
Phoenix, Arizona 85004-4429
Telephone (602) 262-5311
Facsimile (603) 262-5747

Tucson Office
One South Church Avenue
Suite 700
Tucson, Arizona 85701-1620
Telephone (520) 622-3090
Facsimile (520) 622-3088

Las Vegas Office
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
Telephone (702) 949-8200
Facsimile (702) 949-8398

Randy Papetti
Direct Dial: (602) 262-5337
Direct Fax: (602) 734-3865
E-Mail: rpapetti@lrlaw.com
Admitted in Arizona

Our File Number 99999-70020

April 16, 2004

David Migicovsky, Esq.
Perley-Robertson, Hill & McDougall LLP
90 rue Sparks Street
Ottawa, Ontario K1P 1E2
Canada

Re:    *Manufacturer Representative Agreement between J-Squared Technologies, Inc.
       (Canada) and Motorola Computer Group*

Dear Mr. Migicovsky:

Lewis and Roca represents Motorola Computer Group ("MCG"). I am responding on MCG's behalf to your March 12, 2004 letter.

Your letter makes legal arguments, which MCG respectfully finds unpersuasive. The contract between J-Squared Technologies, Inc. (Canada) ("JSC") and MCG, by its express terms, expired on December 4, 2003. Although MCG and JSC continued to wind up business after that date, it does not mean that the contract was renewed or extended. Indeed, to avoid just the kind of ambiguity raised in your letter, the contract specifically says that renewal can only occur through a writing signed by both parties, and there is no such writing here. (*See* Agreement ¶ 7.1).

Moreover, you cite no legal authority, and I could find none, for the proposition that JSC's and MCG's brief continuation of business somehow resulted in an entirely new contract that is subject to a restriction on termination without cause by either party within the first 180 days. There was no such agreement. Indeed, it seems clear that the paragraph 7.3(G) "honeymoon" period was intended only to apply in the initial 180 day period following the effective date of the agreement.

MCG will pay JSC compensation in accordance with paragraph 7.3(D) of the Agreement. Nothing in MCG's prior letter indicated otherwise.

Sincerely,

*Randy Papetti*

Randy Papetti

MOTJ 00211

1506604.1

Exhibit N

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

J-Squared Technologies, Inc.
4015 Carling Avenue, Suite 101
Kanata, Ontario
K2K 2A3, Canada

Attn: Mr. Jeff Gibson

Dear Mr. Gibson:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with J-Squared Technologies, Inc.
(Canada) ("JSC") effective December 5, 2002. That Agreement, by its terms,
expired December 4, 2003.

Under the Agreement, JSC is entitled to certain compensation rights for a period
of 180 days following expiration. (*See* Agreement ¶ 7.3(D)). Motorola has been
honoring, and will continue to honor, those rights since December 4, 2003. The
180-day period expires on June 1, 2004.

Motorola wishes JSC the best of luck in the future. Should JSC have any
questions about this letter, please call Steve Machernis.

Sincerely,

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733


EXHIBIT
*Ke F*
*Robinson*

MCG000200

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

J-Squared Technologies, Inc.
4015 Carling Avenue, Suite 101
Kanata, Ontario
K2K 2A3, Canada

Attn: Mr. Jeff Gibson

Dear Mr. Gibson:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with J-Squared Technologies
(Oregon) Inc. ("JSO") effective May 15, 2003. The Agreement expires May 14,
2004. It is Motorola's intent to terminate that Agreement.

As part of that Agreement, JSO agreed to maintain minimum performance
standards. JSO has failed to meet the minimum performance standards required
by the Agreement. Accordingly, Motorola is giving notice in accordance with
Paragraph 7.2A of that Agreement that the Agreement will terminate effective 30
days from the date of this letter, absent JSO's full compliance with, and
satisfaction of, the performance standards.

Should JSO fully cure its noncompliance with, and otherwise satisfy, the
performance standards, nothing in this letter is intended to indicate an intent
by Motorola to continue the contractual relationship beyond May 14, 2004, and,
in fact, Motorola does not desire to do so.

