IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARE TECHNOLOGIES (OREGON) INC., an Oregon corporation, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 04-CV-960-SLR |
| MOTOROLA, INC., a Delaware corporation. | ) | |
| Defendant. | ) | |

**MOTOROLA'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:   July 13, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   INTRODUCTION ........................................................................................................... 1

II.  MR. POCALYKO CANNOT PROPERLY OPINE THAT
     PLAINTIFFS WERE UNDERPAID ............................................................................. 2

     A.   Plaintiffs' Expert Has No Factual Basis To Conclude That
          Motorola Systematically Underpaid Plaintiffs' Commissions. ............................. 2

     B.   Plaintiffs' Discovery Complaints Do Not Support Mr. Pocalyko's
          Opinion – They Highlight Why That Opinion Is Improper ................................. 3

     C.   Plaintiffs' Reliance On Raytheon Is Misleading .................................................. 5

     D.   Plaintiffs Did Not Plead Their Underpayment Claim .......................................... 6

     E.   Plaintiffs Did Not Disclose The Underpayment Claim During
          Discovery .............................................................................................................. 7

III. PLAINTIFFS CANNOT RECOVER RELIANCE OR
     CONSEQUENTIAL DAMAGES .................................................................................. 9

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page

Cases

*Dixon v. City of Phoenix,*
  845 P.2d 1107 (Ariz. App. 1992) .................................................................................... 9

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ......................................................................................................... 6

*Hadley v. Southwest Properties, Inc.,*
  570 P.2d 190 (Ariz. 1977) ............................................................................................. 10

*Holman v. Indiana,*
  211 F.3d 399 (7th Cir. 2000) ........................................................................................... 7

*Jones v. Otis Elevator Co.,*
  861 F.2d 655 (11th Cir. 1988) ......................................................................................... 4

*Lewis v. Paris of Terrebonne,*
  894 F.2d 142 (5th Cir. 1990) ........................................................................................... 3

*Mid-State Fertilizer Co. v. Exchange Nat'l. Bank of Chicago,*
  877 F.2d 1333 (7th Cir. 1989) ......................................................................................... 4

*Montgomery County v. Microvote Corp.,*
  320 F.3d 440 (3d Cir. 2003) ............................................................................................ 6

*Navarro v. Fuji Heavy Indus.,*
  117 F.3d 1027 (7th Cir. 1997) ......................................................................................... 4

*Pell v. E.I. Dupont de Nemours & Co, Inc.,*
  31 F.R.D. 186 (D. Del. 2005) .......................................................................................... 3

*Polk v. Ford Motor Co.,*
  529 F.2d 259 (8th Cir. 1976) ........................................................................................... 3

*United Dairymen of Arizona v. Schugg,*
  128 P.3d 756 (Ariz. App. 2006) ...................................................................................... 9

I.  **INTRODUCTION**

Plaintiffs' Response to Motorola's Motion to Strike skips by the deficiencies in their expert's report ("Report"), offers inconsistent explanations as to why their Complaint and discovery responses do not include any underpayment allegations, and fails to address three key issues: 1) plaintiffs' expert supposedly based his underpayment calculations on conversations with plaintiffs' personnel, yet all those personnel claim to be unaware of <u>any</u> underpayments, 2) the Raytheon issue was resolved four months <u>before</u> plaintiffs filed this lawsuit, and 3) the Agreements expressly preclude lost profits and reliance damages for claims arising out of the termination or non-renewal of the Agreements.

Rather than tackle these material deficiencies head on, plaintiffs instead accuse Motorola of "dilatory discovery tactics" and assert that discovery will reveal support for the underpayment allegations. Putting aside that discovery in the case has been closed for months, this tactic – issue an expert opinion and then hope that subsequent discovery supports it, is entirely contrary the law. As an expert, Mr. Pocalyko must rely on the facts and data available to him and apply his expertise to reach his own conclusions as to what those facts and data mean. This he did not do. Rather, he expressed opinions not supported by the record, and instead, parroted baseless suspicions of underpayments (complaints raised by plaintiffs' counsel, but not plaintiffs' own personnel who confess that they have no idea what this claim is about). That is not the function of an expert, but a hired gun, and it is improper.

Furthermore, discovery has been closed for months, and despite receiving over 16,000 pages' of documents from Motorola and over 5,000 pages' of documents from third parties pursuant to subpoenas, and taking over 65 hours' of depositions,

plaintiffs do not identify a single fact to support Mr. Pocalyko's opinion that Motorola systematically underpaid plaintiffs, let alone that Motorola did so at a rate of 40 percent. Accordingly, the Court should strike the Report's references to underpayments.

