IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARE TECHNOLOGIES (OREGON) INC., an Oregon corporation,<br><br>                Plaintiffs,<br>v.<br>MOTOROLA, INC., a Delaware corporation.<br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 04-CV-960-SLR<br>)<br>) |

# EXHIBIT 1 TO
# MOTOROLA'S REPLY BRIEF
# IN SUPPORT OF ITS MOTION STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:   July 13, 2006

# MANUFACTURER'S REPRESENTATIVE AGREEMENT

between

## MOTOROLA COMPUTER GROUP

and

## J-SQUARED TECHNOLOGIES

1

J2 Rep Agmt 13 nov.doc

Rev. Date 13 December 2001

TABLE OF CONTENTS

Article I. Definitions ........................................................................................................... 3
Article II. Appointment and Scope ..................................................................................... 3
Article III. Representative's Compensation ........................................................................ 5
Article IV. Representative Obligations ............................................................................... 7
Article V. Motorola Obligations ......................................................................................... 9
Article VI Confidentiality and Proprietary Rights ............................................................ 10
Article VII. Term and Termination ................................................................................... 11
Article VIII. Dispute Resolution ....................................................................................... 13
Article IX. General Provisions .......................................................................................... 13

LIST OF EXHIBITS

- EXHIBIT 1: REPRESENTATIVE PRODUCT LIST/COMMISION RATES
- EXHIBIT 2: TERRITORY AND HOUSE ACCOUNT LIST

3.8   Limitation of Liability. IN NO EVENT, WHETHER FOR BREACH OF CONTRACT, WARRANTY, MOTOROLA'S NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE WILL MOTOROLA BE LIABLE FOR INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, FRUSTRATION OF ECONOMIC OR BUSINESS EXPECTATIONS, LOSS OF PROFITS, LOSS OF DATA, COST OF CAPITAL, COST OF SUBSTITUTION OF PRODUCTS, FACILITIES OR SERVICES, DOWNTIME, COSTS, OR ANY SIMILAR CLAIM OF A SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE NATURE WHATSOEVER TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

3.9   Claims Procedures. Any dispute or claim against Motorola related to this Agreement, or its expiration or termination, requires written notice to Motorola within one hundred eighty (180)days of the event giving rise to the claim. Failure to give such notice will constitute a waiver of any claim against Motorola and will relieve Motorola from any and all liability on any such claim.

3.10  Offsets. Any credits, allowances, or other amounts payable or creditable to Representative by Motorola will be subject to offset for any claims or other amounts owed by Representative to Motorola pursuant to the provisions of this Agreement or otherwise.

3.11  Taxes. All taxes (including, but not limited to, income, withholding, sales, use, registration, ad valorem, excise, employment and documentary taxes), duties, excises or other such charges imposed by governmental or quasi-governmental bodies relating to the sale, shipment, acquisition, holding and disposition of Products by Representative or Representative's actions or presence in the Territory or any performance under this Agreement that are not the responsibility of the Customer will be paid by Representative, which agrees to indemnify and hold harmless Motorola or any Motorola Affiliate with respect to any such charges paid by Motorola or any Motorola Affiliate.

Article IV. Representative Obligations

4.1   Sales Promotion. Representative will use best efforts to promote the sale and use of Products in Territory. Representative will immediately submit to its contact within Motorola all leads, forecasts, purchase orders, and other communications Representative develops or receives from a Customer or prospective Customer for the Products.

Representative must register all sales efforts and leads through the Motorola registration system for those opportunities that may result in direct orders to Motorola and will be eligible for a commission on only those direct orders so registered.

4.2   Facilities and Personnel. Representative will maintain, at its own expense, such office space and facilities, and hire and train such personnel, as may be required to carry out its obligations under this Agreement.

4.3   Promotional Materials. Representative will maintain an adequate inventory of Motorola's current sales material and samples for use in an efficient and effective manner to promote the sale of Products in the Territory. At Motorola's request, Representative will not

obligations hereunder, delays in transportation, and inability to obtain necessary labor, supplies, or manufacturing facilities.

9.4 Severability. Subject to the provisions of Paragraph 7.2D above, the illegality or unenforceability of any provision of this Agreement will not affect the validity and enforceability of any legal and enforceable provisions hereof.

9.5 Nonassignment. This Agreement will be binding on and inure to the benefit of the successors and assigns of the business interests of Motorola and may be assigned by Motorola only to the acquirer of substantially all of Motorola's assets in conjunction with such an acquisition. Representative will not sell, assign, delegate, or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Motorola.

9.6 Language. The English language version of this Agreement will govern and control any translations of the Agreement into any other language.

9.7 Applicable Law. This Agreement will be construed, enforced, and performed in accordance with the internal laws of Arizona, U.S.A. without reference to principles of conflicts of laws and specifically excluding the UN Convention of the Sale of Goods with respect to any purchases hereunder. Use of Arizona law shall apply exclusively to this Agreement.

9.8 Non-Solicitation. During the term of this Agreement and for a period of eighteen (18) months following the expiration or termination of this Agreement, neither party or its successors and assigns will encourage or solicit any employee to leave the employ of the other without written approval; the foregoing does not prohibit mass media advertising not specifically directed towards any particular employee of the other party.

9.9 Waiver. Motorola's failure to require Representative's performance of the provisions herein will not operate as a waiver of Motorola's right to request strict performance of the same or like provisions, or any other provisions hereof, at a later time.

9.10 Headings. Headings are for convenience of reference only and are not a part of this Agreement, nor will they in any way affect interpretation hereof.

IN WITNESS WHEREOF, Motorola and Representative have caused this Agreement to be executed by their duly authorized employees.

Representative:
J-Squared Technologies, Inc.

_____
(Authorized Signature)
By: Jeff Gibson
(Typed Name)
CEO
(Title)
November 28, 2002
(Date)

Motorola Inc., Motorola Computer Group

_____
(Authorized Signature)
Dennis McCarthy
(Typed Name)
Gen'l Mngr (Acting)
(Title)
Dec 5th 2002
(Date)