IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and J-SQUARE TECHNOLOGIES (OREGON) INC., an Oregon corporation,<br>             Plaintiffs,<br>   v.<br>MOTOROLA, INC., a Delaware corporation.<br>             Defendant. | C.A. No. 04-CV-960-SLR |

# EXHIBIT 2 TO
# MOTOROLA'S REPLY BRIEF
# IN SUPPORT OF ITS MOTION STRIKE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William W. Bowser (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
wbowser@ycst.com
OF COUNSEL:
Randy Papetti, Cory A. Talbot, Emily S. Cates
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Attorneys for Defendant

DATED:    July 13, 2006

MANUFACTURER'S REPRESENTATIVE AGREEMENT

between

MOTOROLA COMPUTER GROUP

and

J-SQUARED TECHNOLOGIES (OREGON) INC.

## TABLE OF CONTENTS

Article I. Definitions...........................................................................................3
Article II. Appointment and Scope .....................................................................3
Article III. Representative's Compensation .......................................................3
Article IV. Representative Obligations ..............................................................3
Article V. Motorola Obligations .........................................................................3
Article VI Confidentiality and Proprietary Rights..............................................3
Article VII. Term and Termination.....................................................................3
Article VIII. Dispute Resolution.........................................................................3
Article IX. General Provisions ...........................................................................3

LIST OF EXHIBITS

- EXHIBIT 1: REPRESENTATIVE PRODUCT LIST/COMMISION RATES
- EXHIBIT 2: TERRITORY AND HOUSE ACCOUNT LIST
- EXHIBIT 3: FOREIGN CORRUPT PRACTICES ACT CERTIFICATION
- EXHIBIT 4: PERFORMANCE STANDARDS

3.5  Refusal to Accept Orders. Representative's entitlement to a commission depends on Motorola's acceptance of Customer orders during the term of this Agreement and Representative's efforts to secure such orders. Motorola's failure or refusal to accept any order for any reason shall not create an obligation to pay either a commission or any damages in lieu thereof, nor shall any delay or default in the performance of any accepted order create an obligation to pay a commission or any claimed damages. Motorola shall not be obligated to make any commission payments for any orders received or accepted before the effective date of this Agreement, for sales from one government to another government, or for any order which is not, in Motorola's opinion, the result of Representative's efforts consistent with the terms and conditions of this Agreement.

3.6  Commission Changes. Commission levels may be amended by Motorola from time to time on all future business opportunities and will be effective 180 Days after written notice to Representative.

3.7  Commission Restrictions. MOTOROLA WILL NOT PAY A COMMISSION WHERE PROHIBITED OR TO THE EXTENT LIMITED BY UNITED STATES OR LOCAL LAW OR REGULATION, OR BY ANY CONTRACTUAL, FINANCING, OR OTHER SIMILAR PROVISION. REPRESENTATIVE ASSUMES THE RISK THAT A COMMISSION MIGHT BE SUBJECT TO A PROHIBITION OR LIMIT AND THAT REPRESENTATIVE WILL NOT BE PAID AS A RESULT. REPRESENTATIVE IS ENCOURAGED TO REVIEW LOCAL LAW, LOCAL REGULATIONS, POTENTIAL CONTRACTS, AND FINANCING ARRANGEMENTS FOR PROHIBITIONS OR LIMITATIONS ON COMMISSIONS. IF PAYMENT OF A COMMISSION IS LIMITED, BUT NOT ENTIRELY PROHIBITED, BY APPLICABLE UNITED STATES OR LOCAL LAW OR REGULATION, CONTRACT OR FINANCING ARRANGEMENTS, MOTOROLA AND REPRESENTATIVE MAY NEGOTIATE PAYMENT OF COMMISSION ON A CASE-BY-CASE BASIS WITHOUT OBLIGATING MOTOROLA TO PAY A COMMISSION IN EXCESS OF SUCH LIMITATIONS EXCEPT TO THE EXTENT IT AGREES IN ADVANCE AND IN WRITING.

Commissions on the sale of products pursuant to Foreign Military Sales/Foreign Military Financing (FMS/FMF), NATO and other sales where commissions may be otherwise restricted shall be payable in accordance with the relevant local law and United States law and regulations as follows:

1) Where there is no restriction on commissions, a commission will be paid at the agreed to rate as defined in Paragraph 3.1.

2) Where commissions are restricted, Motorola will pay a commission at the agreed to rate, not to exceed the amount restricted by law or regulation, or as otherwise specifically stipulated to by the Customer in writing prior to contract award.