Motorola wishes JSO the best of luck in the future. Should JSO have any
questions about this letter, please call Kim Crawford.

Sincerely,

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

*Motorola, Inc.*, Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733

EXHIBIT
_36 6_
_Robinson_

MCG000201

 **MOTOROLA**

Sincerely,

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

cc: Al Brower

February 26, 2004

VIA OVERNIGHT DELIVERY

C&S Technical Sales, L.L.C.
801 E. Campbell Road, Suite 300
Richardson, TX 75081

Attn: Paul Clark/Scott Sewell

Gentlemen:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with C & S Technical Sales ("C&S")
effective May 20, 2003. The Agreement expires May 19, 2004. It is Motorola's
intent to terminate that Agreement.

As part of that Agreement, C&S agreed "to maintain minimum performance
standards," which were set out in Exhibit 4 to the Agreement. (Agreement ¶
4.4.) The parties also agreed that, if C&S "fails to meet such minimum
performance standards, Motorola may terminate this Agreement for cause in
accordance with Paragraph 7.2A." (*Id.*)

C&S has failed to meet the minimum performance standards required by the
Agreement. Accordingly, Motorola is giving notice in accordance with Paragraph
7.2A of that Agreement that the Agreement will be effectively terminated 30
days from the date of this letter, absent C&S's full compliance with, and
satisfaction of the performance standards.

Should C&S fully cure its noncompliance with, and otherwise satisfy, the
performance standards, nothing in this letter is intended to indicate an interest
by Motorola to continue the contractual relationship beyond May 19, 2004 and,
in fact, Motorola does not desire to do so.

Motorola wishes C&S the best of luck in the future. Should C&S have any
questions about this letter, please call Kim Crawford.

Sincerely,

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733



 **MOTOROLA**

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ  85282 U.S.A. Tel: +1 602 438 6733

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

RT Technologies Inc.
380 Foothill Road
Bridgewater, NJ 08807

Attn:  Mr. Joe Palermino

Dear Mr. Palermino:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with RT Technologies, Inc.
("RTT"), a Division of DSPCon, Inc., effective May 15, 2003.  The Agreement
expires May 14, 2004.  It is Motorola's intent to terminate that Agreement.

The Agreement provides that Motorola may terminate the Agreement if RTT
"should attempt to sell, assign, delegate, or transfer any of its rights and
obligations under this Agreement without having obtained Motorola's prior
written consent thereto, or if there should occur any material change in the
management, ownership, control, sales personnel . . . or financial condition of"
RTT.  (Agreement ¶ 7.2(C)).  RTT's ownership structure changed, and rights and
obligations under this Agreement were either transferred or attempted to be
transferred, in violation of the Agreement.

In addition, RTT agreed to maintain minimum performance standards, which
were set out in Exhibit 4 to the Agreement.  (Agreement ¶ 4.4).  The parties also
agreed that, if RTT "fails to meet such minimum performance standards,
Motorola may terminate this Agreement for cause in accordance with Paragraph
7.2A."  (*Id.*)

RTT has failed to meet the minimum standards required by the Agreement.
Accordingly, Motorola is giving notice in accordance with paragraph 7.2A of that
Agreement that the Agreement will be effectively terminated 30 days from the
date of this letter, as a result of the improper attempted assignment and change
of ownership as well as for failure to meet the performance standards.

To the extent RTT attempts to and is able to fully cure its noncompliance with
the Agreement's terms and conditions, please be advised that nothing in this
letter is intended to indicate an intent by Motorola to continue its contractual
relationship beyond May 14, 2004, and, in fact, Motorola does not desire to do
so.

Motorola wishes RTT the best of luck in the future.  Should RTT have any
questions about this letter, please call Steve Machernis.