As for Mr. Pocalyko's calculations of reliance and lost profits damages, plaintiffs briefly argue that the Court should not strike these calculations because the limitation of remedies provisions in their Agreements do not cover tort claims. That is not true; the plain text of the Agreements expressly, and repeatedly, make clear that the limitation on remedies applies to tort claims. Aside from ignoring the language of their Agreements, plaintiffs do not challenge the validity of these provisions or address the case law cited by Motorola that makes clear the provisions are valid. Accordingly, the Court should strike the Report's references to reliance and lost profits damages.

## II.   MR. POCALYKO CANNOT PROPERLY OPINE THAT PLAINTIFFS WERE UNDERPAID

### A.   Plaintiffs' Expert Has No Factual Basis To Conclude That Motorola Systematically Underpaid Plaintiffs' Commissions.

Beyond stating that they are "suspicious" and "believe" that "they were not properly compensated," (D.I. 155, at 4-5), plaintiffs provide no proof whatsoever to support Mr. Pocolyko's conclusion that MCG's commission payments to JST and JSO "were underreported by approximately 40 percent." (Ex. A to D.I. 136, at 5-6). In fact, they do not even dispute that their key personnel – every employee they identified as a potential witness in this case – have no knowledge of any underpayment by Motorola, much less the systematic underpayment of all commissions "by approximately 40 percent." (*See* D.I. 136, at 6 & Ex. E to D.I. 136). This is surprising because the Report purports to be based "primarily" on "representations provided by the clients" and

"interviews of the clients' personnel familiar with the financial data and information." (Ex. A to D.I. 136, at 3).

Nor do plaintiffs dispute that none of the documents Mr. Pocalyko "relied on" in reaching his opinions support the allegations of underpayments. (D.I. 136, at 6). And, while plaintiffs issued subpoenas to numerous third parties "seeking documentation of defendant's failure to properly compensate them" (D.I. 155, at 4), they do not point to any of the over 5,000 pages' of documents produced in response to those subpoenas to substantiate their "suspicions" or "beliefs." Accordingly, Mr. Pocalyko had no factual basis to opine that Motorola systematically underpaid plaintiffs' commissions.

Without a factual basis, Mr. Pocalyko's opinion is inadmissible. An expert report must not be founded on guesswork, speculation, or idle conclusions based on mere subjective "belief" and "suspicions." *Pell v. E.I. Dupont de Nemours & Co, Inc.*, 231 F.R.D. 186, 192 (D. Del. 2005) (stating that expert opinion must be "based on more than a subjective belief or speculation"); *see also, e.g., Lewis v. Paris of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("expert's opinion must be preceded by facts in evidence and cannot be based on speculation or conjecture."); *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir. 1976) ("There must, of course, be sufficient facts already in evidence or disclosed by the witness as a result of his investigation to take such testimony out of the realm of guesswork and speculation.").

**B.    Plaintiffs' Discovery Complaints Do Not Support Mr. Pocalyko's Opinion – They Highlight Why That Opinion Is Improper**

Trying to divert the Court away from Mr. Pocalyko's unsupported opinions, plaintiffs blame their lack of proof on Motorola, arguing that it has "flatly refused to provide Plaintiffs" with "documents that are central to Plaintiffs' claims of underpayments." (D.I. 155, at 5). Without identifying a single discovery request,

plaintiffs assert that Motorola's "baseless discovery objections and assertions of privilege . . . have prohibited Plaintiffs from obtaining <u>confirmation of their belief</u> that they were not properly compensated." (D.I. 155, at 4-5). Plaintiffs similarly contend that their Motion to Compel,[1] (D.I. 76), if granted, will "provide additional support for the underpayments allegations," though they provide no specifics as to why they believe that to be the case. (D.I. 155, at 5).

Plaintiffs' own discovery-related arguments demonstrate why the Report is deficient – it was prepared without "confirmation" of their counsel's "belief" or "suspicion" about underpayments. Obtaining an expert opinion and then hoping that discovery will substantiate it is improper. Rather, "[a]n expert's testimony must be based on "facts which enable him to express a reasonably accurate conclusion." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988); *see also Navarro v. Fuji Heavy Indus.*, 117 F.3d 1027, 1031 (7th Cir. 1997) (stating that "a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence"); *Mid-State Fertilizer Co. v. Exchange Nat'l. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (stating that "an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process," so the court must "look behind [the expert's] ultimate conclusion . . . and analyze the adequacy of its foundation").