3) Where a commission is prohibited, Motorola will pay no commission.

3.8  Limitation of Liability. IN NO EVENT, WHETHER FOR BREACH OF CONTRACT, WARRANTY, MOTOROLA'S NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE WILL MOTOROLA BE LIABLE FOR INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, FRUSTRATION OF ECONOMIC OR BUSINESS EXPECTATIONS, LOSS OF PROFITS, LOSS OF DATA, COST OF CAPITAL, COST OF SUBSTITUTION OF PRODUCTS, FACILITIES OR SERVICES, DOWNTIME, COSTS, OR ANY SIMILAR CLAIM OF A SPECIAL, INCIDENTAL,

CONSEQUENTIAL OR PUNITIVE NATURE WHATSOEVER TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

3.9   Claims Procedures. Any dispute or claim against Motorola related to this Agreement, or its expiration or termination, requires written notice to Motorola within one hundred eighty (180) days of the event giving rise to the claim. Failure to give such notice will constitute a waiver of any claim against Motorola and will relieve Motorola from any and all liability on any such claim.

3.10   Offsets. Any credits, allowances, or other amounts payable or creditable to Representative by Motorola will be subject to offset for any claims or other amounts owed by Representative to Motorola pursuant to the provisions of this Agreement or otherwise.

3.11   Taxes. All taxes (including, but not limited to, income, withholding, sales, use, registration, ad valorem, excise, employment and documentary taxes), duties, excises or other such charges imposed by governmental or quasi-governmental bodies relating to the sale, shipment, acquisition, holding and disposition of Products by Representative or Representative's actions or presence in the Territory or any performance under this Agreement that are not the responsibility of the Customer will be paid by Representative, which agrees to indemnify and hold harmless Motorola or any Motorola Affiliate with respect to any such charges paid by Motorola or any Motorola Affiliate.

## Article IV. Representative Obligations

4.1   Sales Promotion. Representative will use best efforts to promote the sale and use of Products in Territory. Representative will immediately submit to its contact within Motorola all leads, forecasts, purchase orders, and other communications Representative develops or receives from a Customer or prospective Customer for the Products.

Representative must register all sales efforts and leads through the Motorola registration system for those opportunities that may result in direct orders to Motorola and will be eligible for a commission on only those direct orders so registered. Motorola will direct Representative as to the method of adequate registration.

4.2   Facilities and Personnel. Representative will maintain, at its own expense, such office space and facilities, and hire and train such personnel, as may be required to carry out its obligations under this Agreement.

4.3   Promotional Materials. Representative will maintain an adequate inventory of Motorola's current sales material and samples for use in an efficient and effective manner to promote the sale of Products in the Territory. At Motorola's request, Representative will not use any non-Motorola advertising or promotional materials to promote the Products without Motorola's prior written approval.

4.4   Performance Standards. Representative agrees to maintain minimum performance standards as provided in Exhibit 4, which standards may be amended from time to time by written consent of both parties. If Representative fails to meet such minimum performance standards, Motorola may terminate this Agreement without cause in accordance with Paragraph 7.2G.

4.5   Sales Policies. Representative will comply, and will cause its employees and agents to comply, with all Motorola sales policies and the Motorola Code of Ethics and Business Conduct and the United States Foreign Corrupt Practices Act.

9.10  Headings. Headings are for convenience of reference only and are not a part of this Agreement, nor will they in any way affect interpretation hereof.

IN WITNESS WHEREOF, Motorola and Representative have caused this Agreement to be executed by their duly authorized employees.

Representative:
J Squared Technologies ( Oregon ) Inc.

_____
(Authorized Signature)
Jeff Gibson
(Typed Name)
President
(Title)
March 31, 2003
(Date)

Motorola Inc., Motorola Computer Group

_____
(Authorized Signature)
Kevin Parslow
(Typed Name)
Director, World-Wide Sales
(Title)
15th May 2003
(Date)

ADDRESS FOR FORMAL NOTICE:
J-Squared Technologies, Inc. _____
4015 Carling Ave, Suite 101 _____
Kanata, Ontario _____
K2K 2A3, Canada _____
Fax No. (613) 592-7051 _____
ATTENTION: Jeff Gibson _____

ADDRESS FOR FORMAL NOTICE:
Motorola Computer Group
2900 S. Diablo Way, DW103
Tempe, AZ 85282 USA

Fax No. (602) 437-6246
ATTENTION: Group Contracts

J2 NW Rep Agmt 030328.doc        14        Rev. Date 27 March 2003