Sincerely,

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ  85282 U.S.A. Tel: +1 602 438 6733

```
┌─────────────────────┐
│     EXHIBIT         │
│      36 B           │
│    [ROBINSON]       │
└─────────────────────┘
```

MCG000204

 **MOTOROLA**

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

cc:  Al Brower

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ  85282 U.S.A. Tel: +1 602 438 6733

MCG000205

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

Engineering Solutions – West
1400 Coleman Avenue, No. A12
Santa Clara, CA 95050

Attn: Mr. Dennis Gagne

Dear Mr. Gagne:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with Engineering Solutions - West
("ESW") effective May 20, 2003. The Agreement expires May 19, 2004.

This letter provides notice that Motorola does not intend to continue the
contractual relationship beyond May 19, 2004.

Motorola wishes ESW the best of luck in the future. Should ESW have any
questions about this letter, please call Kim Crawford.

Sincerely,

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development



Motorola, Inc., Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733

MCG000197

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

Electronic Manufacturers' Agent
999 Douglass Avenue, Suite 2217
Altamonte Springs, FL 32714

Attn: Mr. Joseph Sandusky

Dear Mr. Sandusky:

Motorola Computer Group ("Motorola") entered into a Manufacturer Representative Agreement (the "Agreement") with Electronic Manufacturers' Agent ("EMA") effective March 18, 2003. That Agreement expires March 17, 2004. It is Motorola's intent to terminate that Agreement.

As part of the Agreement, EMA agreed "to maintain minimum performance standards," which were set out in Exhibit 4 to the Agreement. (Agreement ¶ 4.4.) The parties also agreed that, if EMA "fails to meet such minimum performance standards, Motorola may terminate this Agreement for cause in accordance with Paragraph 7.2A." (*Id.*)

EMA has failed to meet the minimum performance standards required by the Agreement. Accordingly, Motorola is giving notice in accordance with Paragraph 7.2A of that Agreement that the Agreement will terminate effective 30 days from the date of this letter, absent EMA's full compliance with, and satisfaction of, the performance standards.

Should EMA fully cure its noncompliance with, and otherwise satisfy the performance standards, nothing in this letter is intended to indicate an intent by Motorola to continue the contractual relationship beyond March 17, 2004, and, in fact, Motorola does not desire to do so.

Motorola wishes EMA the best of luck in the future. Should EMA have any questions about this letter, please call Steve Machernis.

Sincerely,

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733

EXHIBIT

*36 D*
*Robinson*

MCG000198

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

G.L. Williams Associates, Inc.
805 Hopkins Road
Haddonfield, NJ 08033

Attn: Mr. Scott L. Williams

Dear Mr. Williams:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with G.L. Williams ("GLW")
effective July 1, 2003. That Agreement expires June 30, 2004. It is Motorola's
intent to terminate that Agreement.

As part of that Agreement, GLW agreed "to maintain minimum performance
standards," which were set out in Exhibit 4 to the Agreement. (Agreement ¶
4.4.) The parties also agreed that, if GLW "fails to meet such minimum
performance standards, Motorola may terminate this Agreement for cause in
accordance with Paragraph 7.2A." (*Id.*)

GLW has failed to meet the minimum performance standards required by the
Agreement. Accordingly, Motorola is giving notice in accordance with Paragraph
7.2A of that Agreement that the Agreement will be effectively terminated 30
days from the date of this letter, absent GLW's full satisfaction of the
Performance Standards.

Should GLW fully cure its noncompliance with, and otherwise satisfy, the
Performance Standards, nothing in this letter is intended to indicate an intent
by Motorola to continue the contractual relationship beyond June 30, 2004,
and, in fact, Motorola does not desire to do so.

Motorola wishes GLW the best of luck in the future. Should GLW have any
questions about this letter, please call Steve Machernis.