Without any existing facts or data to back him up, Mr. Pocalyko calculated tens of thousands of dollars' of damages based on purported underpayments. This is unreliable, improper, and contrary to the Federal Rules of Evidence. Accordingly, the

---

[1] Motorola has addressed each of these issues at length in its Response to Plaintiffs' Motion to Compel (D.I. 95), and Motorola stands by its arguments in that filing.

Court should strike Mr. Pocalyko's baseless opinions regarding the alleged systematic underpayment of commissions.

### C. Plaintiffs' Reliance On Raytheon Is Misleading

Anticipating correctly that plaintiffs would try to confuse the Court, Motorola explained in its Motion that the only suggestion of underpayment ever raised by plaintiffs was JST's very specific claim that it was entitled to commissions for sales to a company called Raytheon. In early 2004, Motorola investigated this claim, realized that the Raytheon commissions had not been properly credited to JST because the "ship to" address for the orders was outside JST's territory, corrected the database, and paid the Raytheon commissions – all long before plaintiffs initiated this litigation. (D.I. 136, at 7).

Nevertheless, plaintiffs rely heavily on the Raytheon commissions in their response, insisting that (1) in the face of the Raytheon commission payments, "Defendant has had to admit it underpaid JST pursuant to the MRAs" and (2) the Raytheon commissions evidence Motorola's "pattern and practice of shorting the manufacturer's representatives on their commissions." (D.I. 155, at 5-6).

The Raytheon commission adjustment cannot serve as the basis for Mr. Pocalyko's opinion that Motorola systematically underpaid plaintiffs by 40 percent because the Raytheon issue was resolved in April 2004 – about four months <u>before</u> plaintiffs filed this lawsuit, a point that plaintiffs completely ignore in their Response. Also, Mr. Pocalyko makes no mention whatsoever of Raytheon in his Report, so he assumedly was not basing his opinion on the Raytheon adjustment. (*See* Ex. A to D.I. 136). Furthermore, the notion that the Raytheon adjustment is proof of a "pattern and practice" of Motorola "shorting the manufacturer's representatives on their commissions"

is a massive leap. (D.I. 155, at 6). This was a single reconciliation, caused by a discrepancy between the "ship to" address and where the sale was actually made, that was raised and resolved in the ordinary course of business.

Accordingly, Raytheon does not provide support to plaintiffs' baseless accusation that Motorola systematically underpaid them or even that plaintiffs are due a penny in additional compensation.[2]

### D.    Plaintiffs Did Not Plead Their Underpayment Claim

Plaintiffs have a serious consistency problem regarding their arguments as to whether they even pled the underpayment claim. Plaintiffs first argue that, read liberally, their Complaint did allege this underpayment theory, though they concede that the "allegations of underpayments were not spelled out in precise detail." (D.I. 155, at 4 (emphasis added)). But, after making this assertion that their Complaint did include the theory, plaintiffs in the very next sentence admit that they "were unaware" of these claims "at the time [they] drafted their Complaint." (D.I. 155, at 4 (emphasis added)). Which is it?

A review of their Complaint makes clear that JST's contract claim hinges only on allegations that its Agreement was renewed, whereas JSO's contract claim hinges only on allegations that MCG had no good faith basis to terminate. (D.I. 1, at ¶¶ 38-44, 66-71). Neither plaintiff alleges, alludes to, implies, makes a reference to, or otherwise pleads that MCG underpaid commissions, let alone systematically did so. (Id.). While liberal, the pleading rules do "not require a district court to fabricate a claim that a

---

[2]To the extent that plaintiffs argue that the Raytheon commissions are some evidence to support the allegation of systematic underpayment, "'there is simply too great a gap between the data and the opinion proffered,'" and the opinion should thus be excluded. *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

plaintiff has not spelled out in his pleadings," *Holman v. Indiana*, 211 F.3d 399, 406-07 (7th Cir. 2000), and the Court should not do so here.

Furthermore, plaintiffs' argument that they have pled this underpayment theory by way of a Motion to Amend their Complaint, (D.I. 155, at 2), is inappropriate. That motion, (D.I. 118), was filed three weeks <u>after</u> discovery closed and months after the deadline to amend the pleadings. Moreover, that motion provides no justification for the underpayment allegations. (*See id.*). To the contrary, as detailed in Motorola's Response to the Motion to Amend, plaintiffs improperly attempted to include these "stealth amendment" allegations of underpayment without even <u>mentioning</u> them to the Court at all in their Motion to Amend. (D.I. 131, at 13-14).