Sincerely,

Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

*Motorola, Inc.,* Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733

EXHIBIT

*36E*

*ROBINSON*

MCG000199

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

Max Technical Sales
2121 W. Army Trail Road
Suite 112
Addison, IL 60101

Attn: Mr. Tom Carbon

Dear Mr. Carbon:

Motorola Computer Group ("Motorola") entered into a Manufacturer
Representative Agreement (the "Agreement") with Max Technical Sales ("MTS")
effective August 12, 2003. The Agreement expires August 11, 2004. Motorola is
writing to confirm its understanding that its contractual relationship with MTS
will end on August 11, 2004 and that Motorola does not desire to continue the
contractual relationship beyond that date.

Motorola wishes MTS the best of luck in the future. Should MTS have any
questions about this letter, please call Kim Crawford.

Sincerely,


Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development


Motorola, Inc., Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733

EXHIBIT
_36 H_
_ROBINSON_

MCG000202

 **MOTOROLA**

February 26, 2004

VIA OVERNIGHT DELIVERY

West Coast Reps, Inc.
441 E. Whittier Blvd.
Suite 3A
La Habra, CA 90631

Attn: Mr. Walter C. Reynolds

Dear Mr. Reynolds:

Motorola Computer Group ("Motorola") entered into a Manufacturer Representative Agreement (the "Agreement") with West Coast Reps ("WCR") effective March 18, 2003. By its terms, the Agreement expires March 17, 2004. Motorola is writing this letter to confirm its understanding that its contractual relationship with WCR will end on March 17, 2004.

Motorola wishes WCR the best of luck in the future. Should WCR have any questions about this letter, please call Kim Crawford.

Sincerely,


Dana Huth
Vice President, Motorola Computer Group, Inc
Worldwide Sales & Market Development

*Motorola, Inc.*, Motorola Computer Group
2900 South Diablo Way, Tempe, AZ 85282 U.S.A. Tel: +1 602 438 6733

> **EXHIBIT**
> *3e.I*
> *ROBINSON*

MCG000203

Exhibit O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.,          :
J-SQUARED TECHNOLOGIES (OREGON)        :
INC.,                                  :
                                       :          C.A. No. 04-960-SLR
          Plaintiffs,                  :
                                       :
     v.                                :          JURY TRIAL DEMANDED
                                       :
MOTOROLA, INC.,                        :
                                       :
          Defendant.                   :

## DECLARATION OF JOAN STEWART IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Joan Stewart, hereby state in accordance with the provisions of Title 28, section 1746 of the United States Code the following:

1.      I am employed as an Accountant for J-Squared Technologies, Inc. ("JST") and J-Squared Technologies (Oregon), Inc. ("JSO").

2.      I am over the age of 18 years and I have first-hand knowledge of the facts set forth herein.

3.      I reviewed and confirmed the accuracy of certain commission payments made by Motorola, Inc. to JSO.

4.      The commission payments made to JSO are a function of the revenue generated for Motorola. Specifically, JSO earns a five percent (5%) commission on Motorola revenue in the territory serviced by JSO.

5.      JSO's accounting records for the Boeing AWACS program indicate that Motorola received revenue of at least $57,937.50.

6.      JSO's accounting records for the Boeing F22 program indicate that Motorola received revenue of at least $45,390.30.

7.    I qualify my statements above only to the extent that I have not reviewed materials I am informed were provided to JSO's attorneys from Motorola's distributors Arrow Electronics, Inc. and Avnet, Inc. This material could only serve to further augment the total amount of revenue Motorola derived from the JSO territory, but which JSO did not receive its 5% commission payments.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 8th day of June, 2006.

Joan Stewart
Accountant

Exhibit P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J-SQUARED TECHNOLOGIES, INC.,      :
J-SQUARED TECHNOLOGIES (OREGON)   :
INC.,      :
     :     C.A. No. 04-960-SLR
         Plaintiffs,      :
     :
     v.      :     JURY TRIAL DEMANDED
     :
MOTOROLA, INC.,      :
     :
         Defendant.      :

**DECLARATION OF STEVEN BLOMME IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Steven Blomme, hereby state in accordance with the provisions of Title 28, section

1746 of the United States Code the following:

     1.     I am employed as a Business Development Manager for J-Squared Technologies,

Inc. ("JST"). Through this position, I worked with J-Squared Technologies (Oregon), Inc

("JSO").