### E.    Plaintiffs Did Not Disclose The Underpayment Claim During Discovery

Plaintiffs' Response also ignores the fact that they <u>never</u> disclosed these damages or even alluded to them in their discovery responses, which they were obligated to do. As Motorola argued in its Motion (D.I. 136, at 5), plaintiffs' disclosure statement merely identifies damages for (1) "projected revenues" [*i.e.*, lost profits] that plaintiffs lost when their Agreements ended and (2) expenses they incurred "to design-in Motorola products with Plaintiffs' customers" [*i.e.*, reliance damages]. (Ex. E to D.I. 136, at 2). When MCG asked plaintiffs in written discovery to "[e]xplain in detail" their "computation of damages," plaintiffs merely identified (1) costs, expenses, and overhead that plaintiffs incurred to perform under the Agreements; (2) lost potential revenue; and (3) trailing commissions, but made no reference whatsoever to any systematic underpayment of commissions. (Exs. F & G to D.I. 136, at 12 and 10, respectively).

If, as plaintiffs suggest, "it was only during the course of discovery that Plaintiffs learned that they had suffered this additional component of damages" (D.I. 155,

at 4), then they had a duty to supplement and correct their disclosure statement and interrogatory responses, which they have failed to do. Rule 26(e) states that unless it has been made known during discovery or in writing, "a party is under a duty to supplement ... its disclosures ... if the party learns that in some material respect the information disclosed is <u>incomplete or incorrect</u>" and "a party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect <u>incomplete or incorrect</u>." (emphasis added).

      Plaintiffs made no effort to supplement their disclosure statement or their discovery responses to reflect this underpayment theory. In fact, when Motorola's counsel promptly asked plaintiffs' counsel about it after seeing it in the Report, the response was, "Motorola is in the best position to answer the question of whether it underpaid commissions and by how much." (Ex. D to D.I. 136).

      Furthermore, plaintiffs argued in their Response that "as soon as they became suspicious of an underpayment claim, they "served supplemental discovery," "immediately issued subpoenas to third parties," and "moved this Court to compel Defendant to answer this additional discovery." (D.I. 155, at 4). Since the only "evidence" plaintiffs cite to support this theory is the April 2004 Raytheon reconciliation, plaintiffs' argument that they "discovered" something and then served additional discovery makes no sense. And, since plaintiffs do not point to any specific supplemental discovery requests seeking this information or to any documents obtained through these supplemental discovery requests, the only reasonable inference is that they yielded nothing to support plaintiffs' false accusations. It was months ago that plaintiffs received

documents in response to their subpoenas, yet plaintiffs cannot cite to anything in those documents that even allegedly supports their claims.

Having neither pled nor disclosed anything reflecting any systematic underpayment of commissions, plaintiffs should not be permitted to insert this claim into the litigation now through their expert's Report, particularly since plaintiffs basically concede they presently have no proof to support the claim. Accordingly, the Court should strike the Report's unsupported references to underpayments.

### III.   PLAINTIFFS CANNOT RECOVER RELIANCE OR CONSEQUENTIAL DAMAGES

Mr. Pocalyko's Report calculates hundreds of thousands of dollars' in "Reliance Damages" and "Lost Future Opportunities" for plaintiffs. (Ex. A to D.I. 136, at 7-10). But, as detailed in Motorola's Motion, (D.I. 136, at 10-12), JST and JSO expressly agreed in their contracts that they would not seek reliance or lost profits damages for the "termination or nonrenewal" of the contracts. (Exs. B & C to D.I. 136, at § 7.4). And, under governing Arizona law, "[a] contract provision governing remedies or damages is generally binding on the parties." *United Dairymen of Arizona v. Schugg*, 128 P.3d 756, 761 ¶ 16 (Ariz. App. 2006); *Dixon v. City of Phoenix*, 845 P.2d 1107, 1112 (Ariz. App. 1992).

Plaintiffs do not contest the validity of these provisions nor the case law authorizing them. Instead, they cite general Arizona case law regarding the recovery of tort damages and argue that "when tort damages are recoverable, a plaintiff is not limited to the economic damages within the contemplation of the parties at the time the contract was made." (D.I. 155, at 6). While this is generally true, none of the cases upon which plaintiffs rely address situations where the parties have agreed contractually to limit their remedies. In such cases, as explained in Motorola's Motion, (D.I. 136, at 11-12), Arizona

courts have repeatedly held the parties to their bargain. *See, e.g., Hadley v. Southwest Properties, Inc.*, 570 P.2d 190, 193 (Ariz. 1977) (so long as the intent is clear, parties to a contract may specify certain remedies to the exclusion of others).

Furthermore, plaintiffs are incorrect to suggest that the limitation of liability provisions in their Agreements only apply to their breach of contract claims. (D.I. 155, at 7). The Agreement itself refutes this reasoning in multiple places.