     2.     I reviewed defendant Motorola, Inc.'s opening brief in support of its motion for

summary judgment, a transcript copy of my deposition in this action and the Declaration of Joan

Stewart in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

     3.     I am over the age of 18 years and I have first-hand knowledge of the facts and

circumstances forming the basis of the business relationship between and among JST, JSO and

Motorola.

     4.     On February 26, 2004, Motorola sent a letter of termination to JSO claiming that

JSO failed to meet the minimum performance standards under its Agreement with Motorola.

5.    Following this letter of termination and at the direction of Jeffrey Gibson, the chief executive officer for JST and JSO, I created a spreadsheet directed towards JSO's performance under its Agreement with Motorola.

6.    I created this spreadsheet on or about March 1, 2004.

7.    Given the timing of my creation of the spreadsheet and the limited accounting information I had at my disposal, the spreadsheet did not capture a comprehensive accounting of the revenues earned nor the projected forecast for the various programs identified in the spreadsheet. Only Motorola had all the data at that point to capture a comprehensive accounting.

8.    The fact that the revenue figures are incomplete is attributable to: (i) the fact that I did not access all of JSO's accounting records when I drafted the spreadsheet and (ii) certain revenues due Motorola from the various programs (during the term of the Agreement) were only reported to JSO weeks after the order was filled and well after the March 1, 2004 date I completed the spreadsheet.

9.    Focusing specifically on the design win accounts of Boeing AWACS and Boeing F22 and given a complete review of JSO's accounting records and the revenue Motorola derived from these programs, the two programs meet the revenue thresholds to qualify as a design win under Exhibit 4 of the JSO Agreement.

10.    The Boeing AWACS program qualifies as a design win for at least two reasons. First, the revenue Motorola derived from this program equaled $57,937.50. *See* Declaration of Joan Stewart. Second, email correspondence between myself and Dennis Robinson (a Motorola Business Development Manager) confirms that the Boeing AWACS program was well over a $100,000 annual opportunity. *See* Exhibit 1 hereto (noting that the AWACS program was an opportunity of roughly $1 million over two (2) years).

2

11.    The Boeing F22 program also qualifies as a design win for at least two reasons. First, the revenue Motorola derived from this program equaled $45,390.30. *See* Declaration of Joan Stewart. Second, email correspondence amongst myself, Dennis Robinson, Ken Sullivan (JSO) and Keith Pratt (Motorola) confirm that the Boeing F22 program presented a opportunity of approximately $184,000 given pricing of the boards identified in the email. *See* Exhibit 2 hereto.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 8th day of June, 2006.

Steven Blomme

WILMINGTON\35079\1153371.000

Exhibit 1

## Felice, David A.

| | |
|---|---|
| **From:** | Steve Blomme [sblomme@jsquared.com] |
| **Sent:** | Wednesday, October 08, 2003 5:18 PM |
| **To:** | Robinson Dennis-BLUW119 |
| **Cc:** | Ken Sullivan |
| **Subject:** | RE: Boeing AWACS - VxWORKS BSP XIP68 |

Dennis

Business case is:

Boeing will select one intel cPCI board to standardize
on by 5 groups. This will result in 10 boards per plane times 32 planes plus
approx 50 boards in labs and backup. Boards will deploy with RTMs. It is
roughly a $1M opportunity over 2 years.

Does that cover it?

Also Boeing signed an OA (not an EA) to release the boards due to the "not
qualified for MCG systems" issue. The boards should not be EA nor should
they have sample on them.

Regards
Steve

-----Original Message-----
From: Robinson Dennis-BLUW119 [mailto:dennis.robinson@motorola.com]
Sent: Wednesday, October 08, 2003 9:22 AM
To: sblomme@jsquared.com
Subject: RE: Boeing AWACS - VxWORKS BSP XIP68

Steve,

As we discussed the day before last, can you please send me the Boeing XIP68
business summary?