First, the Report calculates lost profits and reliance damages that supposedly occurred "<u>as a result of the termination of the . . . Agreements</u>." (Ex. A to D.I. 136, at 9 (emphasis added)). The Agreements, however, bar lost profits and reliance damages that occur "<u>by reason of termination or nonrenewal of this Agreement</u>." (Exs. B & C to D.I, at § 7.4 (emphasis added)). Thus, the provisions are not limited to "breach of contract" claims, but rather to damages that occur by reason of allegedly improper termination or nonrenewal of the contract – exactly the type of damages Mr. Pocalyko supposedly calculated.

Second, the Agreements expressly state that the damage limitations in them are not limited to breach of contract claims, but also apply to tort claims:

> **3.8 Limitation of Liability.** IN NO EVENT, <u>WHETHER FOR BREACH OF CONTRACT</u>, WARRANTY, <u>MOTOROLA'S NEGLIGENCE</u>, STRICT LIABILITY IN TORT <u>OR OTHERWISE</u> WILL MOTOROLA BE LIABLE FOR INCIDENTAL, <u>SPECIAL</u>, PUNITIVE OR <u>CONSEQUENTIAL DAMAGES</u> INCLUDING, BUT NOT LIMITED TO, FRUSTRATION OF ECONOMIC OR BUSINESS EXPECTATIONS, <u>LOSS OF PROFITS</u>, LOSS OF DATA, <u>COST OF CAPITAL</u>, COST OF SUBSTITUTION OF PRODUCTS, FACILITIES OR SERVICES, DOWNTIME, COSTS, OR ANY SIMILAR CLAIM OF A SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE NATURE WHATSOEVER TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(Exs. 1 & 2 attached (emphasis added)).[3] Thus, the pertinent provisions in the Agreements themselves make clear that they are not limited to breach of contract claims.

By calculating damages for reliance and lost profits allegedly "suffered by JST and JSO as a result of the termination of the JST and JSO Agreements," Mr. Pocalyko's Report violates the express terms of the Agreements. Therefore, any references to reliance and lost profits damages should be stricken from his Report.

---

[3] While the Agreements' remedies provisions express that they are not limited to breach of contract claims, that point also is confirmed by the fact that the Agreements prohibit special and punitive damages, both of which are almost exclusively tort damage concepts.

## CONCLUSION

In light of the foregoing and the reasons set forth in Motorola's Motion to Strike, the Court should strike any reference to underpayment of commissions or reliance and lost opportunities damages from the Report and exclude any reference to these theories at trial.

                          YOUNG CONAWAY STARGATT & TAYLOR, LLP

                          William W. Bowser (Bar I.D. 2239)
                          The Brandywine Building, 17th Floor
                          1000 West Street
                          Wilmington, Delaware 19801
                          Telephone: (302) 571-6601; Facsimile: (302) 576-3282
                          wbowser@ycst.com
                          OF COUNSEL:
                          Randy Papetti, Cory A. Talbot, Emily S. Cates
                          Lewis and Roca LLP
                          40 N. Central Avenue
                          Phoenix, Arizona 85004
                          Telephone: (602) 262-5311
                          Attorneys for Defendant

DATED:      July 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARE TECHNOLOGIES (OREGON) INC., an Oregon corporation,<br>　　　　　　　　　Plaintiffs,<br>　　v.<br>MOTOROLA, INC., a Delaware corporation.<br>　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 04-CV-960-SLR<br>)<br>) |

## CERTIFICATE OF SERVICE

I, William W. Bowser, Esquire, hereby certify that on the 13th of July 2006, I electronically filed a true and correct copy of the foregoing **Motorola's Reply in Support of its Motion to Strike and its accompanying Exhibits**, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

　　　　David Allan Felice
　　　　Sean J. Bellew
　　　　Cozen O'Connor
　　　　Chase Manhattan Centre, 1201 North Market, Suite 1400
　　　　Wilmington, DE 19801

I further certify that on this 13th day of July 2006, I mailed by United States Postal Service a copy of above-mentioned document to the following non-registered participant:

　　　　Kevin F. Berry
　　　　Cozen O'Connor
　　　　1900 Market Street
　　　　Philadelphia, PA 19103

　　　　YOUNG CONAWAY STARGATT & TAYLOR, LLP

　　　　/s/ William W. Bowser
　　　　_____
　　　　William W. Bowser, Esquire (Bar I.D. 2239)
　　　　1000 West Street
　　　　Wilmington, Delaware 19801
　　　　Telephone: (302) 571-6601
　　　　Facsimile: (302) 576-3282
　　　　Email: wbowser@ycst.com