Also, to refresh my memory on whether we had Boeing sign an EA agreement for
their first XIP boards (not the one Dave lent them).  I think we originally
had them waiting for a production model, but I can't recall if at the end of
the day we put an EA in place.

-Dennis

-----Original Message-----

From: Steve Blomme [mailto:sblomme@jsquared.com]
Sent: Tuesday, October 07, 2003 2:21 PM
To: Robinson Dennis-BLUW119; Shi Elain-G19421
Cc: Duke Young; Ken Sullivan
Subject: Boeing AWACS - VxWORKS BSP XIP68


Hi Dennis

Good news bad news at Boeing AWACS.

Good News

The XIP68 board and EA VxWORKS BSP testing is moving along nicely and Larry
Plummer informs us that the MCG product is the lead product in the AWACS
evaluation process. They are looking at 4 suppliers boards and the MCG board
is the first one to get to this stage of testing.

Larry tells us that Boeing will select one intel cPCI board to standardize
on by 5 groups. This will result in 10 boards per plane times 32 planes plus
approx 50 boards in labs and backup. Boards will deploy with RTMs. It is
roughly a $1M opportunity over 2 years.


Bad News

Boeing now wants some indication from MCG that there will eventually be a
"supported" VxWORKS BSP. They don't care if this is MCG supported or WRS but
they would like to know that if they commit to the XIP68 then it will be
treated like the other intel cPCI boards at MCG. (Larry notes that the WRS
web site lists supported MCG cPCI intel boards at:
http://www.windriver.com/products/bsp_web/bsp_architecture.html?architecture
=x86%2FPentium%2FIA-32 )


We know that originally the VxWorks BSP for XIP68 was a confusing story. Can
we get something more definitive if this customer commits?


Best Regards
Steve Blomme


Steven Blomme
Business Development Manager
J-Squared Technologies Inc.
PH: 403-207-5526 x26  CELL: 403-710-0610
EMAIL: sblomme@jsquared.com
www.jsquared.com

Exhibit 2

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.394 / Virus Database: 268.8.1/355 - Release Date: 6/2/2006

## Felice, David A.

**From:**     Ken Sullivan [kens@jsquarednw.com]
**Sent:**     Wednesday, February 18, 2004 6:24 PM
**To:**        'Steve Blomme (ACT!)'
**Subject:**  FW: Motorola VME Boards

Hi Steve,
I just spoke with Keith Pratt. It seems his project is not tied to Myron's as we suspected and the numbers discussed below are still valid. Keith is working on Simulation Systems and Myron was working on Instrumentation.

As it stands, this project is still waiting for a green light. Keith is not sure when it will happen but it will happen.

-Ken

-----Original Message-----
From: Ken Sullivan [mailto:kens@jsquarednw.com]
Sent: Tuesday, May 13, 2003 2:13 PM
To: Keith Pratt
Cc: Dennis Robinson; Steve Blomme
Subject: Motorola VME Boards


Hi Keith,
Thank you  for choosing to use Motorola VME boards for use in your new F22
project.
If you don't mind, I'd like to confirm the business elements of this
project.
As I understand it, the systems you are planning build are development lines
to support the F22 and would use the following Motorola boards:
MVME5100 19 per line
MVME167  24 per line
MVME712  24 per line (transition board)

You indicated, funding permitted, that you hope to build two lines within
the next 12 months.
Please feel free to add any details I've missed and/or correct any
information I have wrong.

Look forward to hearing from you.

Ken Sullivan
J-Squared Technologies
220 Kirkland Ave. #201
Kirkland, WA 98033

425-889-8443 Phone
425-889-0443 Fax
425-444-8200 Cell

http://www.jsquarednw.com/linecard.htm

--
No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.1.394 / Virus Database: 268.8.1/355 - Release Date: 6/2/2006

Exhibit Q

REDACTED